UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS SCHMITZ, et al., | No. 2:20-cv-00195-JAM-CKD PS |
| Plaintiffs, | |
| v. | FINDINGS & RECOMMENDATIONS |
| A. ASMAN, et al., | (ECF No. 165) |
| Defendants. | |

Presently before the court is plaintiffs' motion for reconsideration of the court's order denying reconsideration of its original order that dismissed with prejudice plaintiffs' constitutional claims against defendants Adam Asman and Erik Bradley.[1]  (ECF No. 165.)  The motion is fully briefed and was taken under submission without oral argument.  (ECF Nos. 165-169.)  For the following reasons, the court recommends DENYING plaintiffs' motion.

**BACKGROUND**

On April 14, 2021, plaintiffs filed a motion for leave to further amend their complaint to reassert their previously dismissed-with-prejudice constitutional claims of deliberate indifference and deprivation of familial relations, under 42 U.S.C. § 1983, against defendants Asman and Bradley.  (ECF No. 145.)  Asman and Bradley were the floor officers on duty on January 21,

---

[1] Plaintiffs are representing themselves in this action.  All pretrial matters are referred to the undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

1

2019, the day that plaintiffs' son, William, died in custody at CDCR's Mule Creek State Prison. Plaintiffs' two-part motion was based on a proffer of newly discovered evidence which they argued supported stronger allegations to sufficiently state their constitutional claims. Briefing on the motion concluded on May 19, 2021, and the undersigned issued findings and recommendations on August 3, 2021. (ECF No. 156.) The undersigned recommended granting leave to amend in general but denying leave to reassert the previously dismissed § 1983 claims against Asman and Bradley because reconsideration of the earlier dismissal order was not warranted. (Id. at 12, 21, 36.) Plaintiffs filed objections on August 17, 2021, to which defendant Bradley replied. (ECF Nos. 158, 160.) The District Judge issued an order on September 24, 2021, adopting the findings and recommendations in full. (ECF No. 161.) The parties subsequently stipulated that plaintiffs' Fourth Amended Complaint ("4AC") would be due by December 14, 2021. (ECF Nos. 162, 163.)

On October 20, 2021, plaintiffs filed the instant motion under Federal Rule of Civil Procedure 54(b), seeking revision of the court's September 24th order so that they might be permitted to reassert in the 4AC the dismissed § 1983 claims against Asman and Bradley, based on the Ninth Circuit's decision in Gordon v. Cty. of Orange, 6 F.4th 961 (9th Cir. 2021) (Gordon II), which issued on July 26, 2021. (ECF No. 165.) Defendants Asman and Bradley filed oppositions, to which plaintiffs replied. (ECF Nos. 166, 167, 169.)

**DISCUSSION**

**A. Legal Standard**

Rule 54(b) governs requests like this one for reconsideration of the court's interlocutory orders. See Fed. R. Civ. P. 54(b) (stating that interlocutory orders "may be revised at any time before the entry of a judgment"). So long as the court still has jurisdiction over a case and a final judgment has not been entered, the court has both inherent power and authority under Rule 54(b) to modify or reconsider its interlocutory orders. See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 886-87 (9th Cir. 2001); Jadwin v. Cty. of Kern, No. 07-cv-0026-OWW-DLB, 2010 WL 1267264, at *9 (E.D. Cal. Mar. 31, 2010). Rule 54(b) does not address the standards which a court should apply when assessing a motion to revise an

2

interlocutory order, and the Ninth Circuit has not provided a governing standard; however, courts in this district look to the standards for reconsideration under Rule 59(e) (motion to alter or amend a judgment) and Rule 60(b) (relief from judgment) for guidance. Doutherd v. Montesdeoca, No. 2:17-CV-02225-KJM-JDP, 2021 WL 1784917, at *2 (E.D. Cal. May 5, 2021); Jadwin, 2010 WL 1267264, at *9. "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."[2] Kona Enterprises, Inc. v. Est. of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).

