1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Estate of WILLIAM SCHMITZ,                No.  2:20-cv-00195-DJC-CKD-PS
     deceased, by and through THOMAS
12   J. SCHMITZ and DIANE MALLIA, as
     Successors in Interest; THOMAS
13   SCHMITZ, individually; and DIANNE         ORDER DENYING MOTION FOR
     MALLIA, individually,                     RECONSIDERATION OF ECF NO. 287
14

15                     Plaintiffs,

16        v.

17   A. ASMAN, et al.,

18                     Defendants.

19

20

21        Thomas J. Schmitz and Diane Mallia are the parents of William Schmitz

22   ("Decedent"), a young man who sadly died while in a California state prison.  The

23   parents as Successors in Interest of the Estate of William Schmitz (together, "Plaintiffs")

24   seek reconsideration of an order that dismissed with prejudice two claims against,

25   amongst others, Defendant Adam Asman.  However, even with this new evidence

26   Plaintiffs have failed to plead enough facts to show that Asman disregarded a

27   substantial risk of harm to William Schmitz when Asman saw water flooding from

28   William Schmitz's cell in the last known verbal interaction with William Schmitz before

                                          1

1   his death.  For the reasons set forth below, the Court DENIES Plaintiffs' Motion for

2   Reconsideration from the Order (ECF No. 287).

3   **BACKGROUND**

4         Plaintiffs have, on three separate occasions, sought reconsideration of the

5   Court's order adopting the assigned Magistrate Judge's Findings and

6   Recommendations and dismissing with prejudice certain claims against, relevant here,

7   Defendant Adam Asman.  (*See* ECF No. 44 (providing the Second Amended

8   Complaint); ECF No. 85 at 46 (providing the Magistrate Judge's recommendation to

9   dismiss Plaintiff's Eighth Amendment deliberate-indifference and Fourteenth

10  Amendment deprivation of familial relations claims against certain Defendants,

11  including Asman); ECF No. 124 (providing the Court's order adopting in full the

12  Magistrate Judge's findings and recommendations).)

13        The Magistrate Judge recommended dismissing with prejudice Plaintiffs'

14  Eighth Amendment and Fourteenth Amendment claims against several Defendants,

15  including Adam Asman, because Plaintiffs failed to plead sufficient facts

16  demonstrating deliberate indifference.  (*See* ECF No. 85 at 8–9 (quoting *Farmer v.*

17  *Brennan*, 511 U.S. 825, 837 (1994)).)  The only relevant allegations by Plaintiffs

18  contained within the Second Amended Complaint were that William Schmitz "had an

19  unspecified 'interaction' with Officer Asman, who saw water flowing out of Decedent's

20  cell but did not inspect the cell[,]" and that "Asman had an obligation to 'investigate

21  and report on cell flooding' under section 91090.6 of the [California Department of

22  Corrections and Rehabilitation ('CDCR')] Department Operations Manual ('DOM')."

23  (*Id.* at 9 (quoting ECF No. 44 at 44–45).)  The Magistrate Judge found that "[t]hese

24  facts do not add up to Asman's deliberate indifference to Decedent's serious medical

25  need."  (*Id.* at 9.)  As a result, because Plaintiffs failed to plead deliberate indifference,

26  Plaintiffs also failed to plead facts for their Fourteenth Amendment claim showing that

27  Asman's actions "shocked the conscience."  (*See id.* at 15.)

28  ////

Plaintiffs filed their Third Amended Complaint, which some Defendants sought to dismiss, prompting Plaintiffs to seek leave to amend. (*See* ECF No. 130 (providing the Third Amended Complaint); ECF No. 145 (motion to amend).) While seeking leave to amend, Plaintiffs also sought reconsideration of the Court's decision. (*See* ECF No. 145.)

