UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS SCHMITZ, et al., | No. 2:20-cv-00195-DJC-CKD (PS) |
| Plaintiffs, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| ADAM ASMAN, et al., | |
| Defendants. | |

Plaintiffs Dianne Mallia and Thomas Schmitz, individually and as successors of interest, proceed without counsel under 42 U.S.C. § 1983. In the operative fourth amended complaint ("4AC"), plaintiffs allege that constitutionally inadequate mental health care and treatment and/or negligence by various defendants caused their son, William, to suffer injuries and also caused his death. This matter is before the undersigned pursuant to Local Rule 302(c)(21). See 28 U.S.C. § 636(b)(1).

A motion for partial summary judgment filed by defendant, Stephen DeNigris, M.D., Ph.D., is before the court. (ECF No. 291.) The parties appeared via videoconference for a hearing on November 1, 2023. Attorneys Tiffany Sala and Bruce Salenko appeared on behalf of the defendant, Dr. DeNigris, and plaintiffs Dianne Mallia and Thomas Schmitz appeared pro se. For the reasons set forth below, the motion should be granted.

////

1

## BACKGROUND

Plaintiffs filed the operative 4AC on February 23, 2022. (ECF No. 173.) The 4AC asserts six causes of action against the moving defendant, Dr. DeNigris (hereinafter "defendant") as follows: Deliberate Indifference to Serious Medical Needs, Health, and Safety (First Cause of Action); Substantive Due Process, Loss of Parent/Child Relationship (Fourth Cause of Action); Negligence (Seventh Cause of Action); Interference with Constitutional Rights by Coercion (Eighth Cause of Action); Medical Battery (Ninth Cause of Action); Assault (Tenth Cause of Action). (Id.) Relevant to this motion, the 4AC alleges, generally, that defendant knowingly performed an unnecessary endoscopy (also referred to herein as EGD) which caused William pain and worsened his mental state.

Defendant filed the motion for partial summary judgment on August 11, 2023, seeking summary adjudication on four of the remaining five causes of action alleged against him, and specifically, the First, Fourth, Eighth, and Ninth Causes of Action in the 4AC.[1] (ECF No. 291.) Defendant argues there are no triable issues of material fact on plaintiffs' claim that he acted with deliberate indifference. (See ECF No. 291-1.) Defendant argues the other claims fail because they are either derivative of deliberate indifference or that they require a more demanding standard of proof. (Id.)

In opposition to the motion, plaintiffs argue defendant committed perjury in his interrogatory responses or in his amended interrogatory responses regarding why he performed the endoscopy. (ECF No. 301 at 6-7, 9-10.) Plaintiffs argue defendant improperly failed to disclose in advance the use of Dr. Arenson's expert witness opinions. (Id. at 8.) Plaintiffs request an extension of time for "rebuttal expert disclosures." (Id. at 8.)

Plaintiffs argue there was no evidence William had End Stage Liver Disease ("ESLD"), but that co-defendant Rudas has claimed he ordered the endoscopy because William was on the ESLD registry. (ECF No. 301 at 9-10.) Plaintiffs argue there has been no explanation of who

---

[1] Defendant does not seek summary judgment on plaintiffs' negligence claim (seventh cause of action in the 4AC). Plaintiffs' assault claim against defendant was already dismissed with prejudice. (See ECF No. 201 at 3.)

2

placed William on the ESLD registry. (Id. at 9.) Plaintiffs argue there was a record "printed a few days prior" to the appointment with defendant which "contain[ed] the info about William undergoing evaluation for hepatitis treatment, absence of ESLD diagnosis, labs that indicate no cirrhosis, imaging that indicates no cirrhosis, and liver ultrasound that indicates no cirrhosis." (Id. at 11.) Thus, plaintiffs argue, defendant knew there was no indication to perform the endoscopy. (Id. at 10-11.)

In addition, plaintiffs argue defendant is responsible for fraudulent billing codes entered for the procedure. (ECF No. 301 at 5-16.) Finally, plaintiffs argue there is evidence of William's worsening mental state based on a false belief that he had cirrhosis.[2] (Id. at 18.)