While the Rule 59 and 60 standards for modifying a final judgment provide guidance, "[a] district court may reconsider and revise a previous *interlocutory* decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law." Hydranautics v. FilmTec Corp., 306 F. Supp. 2d 958, 968 (S.D. Cal. 2003) (emphasis added); see also Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance."). And some courts apply a less rigid standard for motions to revise interlocutory orders under Rule 54(b) than to motions to reconsider final judgments under Rule 60(b). See, e.g., Persistence Software, Inc. v. Object People, Inc., 200 F.R.D. 626, 627 (N.D. Cal. 2001) (citing Fed. R. Civ. P. 60(b) Advisory Committee Notes).[3] As a general rule, though, "a court should generally leave a previous decision undisturbed absent a showing that it either represented clear error or would work a manifest injustice." Id. (citing Christianson, 486 U.S. at 817 (1988)); Lyons v. Baughman, No. CIV. S-01-412-LKK/KJM P, 2007 WL 1378022, at *3 (E.D. Cal.

---

[2] This court's local rules also govern applications for reconsideration and require the moving party to provide "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion" or "what other grounds exist for the motion" and "why the facts or circumstances were not shown at the time of the prior motion." E.D. Cal. L.R. 230(j).

[3] See Doctor John's, Inc. v. City of Sioux City, IA, 456 F. Supp. 2d 1074, 1076 (N.D. Iowa 2006) ("While the standards for reconsideration of interlocutory orders may be less 'exacting' than the standards for reconsideration of final orders under Rules 59(e) and 60(b), . . . the court should 'look to the kinds of consideration under those rules for guidance.'") (internal citations omitted).

May 10, 2007) ("[B]ecause a previous decision constitutes the law of the case, a court should generally not upset one of its previous decisions absent a showing that it either represented clear error or would work a manifest injustice.").

**B. Analysis**

Plaintiffs offer a single basis for modifying the court's order denying reconsideration: that the recent Gordon II decision set a new precedent that "inadequate safety checks are a violation of pre-trial detainees' constitutional rights." (ECF No. 165 at 3, 9.) Plaintiffs argue that, in light of this holding and the district court cases cited with approval in Gordon II, their allegations must be viewed as sufficient to state claims of deliberate indifference and (by extension) deprivation of familial relations against Officers Asman and Bradley. Plaintiffs explain that they first became aware of Gordon II—which issued two months after briefing on plaintiffs' motion concluded, and one week before the undersigned's findings and recommendations—while conducting research for their forthcoming 4AC. (ECF No. 169 at 2.)

Defendants Asman and Bradley oppose the motion on the grounds that (1) Gordon II applies only to pretrial detainees, not convicted prisoners like William; (2) Gordon II does not apply retroactively; (3) Gordon II is not "new" evidence because it issued before the findings and recommendations and before the adopting order; and (4) reviving plaintiffs' § 1983 claims would be futile in any event. (ECF Nos. 166 at 2, 167 at 4-6.) The undersigned recommends denying relief, although not entirely for the reasons defendants put forth.

Plaintiffs do not persuade the court that its prior decision to maintain the dismissal of the § 1983 claims at issue was clearly erroneous, manifestly unjust, or subverted by a change in controlling law. Initially, plaintiffs' motion does not acknowledge that a significant portion of the court's reason for originally denying reconsideration of the claims' dismissal was the inadequacy of plaintiffs' proffered newly discovered factual evidence (consisting of California OIG incident reports). (ECF No. 156 at 13-15.) Plaintiffs give no reason to modify this unchallenged portion of the findings and recommendations, later adopted by the District Judge, which independently supports the court's refusal to revive the § 1983 claims.

////

     Taking plaintiffs' motion on its merits, however, the undersigned also recommends denying reconsideration because plaintiffs overread the impact of Gordon II on their case. Despite not discussing Gordon II in the August 3, 2021 findings and recommendations, the undersigned was aware of the case when it issued the week prior. The court did not discuss Gordon II because, despite dealing with a very similar (and similarly tragic) factual scenario, Gordon II's legal analysis did not bear upon the sufficiency of plaintiff's pleadings.

     Gordon II is primarily a qualified immunity case, although it also separately addressed an issue of municipal liability. Qualified immunity is an affirmative defense that protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (cleaned up). "In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." Gordon II, 6 F.4th at 967-68. In the portion of the decision relied upon by plaintiffs, the Court of Appeals reviewed the district court's grant of summary judgment in favor of a jail deputy who conducted safety checks on the decedent pretrial detainee from a vantage point where he was unable to ascertain whether the detainee—who ultimately died on his watch—was in any physical distress. Id. at 966-67, 972-73. Finding that the district court erroneously analyzed the "clearly established" prong by incorporating a subjective standard, the Court of Appeals conducted its own qualified immunity analysis afresh. Id. at 968.