Plaintiffs first Motion for Reconsideration was based on new evidence from OIG reports that did not portray the events that led up to William Schmitz's death in a positive fashion. (*See* ECF No. 145 (providing Plaintiffs' motion to amend the Third Amended Complaint and to seek relief from the Court's Order (ECF No. 124)); ECF No. 156 at 13 ("The report paints the [California Department of Corrections and rehabilitation's ('CDCR')] handling of William's death in a very poor light indeed.").) The Magistrate Judge found that most of this evidence was not "new" and still did not show that Asman knew that William Schmitz was suicidal or at risk of harming himself, such as by including allegations that Asman "knew William was currently assigned to the Correctional Clinical Case Management System ('CCCMS') or had previously been part of the Enhanced Outpatient Program ('EOP')." (ECF No. 156 at 16.) Moreover, "[a] careful reading of the complaint reveal[ed] no indication that at the time of his death William was assigned to a floor designated only, or even primarily, for CCCMS inmates. Without such allegations, there is little reason to infer that two correctional officers–with no stated prior connection to William or his medical care–would know that failing to affirmatively confirm his well-being throughout their shift would expose him to substantial risk of serious harm." (*Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).) As a result, Plaintiffs continued to fail to plead deliberate indifference. (*See* ECF No. 161 (adopting the Magistrate Judge's findings and recommendations).)

Following denial of the first Motion for Reconsideration, Plaintiffs filed another motion for relief from the Court's orders dismissing the claims against Asman, this time based on new law. (*See* ECF No. 165 at 2.) Specifically, Plaintiffs cited to *Gordon v. County of Orange*, 6 F.4th 961 (9th Cir. 2018) ("*Gordon II*"), where the Ninth Circuit

1    held "that pre-trial detainees do have a right to direct-view safety checks sufficient to

2    determine whether their presentation indicates the need for medical treatment."

3    *Gordon II*, 6 F.4th at 973 (citing *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062,

4    1075–77 (9th Cir. 2013)).  Here, the thrust of Plaintiffs' argument was that "[j]ust as

5    pretrial detainees have a constitutional right to adequate safety checks, prison inmates

6    have a constitutional right to adequate informal counts."  (ECF No. 165 at 9.)  As for

7    factual allegations, Plaintiffs alleged that Asman knew that William Schmitz "was

8    classified as 'Medium A Custody[ ] Per 15 CCR § 3377.1 supervision of a medium A

9    custody inmate 'shall be frequent and direct[ ]'" and that Asman had access to this

10   information through a central file.  (*Id.* at 12–13.)

11        However, the Magistrate Judge found that *Gordon II*'s "recognition of a

12   Fourteenth Amendment due process right to direct-view safety checks for all pretrial

13   detainees in the qualified immunity context does not abrogate the fundamental

14   pleading requirements for stating a claim for deliberate indifference under the Eight

15   Amendment." (ECF No. 171 at 6.)  As the Magistrate Judge explained: "That *Gordon II*

16   and the district courts cited therein recognized a general right to direct-view safety

17   checks under a lesser *objective* standard does not absolve [P]laintiffs of the need to

18   plead facts suggesting that Officers Asman and Bradley had subjective knowledge of

19   William's risk, in order to make out their Eighth Amendment claim." (*Id.* at 8–10.)

20   Because Plaintiffs continued to fail to plead such facts, Plaintiffs could not prevail. (*See*

21   ECF No. 172 (adopting the Magistrate Judge's findings and recommendations).)

22        Plaintiffs now seek reconsideration based once again on new evidence. (*See*

23   ECF No. 287 at 2.)  Specifically, Plaintiffs point to a response from Asman to one of

24   Plaintiffs' Requests to Admission where "Defendant Asman admits to knowledge of

25   William Schmitz as a mentally ill inmate, the very reason the court dismissed the

26   previous claims . . . ." (*Id.*)  Plaintiffs received Asman's Response to their Requests to

27   Admission on July 19, 2023, where Asman stated: "Admit that defendant was not privy

28   to William Schmitz private and confidential medical information.  *Defendant was only*

4

*aware that William Schmitz was in with CCCMS classification*.  Defendant does not recall being informed by William Schmitz about his mental health diagnosis." (*Id.* at 5 (quoting ECF No. 287 at 10–11 (providing a copy of Asman's Response)).)  Plaintiffs claim that this admission satisfies the "subject requirement to the level sought [ ] by this court." (*Id.*)

## DISCUSSION

Plaintiffs seek leave to amend to allege an Eighth Amendment claim against Asman that Asman was deliberately indifferent to William Schmitz's medical need, and a related Fourteenth Amendment deprivation of familial relations claim.  The Ninth Circuit uses a two-part test for evaluating a claim for deliberate indifference to a serious medical need.  *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