Defendant filed a reply brief. (ECF No. 304.) Defendant argues plaintiffs fail to rebut the opinions proffered by Dr. Arenson with admissible expert opinion. (ECF No. 304 at 8-9.) Defendant argues plaintiffs are not entitled to additional time to obtain more evidence to oppose the motion. (Id. at 7.) Defendant denies plaintiffs' allegations that he committed perjury and argues plaintiffs have misinterpreted and continue to misinterpret his interrogatory responses. (Id. at 9-10.) Defendant argues there is no evidence he submitted the billing codes claimed to be fraudulent. (Id. at 12-13)

## LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to obtain summary judgment, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory

---

[2] Defendant argues the court should reject plaintiffs' opposition as untimely filed and served four days late. (ECF No. 304 at 13.) The court will consider the opposition, and deems it timely filed and served in this instance.

3

answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to

assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

**UNDISPUTED FACTS**

On February 9, 2018, Robert Rudas., M.D., filled out a "Physician Request for Services" form, CDC 7243, for William to undergo an upper endoscopy. (See ECF No. 304-1, Reply to Response to Undisputed Facts, Undisputed Fact ("UF") 1.) The medical necessity cited by Dr. Rudas was "patient with cirrhosis/esld. Per registry protocol patient is due for esophageal varices follow-up/surveillance." (Id.) Dr. Rudas requested that an "on-site" contracting medical provider complete the procedure by May 9, 2018. (Id.) He left the "summary of preliminary or diagnostic work-up" section blank. (Id.)

Christopher Smith, M.D., the prison's Chief Medical Officer Executive, approved the procedure on February 12, 2018. (UF 2.)

On March 8, 2018, William saw his primary care physician, Marianna Ashe, M.D., in follow up for headaches and Hepatitis C. (UF 3.) Dr. Ashe believed William did not have cirrhosis but did not inform him of this opinion or cancel the pending EGD. (Id.)

On March 14, 2018, Rory Sanders, RN, a prison-affiliated health care provider, saw William for the purpose of educating him about his upcoming endoscopy. (UF 4.) Dr. Rudas had instructed for this purpose, "Explain to patient that an EGD has been scheduled for him. Records

show he has advanced liver disease/cirrhosis that puts him at risk for bleeding from the veins in his esophagus (esophageal varices). With an EGD the veins can be treated." (Id.)

On March 16, 2018, Dr. Smith approved the consultation request for a second time. (UF 5.)

An April 10, 2018, abdominal ultrasound indicated William had no apparent ultrasonographic evidence of liver disease. (UF 6.) The radiologist's impressions were: "Fatty liver. No hepatic mass is identified. If there is strong clinical concern for hepatocellular carcinoma, a triphasic CT scan of the liver would be recommended for further evaluation." (Id.)

On May 4, 2018, William underwent the scheduled endoscopy which was performed by the defendant. (UF 8, 11.) Prior to the endoscopy, defendant reviewed documents from William's medical records, including the Health Care Services Physician Request for Services and referral form. (UF 10.) Defendant's report states he explained the procedure, indications, and potential complications to William prior to the endoscopy. (UF 8.)

William signed a written authorization for the procedure in the form of a "SecureMD, LLC Informed Consent for Endoscopy" form. (UF 9; ECF No. 291-5 at 427.) William consented to the administration of anesthesia with Propofol, which was monitored by a dedicated certified nurse anesthetist. (UF 8, 11; ECF No. 291-5 at 428.)

The "Anesthesia Notes" for the procedure include the following: "Patient had some spontaneous ventilations and vital signs were stable throughout the procedure. Patient tolerated procedure well with no complications noted. Patient awake and breathing spontaneously." (ECF No. 291-5 at 431.) Defendant indicated the procedure was not difficult. (UF 12.) William was awake and breathing spontaneously upon completion of the procedure. (Id.)

After the procedure, defendant noted he found no endoscopic evidence of portal hypertension or esophago-gastric varices. (UF 13.) Defendant completed the "Physician Request for Services Form" by hand, writing there was "No endoscopic evidence of portal hypertension" and "No esophago-gastric varices" or other findings. (Id.)

No post-operative issues were documented in the records, and William was discharged in stable condition. (UF 14.) The plan documented in the records was for William to continue his

1  current medical regime and diet, follow up with his primary care physician, and follow up with
2  another EGD in three years. (Id.)