     As many courts do, the Court of Appeals opted to skip to the second step of the qualified immunity analysis, exclusively addressing "the clearly established prong." Id. at 968-73. The court first noted the lack of "any precedent expressly recognizing a detainee's right to direct-view safety checks sufficient to determine whether their presentation indicates the need for medical treatment." Id. at 972. After noting that some district courts have recognized such a right, the court concluded that the jail deputy was "entitled to qualified immunity because the due process right to an adequate safety check for pretrial detainees was not clearly established at the time of the incident," in September 2013. Id. at 972-73; see id. at 966-67. Nevertheless, in order to

clarify the state of the law for future qualified immunity defenses, the court held—without additional analysis—that "pre-trial detainees do have a right to direct-view safety checks sufficient to determine whether their presentation indicates the need for medical treatment." Id. at 973. The court closed its qualified immunity analysis by noting that—although this case would not decide "whether [the deputy] in fact conducted an adequate safety check"—"law enforcement and prison personnel should heed this warning because the recognition of this constitutional right will protect future detainees." Id.

Plaintiffs essentially argue that, post-Gordon II, plaintiffs have only to allege that floor monitoring officers (like Asman and Bradley here) performed inadequate visual safety checks of their inmates in order to state a claim of deliberate indifference to medical needs under the Eighth Amendment. However, Gordon II's recognition of a Fourteenth Amendment due process right to direct-view safety checks for all pretrial detainees in the qualified immunity context does not abrogate the fundamental pleading requirements for stating a claim of deliberate indifference under the Eighth Amendment.

As explained in the court's prior rulings in this case, claims (like those in plaintiffs' case) brought on behalf of convicted prisoners under the Eighth Amendment are governed by a "subjective deliberate indifference" standard. Sandoval v. Cty. of San Diego, 985 F.3d 657, 667 (9th Cir. 2021). Since the Ninth Circuit's 2018 holding in Gordon I, this standard exists in contrast to the *objective* deliberate indifference standard that applies to claims on behalf of pretrial detainees. Gordon v. Cty. of Orange, 888 F.3d 1118, 1120, 1125 (9th Cir. 2018) ("Gordon I"). Under the Eighth Amendment standard, "a prison official will be liable for disregarding an inmate's serious medical needs only if he was both 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and actually 'dr[e]w the inference.'" Sandoval, 985 F.3d at 667-68 (alteration in original) (quoting Peralta v. Dillard, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc) (in turn quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "Thus, a prison official who *should* have been aware of a medically related risk to an inmate, but in fact was not, has not violated the Eighth Amendment, no matter how severe the risk." Id. at 668 (emphasis in original) (cleaned up).

As the court has consistently held, plaintiffs must therefore plead facts that give rise to the plausible inference that Asman and Bradley subjectively knew their failure to perform adequate safety checks created a substantial risk of serious harm to William. For two reasons, Gordon II's recognition of pretrial detainees' right to direct-view safety checks without knowledge of a specific medical need does not change that requirement.

First, the Ninth Circuit's recognition of a right (any right) for purposes of clearly establishing that right for future qualified immunity defenses does not automatically establish the substantive elements of the claim to be pleaded in the first instance. The consequence of Gordon II's right recognition is that state actors assigned to monitor pretrial detainees will not be able to succeed *with a qualified immunity defense* if sued for constitutionally inadequate safety checks, where their omission occurred after July 26, 2021 (the date of Gordon II's publication). The Ninth Circuit took pains to expressly recognize the right to direct-view safety checks in order to further "the development of constitutional precedent," Pearson, 555 U.S. at 236, by clarifying the law for future qualified immunity cases. See Sandoval, 985 F.3d at 674 ("Because the premise of qualified immunity is that state officials should not be held liable for money damages absent fair warning that their actions were unconstitutional, the clearly established law standard requires that the legal principle clearly prohibit the defendant's conduct in the particular circumstances before him." (cleaned up)).