Plaintiffs must first establish "a 'serious medical need' by demonstrating that [the] 'failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."'"  *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).  No one doubts that William Schmitz suffered from a serious medical need at the time of his death, and it is irrelevant here whether William Schmitz died from a suicide, a drug overdose, or a drug withdrawal, as all have been recognized as "serious medical needs" in the prison context.  *See, e.g.*, *Conn v. City of Reno*, 591 F.3d 1091, 1095 (9th Cir. 2010) ("A heightened suicide risk or an attempted suicide is a serious medical need."  (citing *Doty v. Cnty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994))), *vacated, City of Reno, Nev.  v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part, Conn v. City of Reno*, 658 F.3d 897 (9th Cir. 2011); *Pajas v. Cnty. of Monterey*, No. 16-CV-00945-LHK, 2016 WL 3648686, at *10 (N.D. Cal. July 8, 2016) (collecting federal cases where an opiate withdrawal and a heroin withdrawal constituted a serious medical need); *Doty*, 37 F.3d at 546 (*citing Torraco v. Maloney*, 923 F.2d 231, 235 and n.4 (1st Cir. 1991)) (recognizing drug overdoses as a serious medical need).

1    Second, Plaintiffs "must show [that Asman's] response to the need was

2 deliberately indifferent." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060).

3 The second part "is satisfied by showing (a) a purposeful act or failure to respond to a

4 prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*.

5 The second part requires that the defendant "know[ ] that an inmate face[s] a

6 substantial risk of serious harm and disregard[ ] that risk by failing to take reasonable

7 measures to abate it." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir.

8 2013) (quoting *Farmer*, 511 U.S. at 837).  Plaintiffs fail here because, although Plaintiffs

9 have evidence showing that Asman knew that William Schmitz was classified under

10 CCCMS, Plaintiffs have failed to demonstrate how mere knowledge of that

11 classification, plus flooding, constitutes knowledge of a substantial risk of serious harm

12 to William Schmitz on the morning of his death, or more simply, notice of a need "to

13 respond to [William Schmitz's] pain or possible medical need." *Jett*, 439 F.3d at 1091

14 (quoting *McGuckin*, 974 F.2d at 1060).

15    Plaintiffs' argument boils down to Asman having notice from the CCCMS

16 classification, Asman being put on alert by the flooding, and Asman failing to act in

17 accordance with CDCR DOM 91090.6 which requires clinical and custody staff to

18 "observe inmates and to note, document, and promptly report to their superiors,

19 behavior that could be classified as gravely disabled" or "as a danger to self[,]" which

20 apparently includes "flooding of the cell[.]"  (ECF No. 173 at 91–92 (providing the

21 Fourth Amended Complaint with the relevant allegations against Asman).)  But, as

22 stated before, the mere violation of a state's policy cannot create a constitutional right.

23 (*See* ECF No. 85 at 9 (citing *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009)).)

24    Moreover, the Court is not aware of any case in which the mere fact that

25 flooding occurred – without more – constituted sufficient notice to put an officer on

26 alert to a suicide or other serious medical need.[1]  As one district court in the Eleventh

27
28 _____

[1] *Contrast with, e.g., Hardin v. Hayes*, 957 F.2d 845, 848, 851 and n.9 (11th Cir. 1992) (reversing the district court's denial of summary judgment for one defendant, Chief Raley, in a deliberate indifference claim brought against him in his individual capacity where the prison official saw the decedent bang her

1    Circuit noted in another prisoner suicide case where a deliberate indifference claim

2    was denied despite the presence of flooding before the suicide: "The deliberate

3    indifference standard 'requires a *strong likelihood* rather than a mere possibility that

4    the self-infliction of harm will occur." *Hastings v. Advanced Corr. Healthcare, Inc.*, No.

5    2:20-cv-00002-JE, 2020 WL 3037065, at *6 (N.D. Ala. June 5, 2020) (quoting *Popham*

6    *v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990) (citing *State Bank of St.*

7    *Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983))), *judgment entered,* No. 2:20-

8    CV-00002-JHE, 2020 WL 4583653 (N.D. Ala. Aug. 10, 2020), and *aff'd sub nom.*

9    *Gunter v. Advanced Corr. Healthcare, Inc.*, 844 F. App'x 189 (11th Cir. 2021). *Cf. Vun*

10   *Cannon v. Breed*, 391 F. Supp. 1371, 1374–75 (N.D. Cal. 1975) ("Certainly a guard

11   does not have to believe to a moral certainty that one inmate intends to attack another

12   at a given place at a time certain before that officer is obligated to take steps to

13   prevent such an assault.  But, on the other hand, he must have more than a mere

14   suspicion that an attack will occur.").