3        Pursuant to the contract between defendant and Secure Pros, Secure Pros "will bill, collect
4  and retain all revenues received from billing and collection functions related to Services provided
5  by Physician pursuant to this agreement." (ECF No. 291-5 at 433.) Defendant's billing records
6  reflect that he submitted Current Procedural Terminology (CPT) task code 43235 to Secure MD,
7  indicating he performed a diagnostic gastrointestinal endoscopy. (UF 16.)

8        On May 5, 2018, defendant submitted an invoice to Secure MD indicating that he
9  completed 11 cases (procedures) on May 4, 2018, at Mule Creek State Prison and requesting his
10  $3,250 per diem for that day, in addition to travel expenses. (UF 19.)

11        On December 21, 2018, Dr. Ashe ordered a fibroscan. (UF 20.) The ordered fibroscan was
12  not completed prior to William's death. (Id.)

13        William died on January 21, 2019, which was 262 days following his endoscopy. (UF 21.)
14  According to autopsy and prison records, William was found dead on his cell toilet with evidence
15  of anal trauma suggesting he had been attempting to retrieve something from his rectum prior to
16  his death. (UF 20.) Autopsy findings showed massive amounts of methamphetamine in his blood
17  (10 to 245 times above the toxic range) and 2 packs of methamphetamine in his stomach, one of
18  which had lost the rubber band that prevents leakage and was smaller than the other. (Id.) The
19  death certificate indicates William suffered from a "massive overdose of methamphetamine" after
20  a leakage or rupture of bindle(s) of methamphetamine.…" (Id.) The final autopsy report
21  concluded William's death was directly related to an accidental overdose of methamphetamine,
22  due to leakage or rupture of bindles of ingested methamphetamine. (Id.)

23        Board-certified Gastroenterologist David Arenson, M.D., evaluated the care and treatment
24  provided to William by defendant based on his review of William's medical records and the
25  plaintiffs' allegations. (UF 22.) Dr. Arenson opined that the medical care and treatment provided
26  to William by defendant at all times complied with the applicable standard of care. (Id.)

27        Dr. Arenson opined that defendant appropriately reviewed William's relevant medical
28  documents. (UF 23.) Dr. Arenson opined that, as a proceduralist, it was reasonable for defendant

to focus his review of William's medical chart on records that were directly relevant to the upcoming procedure and to act in accordance with the request, direction, and referral from Dr. Rudas and the prison medical staff. (UF 24.) Dr. Arenson opined that the standard of care does not require a proceduralist to engage in a thorough review of a patient's entire medical chart to independently confirm the veracity of the referral information prior to performing an endoscopy. (Id.)

Dr. Arenson opined that, as proceduralist contracted to perform endoscopic procedures at Mule Creek State Prison upon request by the prison medical personnel, defendant appropriately and competently performed William's endoscopy at the request of and upon referral from Dr. Rudas, through the "Physician Request for Services" form completed by Dr. Rudas, with the medical necessity cited by Dr. Rudas being "patient with cirrhosis/esld. Per registry protocol patient is due for esophageal varices follow up/surveillance." (UF 22.)

Performance of a diagnostic endoscopy carries a risk of complications which is substantially reduced in the presence of a dedicated anesthetist. (UF 28.) According to a Mayo Clinic Report in 2004, the estimated complication rate for a diagnostic endoscopy is less than 0.0002% (less than 2 out of 10,000 cases). (Id.)

## DISCUSSION

### I.   Evidentiary Objections

#### A.   Plaintiffs' Objections

##### 1.   Perjury Allegations

Plaintiffs argue defendant committed perjury in his interrogatory responses or amended interrogatory responses, which constitutes evidence of his deliberate indifference, and for which they request appropriate sanctions. (ECF No. 301 at 2, 12-13.) Plaintiffs argue defendant "swore under oath in the original interrogatory responses to performing the endoscopy because William was starting treatment for hepatitis and that William did not have cirrhosis." (ECF No. 301 at 12.) Plaintiffs argue they subsequently filed the 4AC containing easily verifiable allegations that "[p]erforming an endoscopy because someone is starting hepatitis treatment is not a valid medical reason." (Id.) After that, defendant amended his interrogatory responses. (Id.)

8

Defendant argues plaintiffs misinterpret the original and amended responses. (ECF No. 304 at 9-10.) Defendant argues the amended responses do not contradict the original responses, but instead were amended to add greater clarity and specify what defendant "knew at the time of care vs. hindsight in present day." (Id. at 10.)