However, "the affirmative defense of qualified immunity is distinct from the merits of the plaintiff's constitutional claim." Id. at 676 n.11. The qualified immunity defense is objective by nature. Id. (noting that the "objective nature of the qualified immunity defense" has not changed). "[E]ven where the clearly established legal standard requires [subjective] deliberate indifference, the qualified immunity inquiry should concentrate on the objective aspects of the constitutional standard." Id. at 673 (alteration in original) (quoting Horton by Horton v. City of Santa Maria, 915 F.3d 592, 600 (9th Cir. 2019)). Therefore, in marking pretrial detainees' right to direct-view safety checks as clearly established, the Ninth Circuit was not applying all elements of a deliberate indifference claim—especially not an Eighth Amendment deliberate indifference claim. Thus, Gordon II does not change the requirement that litigants when first

7

bringing a case plead facts plausibly satisfying each element of their deliberate indifference claim—which, for convicted inmates, still includes pleading actual subjective awareness of a substantial risk of harm.

Second, Gordon II's recognized right is specific to the Fourteenth Amendment due process rights of pretrial detainees who, having not yet been convicted of any crime, cannot be punished at all (unlike convicted inmates) and need only demonstrate that the governmental (in)action at issue "is not rationally related to a legitimate governmental objective." Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015) ("[A] pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective . . . ."); see Bell v. Wolfish, 441 U.S. 520, 535 (1979) (holding that, under the Due Process Clause, a detainee may not be punished prior to conviction).  Gordon II, building on four district court cases cited therein, expressly recognized the *due process* right to adequate direct-view safety checks.  See 6 F.4th at 972-73.  In the context of a claim of deliberate indifference to medical needs, a convicted prisoner like William is not protected by the greater protection of the Due Process Clause but instead by the Eighth Amendment's Cruel and Unusual Punishments Clause.  That Gordon II and the district courts cited therein recognized a general right to direct-view safety checks under a lesser *objective* standard[4] does not absolve plaintiffs of

---

[4]   The Medina case quoted with approval in Gordon II, and quoted in plaintiffs' motion, "easily" found triable issues of fact with respect to the deliberate indifference claims against the individual defendants assigned to perform safety checks on the decedent pretrial detainee. Medina v. Cty. of Los Angeles, No. CV 19-3808-GW-EX, 2020 WL 3964793, at *16 (C.D. Cal. Mar. 9, 2020).  However, Medina was applying the post-Gordon I objective deliberate indifference standard applicable to pretrial detainees under the Due Process Clause; and in any event, its summary judgment ruling does not address the extent of the plaintiffs' allegations as to the monitoring officers' knowledge.

The other three district court decisions were cited for recognizing a right to direct-view safety checks in the context of deliberate indifference claims against the *county* overseeing the jail in question, not claims against the individual officers on duty.  See Frary v. Cty. of Marin, 81 F. Supp. 3d 811 (N.D. Cal. 2015); Wereb v. Maui County, 727 F. Supp. 2d 898 (D. Haw. 2010); Estate of Abdollahi v. County of Sacramento, 405 F. Supp. 2d 1194 (E.D. Cal. 2005).  This distinction is important because "[i]n the municipal context, deliberate indifference is an objective standard, not a subjective one." Wereb, 727 F. Supp. 2d at 921-22 (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989); Farmer, 511 U.S. at 840-41 (finding that Canton's objective deliberate indifference test applies to municipal, but not individual, defendants)).

At other points in each of these three decisions, despite addressing claims of pretrial detainees, the district courts applied a subjective standard equivalent to that of the Eighth Amendment when analyzing the claims against the individual defendants because those cases were decided before Kingsley and Gordon I established an objective standard for pretrial detainees. However, the portions of Frary, Wereb, and Abdollahi that the Ninth Circuit cited with approval in Gordon II came from the parts of the district court decisions addressing deliberate indifference claims against the county defendants, not the individual officers on duty. Compare Frary, 81 F. Supp. at 825-30 (addressing § 1983 claims against individual officers), with id. at 834-42 (addressing § 1983 claims against Marin County); and Wereb, 727 F. Supp. 2d at 913-18 (addressing § 1983 claims against individual defendants), with id. at 920-24 (addressing § 1983 claims against Maui County); and Abdollahi, 405 F. Supp. 2d at 1204-09 (addressing § 1983 claims against Sacramento County), with id. at 1214-16 (addressing § 1983 claims against individual monitoring officer); see Gordon II, 4 F.4th at 972 (quoting Wereb, 727 F. Supp. 2d at 923, and citing Abdollahi, 405 F. Supp. 2d at 1206-07); see id. at 972 n.6 (citing Frary, 81 F. Supp. 3d at 837).