15        Granted, the Complaints indicate that William Schmitz's behavior was "out of

16   character[ ] for William."  (ECF No. 173 at 606 (providing the Fourth Amended

17   Complaint); *see* ECF 295-1 at 497 (providing a copy of the Coroner's Autopsy Report,

18   stating that "Sergeant Brunkhorst indicated that Officer Asman questioned the

19   decedent what he was doing as that was out of character for the decedent[ ]").)

20   However, the Complaints also indicate that Asman engaged in some investigation into

21   _____

22   head against the bars of her jail cell and stab someone with a pen and later saw him flood her cell
     where excrement lay, finding that Chief Raley did not "witness or hear [ ] behavior which clearly
23   indicated the Decedent was in severe need of psychological help."); *Dimitris v. Lancaster Cnty. Prison*
     *Bd.*, No. CIV.A. 00-3739, 2002 WL 32348283, at *5 (E.D. Pa. June 7, 2002) (finding at summary
24   judgment that a jury could hold that prison officials were deliberately indifferent to a substantial risk of
     suicide where the decedent "was known to have intentionally run head-first into a wall and attempted
25   flooding his cell, among other behaviors, and had scars suggesting attempted self-harm on his arms.");
     *Case v. Anderson*, No. 16 CIV. 983 (NSR), 2017 WL 3701863, at *13 (S.D.N.Y. Aug. 25, 2017) (finding
26   that the "Plaintiff has plausibly alleged that the Sheriff and the Deputies were deliberately indifferent to"
     the decedent's suicide where the decedent tried on several occasions to flee from the hospital treating
27   him in the prison and the prison officials knew that the decedent had prior mental health issues, the
     prison officials saw this "strange behavior," and were aware of "his statement that he had 'escaped' from
28   a hospital").

1   William Schmitz's conduct at that time, where William Schmitz responded that he was

2   taking a "bird bath." (*See* ECF No. 173 at 91; ECF No. 291-5 at 497.) That William

3   Schmitz provided a coherent enough response, even if a lie (*see* ECF No. 173 at 91

4   ("Defendant ASMAN knew that William had access to regularly shower and had no

5   reason to take a bird bath.")), entails that Asman was not deliberately indifferent to

6   William Schmitz at that moment. As a result, despite the new evidence Plaintiffs have

7   failed to demonstrate how mere knowledge of CCCMS classification, plus flooding,

8   constitutes knowledge of a substantial risk of serious harm to William Schmitz on the

9   morning of his death, or more simply, notice of a need "to respond to [William

10   Schmitz's] pain or possible medical need." *Jett*, 439 F.3d at 1096 (citation omitted).

11         Because Plaintiffs' still fail to plead facts showing that Asman was deliberately

12   indifferent, Plaintiffs also continue to fail to plead facts showing that Asman's conduct

13   "shocked the conscience." (*See* ECF No. 85 at 15.) The Ninth Circuit has recognized

14   that "[p]arents and children may assert Fourteenth Amendment substantive due

15   process claims if they are deprived of their child or parent through official conduct."

16   *Lemire*, 726 F.3d at 1075 (citing *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)

17   (citing *Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th

18   Cir. 1991)). But "only official conduct that 'shocks the conscience' is cognizable as a

19   due process violation." *Id.* (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir.

20   2008) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998))) (alteration

21   omitted). Nevertheless, the Ninth Circuit has held that deliberate indifference of

22   prison officials to the medical needs of prisoners "may also 'rise to the conscience-

23   shocking level' required for a substantive due process violation." *Id.* (quoting *Lewis*,

24   523 U.S. at 849–50). Here, as explained above, without more allegations suggesting

25   that Asman ignored a *substantial risk* or *strong likelihood* of suicide or self-harm to

26   William Schmitz, Plaintiffs cannot establish that Asman was deliberately indifferent

27   and, therefore, cannot establish that Asman's conduct "shocked the conscience[.]"

28   *Lemire*, 726 F.3d at 1075 (citations omitted).

1

**CONCLUSION**

2      For the reasons set forth above, the Court DENIES Plaintiffs' Motion for

3 Reconsideration (ECF No. 287).

4

5

6      IT IS SO ORDERED.

7 Dated:    **October 25, 2023**

Hon. Daniel J. Calabretta
8                                                         UNITED STATES DISTRICT JUDGE

9

10

11

12

13 DJC3 – Schmitz.20cv195.MFR

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28