Plaintiffs fail to demonstrate perjury. "The factual predicates of perjury are: (1) that the defendant gave false testimony under oath (2) concerning a material matter (3) with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Jimenez, 300 F.3d 1166, 1170 (9th Cir. 2002) (citing United States v. Dunnigan, 507 U.S. 87, 94 (1993)). "[I]nconsistencies in a party's [testimony]… may 'provide fertile ground for vigorous impeachment but do not support perjury findings[.]'" Arnold v. County of El Dorado, No. 2:10-CV-3119 KJM-GGH, 2012 WL 3276979, at *4 (quoting Montano v. City of Chicago, 535 F.3d 558, 564 (7th Cir. 2008)). Here, there is no indication of a willful intent to provide false testimony in defendant's response or amended response to Interrogatory No. 4. (See ECF No. 291-5 at 449-51.) The court therefore rejects plaintiffs' request for sanctions and argument that defendant committed perjury as evidence of his deliberate indifference.

### 2. Dr. Arenson's Expert Opinions

Plaintiffs argue defendant failed to give advance notice of the use of Dr. Arenson's expert witness opinions. (ECF No. 301 at 8.) Unless the court orders otherwise, disclosures of expert testimony must be made 90 days before the date set for trial. Fed. R. Civ. P. 26(a)(2)(D)(i). Here, the parties were ordered to disclose any expert witnesses in accordance with the specifications of Federal Rule of Civil Procedure 26(a)(2) no later than September 30, 2024, with rebuttal expert disclosures no later than October 30, 2024. (ECF No. 286 at 4.) Defendant was not required to disclose Dr. Arenson's expert report in advance of the motion for summary judgment. See generally, e.g., PacifiCorp v. Nw. Pipeline GP, No. 3:10-CV-00099-PK, 2013 WL 12433263, at *5 (D. Or. Feb. 8, 2013) (denying motion to compel premature production of expert reports).

To the extent the court could construe plaintiffs' request for an extension of time for "rebuttal expert disclosures" as a request for an extension of time to obtain further evidence to oppose the motion for summary judgment, Federal Rule of Civil Procedure 56(d) would govern

that request. Rule 56(d) requires an "affidavit or declaration that, for specified reasons, [the non-moving party] cannot present facts essential to justify its opposition," after which the court may: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). So construed, plaintiffs' request for an extension of time is addressed below.

Plaintiffs also object to Dr. Arenson's offered opinions that are legal conclusions. "An opinion is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). "That said, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004) (internal citations omitted). This objection is sustained, in part, and the court does not rely on any opinion by Dr. Arenson that is a legal conclusion.

### B. Defendant's Objections

Defendant objects to plaintiffs' use of evidence apparently obtained from the internet. (ECF No. 304-2.) "[I]t is well established that medical textbooks, treatises and professional articles are not freely admissible in evidence to prove the substantive or testimonial facts stated therein, since they are subject to the hearsay rule." Hickock v. G.D. Searle & Co., 496 F.2d 444, 446 (10th Cir. 1974). A statement from a medical textbook, treatise or professional article may be admissible if the statement is established to be from a reliable medical authority and is relied upon by an expert witness. See Fed. R. Evid. 803(18); Tart v. McGann, 697 F.2d 75, 78 (2nd Cir. 1982).

Even if one or more of the internet articles submitted by plaintiffs could be shown to be a reliable medical authority, plaintiffs have not presented any expert witness who relied upon any of the articles. Thus, in evaluating the motion for summary judgment, the court will not consider statements from articles found on internet sites. See generally Combs v. Washington, 660 Fed. Appx. 515, 518 (9th Cir. 2016) ("district court did not abuse its discretion when it excluded as hearsay several Internet articles about [plaintiff's] medical conditions"); Taylor v. Patel, No. 1:14-cv-01754-DAD-MJS (PC), 2017 WL 3315319, *2 (E.D. Cal. 2017) (sustaining objection to

pro se plaintiff's printout from internet site discussing the "purposes and functions of an X-ray and an MRI"); Nguyen v. Biter, No. No. 1:11-cv-00809-AWI-SKO (PC), 2015 WL 5232163, at *9 (E.D. Cal. 2015) (excluding, on hearsay grounds, "written information on arsenic, apparently obtained from the internet and perhaps a book").