The undersigned already discussed in the August 3rd findings and recommendations how Frary's analysis of the *individual* § 1983 claims bolstered the conclusion that plaintiffs needed to allege Asman and Bradley's subjective awareness of William's medical need or substantial risk of serious harm. (ECF No. 156 at 18-19.)

As the undersigned also already noted, the district court in Wereb, when addressing the *individual* claims, emphasized the importance of demonstrating each individual defendant's subjective awareness. See 727 F. Supp. 2d at 913-14. There, the district court held that the individual defendants' "subjective knowledge that Wereb could have been monitored more closely or more thoroughly is not commensurate with subjective knowledge that Wereb faced a substantial risk due to a lack of close or thorough monitoring." Id. at 913. The court only denied summary judgment for those who interacted with or monitored Wereb and "*observed specific indications* that Wereb faced a substantial risk of serious harm." Id. at 914 (emphasis added). Plaintiffs' passing argument that the Ninth Circuit had a "more favorable" interpretation of Wereb (ECF No. 169 at 5 n.4) is not persuasive because the Ninth Circuit focused on an entirely different portion of the decision not applicable to the sufficiency of deliberate indifference claims against individual officers.

The same is true for Abdollahi, which the Ninth Circuit parenthetically cited as an example of a court denying summary judgment because a jury could find "the jail's failure to conduct regular safety checks . . . posed a substantial risk to inmates." See Gordon II, 6 F.4th at 972 (citing Abdollahi, 405 F. Supp. 2d at 1206-07). The district court in Abdollahi denied summary judgment for the county based on *the county's* "policy of understaffing" and the jail leadership's knowledge of the risk that policy posed to those in custody. 405 F. Supp. 2d at 1206-07. However, for the claims against the individual floor officers in charge of monitoring the decedents at their respective time of death (and the claims against the county premised on the floor officers' knowledge), the district court conducted a detailed inquiry into each officer's actual knowledge of the decedent's level of risk to himself. See id. at 1208 (finding that floor officer's failure to actually perform cell checks "without more, does not amount to deliberate indifference to [the detainee's] safety" because there was no "evidence that [the officer] knew that [the detainee] was suicidal") and at 1215 (denying summary judgment for floor officer based

9

the need to plead facts suggesting that Officers Asman and Bradley had subjective knowledge of William's risk, in order to make out their Eighth Amendment claim.

For all of these reasons, the constitutional claims against Asman and Bradley should remain dismissed with prejudice. As previously approved on stipulation, plaintiffs' 4AC remains due on or before December 14, 2021. Even if the District Judge has not ruled on the instant findings and recommendations by that date, plaintiffs shall proceed to file their 4AC by that deadline—unless the parties again stipulate to further extend the due date. In the event the District Judge does not adopt the undersigned's recommendation to deny reconsideration, and instead grants plaintiffs leave to reassert the constitutional claims at issue, plaintiffs will be permitted to further amend the complaint.

## **RECOMMENDATIONS**

For the reasons discussed above, IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' motion for relief from the court's prior order denying leave to reassert their § 1983 claims against defendants Asman and Bradley (ECF No. 165) should be DENIED; and

2. Following the District Judge's ruling on these findings and recommendations, the case should be referred again to the undersigned for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

---

on evidence that the officer had been "informed . . . that Abdollahi was suicidal and had been seen by [Jail Psychiatric Services]" and observed Abdollahi with a torn sheet around his neck before his death).

Despite three opportunities to allege facts plausibly suggesting that defendants Asman and Bradley knew that William faced a substantial risk of harm, plaintiffs failed to do so. Neither Gordon II nor the district court cases generally recognizing a right to safety checks should give them a fourth opportunity, when this court has already dismissed with prejudice the constitutional claims.

10

shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: November 19, 2021

*/s/ Carolyn K. Delaney*
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

19.schm.0195