Defendant also objects to plaintiffs' use of discovery responses by co-defendant Rudas and their inclusion of affidavits not cited or referenced in the opposition. (ECF No. 304-2 at 4, 12-15.) Defendant argues co-defendant Rudas' responses cannot be imputed as party statements against defendant and that they are irrelevant to the instant motion because they have no bearing on defendant's liability. (ECF No. 304-2 at 4, 15.) The court has not materially relied on this challenged evidence and finds it unnecessary to resolve defendant's further objections.

## II. Eighth Amendment Deliberate Indifference (First Cause of Action)

The Eighth Amendment prohibits prison officials from "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To prove that the defendant violated the decedent's Eighth Amendment rights, plaintiffs must show the following: (1) an objectively serious medical need, (2) defendant was deliberately indifferent to that need, and (3) defendant's purposeful act (or failure to act) was the actual and proximate cause of the claimed injuries. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1074 & 1081 (9th Cir. 2013); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Plaintiffs' opposition to the motion attempts to rely on various allegations in the 4AC and the court's acceptance of those allegations to find that plaintiffs had stated cognizable claims. However, a party opposing a motion for summary judgment cannot rest on facts alleged in pleadings. See Coverdell v. Dep't of Soc. & Health Servs., 834 F.2d 758, 769 (9th Cir. 1987) (recitations of unsupported or conclusory factual allegations from pleadings do not adequately oppose a motion for summary judgment). At this stage, it is necessary to come forward with competent evidence that affirmatively shows a genuine dispute as to a material fact. Fed. R. Civ. P. 56(c).

////

Plaintiffs argue that while Dr. Arenson opines that defendant appropriately reviewed William's relevant medical documents, the referral form is the only relevant medical document identified. (ECF No. 301 at 10-11.) However, to the extent plaintiffs attempt to dispute Dr. Arenson's opinion that defendant appropriately reviewed relevant medical documents based on a review which included the referral form, they have not come forward with competent disputing evidence.

Dr. Arenson opined that, as a proceduralist, it was reasonable for defendant to focus his review of William's medical chart on the referral from Dr. Rudas with the medical necessity stated by Dr. Rudas. (UF 22-24.) Dr. Arenson opined that the standard of care does not require a proceduralist to engage in a thorough review of a patient's entire medical chart to independently confirm the veracity of the referral information prior to performing an endoscopy. (ECF No. 22.)

Except under limited circumstances where the type of conduct required is within the common knowledge of laymen, the standard of care can only be proven by expert testimony. See Hutchinson v. U.S., 838 F.2d 390, 392 (9th Cir. 1988). Thus, "[w]hen a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." Id. Here, the matter argued by plaintiffs is not within the common knowledge of laymen. Thus, expert testimony is required to dispute Dr. Arenson's opinion as to the standard of care.

But even if plaintiffs came forward with competent evidence disputing Dr. Arenson's opinion that defendant appropriately reviewed relevant medical documents based on a review that included only the referral form, that would not create a triable issue of fact for deliberate indifference. Similarly, even if plaintiffs came forward with expert opinion that defendant failed to obtain William's informed consent, that would not create a triable issue of fact for deliberate indifference. A claim that one has been operated on without having first given informed consent is treated as a negligence claim. See DeMonte v. Griffith, No. 1:16-CV-00116-LJO-SKO-PC, 2017 WL 3720048, at *3 (E.D. Cal. Aug. 29, 2017) ("failure of informed consent… at most equates to negligence and is not actionable under the Eighth Amendment"); Cardona v. Syverson,

No. 2:11-CV-1680 TLN KJN, 2013 WL 3941019, at *11 (E.D. Cal. July 30, 2013) (courts apply a negligence theory in cases where the defendant has performed the identical operation to which the plaintiff had consented but allegedly failed to inform plaintiff of all the inherent risks of the procedure).[3]

Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. Deliberate indifference is a high legal standard under which "the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person "must also draw the inference." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Toguchi, 391 F.3d at 1057 (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiffs have not raised a triable issue of fact that defendant knew performing the endoscopy at issue posed a substantial risk of serious harm to plaintiff. Plaintiffs also have not raised a triable issue of fact regarding the obviousness of any of risks that defendant allegedly ignored. See Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003); Gibson, 290 F.3d at 1197 (acknowledging that a plaintiff may demonstrate that officers "must have known" of a risk of harm by showing the obvious and extreme nature of a detainee's abnormal behavior).

Even if plaintiffs obtained and presented rebuttal expert testimony to create a triable dispute whether defendant violated the standard of care, that would not assist them to show that

---

[3] The court recognizes plaintiffs allege conduct more blameworthy than a failure to inform William of risks. As set forth, though, in order to create a triable issue of fact on deliberate indifference, plaintiffs would need, at a minimum, competent evidence from which a fact-finder could infer that defendant knew performing the endoscopy posed a substantial risk of serious harm to plaintiff, or that the risks were so obvious that he must have known.

defendant knew about a substantial risk of serious harm to plaintiff which he consciously disregarded, or that he must have known about such a risk which he consciously disregarded. Therefore, although plaintiffs request an extension of time for "rebuttal expert disclosures" (ECF No. 301 at 8), extending time for plaintiffs to obtain further evidence to attempt to dispute the opinions of Dr. Arenson relied upon for purposes of this motion would be futile.

Finally, as set forth above, plaintiffs argue defendant committed medical billing fraud known as upcoding. (ECF No. 301 at 15-16.) Plaintiffs argue Dr. Arenson opined that defendant did not complete a "Comprehensive History & Physical," but that defendant, in contrast, "has sworn that the CPT codes 43235 and 99204 with modifier 25 that were submitted for his services performed for William Schmitz were an accurate representation of the services he provided to William Schmitz on 5/4/2018." (Id.)

First, plaintiffs omit from the referenced interrogatory response that defendant provided the response without waiving the objection that "Defendant lacks personal knowledge as he did not do the coding." (ECF No. 301 at 55.) Second, defendant argues plaintiffs misinterpret his interrogatory response regarding CPT codes. (ECF No. 304 at 10.) But even construing the portion of the response in the manner plaintiffs argue, that does not raise a triable issue of fact on deliberate indifference, particularly in the absence of any evidence that defendant submitted the billing codes.

Plaintiffs argue defendant "was responsible for the billing codes submitted" and cannot avoid legal responsibility by "claiming someone else submitted the codes." (ECF No. 301 at 17, 68.) For evidence, plaintiffs cite what appears to be a booklet titled Avoiding Medicare and Medicaid Fraud and Abuse. (See ECF No. 301 at 69.) Construing the booklet as material obtained from the internet, defendant objects to the evidence. (ECF No. 304-2 at 7.) Whether the booklet was obtained from the internet or another source, defendant's objection is sustained, and the court will not consider the hearsay statements in the booklet.[4]

////

---

[4] Even if the court were to consider the statements contained in the booklet, those statements would fail to support plaintiffs' assertions.

Pursuant to the contract between defendant and Secure Pros, Secure Pros was to "bill, collect and retain all revenues received from billing and collection functions related to Services provided by Physician pursuant to this agreement." (ECF No. 291-5 at 433.) There is no evidence that defendant is responsible for submission of billing code 99204 with modifier 25 for William's endoscopy.

Plaintiffs speculate that, given defendant's contracted rate for service, "there was clearly motivation" to avoid jeopardizing his contract by cancelling procedures. … The odds were extremely low anyone would ever look into his indications for the EGD…" (ECF No. 301 at 17.) Plaintiffs' speculation is insufficient to raise a genuine dispute of material fact for trial. "To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1061 (9th Cir. 2011). Plaintiffs have not done so, and summary judgment should be entered in defendant's favor on plaintiffs' first cause of action for deliberate indifference.

### III. Deprivation of Familial Relationship (Fourth Cause of Action)

"Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." Lemire, 726 F.3d at 1075. "Only official conduct that 'shocks the conscience' is cognizable as a due process violation." Id. (quoting Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008). This is "a more demanding standard than deliberate indifference." Hernandez v. Cnty. of Santa Clara, No. 5:19-CV-07888-EJD, 2020 WL 7227158, at *6 (N.D. Cal. Dec. 8, 2020). The Ninth Circuit has held that deliberately indifferent conduct will generally "shock the conscience" if the defendant "had time to deliberate before acting or failing to act in a deliberately indifferent manner." Lemire, 726 F.3d at 1075.

Plaintiffs have not raised a triable issue of fact that defendant engaged in conscience shocking behavior while acting in a deliberately indifferent manner. Defendant is entitled to summary judgment on plaintiffs' fourth cause of action for substantive due process under the Fourteenth Amendment.

////

### IV. Bane Act (Eighth Cause of Action)

California's Tom Bane Civil Rights Act ("Bane Act") imposes liability on a person who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise" of an individual's constitutional rights. Cal. Civ. Code, §52.1(b).) A Bane Act claim requires the following: (1) intentional interference or attempted interference with a state or federal constitutional or legal right and (2) the interference or attempted interference was by threats, intimidation or coercion. Allen v. City of Sacramento, 234 Cal. App. 4th 41, 67 (3rd Dist. 2015) (citing Jones v. Kmart Corp. 17 Cal.4th 329, 334 (1998)).

"California's Bane Act requires proof of an underlying constitutional violation." Williamson v. City of National City, 23 F.4th 1146, 1155 (9th Cir. 2022) (citing Reese v. County of Sacramento, 888 F.3d 1030, 1044 (9th Cir. 2018)). Having failed to raise a triable issue on any underlying constitutional claim, plaintiffs also fail to raise a triable issue under the Bane Act. See Williamson, 23 F.4th at 1155. Defendant is entitled to summary judgment on plaintiffs' claim under the Bane Act.

### V. Battery (Ninth Cause of Action)

To state a claim for civil battery a plaintiff must allege the following: "(1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." Brown v. Ransweiler, 171 Cal. App. 4th 516, 526-27 (4th Dist. 2009).) In the medical context, "a battery is an intentional tort that occurs when a doctor performs a procedure without obtaining any consent." Saxena v. Goffney, 159 Cal. App. 4th 316, 324 (4th Dist. 2008) (medical battery not established by special verdict that physician performed procedure without "informed consent"); see also Freedman v. Superior Court, 214 Cal. App. 3d 734, 739-40 (4th Dist. 1989) (no battery claim stated for the administration of non-indicated medication based on a falsely represented medical purpose). At the same time, "a doctor's fraudulent misrepresentations about the therapeutic nature of a proposed procedure can vitiate a patient's consent." Rains v. Superior Court, 150 Cal. App. 3d 933, 938 (2nd Dist. 1984)

////

1  (intentional misrepresentation of the therapeutic value of physical violence, to which plaintiffs
2  consented, stated a claim for battery).
3       Here, plaintiffs have not come forward with evidence to create a triable issue that Dr.
4  DeNigris knew there was no medical purpose and no therapeutic use for the endoscopy when he
5  performed the procedure. Dr. Arenson has opined the standard of care does not require a
6  proceduralist to thoroughly review a patient's entire medical chart to independently confirm the
7  veracity of the referral information prior to performing an endoscopy. (ECF No. 22.) The record
8  evidence is undisputed that it would be reasonable for defendant to focus review of William's
9  medical chart on the referral from Dr. Rudas with the medical necessity stated by Dr. Rudas. (UF
10  22-24.) There is no evidence that defendant submitted the billing codes claimed to be fraudulent.
11  There is no evidence that defendant must have known there was no medical need and no
12  therapeutic use for the endoscopy. Thus, there is no triable issue on plaintiff's claim that
13  defendant fraudulently misrepresented the therapeutic nature of the procedure and thereby
14  committed medical battery.

### VI.    Punitive Damages

Plaintiffs proceed on claims for punitive damages in the causes of action brought under 42 U.S.C. § 1983—the First and Fourth causes of action. (See ECF No. 201 at 3.) In conjunction with a claim under 42 U.S.C. § 1983, punitive damages may be awarded when a defendant's conduct "was driven by evil motive or intent, or when it involved reckless or callous indifference to the constitutional rights of others." Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005). As set forth above, summary judgment should be entered in defendant's favor on plaintiffs' claims under 42 U.S.C. § 1983 against defendant—both the First and Fourth causes of action. Thus, summary judgment should be entered in favor of defendant on all of plaintiff's remaining punitive damages claims.

### CONCLUSION AND RECOMMENDATION

In accordance with the above, IT IS RECOMMENDED that defendant Dr. DeNigris' motion for partial summary judgment (ECF No. 291) be GRANTED and judgment be entered in Dr. DeNigris' favor on plaintiffs' First, Fourth, Eighth, and Ninth Causes of Action in the 4AC.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: November 6, 2023

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8
schmitz20cv195.d.msj