1   THOMAS J. SCHMITZ
    DIANNE MALLIA
2   404 Atkinson St,
    Roseville, CA 95678
3   (707) 694-8158
4   tsfoot49@gmail.com
    deedamallia@gmail.com
5   PRO SE

6



FILED

DEC 20 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

7              **UNITED STATES DISTRICT COURT**

8                **EASTERN DISTRICT OF CALIFORNIA**

9

10  **THOMAS SCHMITZ, et al.,**              **NO. 2:20-cv00195-DJC-CKD**

11                          **Plaintiffs,**   **PLAINTIFFS' OPPOSITION TO**
                                              **MOTION FOR PROTECTIVE**
12              **vs.**                       **ORDER AGAINST**
    **A ASMAN, et al.,**                      **ENFORCEMENT OF**
13                                            **PLAINTIFFS' SUBPOENA TO**
                                              **MICHAEL GOLDING, M.D. BY**
14                                            **CALIFORNIA DEPARTMENT**
                                              **OF CORRECTIONS AND**
15                          **Defendants.**   **REHABILITATIONS AND**
                                              **DEFENDANTS ADAMS.**
16                                            **ANDALUZ, ASHE, ASMAN,**
                                              **BRANMAN, BRIZENDINE,**
17                                            **BROCKENBOROGH,**
                                              **CEBALLOS, HEATLEY, J.**
18                                            **JOHNSON, R. JOHNSON,**
19                                            **LEIDNER, PONCIANO,**
                                              **RAMKUMAR, REKART,**
20                                            **ROBINSON, RUDAS,**
                                              **M. SMITH, C. SMITH,**
21                                            **TEBROCK, TOCHE, AND**
22                                            **WAINE**
23
24                                            **COMPLAINT FILED: 1/27/2020**
25                                            **DATE: January 17, 2023**
26                                            **COURTROOM: 24, 8th floor**
                                              **TIME: 10:00 a.m.**
27                                            **JUDGE ASSIGNED: Honorable**
28                                            **Carolyn K. Delaney**

**I.**

## Introduction

William Schmitz was severely mentally ill. William was a *Coleman* member. William was locked in a CDCR prison and completely reliant on CDCR's care and protection. William suffered for years and lost his life due to the failure of Defendants to correct the deficiencies order by the *Coleman* court as the same deficiencies led to violations of William's individual constitutional rights. Still, nearly 5 years after William's death, Defendants refuse to take any responsibility and acknowledge their failures.

In their motion, Defendants have the audacity to portray William as if he was mentally well at the time of his death! Defendants do this despite their knowledge of his medical records as detailed in the 4AC and *infra*.[1] The *Coleman* court's findings are relevant and Dr. Golding's reports are relevant to William's suffering and death. This Court should order the production by Dr. Golding of all documents responsive to Plaintiffs' RFP requests, including the 546 pages of documents (with duplicates) provided by CDCR to Dr. Golding on December 17, 2023.[2]

Defendants, supported by incredible resources, use the same litigation strategy as they do in *Coleman.* In both cases, Defendants deny and evade. Defendants should admit that during William's entire incarceration they continued to fail to provide a constitutional level of mental health care to *Coleman* members and that the level of care individually provided to William resulted in William's suffering and death. Just as the "Messaging" section in the *Coleman* Court order included in Defendants' current motion attempts to refocus *Coleman* Defendants, especially Defendant Roche, all parties in this case should remain aware of the environment in which William suffered and died (Exhibit E of the motion)

---

[1] Pro Se plaintiffs are happy to provide the medical records supporting any particular factual allegations in the 4AC that the Court finds necessary to sufficiently show William's mental illness, paranoia and psychosis and relevancy to both *Coleman* and the Golding report. In this opposition, in attempt to minimize the Court's time and resources, plaintiffs only will comment on the records included in Defendants' motion and the minimal that seems necessary to counter the erroneous portrayal of William's mental state and lack of relevancy of *Coleman* and Dr. Golding's report.

[2] Dr. Golding's response to the subpoena is included as exhibit A.

1

2

3

4

5

6

> *As discussed in the December 17, 2019 order, the court expects that Undersecretary Toche "is thinking deeply about a proper response to plaintiffs' counsel's question [at hearing on the Golding Report] about how she can work to make clear to those who work for and with her that* **'CDCR has been found to have violated the Constitution as to the mental health program and is under a remedial order supervised by this court'** *and that 'Coleman is not just a word' but signifies a federal court order, 'upheld by the United States Supreme Court[,] that governs a remedial process.' 10/16/19 RT at 359:12-360:4." ECF No. 6427 at 46. (Emphasis added) (ECF 323-1 at 53)* [3]

7

8

9

10

11

Like this and numerous other orders, the language excoriating *Coleman* Defendants and their disregard for the lives of mentally ill in their care is **written by the actual federal judges in** *Coleman*. The words are not exaggerations by Plaintiffs, the words are not those of a grieving mother and father for their lost son as the undertones of Defendants' writings throughout this litigation suggest.

12

13

14

15

16

Finally, a lot of the motion content is argument that Dr. Golding should not produce privileged information. As stated in the subpoena, Plaintiffs do not request privileged information. However, it should not be Defendants in this case who determine which documents are privileged and any documents that are withheld for privilege should be described with a low threshold for in camera review by this Court.

17

18

19

## II. Argument

20

### 1. Additional History of FINDINGS ON FIRST GOLDING REPORT

21

22

Defendants' Motion neglects to delve into the *Coleman* court orders other than mentioning that the *Coleman* Court made a finding that the *Coleman* defendants' reports in

23

24

25

26

27

28

[3] Although Defense Counsel has assured answers to be amended, as of now Defendant Toche, herself has failed to substantively respond to discovery propounded by Plaintiffs that attempts to delve into the her understanding *Coleman* court orders and her responsibilities from *Coleman* and her own duty statement that establish her knowledge of the unconstitutional conditions William was exposed. (PLAINTIFF DIANNE MALLIA'S INTERROGATORIES TO DEFENDANT DIANA TOCHE, SET ONE are exhibit B, DEFENDANT DIANA TOCHE'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE are exhibit C and Exhibit D is Defendant Toche's duty statement.)

certain areas had **knowingly presented misleading information to the court**[4] and issued a

remedial order on December 23, 2019. The written order on Golding's report, which was

extensively cited and included as an exhibit with the 4AC was quite critical of *Coleman*

Defendants.[5] For example:

In the introduction of this order, Judge Mueller states:

At this critical juncture, several key legal principles, articulated by the previously

assigned judge in this action, bear repeating:

> 'Whatever rights one may lose at the prison gates, *cf. Jones v. North
> Carolina Prisoners' Union*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d
> 629 (1977) (prisoners have no right to unionize), . . . **Eighth
> amendment protections are not forfeited by one's prior acts.**
> Mechanical deference to the findings of state prison officials in the
> context of the eighth amendment would reduce that provision to a
> nullity in precisely the context where it is most necessary. **The
> ultimate duty of the federal court to order that conditions of state
> confinement be altered where necessary to eliminate cruel and
> unusual punishments is well established.'** *Spain v. Procunier*, 600
> F.2d [189] at 193–94 [(9th Cir. 1979)] (emphasis added).
> *Coleman v. Brown*, 28 F.Supp.3d 1068, 1077-78 (E.D.Cal. 2014)
> (emphasis included in 2014 order). The same judge said not so very long
> ago, in his 2013 order denying defendants' motion to terminate this action,
> "[t]he Eighth Amendment violation in this action is defendants' 'severe
> and unlawful mistreatment' of prisoners with 'serious mental disorders,'
> through 'grossly inadequate provision of ... mental health care.'" *Coleman
> v. Brown*, 938 F.Supp.2d 955, 969 (E.D.Cal. 2013) (quoting *Brown v.
> Plata*, 563 U.S. at 500, 502)). Just two years before that denial of
> termination, in its 2011 decision, the United States Supreme Court had
> observed that "[f]or years the ... mental health care provided by
> California's prisons has fallen short of minimum constitutional

---

[4] If the Defendants have the audacity to *knowingly* **present false information** in the *Coleman* case with monitors and seasoned attorneys for the Plaintiffs, then their disclosures and dealings with Pro Se Plaintiffs should be carefully scrutinized by this Court. Further, Plaintiffs respectfully request the Court consider liberal in camera review of documents Defendants' attempt to withhold due to privilege and to be liberal in allowing Dr. Golding, who was regarded highly by the *Coleman* court, to comply with Plaintiffs' RFPs. Dr. Golding should be uninhibited by restrictions sought by CDCR and uninhibited by worry of legal repercussions that could prevent him from responding honestly and to the best of his ability. Further, the public interest is great in protecting its citizens, even those in prison, from a state organization and its employees from inflicting cruel and unusual punishment or failing to take the actions necessary to prevent cruel and unusual punishment as has occurred in the *Coleman*.

[5] Plaintiffs respectfully request this Court to review the order in its entirety.

**requirements and has failed to meet prisoners' basic health needs. Needless suffering and death have been the well-documented result.**" *Brown v. Plata*, 563 U.S. at 501. (emphasis added) ( 4AC *Exhibit E at 4)* (ECF 173 at 117)

Like too many others, William was a tragic victim of "needless suffering and death" that "have been the well-documented result" of California prisons failing to meet the minimum constitutional requirements.

Further, the order notes the following:

> In the final analysis, inexplicably, it is apparent defendants lost complete sight of the reasons remediation is required here. **Defendants adopted a laser focus in an effort to obtain termination of court supervision, which lead to a stark "ends justify the means" approach. Their litigation tactics have wholly missed the significance of the constitutional rights of the thousands of mentally ill persons defendants have in their custody.** As the court said in its oral pronouncement following hearing, legal cases are not just words on a piece of paper and a series of jousting matches. Almost all legal cases have hearts and souls, as does this one in particular. This court's predecessor, Judge Karlton, put his heart and his soul into this case, as reflected in the care he paid and his orders which stand today. This is a case that cries out for every single player to consult their hearts daily and keep their eyes hourly on those souls who are the members of the plaintiff class: **the seriously mentally ill individuals housed behind bars in this state who have the absolute, undeniable right to constitutionally adequate treatment and care. (Emphasis added)** (Exhibit E at 45) (ECF 173 at 118)

William was one of those souls that severely suffered and lost his life due to the repeatedly proven constitutionally inadequate level of care provided within the CDCR system.

### 2. Context of Final Clinician visit (EXHIBIT J in Defendants' Motion)

**Despite William being mentally ill and a *Coleman* member who died in CDCR at a young age while hearing voices,** Defendants attempt a straw man argument as a way to invalidate any relation of William's suffering and death to both the *Coleman* case and the original Golding report. Even if this court finds the circumstances different enough from one of the cases cited in the Golding report, it does not eliminate the extreme relevance of the *Coleman* court's proceedings and the report of Dr. Golding, **CDCR's own Chief Psychiatrist,** to this case.

However, even though claimed differences between William's death and that of the psychotic inmate eating her own eye would not invalidate the pertinence of the Golding report to William's suffering and death, Plaintiffs will not allow Defendants to bias the Court against our son by using half-truths and incomplete information to create an inaccurate picture of all the circumstances surrounding William's death and the events leading up to it. Defendants very selectively chose one small portion from the final visit with Williams "primary clinician", social worker Defendant Wanie, several days prior to his death. In actuality, the final clinician's note does not paint a picture of a mentally normal individual as depicted by Defendants. Some of the important information includes the following:

A. First the quote in Plaintiffs' motion at lines 1-2 of page 8, ends just before Defendant Wanie describes William being distressed by his voices. Specifically, Defendant Wanie wrote **"[William] reports distress from the voices he hears as 5/10 on a scale of 10/10 being the worst."** ( ECF 323-1 at 83, Exhibit J) **Defendant Wanie is a social worker, she is not a psychiatrist.** She did not consult a psychiatrist to evaluate William at this time for a 5 out of 10 distressing voices.[6] **William was not on antipsychotic medications at this time**. In no other environment would this level of decision making be left to a social worker. **The abnormal environment of CDCR that encourages a social worker rather than a medical-trained psychiatrist to make this level of decisions regarding the mental health care of severely mentally ill individuals is well-described in the Golding report and therefore relevant to William's case.**

B.  Subjective/ History of Present Illness section

In this section of her note, Defendant Wanie writes:

> [William] stated he last saw visions "one to one and a half years ago." "when I'm under more stress the voices increase and they're louder." He currently reports distress from [Auditory Hallucinations (AH)] 5/10. "when I get manic it causes major problems."He reports onset of AH "when I was 19 or 20." He denies the psychosis was substance induced, rather "I self medicated when I started hearing the voices to help me deal with them." "the voices came on really quickly --sudden onset."

---

[6] Imagine bringing one's loved one in for evaluation of voices that are distressing to a level of 5/10 and they are evaluated by a social worker not a medical doctor!

So the very last time he was seen by his "clinician" and a few days prior to his death, William reported distress from his voices at 5 out of 10. He was not on antipsychotic medicines and he even tells Defendant Wanie that he self-medicated when he started hearing voices to help him deal with them.

C.  "Collateral Contacts with Psychiatrist Andaluz"

Defendant Wanies's note includes:

"Multiple collateral contacts with Dr Andaluz" (ECF 323-1 at 83, Exhibit J)

**Defendants have failed to disclose any documentation of these "collateral contacts" that took place in the weeks before William's death.** It's obvious these contacts were some form of written communication as Defendant Wanie directly quotes psychiatrist Defendant Dr. Andaluz. Even though the medical record includes a communication section, nowhere in the disclosed documents do these "collateral contacts"[7] show up.

This is yet another example of the failure in medical record keeping and **the failure to timely disclose relevant medical documentation that makes it impossible to know the depths of poor medical care provided to our son.** This is consistent with the egregious OIG report as documented in the 4AC and consistent with the poor care described in *Coleman* and the original Golding report. **What other information are Defendants withholding or simply unable to produce because the medical record keeping is so abysmal?**[8]

---

[7] There is a very small chance Plaintiffs missed disclosure of these "collateral contacts" given the haphazard, non-sensical order of the medical record disclosures. **If plaintiffs are mistaken, they welcome Defendants to produce these Bates numbers disclosed documents in their reply.**

[8] For example, included in motion exhibit, DEF 120151 is the custodian record showing **4942 copies** and signed by the custodian on 12/5//22. (ECF 323-1 at 86) Plaintiffs initially received disclosures DEF001159-DEF004815 labelled as Williams Medical records in 2020.  This was **3657** pages of medical records.  Then after being ordered to provide William's full medical record in January 2021, Defendants disclosed DEF004939-DEF008968 that were labelled as medical records.  The actual medical records were DEF005081-DEF008968.  So this next disclosure was **3888 pages.**  Plaintiffs believe almost all were duplicates but at least 200 new documents were disclosed.  Then, in February 2023, two years after the court ordered (**ECF 129 at 4 "Defendants shall produce to Plaintiffs the complete CDCR medical records of decedent William Schmitz (Request for Production No. 33) by January 8, ~~2020~~ 2021"**) William's full medical records disclosed, Plaintiffs received the **4942 pages. Approximately 1000 more pages had apparently accumulated in William's medical record despite him being deceased this entire time!** Yet, somehow, the "collateral contacts" between William's psychiatrist and primary clinician from the weeks before William died are still excluded!

D. Dr. Andaluz description

Per Defendant Wanie's note, which quotes the last psychiatrist to see William[9], Defendant Dr. Andaluz, the psychiatrist recommended a dorm exclusion for William. The psychiatrist's reasoning included, "1) Patient was **hyperactive and intrusive** during his appointments with me. He displayed **difficulty maintaining one train of thought**. This could be an irritant to others, causing contention in a dorm setting. 2) His **presentation does not appear to have changed from previous appointments** documented in the chart. This would indicate that the pt has not shown improvement to the point of being able to function in a dorm setting. 3) He is not on medications. He did agree to try a medication for hyperactivity which I started at his last appointment with me. However, **he is not on antipsychotics[10]** and he declines to start one at this time. Chart review indicates **that the pt has consistently reported that medications have not helped him with his symptoms**. Instead, the pt has used his cell as a place to de-stimulate when he becomes overwhelmed."[11] Clearly, Defendant Dr. Andaluz does not describe a mentally stable young man.

### 3. Conflicting Defendant Officer Asman observations context

**Although the motion claims,** "Moreover, decedent was seen by Officer Asman on the morning of January 11, 2019**, who observed nothing out of the ordinary." (Emphasis added)** (323 at 11) **This claim is not accurate.**

The incident report regarding William's death does not even mention Defendant Asman! Although Defendant Asman discovery answers regarding the day of William's death are much

---

[9]Making the very big assumption that the medical records are not missing documents or psychiatric contacts between those dates.

[10] The 4AC details the timeline for when William was stopped on antipsychotics. Again, plaintiffs can provide the records to the Court if necessary at this time to show the foundation of the allegations from the 4AC.

[11] Sadly, Dr. Andaluz, assuming Wanie's unverifiable quote is correct, states William has consistently reported that the antipsychotic medicines have not helped him. **Although William, who was psychotic with chronic voices, may have believed this at the time, it was not true - antipsychotics were in fact very effective for him,** most notable the Clozaril as described in the 4AC. Accurate medical record information is essential to properly diagnose and treat severely mentally-ill individuals, like William, and one of the major issues identified in *Coleman*.

different than that represented in the coroners report[12], taking his responses as true and in the best light for him, Defendant Asman claims he last saw **William over 7 hours prior to William's death**! He then claims to have been reassigned to a different area of the prison for the vast majority of his shift starting at about 8:00 a.m. only returning to eat his lunch at 1:30. (ECF 323-1 at 90, Defendants' Motion Exhibit K)

Unsurprisingly, Defendant Asman contradicts himself on this version of events as he claims to have seen William come out of his cell but also claims he is unable to admit or deny whether or not William left his cell on 1/21/2019. (ECF 323-1 at 90, Defendants' Motion Exhibit K Defendant Asman response to Interrogatory 2 versus Exhibit G at 11 response to RFA NO. 33) The version of events in which Defendant Asman did not see William come out of his cell is more believable as it is consistent with the coroners report written much closer to the time of William's death not years later.

Further, there is an absence of documentation showing Defendant Asman's apparent reassignment and Defendant Asman can not even identify who allegedly reassigned him or if anyone was fulfilling his post order duties during his claimed absence from Building 8 floor 2. He merely refers to the documents "DEF009081-009083. (FLSA Sheets.)". (Exhibit H at 3 response to Interrogatory 6 and 7)

Review of the "FLSA sheets" show only 3 individual assigned to William's housing, Building 8, the entire time between 0600 to 1400. One assigned to the Control booth. One assigned to floor 1. And only 1 assigned to William's floor- Defendant Asman. The document shows Defendant Asman signed in at 0600 and out at 1400.(Exhibit E at 1-2) Like the other documents discussed *infra*, **there is no indication that Defendant Asman ever relinquished his responsibilities or that anyone else was filling these responsibilities.**

---

[12] The coroner's report says that "Sergeant Dave Brunkhorst with ISU subsequently met with me in the TTA and reported to me that **the decedent was last seen alive by Correctional Officer Adam Asman (NFD) at 0635 hours.** Sergeant Brunkhorst said that Officer Asman was doing his logged checks and noted water flowing out from under the decedent's cell door. Sergeant Brunkhorst indicated that Officer Asman questioned the decedent **what he was doing as that was out of character for the decedent**; however, the decedent replied that he was taking a "Bird bath" and he would clean it up. **Sergeant Brunkhorst stated that was the only time any officers spoke with or actually saw the decedent.** Sergeant Brunkhorst continued to say that it was not unusual to not see an inmate for hours in that building as the inmates housed there are not subject to constant surveillance."

1    Defendant Asman further admits that review of his employment record shows Defendant

2  ASMAN only working at Second Watch in Building 8, floor 2 from 6:00 to 14:00 on 1/21/2019.

3  (Exhibit G at 11 response to RFA NO. 10)

4    The documents Defendant Asman has produced that he claims are relevant to his

5  reassignment are "DEF004937, DEF115207, DEF115208. (Log Book, Daily Program Status

6  Report, Daily Activities Report.)[13]"(Exhibit H at 2 response to interrogatory 5). Just like the

7  FLSA sheets and his employment record, **none of these documents show that he ever left his**

8  **assigned post! However, taking Defendant Asman's statements as true, that he was**

9  **reassigned for the vast majority of his shift, the absence of any records of his actual duties**

10  **for that day speaks to the incredible lapse of supervision and systemic problems with the**

11  **custody staff in relation to mentally ill that are themes within *Coleman* and the *Golding***

12  **report.**

13    Despite Defendant Asman's discovery answers regarding the day of William's death

14  being much different than that represented in the coroner's report and all the documents showing

15  that he was in the post responsible for building 8 floor 2 the entire time from 0600 to 1400,

16  taking his responses as true and in the best light for him, the circumstances he describes are still

17  relevant to allowing discovery from Dr. Golding. At best, Defendant Asman claims he last saw

18  **William over 7 hours prior to William's death**! This is well-outside prison standards and

19  numerous regulations. Obviously a failure to perform security checks as required puts mentally-

20  ill inmates at risk, some of which are described *infra*. Even if Defendant Asman was following

21  orders with his reassignment, it does not absolve him of his role in William's death.

22    Even if Defendant Asman was assigned somewhere else, he violated several regulations

23  in place for the safety of inmates. A few examples include:

25  1. Asman saw a sign partially covering William's cell window and he did not conduct a

26  cell inspection to remove the covering cell. He failed to do this despite the obvious safety

27  issues created as clearly stated in the memo "Cell Inspections and Removal of Window

28  ───────────────

[13] Exhibit I is logbook, Exhibit J is Daily Program Status Report, Exhibit K is Daily Activities
Report

Coverings and/or Privacy Screens", that Defendant Asman admits his training documentation shows he read on both 4/28/2018 and 5/1/2018, (Exhibit G at 10 response to RFA NO. 28), which he admits states: "The purpose of this memo is to reiterate the importance of conducting regular cell inspections and ensuring staff have a clear line of sight into inmate cells. This is an important task, as it ensures clear observation of the inmate population, which helps maintain institutional safety and security. If a staff's line of sight into a cell is impeded, a cell inspection shall be conducted to remove any cell and/or window coverings blocking staff's view into the cell."(Exhibit G at 10 response to RFA NO. 29)

2. For whatever portion of time, Defendant Asman was assigned to post number 222005 (Exhibit F), he failed to adhere to the post orders. First, "[Asman was] required to read & become familiar with all information contained in the General Duties and Responsibilities Handbook." Defendant Asman admits, the handbook states in part "**You will make security checks at least once each hour. Security checks will include checking inmate activities and welfare** as well as the security of the building." (Emphasis added) (Exhibit G at 6 response to RFA NO. 13) Second, he failed in his "Area of Responsibility" and General Duties and responsibilities as described in the post orders. Specifically, his Area of Responsibility was "You are responsible for the security of your assigned area and the custody, control, discipline and **welfare of all inmates** assigned therein." (Exhibit G at 6 response to RFA NO. 15) General duties included "Provide constant custodial supervision of inmates." (Exhibit G at 6 response to Response RFA 16). Finally, Asman admits that CDCR DOM section 52020.5.5 in 2019 stated:

> *"An informal count is a physical count and positive identification of inmates who are present at their program/work assignments. Informal counts shall be conducted by all employees supervising inmates.*
> *These informal counts shall be completed on an hourly basis. Any discrepancies shall be reported immediately. Informal counts shall be conducted to ensure inmates are present in their assigned areas, such as housing units, work centers, minimum support facilities, and community work crews." (Emphasis added) (Exhibit G at 11 response to RFA 33)*

So even taking Defendant Asman's best case scenario, he still returned at around 1:30 to an unmonitored floor of inmates that included both mentally-ill, like William, and inmates with

developmental disabilities (Exhibit G at 3 response to Response RFA 4). Instead of immediately performing a security check on all of the inmates whose welfare he was responsible, Defendant Asman ate lunch, another violation of his post order that states hours of Work 0600-1400 and no lunch period provided.(Exhibit F)

Despite all of the above, Defendant Asman received no disciplinary action regarding his activities on 1/21/2019.(Exhibit G at 9 response to Response RFA No. 26) The fact that Defendant Asman received no disciplinary action speaks volumes to **the culture within CDCR that allows employees to violate rules and regulations specifically designed to protect the safety of inmates without facing discipline which again are themes within *Coleman* and Dr. Golding's report.**

### 4. Communication Gaps between custody Staff and mental health

As stated in the 4AC, the Program Guide created and mandated policies to specifically address the communication gaps to try to bring care to a constitutional level for these vulnerable mentally ill people.

The Program Guide, which was generated through the *Coleman* court, specifically states," All levels of care include treatment services provided by multiple clinical disciplines, and development and update of treatment plans by an Interdisciplinary Treatment Team (IDTT), which includes appropriate custody staff involvement."

Communication gaps were a contributing factor in William's death. Defendant Asman was assigned as the officer for Building 8, floor 2 for 60 days from 9/29/2018 until the date of William's death. **This is almost 500 hours assigned as custody overseeing William.**[14] Tragically, despite being one of the main custodial staff responsible for the last few months of his life, he knew very little of William's mental illness and risks for self-harm. Defendant Asman never participated in and IDTT meeting for William and does not recall being informed of discussions or plans from IDDT meetings for William Schmitz.(Exhibit G at 3 response to Response RFA 4 and 5) He was never informed to closely monitor William drug use.(Exhibit G

---

[14] Of course, given the lack of record apparent record keeping that Defendant Asman claims, it is impossible to know how often he was actually present in his post.

at 4 response to Response RFA 7) He was never informed William had auditory hallucinations. (Exhibit G at 4 response to Response RFA 8)

Additional poor communication is a theme in Golding's report between primary clinicians and psychiatrists and something the Plaintiffs allege occurred in William's case.

Directly from the 4AC:

Dr. Golding's report describes the custom of primary clinicians (PCs), normally a social worker or psychologist, making decisions and dictating them to other members of the IDTT including psychiatrists. This practice violates the Program Guide policy that directs the IDTT to update treatment plans.

164.    This specific violation was a widespread practice and problem in CDCR's Chief psychiatrist's opinion as evidenced by the following:

> In theory, level of care changes are always made by the IDTT, the patient's treatment team, which should include the psychiatrist. Yet Dr. [Redacted] and Dr. [Redacted] and Dr. [Redacted](at CHCF) directly told Dr. [Redacted] and me during our recent visit in July 2018 and **we hear the same from many psychiatrists across the state that they are frequently only told that the patient is being discharged (or that the level of care is being changed) when the psychologist tells the patient in treatment teams**. So the physician psychiatrist is finding out that a discharge is going to occur when the patient is being told. Clearly no consultation is seen as necessary with the psychiatric physician, except if the psychologist determines that a psychiatric medical opinion is needed (and often that happens). **But it is the psychologist who determines whether there is a relevant medical situation present which necessitates calling a psychiatric physician.** As our psychiatric physicians repeatedly say, CDCR seems to want to use them only for prescription writing. (emphasis added) (Exhibit C at 104-105)

165.    William's PCs were social workers, like Defendant BRANMAN and Defendant WANIE, or even unlicensed psychology interns like Defendant ROBINSON.

### 5. First Golding Report

In addition to everything discussed *supra*, Dr. Goldings' original report identifies several problems, many of which played a direct role to the abysmal care of William. Unlike the patient

that ate her own eye as described in Golding's report[15] who was evaluated by a psychologist just 4 hours prior to eating her eye, William did not even have that opportunity. Instead, he remained locked in his cell by himself with a covering over his window, with known history of severe psychotic illness, worsening voices, and a lack of antipsychotic medications.

Dr. Golding's report describes a very similar situation to William's when information regarding William's positive response to antipsychotic medicines was lost. Though usually the information is lost due to the poor communication when the mentally-ill first enter CDCR or transfer between institutions, William's case is more tragic as he actually remained within the same institution yet his information was still lost due to the inadequate staffing, frequent turnover of staff and poor medical record keeping.

Directly from Dr Golding's original report:

> **Although this patient apparently had a psychotic illness, he was refusing the medication he needed all along at the initial intake institution.** It is possible that after transfer to the new institution, **a psychiatrist might well have been able to convince the patient to take the medicine, or perhaps would have noticed enough paranoia or other psychosis** to get the patient to a crisis bed.

> Patients who have been taking medication outside prison, as this patient apparently was, **sometimes have been doing so because of family or community support**, or because they have been getting injections of long acting medications at a mental health center in their community.

> In this case, apparently a doctor at the jail had managed to get him to take the medicine. **When taking medication, a patient may well become coherent, and then, due to their coherence, paradoxically gain the ability to refuse medication when they switch settings, such as when they come to prison to serve a sentence.** Medico legally, such patients have demonstrated improved capacity to make decisions about medication taking.

> Thus, paradoxically, as patients enter our prison system at an intake institution **and lose the community support that has been encouraging the medication taking, the very fact of their coherence due to previous medication compliance enables them to successfully argue to the admitting physician that they do not need the medication (or they have a right to refuse it because**

---

[15] Plaintiff's encourage the court to carefully read the case in Golding's report and see the similarities to the 4AC allegations. Quite similarly to William, this patient was followed off antipsychotic medications and did well for awhile but did not stay well.

**of their apparent capacity, though the physician might very much want the patient to take it).**

**A patient's apparent coherence, coupled with loss of** information as patients transfer care from outside prison to care in prison, makes these times particularly dangerous for patients. **Finally, the good effects of the medication often last for several months after the medication has been discontinued, so the patient in fact does well off (without) medication for months, seeming to add to the argument that the medication was actually not needed.** (Emphasis added) (Golding report at 18-19, included as exhibit with the 4AC)

Further, Dr. Golding's original report describes his notification to others about the serious systemic problems and resulted in him actually having to file the original whistleblower report. For example, Defendant Tebrock, admits she was aware of Dr. Golding's concerns that psychologists were practicing above their scope of practice and that CDCR psychiatrists were concerned they were unable to provide psychiatric care up to community standards."(Exhibit L at 5 and 10, responses to RFA 9 and RFA 23) Further, Defendant Tebrock objects to many Requests for Admissions that were created from the *Coleman* findings or claims not to have sufficient information. Defendant Tebrock even denies "that during [her] time as Deputy Director of the Statewide Mental Health Program for CDCR, [She was] aware that CDCR psychiatrists were unable to meet with inmates in the EOP at the frequency mandated by the Program Guide due to their workload" and that the failure to meet the Coleman mandates results in the deaths of mentally ill individuals.(Exhibit L at 9 and 11, responses to RFA 20 and 26)

Certainly, if Defendants, like Defendant Tebrock, are allowed by this Court to provide evasive answers and even deny repeated findings and themes from *Coleman* like the obvious direct relationship between psychiatry vacancy rates and ability to provided care at the Program guide required frequency or that deaths of mentally ill individuals are caused by CDCR's unconstitutional care and that deaths could have been prevented by fully complying with all *Coleman* mandates, than the Golding files are even more vital for disclosures.

In addition, Defendant Tebrock claims not to be in possession of any responsive documents between herself and Dr. Golding in regards to several issues relevant to the case. For example, she did not produce any documents pertaining to information from Dr. Golding to her

relating to psychiatrists within CDCR being unable to comply with the MHSDS Program Guide (Exhibit M at 4 response to interrogatory 5) nor many other documents related to *Coleman* and *Dr. Golding's report* (Exhibit M). Therefore, Plaintiffs should be able to receive the documents through Dr. Golding's production.

### 6. Golding Investigatory file

The files that support Dr. Golding's report certainly may reveal specific knowledge of Defendants regarding their knowledge of conditions that contributed to the suffering and death of William. Defendants attempt another straw man argument by citing from dissimilar cases. They cite Mwasi v. Shittu, No. 1:23-cv-00364-ADA-BAM (PC), 2023 U.S. Dist. LEXIS 155449, at *18-19 (E.D. Cal. Sep. 1, 2023) that ""It is well-settled that the remedial order issued in Plata and related cases do not provide an independent cause of action under § 1983 as the order does not create or expand on a plaintiff's constitutional rights." **This is not what the 4AC claims.** Plaintiffs do not claim that William's constitutional rights were expanded by *Coleman* or that simply because *Coleman* was violated William's constitutional rights were de facto violated. However, the overlap between William's individual rights established by the Constitution and the context of the *Coleman* case are undeniable. **Plaintiffs should not be precluded from discovering information that shows the knowledge of individual Defendants to conditions that create the environment in which William was treated for his mental illness.** If Dr. Golding informed his supervisors of conditions that were dangerous to the the well-being of mentally-ill, like William, regardless if it was for the purpose of how *Coleman* Defendants measured compliance with remedial orders, than they should be produced.

### 7. Second Golding Report

Plaintiffs are agreeable to wait for the *Coleman* Court's rulings on the redactions for the second Golding report. Plaintiffs disagree with Defendants' Motion claim that the Second Golding Report would bear no relevance on William's death or the suffering he endured in the years leading up to his death, simply because it is issued after his death. Rather, it is very likely the second Golding report will include multiple issues regarding the poor care of mentally-ill within CDCR, care that is unlike any other in the entire United States and has gone on for

decades, and deficiencies within the system that directly contributed to William's suffering and death. Maybe his report even discusses William's individual case?

### 8. Specific Requests for Production in Motion

Defendants request Production **No. 3, 4, 13, 16 and 17** be limited to production of the copies of relevant CDCR policies and procedures. The request as currently phrased as any documents "related" to such procedures would encompasses documents protected by attorney privilege, work protect doctrine and physician patient privileges.

Plaintiffs do not request privileged documents. However, Plaintiffs do request that anything withheld due to claimed privilege be decided by Dr. Golding and his counsel, not CDCR or Defendants in this case, and that anything withheld be described as required by Fed Rule of Civ Proc. 45.

Request for Production **No. 5** seeks "Any and all documents relating to CDCR psychiatrists concerns they could not meet a community standard of care while working within CDCR." Plaintiffs agree to limit the time period starting August 30, 2015. However, the request should not be otherwise limited to William's treating psychiatrists in relation to their treatment. The 4Ac alleges systemic conditions that supervisors were aware of but did not fix. If Dr. Golding has documents relating to concerns of CDCR psychiatrists not being able to meet a community standard of care while working within CDCR than they should be produced.

Requests for Production **Nos. 6 -7** seeks "any and all documents relating to CDCR nonphysicians practicing medicine" and "any and all documents relating to CDCR non-physicians overruling physician's decisions." Like above, these are relevant to the systemic issues Plaintiffs allege in the 4AC were present yet not corrected by supervisors and contributed to the suffering and death of William.

Requests for Production **Nos. 8-9, 12, 27** even though they request documents relating to individual defendants knowledge of Coleman mandate violations and knowledge of inability to meet Program Guide requirements, these are appropriate for discovery production in this case given the overlap of issues and that these communications would be directly relevant to the knowledge of individual defendants of potential conditions that created an environment in which

1  William would be likely to receive below standard of care and unconstitutional level of mental
2  health care.

3      Requests for Production **Nos. 14-15** seek documents related to "any potential pressure
4  felt by individuals to transfer of mentally ill inmates from EOP to CCCMS" and also documents
5  related to "mentally ill individuals being removed from psychiatric medicines due to
6  communication error." These are both directly relevant to William's case as described in the
7  4AC. However, plaintiffs are agreeable to limit to a time period starting August 30, 2015.

8      Request for Production **No. 26** seeks documents relating to communications sent or
9  received by Dr. Golding on the health care services for Decedent from January 1, 2015 to the
10  present.   Dr. Golding is in possession of at least 546 pages of documents (with duplicates)
11  provided by CDCR to Dr. Golding on December 17, 2023 responsive to this request. These
12  should be immediately disclosed to Plaintiffs.   If their are Documents that Dr. Golding believes
13  he should withhold due to privilege, he should withhold and describe as required by Fed Rule of
14  Civ Proc. 45.

15      Request for Production No. **28** (although motion state "26" the description is that of 28)
16  seeking any and all documents relating to Dr. Golding's communications with individual
17  defendants relating to the vacancy rates of psychiatrists within CDCR. Defendants make a
18  meager attempt to say that the "alleged psychiatry staffing shortages" at Mule Creek have no
19  causal relationship to William's passing since William was seen  within the Program Guide
20  requirements in December and January. This is a ridiculous argument and illustrates the ongoing
21  lack of acknowledgement and understanding of Defendants in regards to the level of mental
22  health provided within CDCR and to William. Defendants seek to use to their benefit the fact that
23  Defendant Robinson led William's transfer to CCCMS from EOP despite him not meeting the
24  criteria and the lesser requirements of psychiatry appointments for CCCMS level inmates. The
25  push is explained in the Golding report and the 4AC. Further, they attempt to use the
26  appointments that William requested due to his struggling with mental health issues, not
27  routinely scheduled appointments, as evidence of quality mental health care. Finally, the short
28  staffing not only effects the quantity of appointments provided but also the quality of care

provided. This is a major reason William suffered and died, a major theme of both *Coleman* and Golding's report!

Moving Defendants seek an order precluding the production of any communications after Decedent's death that are protected from disclosure by the attorney-client privilege and common defenses privilege, communication with the Office of the Attorney General and the Office of Legal Affairs regarding current or pending litigation.

Once again as stated in the subpoena, Plaintiffs do not request privileged documents that we are note entitled. However, Plaintiffs do request that anything withheld due to claimed privilege be decided by Dr. Golding and his counsel, not CDCR or Defendants in this case, and that anything withheld be described as required by Fed Rule of Civ Proc. 45.

**9. Dr. Goldings current RFP response  (Exhibit A)**

Dr. Golding has responded to the RFPs and  is  waiting for this Court's determination on this motion for protective  order.

In addition, Dr. Golding's response itself shows that CDCR provided 546 pages of documents (with duplicates) to Dr. Golding on December 17, 2023 that are responsive to the Request for production No. 26. "Any and all DOCUMENTS RELATING TO COMMUNICATIONS sent or received by. YOU on the HEALTH CARE SERVICES for WILLIAM THOMAS SCHMITZ from January 1, 2015 to the present."

**10.  Opportunity for Simplification of Matters in this case**

Pro Se Plaintiffs are worried they will continue to make legal errors that will result in findings for Defendants simply due to their essentially unlimited resources and legal maneuvering and not the actual facts of this case. This worry may lead Pro Se Plaintiffs to seek discovery that may not be necessary given the findings of the *Coleman* Court and this Court's application of the *Coleman* findings to this case.

Despite their failures to admit to the matters settled by the *Coleman* Court as discussed *supra*, Defendants claim the production of Golding's files would "improperly cause a re-litigation of matters that are not before this Court and that have already been litigated and settled

by the Coleman Court." (323 at 12) **Pro Se Plaintiffs request this Court to identify how it views pertinent findings settled by the *Coleman* Court and applies them to this case. It may greatly simplify discovery if this Court already finds the matters settled in *Coleman* as undisputed facts and can clearly state the facts for all parties.**

For example, in order to establish, deliberate indifference Plaintiffs need to establish in part that a supervisory official "knew of unconstitutional conditions and 'culpable actions of his subordinates' but failed to act amounts to 'acquiescence in the unconstitutional conduct of his subordinates' and is 'sufficient to state a claim of supervisory liability.'" *Keates v. Koile, 883 F.3d 1228, 1243 (9th Cir. 2018) (quoting Starr, 652 F.3d at 1208).*

Defendants DIAZ, KERNAN, TOCHE, and TEBROCK were named official-capacity Defendants in the *Coleman* litigation. The *Coleman* Court found the *Coleman* Defendants to be violating the constitutional rights of the *Coleman* members and issued orders in attempt to correct the deficiencies. One order included maintaining a minimal vacancy rate of mental health personnel. It is undisputed that Defendants have failed to achieve an adequate number of mental health staff despite knowing the specific numbers needed to remediate the unconstitutional care.

> ***For example, the Coleman court found:***
> Previously Recognized Implications of Longstanding Staffing Deficiencies
> It has been three years since the court described the record with respect to mental health staffing as follows:
> With respect to staffing, **the stark reality of the record before this court is that defendants have for fifteen years been under orders to keep their mental health staff vacancy rate below ten percent.** For most of that fifteen year period, and for several classifications of mental health staff, **defendants have been in violation of that order.** As is clear from the Special Master's most recent report, **defendants are still in violation of the court's order, particularly with respect to psychiatrists.** *See* ECF No. 5590-1 at 23. The long **history of failure to hire a sufficient number of psychiatrists,** combined with defendants' position on the matters before the court on the Special Master's report, **raises a question about whether defendants will ever be able to hire sufficient staff to meet their constitutional obligations to members of the plaintiff class,** as long as the size of the seriously mentally ill inmate population in California's prison system remains at current levels or continues to grow. (emphasis added) (*Coleman v. Newsom*, No. 2:90-cv-0520 KJM DB P, at *7 (E.D. Cal. July 30, 2020))

**Does this Court consider that the settled findings in *Coleman* already establish that the named *Coleman* Defendants knew that the unconstitutional conditions created by the understaffing mental health at the level ordered by *Coleman* was a failure to act to correct an unconstitutional condition that they knew of? Pro Se Plaintiffs believe it does.** However, plaintiffs are unsure how this Court views the findings in *Coleman* and, therefore, must seek out as much information as possible for the information provided to Defendants by Dr. Golding as may be further revealed in his files.

Defendants certainly have a different interpretation of the findings in *Coleman* than plaintiffs and also different than **a literal interpretation of the findings and orders from the *Coleman* court.** For example, Defendant Tebrock, one of the named Defendants, does NOT admit that she had the responsibility to enact the *Coleman* Mandates.[16] (Exhibit L at 3 response to RFA 4). Further Defendant Tebrock **denies** that she knew failure to enact the *Coleman* mandates results in the ongoing constitutional violations of mentally ill within CDCR. (Exhibit L at 4 response to RFA5) If the named *Coleman* Defendants, like Tebrock, do not even seem to know the purpose of the *Coleman* mandates nor that she was responsible for enacting *Coleman* orders despite what the orders state than not only does it call into question Defendant Tebrock's good faith answers, it needlessly complicates discovery. Is this Court going to allow all of the numerous Defendants to claim, like Defendant Tebrock does, that "CDCR and CCHCS comprise a matrix organization, with dispersed responsibility across the organization." (Exhibit L at 4 response to RFA 4) Are all Defendants going to be able to deny all responsibilities to enact *Coleman* orders by shifting blame to an ambiguous "matrix" so that no one is actually responsible?

The *Coleman* case and all its orders and findings from within this court's district are without question available for this Court to review and interpret. Hopefully this Court can clarify how it interprets findings from *Coleman* and identify whom this Court finds were the responsible individuals to comply with *Coleman*. It will simplify discovery and possibly limit what is requested from Dr. Golding by plaintiffs.

---

[16] Pro Se Plaintiffs include the responses for the Court to review and see the context as we do not want to unintentionally mislead the court with how we interpret the responses.

1         If this Court does find that the findings in *Coleman* already establish that named *Coleman*

2    Defendants knew of unconstitutional conditions but failed to act and is sufficient to state a claim

3    of supervisory liability than it will simplify the discovery needs against those Defendants as

4    plaintiffs will only need to demonstrate how William was individually injured by the

5    unconstitutional conditions he was exposed too.

6

7    **Conclusion**

8         Plaintiffs have a right to broad discovery (Insert quote on broad discovery from fed rules)

9    In addition, given Defendants history of failure to comply with Coleman mandates, knowingly

10   presenting misleading information to the Coleman court and failure to provide the full medical

11   record of Wiliiam as originally ordered, failure to disclose all relevant medical documents like

12   the "collateral contacts" between Defendants Dr. Wanie and Dr. Andaluz, all documents being

13   withheld due to claims of "privilege" by Defendants should be reviewed by this Court to ensure

14   the withholding is appropriate.

15

16   Dated: December 20, 2023                    Respectfully submitted,

17

18                                              Thomas E. Schmitz

19

20                                              Dianne Mallia

21

22

23

24

25

26

27

28

EXH A

1    Wendy E. Musell, State Bar No. 203507
2    LAW OFFICES OF WENDY MUSELL PC
     66 Franklin Street, Suite 300
3    Oakland, CA 94612
     Telephone: (510) 270-2252
4    Facsimile: (510) 228-1391
     wmusell@wendymuselllaw.com
5
6    ATTORNEYS FOR
     Third Party Michael Golding, MD
7
                    **IN THE UNITED STATES DISTRICT COURT**
8
                **FOR THE EASTERN DISTRICT OF CALIFORNIA**
9

10   THOMAS SCHITZ,                        )    Case No.: 2-20-cv-00195DJC-CKD
                                           )
11                Plaintiff,               )    **MICHAEL GOLDING, MD RESPONSE**
                                           )    **TO DOCUMENT SUBPOENA**
12         v.                              )
                                           )
13   ADAM, ASMAN, ET AL                    )
14                Defendants,              )
                                           )
15                                         )
                                           )
16                                         )
                                           )
17                                         )
                                           )
18
     PROPOUNDING PARTY:        THOMAS SCHITZ
19
     RESPONDING PARTY:         MICHAEL GOLDING, MD
20

21         **RESPONSE TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

22   **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

23         Golding objects to this request on the basis that it is overbroad. Golding objects that the

24   request calls for attorney client privilege and attorney work product. Golding objects that the

25   request is compound and vague and ambiguous.

26         Subject to and without waiving these objections, Golding responds as follows:

27         Subject to the determination of the Court on Defendants' Motion for Protective Order,

28   Golding will produce non-privileged documents in his possession, custody and control.

     Michael Golding, MD Response to Request for Production of Documents
     Case No.: 2-20-cv-00195DJC-CKD
     Page 1

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Golding objects to this request on the basis that it is overbroad. Golding objects that the request calls for attorney client privilege and attorney work product. Golding objects that the request is compound and vague and ambiguous.

Subject to and without waiving these objections, Golding responds as follows: Subject to the determination of the Court on Defendants' Motion for Protective Order, Golding will produce non-privileged documents in his possession, custody and control. Golding has communicated that he has documents related to the Golding Report and the second Golding Report, as well as materials provided to the agents for the federal court, as well as transcripts and orders of those proceedings. Golding has communicated that he will produce the redacted maters as ordered by the federal court in Coleman related to the first "Golding Report." The Court in Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the Second Golding Report. Golding has asked the parties for their positions regarding redactions absent the Colemen Court's order. Golding would also welcome an *in camera* review by this Court to determine which records should be produced by Dr. Golding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Golding objects to this request on the basis that it is overbroad. Golding objects that the request calls for attorney client privilege and attorney work product. Golding objects that the request is compound and vague and ambiguous.

Subject to and without waiving these objections, Golding responds as follows: Subject to the determination of the Court on Defendants' Motion for Protective Order, Golding will produce non-privileged documents in his possession, custody and control. Golding is also informed that CDCR was to produce these documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Golding objects to this request on the basis that it is overbroad. Golding objects that the request calls for attorney client privilege and attorney work product. Golding objects that the request is compound and vague and ambiguous. Golding objects to the extent that this request seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being

**A3**

required to produce said records by a Court. Subject to and without waiving these objections, Golding responds as follows:

Subject to the determination of the Court on Defendants' Motion for Protective Order, Golding will produce non-privileged documents in his possession, custody and control. Golding has communicated that he has documents related to the Golding Report and the second Golding Report, as well as materials provided to the agents for the federal court, as well as transcripts and orders of those proceedings. Golding has communicated that he will produce the redacted maters as ordered by the federal court in Coleman related to the first "Golding Report." The Court in Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the Second Golding Report. Golding has asked the parties for their positions regarding redactions absent the Colemen Court's order. Golding would also welcome an *in camera* review by this Court to determine which records should be produced by Dr. Golding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Golding objects to this request on the basis that it is overbroad. Golding objects that the request calls for attorney client privilege and attorney work product. Golding objects that the request is compound and vague and ambiguous. Golding objects to the extent that this request seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being required to produce said records by a Court. Subject to and without waiving these objections, Golding responds as follows:

Subject to the determination of the Court on Defendants' Motion for Protective Order, Golding will produce non-privileged documents in his possession, custody and control. Golding has communicated that he has documents related to the Golding Report and the second Golding Report, as well as materials provided to the agents for the federal court, as well as transcripts and orders of those proceedings. Golding has communicated that he will produce the redacted maters as ordered by the federal court in Coleman related to the first "Golding Report." The Court in Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the Second Golding Report. Golding has asked the parties for their positions regarding redactions absent the Colemen Court's order. Golding would also welcome an *in camera* review by this

1   Court to determine which records should be produced by Dr. Golding.

2   **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

3       Golding objects to this request on the basis that it is overbroad.  Golding objects that the

4   request calls for attorney client privilege and attorney work product.  Golding objects that the

5   request is compound and vague and ambiguous.  Golding objects to the extent that this request

6   seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being

7   required to produce said records by a Court. Subject to and without waiving these objections,

8   Golding responds as follows:

9       Subject to the determination of the Court on Defendants' Motion for Protective Order,

10  Golding will produce non-privileged documents in his possession, custody and control. Golding

11  has communicated that he has documents related to the Golding Report and the second Golding

12  Report, as well as materials provided to the agents for the federal court, as well as transcripts and

13  orders of those proceedings.  Golding has communicated that he will produce the redacted maters

14  as ordered by the federal court in Coleman related to the first "Golding Report." The Court in

15  Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the

16  Second Golding Report.  Golding has asked the parties for their positions regarding redactions

17  absent the Colemen Court's order.  Golding would also welcome an *in camera* review by this

18  Court to determine which records should be produced by Dr. Golding.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

20      Golding objects to this request on the basis that it is overbroad.  Golding objects that the

21  request calls for attorney client privilege and attorney work product.  Golding objects that the

22  request is compound and vague and ambiguous.  Golding objects to the extent that this request

23  seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being

24  required to produce said records by a Court. Subject to and without waiving these objections,

25  Golding responds as follows:

26      Subject to the determination of the Court on Defendants' Motion for Protective Order,

27  Golding will produce non-privileged documents in his possession, custody and control. Golding

28  has communicated that he has documents related to the Golding Report and the second Golding

Michael Golding, MD Response to Request for Production of Documents
Case No.: 2-20-cv-00195DJC-CKD
Page 4

Report, as well as materials provided to the agents for the federal court, as well as transcripts and orders of those proceedings. Golding has communicated that he will produce the redacted maters as ordered by the federal court in Coleman related to the first "Golding Report." The Court in Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the Second Golding Report. Golding has asked the parties for their positions regarding redactions absent the Colemen Court's order. Golding would also welcome an *in camera* review by this Court to determine which records should be produced by Dr. Golding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Golding objects to this request on the basis that it is overbroad. Golding objects that the request calls for attorney client privilege and attorney work product. Golding objects that the request is compound and vague and ambiguous. Golding objects to the extent that this request seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being required to produce said records by a Court. Subject to and without waiving these objections, Golding responds as follows:

Subject to the determination of the Court on Defendants' Motion for Protective Order, Golding will produce non-privileged documents in his possession, custody and control. Golding has communicated that he has documents related to the Golding Report and the second Golding Report, as well as materials provided to the agents for the federal court, as well as transcripts and orders of those proceedings. Golding has communicated that he will produce the redacted maters as ordered by the federal court in Coleman related to the first "Golding Report." The Court in Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the Second Golding Report. Golding has asked the parties for their positions regarding redactions absent the Colemen Court's order. Golding would also welcome an *in camera* review by this Court to determine which records should be produced by Dr. Golding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Golding objects to this request on the basis that it is overbroad. Golding objects that the request calls for attorney client privilege and attorney work product. Golding objects that the request is compound and vague and ambiguous. Golding objects to the extent that this request

1  seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being

2  required to produce said records by a Court. Subject to and without waiving these objections,

3  Golding responds as follows:

4  Subject to the determination of the Court on Defendants' Motion for Protective Order,

5  Golding will produce non-privileged documents in his possession, custody and control. Golding

6  has communicated that he has documents related to the Golding Report and the second Golding

7  Report, as well as materials provided to the agents for the federal court, as well as transcripts and

8  orders of those proceedings. Golding has communicated that he will produce the redacted maters

9  as ordered by the federal court in Coleman related to the first "Golding Report." The Court in

10  Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the

11  Second Golding Report. Golding has asked the parties for their positions regarding redactions

12  absent the Colemen Court's order. Golding would also welcome an *in camera* review by this

13  Court to determine which records should be produced by Dr. Golding.

14

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

16  Golding objects to this request on the basis that it is overbroad. Golding objects that the

17  request calls for attorney client privilege and attorney work product. Golding objects that the

18  request is compound and vague and ambiguous. Golding objects to the extent that this request

19  seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being

20  required to produce said records by a Court. Subject to and without waiving these objections,

21  Golding responds as follows:

22  Subject to the determination of the Court on Defendants' Motion for Protective Order,

23  Golding will produce non-privileged documents in his possession, custody and control. Golding

24  has communicated that he has documents related to the Golding Report and the second Golding

25  Report, as well as materials provided to the agents for the federal court, as well as transcripts and

26  orders of those proceedings. Golding has communicated that he will produce the redacted maters

27  as ordered by the federal court in Coleman related to the first "Golding Report." The Court in

28  Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the

A7

1  Second Golding Report. Golding has asked the parties for their positions regarding redactions

2  absent the Colemen Court's order. Golding would also welcome an *in camera* review by this

3  Court to determine which records should be produced by Dr. Golding.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

5      Golding objects to this request on the basis that it is overbroad. Golding objects that the

6  request calls for attorney client privilege and attorney work product. Golding objects that the

7  request is compound and vague and ambiguous. Golding objects to the extent that this request

8  seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being

9  required to produce said records by a Court. Golding is unclear as to the scope of this request and

10  would to meet and confer regarding the scope of this request.

11      Golding has communicated that he has documents related to the Golding Report and the

12  second Golding Report, as well as materials provided to the agents for the federal court, as well

13  as transcripts and orders of those proceedings. Golding has communicated that he will produce

14  the redacted maters as ordered by the federal court in Coleman related to the first "Golding

15  Report." The Court in Coleman has not ruled on the proper redactions, if any, for materials

16  produced to the Court in the Second Golding Report. Golding has asked the parties for their

17  positions regarding redactions absent the Colemen Court's order. Golding would also welcome

18  an *in camera* review by this Court to determine which records should be produced by Dr.

19  Golding.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

21      Golding objects to this request on the basis that it is overbroad. Golding objects that the

22  request calls for attorney client privilege and attorney work product. Golding objects that the

23  request is compound and vague and ambiguous. Golding objects to the extent that this request

24  seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being

25  required to produce said records by a Court. Subject to and without waiving these objections,

26  Golding responds as follows:

27      Subject to the determination of the Court on Defendants' Motion for Protective Order,

28  Golding will produce non-privileged documents in his possession, custody and control. Golding

1    has communicated that he has documents related to the Golding Report and the second Golding

2    Report, as well as materials provided to the agents for the federal court, as well as transcripts and

3    orders of those proceedings. Golding has communicated that he will produce the redacted maters

4    as ordered by the federal court in Coleman related to the first "Golding Report." The Court in

5    Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the

6    Second Golding Report. Golding has asked the parties for their positions regarding redactions

7    absent the Colemen Court's order. Golding would also welcome an *in camera* review by this

8    Court to determine which records should be produced by Dr. Golding.

9    **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

10    Golding objects to this request on the basis that it is overbroad. Golding objects that the

11    request calls for attorney client privilege and attorney work product. Golding objects that the

12    request is compound and vague and ambiguous. Golding objects to the extent that this request

13    seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being

14    required to produce said records by a Court. Subject to and without waiving these objections,

15    Golding responds as follows:

16    Subject to the determination of the Court on Defendants' Motion for Protective Order,

17    Golding will produce non-privileged documents in his possession, custody and control. Golding

18    has communicated that he has documents related to the Golding Report and the second Golding

19    Report, as well as materials provided to the agents for the federal court, as well as transcripts and

20    orders of those proceedings. Golding has communicated that he will produce the redacted maters

21    as ordered by the federal court in Coleman related to the first "Golding Report." The Court in

22    Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the

23    Second Golding Report. Golding has asked the parties for their positions regarding redactions

24    absent the Colemen Court's order. Golding would also welcome an *in camera* review by this

25    Court to determine which records should be produced by Dr. Golding.

26    **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

27    Golding objects to this request on the basis that it is overbroad. Golding objects that the

28    request calls for attorney client privilege and attorney work product. Golding objects that the

request is compound and vague and ambiguous. Golding objects to the extent that this request seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being required to produce said records by a Court. Subject to and without waiving these objections, Golding responds as follows:

Subject to the determination of the Court on Defendants' Motion for Protective Order, Golding will produce non-privileged documents in his possession, custody and control. Golding has communicated that he has documents related to the Golding Report and the second Golding Report, as well as materials provided to the agents for the federal court, as well as transcripts and orders of those proceedings. Golding has communicated that he will produce the redacted maters as ordered by the federal court in Coleman related to the first "Golding Report." The Court in Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the Second Golding Report. Golding has asked the parties for their positions regarding redactions absent the Colemen Court's order. Golding would also welcome an *in camera* review by this Court to determine which records should be produced by Dr. Golding.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Golding objects to this request on the basis that it is overbroad. Golding objects that the request calls for attorney client privilege and attorney work product. Golding objects that the request is compound and vague and ambiguous. Golding objects to the extent that this request seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being required to produce said records by a Court. Subject to and without waiving these objections, Golding responds as follows:

Subject to the determination of the Court on Defendants' Motion for Protective Order, Golding will produce non-privileged documents in his possession, custody and control. Golding has communicated that he has documents related to the Golding Report and the second Golding Report, as well as materials provided to the agents for the federal court, as well as transcripts and orders of those proceedings. Golding has communicated that he will produce the redacted maters as ordered by the federal court in Coleman related to the first "Golding Report." The Court in Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the

Michael Golding, MD Response to Request for Production of Documents
Case No.: 2-20-cv-00195DJC-CKD
Page 9

1 Second Golding Report. Golding has asked the parties for their positions regarding redactions

2 absent the Colemen Court's order. Golding would also welcome an *in camera* review by this

3 Court to determine which records should be produced by Dr. Golding.

4 **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

5 Golding objects to this request on the basis that it is overbroad. Golding objects that the

6 request calls for attorney client privilege and attorney work product. Golding objects that the

7 request is compound and vague and ambiguous. Golding objects to the extent that this request

8 seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being

9 required to produce said records by a Court. Subject to and without waiving these objections,

10 Golding responds as follows:

11 Subject to the determination of the Court on Defendants' Motion for Protective Order,

12 Golding will produce non-privileged documents in his possession, custody and control. Golding

13 has communicated that he has documents related to the Golding Report and the second Golding

14 Report, as well as materials provided to the agents for the federal court, as well as transcripts and

15 orders of those proceedings. Golding has communicated that he will produce the redacted maters

16 as ordered by the federal court in Coleman related to the first "Golding Report." The Court in

17 Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the

18 Second Golding Report. Golding has asked the parties for their positions regarding redactions

19 absent the Colemen Court's order. Golding would also welcome an *in camera* review by this

20 Court to determine which records should be produced by Dr. Golding.

21 **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

22 Golding objects to this request on the basis that it is overbroad. Golding objects that the

23 request calls for attorney client privilege and attorney work product. Golding objects that the

24 request is compound and vague and ambiguous. Golding objects to the extent that this request

25 seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being

26 required to produce said records by a Court. Subject to and without waiving these objections,

27 Golding responds as follows:

28 Subject to the determination of the Court on Defendants' Motion for Protective Order,

Golding will produce non-privileged documents in his possession, custody and control. Golding has communicated that he has documents related to the Golding Report and the second Golding Report, as well as materials provided to the agents for the federal court, as well as transcripts and orders of those proceedings. Golding has communicated that he will produce the redacted maters as ordered by the federal court in Coleman related to the first "Golding Report." The Court in Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the Second Golding Report. Golding has asked the parties for their positions regarding redactions absent the Colemen Court's order. Golding would also welcome an *in camera* review by this Court to determine which records should be produced by Dr. Golding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Golding objects to this request on the basis that it is overbroad. Golding objects that the request calls for attorney client privilege and attorney work product. Golding objects that the request is compound and vague and ambiguous. Golding objects to the extent that this request seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being required to produce said records by a Court. Subject to and without waiving these objections, Golding responds as follows:

Subject to the determination of the Court on Defendants' Motion for Protective Order, Golding will produce non-privileged documents in his possession, custody and control. Golding has communicated that he has documents related to the Golding Report and the second Golding Report, as well as materials provided to the agents for the federal court, as well as transcripts and orders of those proceedings. Golding has communicated that he will produce the redacted maters as ordered by the federal court in Coleman related to the first "Golding Report." The Court in Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the Second Golding Report. Golding has asked the parties for their positions regarding redactions absent the Colemen Court's order. Golding would also welcome an *in camera* review by this Court to determine which records should be produced by Dr. Golding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18-24:**

Request Nos. 18-24 were omitted from the subpoena and thus, Dr. Golding is unable to

respond to these requests, as they were not provided and served on him. Dr. Golding maintains all privileges and objections to these requests.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 25:

Golding objects to this request on the basis that it is overbroad. Golding objects that the request calls for attorney client privilege and attorney work product. Golding objects that the request is compound and vague and ambiguous. Golding objects to the extent that this request seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being required to produce said records by a Court. Golding would like to meet and confer regarding the scope of this request.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 26:

Golding objects that the request calls for attorney client privilege and attorney work product. Subject to and without waiving these objections, Golding responds as follows:

Subject to the determination of the Court on Defendants' Motion for Protective Order, Golding will produce non-privileged documents in his possession, custody and control. Golding possesses 546 pages of documents (with duplicates) provided to him by CDCR on December 7, 2023, responsive to this request.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 26:

Golding objects to this request on the basis that it is overbroad. Golding objects that the request calls for attorney client privilege and attorney work product. Golding objects that the request is compound and vague and ambiguous. Golding objects to the extent that this request seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being required to produce said records by a Court. Subject to and without waiving these objections, Golding responds as follows:

Subject to the determination of the Court on Defendants' Motion for Protective Order, Golding would like to meet and confer about the scope of this request. Golding has communicated that he has documents related to the Golding Report and the second Golding Report, as well as materials provided to the agents for the federal court, as well as transcripts and orders of those proceedings. Golding has communicated that he will produce the redacted maters

Michael Golding, MD Response to Request for Production of Documents
Case No.: 2-20-cv-00195DJC-CKD
Page 12

1  as ordered by the federal court in Coleman related to the first "Golding Report." The Court in

2  Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the

3  Second Golding Report. Golding has asked the parties for their positions regarding redactions

4  absent the Colemen Court's order. Golding has also communicated his own personnel

5  complaints. It is unclear from the request which violations of Coleman mandates are being

6  sought for what time period. Golding would also welcome an *in camera* review by this Court to

7  determine which records should be produced by Dr. Golding.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

9          Golding objects to this request on the basis that it is overbroad. Golding objects that the

10  request calls for attorney client privilege and attorney work product. Golding objects that the

11  request is compound and vague and ambiguous. Golding objects to the extent that this request

12  seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being

13  required to produce said records by a Court. Golding would also like to meet and confer

14  regarding the time frame and scope of this request. Subject to and without waiving these

15  objections, Golding responds as follows:

16          Subject to the determination of the Court on Defendants' Motion for Protective Order,

17  Golding will produce non-privileged documents in his possession, custody and control. Golding

18  has communicated that he has documents related to the Golding Report and the second Golding

19  Report, as well as materials provided to the agents for the federal court, as well as transcripts and

20  orders of those proceedings. Golding has communicated that he will produce the redacted maters

21  as ordered by the federal court in Coleman related to the first "Golding Report." The Court in

22  Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the

23  Second Golding Report. Golding has asked the parties for their positions regarding redactions

24  absent the Colemen Court's order. Golding would also welcome an *in camera* review by this

25  Court to determine which records should be produced by Dr. Golding.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

27          Golding objects to this request on the basis that it is overbroad. Golding objects that the

28  request calls for attorney client privilege and attorney work product. Golding objects that the

request is compound and vague and ambiguous. Golding objects to the extent that this request seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being required to produce said records by a Court. Golding would also like to meet and confer regarding the time frame and scope of this request. Subject to and without waiving these objections, Golding responds as follows:

Subject to the determination of the Court on Defendants' Motion for Protective Order, Golding will produce non-privileged documents in his possession, custody and control. Golding has communicated that he has documents related to the Golding Report and the second Golding Report, as well as materials provided to the agents for the federal court, as well as transcripts and orders of those proceedings. Golding has communicated that he will produce the redacted maters as ordered by the federal court in Coleman related to the first "Golding Report." The Court in Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the Second Golding Report. Golding has asked the parties for their positions regarding redactions absent the Colemen Court's order. Golding would also welcome an *in camera* review by this Court to determine which records should be produced by Dr. Golding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Golding objects to this request on the basis that it is overbroad. Golding objects that the request calls for attorney client privilege and attorney work product. Golding objects that this request calls for a legal conclusion. Golding objects that the request is compound and vague and ambiguous. Golding objects to the extent that this request seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being required to produce said records by a Court. Golding would also like to meet and confer regarding the time frame and scope of this request. Subject to and without waiving these objections, Golding responds as follows:

Subject to the determination of the Court on Defendants' Motion for Protective Order, Golding will produce non-privileged documents in his possession, custody and control. Golding has communicated that he has documents related to the Golding Report and the second Golding Report, as well as materials provided to the agents for the federal court, as well as transcripts and orders of those proceedings. Golding has communicated that he will produce the redacted maters

Michael Golding, MD Response to Request for Production of Documents
Case No.: 2-20-cv-00195DJC-CKD
Page 14

as ordered by the federal court in Coleman related to the first "Golding Report." The Court in Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the Second Golding Report. Golding has asked the parties for their positions regarding redactions absent the Colemen Court's order. Golding would also welcome an *in camera* review by this Court to determine which records should be produced by Dr. Golding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32 (erroneously numbered 31):**

Golding objects to this request on the basis that it is overbroad. Golding objects that the request calls for attorney client privilege and attorney work product. Golding objects that this request calls for a legal conclusion. Golding objects that the request is compound and vague and ambiguous. Golding objects to the extent that this request seeks confidential patient information other than Mr. Schmitz, without Dr. Golding being required to produce said records by a Court. Golding would also like to meet and confer regarding the time frame and scope of this request. Subject to and without waiving these objections, Golding responds as follows:

Subject to the determination of the Court on Defendants' Motion for Protective Order, Golding will produce non-privileged documents in his possession, custody and control. Golding has communicated that he has documents related to the Golding Report and the second Golding Report, as well as materials provided to the agents for the federal court, as well as transcripts and orders of those proceedings. Golding has communicated that he will produce the redacted maters as ordered by the federal court in Coleman related to the first "Golding Report." The Court in Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the Second Golding Report. Golding has asked the parties for their positions regarding redactions absent the Colemen Court's order. Golding would also welcome an *in camera* review by this Court to determine which records should be produced by Dr. Golding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Golding objects to this request on the basis that it is overbroad. Golding objects that the request calls for attorney client privilege and attorney work product. Golding objects that this request calls for a legal conclusion. Golding objects that the request is compound and vague and ambiguous. Golding objects to the extent that this request seeks confidential patient information

Michael Golding, MD Response to Request for Production of Documents
Case No.: 2-20-cv-00195DJC-CKD
Page 15

1  other than Mr. Schmitz, without Dr. Golding being required to produce said records by a Court.

2  Golding would also like to meet and confer regarding the time frame and scope of this request.

3  Subject to and without waiving these objections, Golding responds as follows:

4       Subject to the determination of the Court on Defendants' Motion for Protective Order,

5  Golding will produce non-privileged documents in his possession, custody and control. Golding

6  has communicated that he has documents related to the Golding Report and the second Golding

7  Report, as well as materials provided to the agents for the federal court, as well as transcripts and

8  orders of those proceedings.  Golding has communicated that he will produce the redacted maters

9  as ordered by the federal court in Coleman related to the first "Golding Report." The Court in

10 Coleman has not ruled on the proper redactions, if any, for materials produced to the Court in the

11 Second Golding Report.  Golding has asked the parties for their positions regarding redactions

12 absent the Colemen Court's order.  Golding would also welcome an *in camera* review by this

13 Court to determine which records should be produced by Dr. Golding.

14

15 Dated: December 8, 2023                    Respectfully submitted,

16                                            LAW OFFICES OF WENDY MUSELL PC

17

18                                            Wendy E. Musell
                                             Attorneys for Michael Golding, MD
19

20

21

22

23

24

25

26

27

28

A17

**PROOF OF SERVICE**

I am employed in the City of Oakland and County of Alameda, State of California in the office of a member of the bar of this Court whose direction the following service was made. I am over the age of 18 and not a party to this action. My business address is The Law Offices of Wendy Musell PC, 66 Franklin Street, Suite 300, Oakland, CA 94607. On the date set forth below, I served the following document(s) described as:

**1. Michael Golding, MD Response to Document Subpoena**

On the parties in this action as follows:

Tami Martin <tami.martin@mcnamaralaw.com>
Dianne Mallia deedamallia@gmail.com>
tsfoot49@gmail.com,
Maria Zhurnalova-Juppunov <maria.zhurnalova-juppunov@mcnamaralaw.com>,
Peter Hirsig <peter.hirsig@mcnamaralaw.com>,
Daniel Mayer <daniel.mayer@mcnamaralaw.com>,
Liesl Swartwood <liesl.swartwood@mcnamaralaw.com>,
Heather Permison <heather.permison@mcnamaralaw.com>,
"Nicholas R. Newman" <Nicholas.Newman@mcnamaralaw.com>

**[ X ] [BY EMAIL]** By agreement of the parties, I caused each document to be sent via email in Adobe "PDF" format to the following email address(es) and each transmission was complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on December 8, 2023 at Alameda County, California.

_____

Maraka Willits

EXH B

1   THOMAS J. SCHMITZ
2   DIANNE MALLIA
    404 Atkinson St.
3   Roseville, CA 95678
    (707) 694-8158
4   tsfoot49@gmail.com
5   deedamallia@gmail.com
    PRO SE
6
                    **UNITED STATES DISTRICT COURT**
7
                    **EASTERN DISTRICT OF CALIFORNIA**
8
9   THOMAS SCHMITZ, et al.,                    NO. 2:20-cv00195-DJC-CKD

10                              Plaintiffs,

11                      vs.                    PLAINTIFF DIANNE MALLIA's
    A ASMAN, et al.,                           INTERROGATORIES TO
12                                             DEFENDANT DIANA TOCHE, SET
                                               ONE
13                                             COMPLAINT FILED: 1/27/2020
                                Defendants.
14

15

16

17

18

19

20

21  PROPOUNDING PARTY:          Plaintiff DIANNE MALLIA, individually

22

23  RESPONDING PARTY:           Defendant DIANA TOCHE

24

25  SET NUMBER:      ONE
    In accordance with Rule 33 of the Federal Rules of Civil Procedure, Plaintiff requests that
26  Defendant DIANA TOCHE answer the following interrogatories under oath, and that the
    answers be signed by the person making them and be served on plaintiffs within 30 days of
27  service of these interrogatories.

28
                                                                                    1

If you cannot answer the following interrogatories in full, after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions.

These interrogatories shall be deemed continuing, so as to require supplemental answers as new and different information materializes.

## I. DEFINITIONS AND SCOPE

### A. DEFINITIONS

1. The terms "RESPONDING PARTY," "YOU," or "YOUR" refer to, without limitation, Defendant DIANA TOCHE.

2. As used herein, "PLAINTIFFS" shall refer to Estate of WILLIAM SCHMITZ, deceased, by and through THOMAS J. SCHMITZ and DIANNE MALLIA, as Successors in Interest; THOMAS SCHMITZ, Individually; and DIANNE MALLIA, Individually.

3. "RELATE" or "RELATING TO" means referring, regarding, describing, referencing, or pertaining, supporting, or refuting, in any manner whatsoever, in whole or in part, directly or indirectly, implicitly or explicitly.

4. "Any" and "All," as used herein, shall include "each" and "every" and are not to be construed to limit a request.

5. "INCLUDING" means "including, but not limited to," and is not to be construed to limit a request.

6. "COLEMAN" refers to the "COLEMAN v. Wilson "(now Coleman v. Newsom) case. AS described on CDCR.ca.gov website. "On September 13, 1995, a federal court in Sacramento ruled that the CDCR is not providing adequate mental health care. The ruling was in a case called *Coleman v. Wilson* (now *Coleman v. Newsom)*. The case covers all prisoners with serious mental disorders housed in California state prisons. The case continues today."

7. In interpreting these requests, any masculine, feminine or neutral term includes all other genders; the singular includes the plural and vice versa; the words "or," "and" and "and/ or," shall be read in the conjunctive and in the disjunctive whenever they appear, and shall be read to bring within the scope of request the broadest amount of information.

8. If in answering these interrogatories YOU claim any ambiguity, identify in YOUR response the language YOU consider ambiguous and state the interpretation YOU are using in responding.

## III. INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all of YOUR duties while Undersecretary of Health Care Services for CDCR.

**INTERROGATORY NO. 2:**

Identify all of YOUR responsibilities relating to enacting the *Coleman* mandates while Undersecretary of Health Care Services for CDCR.

**INTERROGATORY NO. 3:**

Identify all information YOU received relating to CDCR's inability to reach a vacancy rate for mental health providers of below 10% at Mule Creek State Prison during YOUR time as Undersecretary of Health Care Services for CDCR.

**INTERROGATORY NO. 4:**

Identify ALL proposals YOU reviewed relating to decreasing mental health provider vacancies from January 1, 2010 until January 30, 2019.

**INTERROGATORY NO. 5:**

Identify ALL information YOU received from Dr. Golding relating to Psychiatrists within CDCR being unable to comply with the MHSDS Program Guide.

**INTERROGATORY NO. 6:**

Identify all documents relating to the duties of individuals who played a role in hiring of mental health providers at Mule Creek State Prison between January 1, 2010 and January 22, 2019.

**INTERROGATORY NO. 7:**

Identify ALL documents relating to the CDCR's response to the whistleblower reports of Dr.

3

Michael Golding in the *Coleman* litigation.

INTERROGATORY NO. 8:

Identify ALL allegations that YOU disagree with from the whistleblower reports of Dr.
Michael Golding in the *Coleman* litigation.

INTERROGATORY NO. 9:

Identify ALL documents relating to the CDCR's response to the March of 2015, Receiver J.
Clark Kelso report. (BATES PLAINTIFFS 6357)

INTERROGATORY **NO. 10:**

Identify ALL documents relating to the CDCR's response to the July 2018 OIG report of Mule
Creek State Prison. (BATES PLAINTIFFS 5752-5871)

INTERROGATORY **NO. 11:**

As a Defendant in the *Coleman* case were you required to comply with the court orders?

INTERROGATORY **NO. 12:**

As one of YOUR duties  described in YOUR duty statement ( BATES DEF009363) was to
address ethical concerns, identify ALL documents relating to ethical concerns brought to YOU by
subordinates.

INTERROGATORY NO. 13:

As one of YOUR duties  described in YOUR duty statement (BATES DEF009363) was to
ensure that the Department delivers care consistent with all constitutional mandates and in
conformance with federal court orders and state laws, identify ALL documents relating to the
constitutional mandates CDCR was required to be consistent with.

4

INTERROGATORY NO. 14:

As one of YOUR duties  described in YOUR duty statement (BATES DEF009363) was to ensure that the Department delivers care consistent with all constitutional mandates and in conformance with federal court orders and state laws,  identify ALL documents relating to the federal court orders CDCR was to be in conformance with.

INTERROGATORY NO. 15:

As one of YOUR duties  described in YOUR duty statement (BATES DEF009363) was to ensure that the Department delivers care consistent with all constitutional mandates and in conformance with federal court orders and state laws,  identify ALL documents relating to the state laws  CDCR was to be in conformance with.

INTERROGATORY NO. 16:

Identify ALL documents regarding YOUR knowledge of mental health vacancies at MULE CREEK STATE PRISON  from January 1, 2015 to January 21, 2019.

INTERROGATORY NO. 17:

Identify ALL documents regarding YOUR knowledge of mental health vacancies at MULE CREEK STATE PRISON  from January 1, 2015 to January 21, 2019.

INTERROGATORY NO. 18:

As one of YOUR duties  described in YOUR duty statement (BATES DEF009363) was to ensure that the Department delivers care consistent with all constitutional mandates and in conformance with federal court orders and state laws, identify ALL time periods during YOUR time as Undersecretary of Health Care Services for CDCR that YOU believe mental health care at Mule Creek State Prison  was not consistent with all constitutional mandates.

INTERROGATORY NO. 19:

As one of YOUR duties  described in YOUR duty statement (BATES DEF009363) was to ensure that the Department delivers care consistent with all constitutional mandates and in conformance with federal court orders and state laws, identify ALL time periods during YOUR time as Undersecretary of Health Care Services for CDCR that  YOU believe mental health care at Mule Creek State Prison  was not in conformance with all federal court orders.

INTERROGATORY NO. 20:

As one of YOUR duties  described in YOUR duty statement (BATES DEF009363) was to ensure that the Department delivers care consistent with all constitutional mandates and in conformance with federal court orders and state laws, identify ALL time periods during YOUR time as Undersecretary of Health Care Services for CDCR that  YOU believe mental health care at Mule Creek State Prison  was not in conformance with all state laws.

Dated: October 7, 2023                    By,

*Dianne Mallia*

Dianne Mallia

EX#C

1   PETER J. HIRSIG (State Bar No. 197993)
    peter.hirsig@mcnamaralaw.com
2   MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
    maria.zhurnalova-juppunov@mcnamaralaw.com
3   DANIEL R. MAYER (State Bar No. 300077)
    daniel.mayer@mcnamaralaw.com
4   McNAMARA, AMBACHER, WHEELER,
    HIRSIG & GRAY LLP
5   639 Kentucky Street
    Fairfield, CA 94533-5530
6   Telephone: (707) 427-3998
    Facsimile:  (707) 427-0268

7

8   Attorneys for Defendants
    ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
9   BRIZENDINE, BROCKENBOROGH, CEBALLOS,
    HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
10  PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
    M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11              UNITED STATES DISTRICT COURT

12              EASTERN DISTRICT OF CALIFORNIA

13

14  Estate of WILLIAM SCHMITZ, deceased,          Case No. 2:20-CV-00195-JAM-CKD
    by and through THOMAS J. SCHMITZ
15  and DIANNE MALLIA, as Successors in           **DEFENDANT DIANA TOCHE'S**
    Interest; THOMAS SCHMITZ,                     **RESPONSES TO PLAINTIFF'S SPECIAL**
16  Individually; and DIANNE MALLIA,              **INTERROGATORIES, SET ONE**
    Individually,
17                                                Action Filed:  7/16/2020
                Plaintiffs,
18
         vs.
19
    ASMAN et al,
20
                Defendants.
21

22  PROPOUNDING PARTY:   Plaintiff DIANNE MALLIA, individually

23  RESPONDING PARTY:    Defendant DIANA TOCHE

24  SET NUMBER:          ONE

25                   **PRELIMINARY STATEMENT**

26       These responses are made solely for the purpose of this action.  Each response is subject

27  to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

28  all other objections and grounds that would require the exclusion of any statements herein, if any

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    requests were asked for, or if any statement contained herein were made by a witness present and

2    testifying in court, all of which objections and grounds are reserved and may be interposed at the

3    time of trial.

4        Responding party is responding to all of the requests to the extent that information has

5    become known to her. However, responding party's discovery, investigation, and preparation for

6    trial of this matter has not been completed as of the date of these responses and, therefore,

7    responding party does not purport to state anything more than information currently known and

8    discovered by her.

9        Responding party reserves the right to continue discovery and investigation in this matter

10   regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

11   herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

12   are responded to fully and so far as information is currently available to responding party; and

13   responding party is not precluded from presenting at trial information discovered after the date of

14   these responses.

15       This Preliminary Statement is incorporated into each and every response set forth below.

## RESPONSES

17   **RESPONSE TO INTERROGATORY NO. 1:**

18       Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

19   and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

20   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

21   the future.

22   **RESPONSE TO INTERROGATORY NO. 2:**

23       Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

24   and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

25   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

26   the future.

27   **RESPONSE TO INTERROGATORY NO. 3:**

28       Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

DEF. TOCHE'S RESPONSES TO PL'S                    2
INTERROGATORIES, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

2    ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

3    the future.

4    **RESPONSE TO INTERROGATORY NO. 4**

5        Objection. This interrogatory is burdensome, oppressive, harassing, vague, and ambiguous,

6    and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

7    ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

8    the future.

9    **RESPONSE TO INTERROGATORY NO. 5**

10       Objection. This interrogatory is burdensome, oppressive, harassing, vague, and ambiguous

11   as to time, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery

12   remains ongoing, and Defendant reserves the right to amend or supplement this response as

13   appropriate in the future.

14   **RESPONSE TO INTERROGATORY NO. 6:**

15       Objection. This interrogatory is burdensome, oppressive, harassing, vague, and ambiguous,

16   and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

17   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

18   the future.

19   **RESPONSE TO INTERROGATORY NO. 7:**

20       Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

21   including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

22   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

23   as appropriate in the future.

24   **RESPONSE TO INTERROGATORY NO. 8:**

25       Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

26   including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

27   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

28   as appropriate in the future.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1  **RESPONSE TO INTERROGATORY NO. 9:**

2      Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

3  and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

4  ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

5  the future.

6  **RESPONSE TO INTERROGATORY NO. 10:**

7      Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

8  and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

9  ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

10  the future.

11  **RESPONSE TO INTERROGATORY NO. 11:**

12      Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

13  and not reasonably calculated to lead to the discovery of admissible evidence. The interrogatory is

14  phrased in such a way that it amounts to a request for admission. Discovery remains ongoing, and

15  Defendant reserves the right to amend or supplement this response as appropriate in the future.

16  **RESPONSE TO INTERROGATORY NO. 12:**

17      Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

18  including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

19  Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

20  as appropriate in the future.

21  **RESPONSE TO INTERROGATORY NO. 13:**

22      Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

23  including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

24  Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

25  as appropriate in the future.

26  **RESPONSE TO INTERROGATORY NO. 14:**

27      Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

28  including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

2    as appropriate in the future.

3    **RESPONSE TO INTERROGATORY NO. 15:**

4          Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

5    including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

6    Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

7    as appropriate in the future.

8    **RESPONSE TO INTERROGATORY NO. 16:**

9          Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

10   and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

11   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

12   the future.

13   **RESPONSE TO INTERROGATORY NO. 17:**

14         Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

15   and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

16   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

17   the future.

18   **RESPONSE TO INTERROGATORY NO. 18:**

19         Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

20   including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

21   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

22   as appropriate in the future.

23   **RESPONSE TO INTERROGATORY NO. 19:**

24         Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

25   including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

26   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

27   as appropriate in the future.

28   **RESPONSE TO INTERROGATORY NO. 20:**

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

2    including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

3    Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

4    as appropriate in the future.

5    Dated: December 14, 2023          MCNAMARA, AMBACHER, WHEELER,
                                        HIRSIG & GRAY LLP

6

7

                                       By:   _Daniel Mayer_
8                                            Peter J. Hirsig
                                             Maria Zhurnalova-Juppunov
9                                            Daniel R. Mayer
                                             Attorneys for Defendants ADAMS, ANDALUZ,
10                                           ASHE, ASMAN, BRANMAN, BRIZENDINE,
                                             BROCKENBOROGH, CEBALLOS, HEATLEY, J.
11                                           JOHNSON, R. JOHNSON, LEIDNER, PONCIANO,
                                             RAMKUMAR, REKART, ROBINSON, RUDAS, M.
12                                           SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF. TOCHE'S RESPONSES TO PL'S                 6
INTERROGATORIES, SET ONE

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**

## OFFICE OF THE SECRETARY

## UNDERSECRETARY, HEALTH CARE SERVICES

### DUTY STATEMENT

Under the direction of the Secretary and in collaboration with both the Undersecretary, Operations and Undersecretary of Administration, the Undersecretary, Health Care Services, administers and oversees the statewide adult Mental Health Services Delivery System, Dental Health Services Program, and the Division of Juvenile Justice health care systems.   The Undersecretary will provide leadership in maintaining and continuing the improvements made in the delivery of health care services to offenders in the prison system and provides leadership to both the Director of the Division of Health Care Policy and Administration and Director of the Division of Healthcare Operations.

The Undersecretary, Health Care Services, addresses health care quality, staffing and legal issues as well as ethical concerns, custody and health care collaboration and ensuring the cost-effective utilization of resources.

Typical duties include:

- Oversight of the Department's statewide adult Mental Health Services Delivery System and Dental Health Services Program as well as the entire health care system for the Division of Juvenile Justice, determining health care priorities, plans, policies, and programs.  Ensures that the Department delivers care consistent with all constitutional mandates and in conformance with federal court orders and state laws.

- Developing and directing the implementation of initiatives that will be sustainable and improve the efficiency of the prison health care system.  Ensuring future infrastructure has adequate treatment space to increase the efficiency of health care services provided to offenders.

- Overseeing the allocation of resources to address programmatic needs and/or deficiencies across multiple programs; balancing the needs of a variety of institutions presenting a complex network of clinical missions to ensure offenders are classified appropriately to address their individual health care needs.

- Serving as a member of the Secretary's Cabinet and representing the Department on issues involving sensitive and complex mental, dental, and juvenile health care concerns with a variety of stakeholder groups including the Department of Finance, the Legislature, the Legislative Analyst, the Bureau of State Audits, regulatory agencies, the courts, private health care organizations, the media, the unions, and others.

- Works closely with the Undersecretary, Operations and the Undersecretary of Administration to implement and execute departmental policies consistent with the direction of the Administration.  The Undersecretary, Health Care Services provides the executive leadership necessary for the mutual success of both health care and custody operations to provide improvements to health care within the prison system.

Rev. 07/23/2019



| Rank | Post Description | Name | PERNR | Start | Signature Start | End | Signature End | Lunch | Code |
|------|------------------|------|-------|-------|-----------------|-----|---------------|-------|------|
| Sergeant | 220300 B PROGRAM SGT | Dobler, T. P | 62338 | 0600 | | 1400 | | | W_VAC |
| | | | | | | | | | |
| Sergeant | 220305 RS203 B YARD SGT | Baskerville, E. C | 52609 | 0600 | | 1400 | | | |
| | | Snyder | 77611 | 0600 | | 14 | | | SSW |
| Sergeant | 220310 RS206 B PROGRAM SGT EOP | Reynoso, J. L | 56817 | 0700 | | 1500 | | | |
| | | | | 0600 | | 1400 | | | |
| Officer | 221855 B 6 CNTRL | Lee, L. C | 94608 | 0600 | | 1400 | | | |
| | | | | | | | | | |
| Officer | 221875 RO222 B 6 FLR 1 | Gilbert, J | 91604 | 0600 | | 1400 | | | |
| | | | | | | | | | |
| Officer | 221885 RO249 B 6 FLR 2 | Geen, L. A | 97807 | 0600 | | 1400 | | | |
| | | | | | | | | | |
| Officer | 221915 RO220 B 7 CNTRL | Abukalam, M | 91836 | 0600 | | 1400 | | | |
| | | | | | | | | | |
| Officer | 221935 B 7 FLR 1 | Rutherford, D | 68048 | 0600 | | 1400 | | | |
| | | | | | | | | | |
| Officer | 221945 B 7 FLR 2 | Sysouvanh, C. K | 101770 | 0600 | | 1400 | | | |
| | | | | | | | | | |
| Officer | 221975 B 8 CNTRL | Gonzales, D. G | 54550 | 0600 | | 1400 | | | |
| | | | | | | | | | |

**Comments:**

RECEIVED JAN 30 2019

**Supervisor Check-In Print / Signature:** x

**Supervisor Check-Out Print / Signature:** x

**Final Review Print / Signature:** x

**Administrator Review Print / Signature:** x

Date & Time Printed:  01/21/2019   04:26

Page 1 of 4

Version Revised 6/25/2014

DEF009081



DEF009082

| Rank | Post Description | Name | PERNR | Start | Signature Start | End | Signature End | Lunch | Code |
|------|-----------------|------|-------|-------|-----------------|-----|---------------|-------|------|
| Officer | 221995 RO236 B 8 FLR 1 | Joyce, J. B | 56197 | 0600 | | 1400 | | | |
| Officer | 222005 B 8 FLR 2 | Asman, A. | 91547 | 0600 | | 1400 | | | |
| Officer | 222020 B 9 CNTRL | Saxton, E. | 110750 | 0600 | E S | 1400 | E. S | | |
| Officer | 222040 RO221 B 9 FLR 1 | Salmond, K. J | 101670 | 0600 | | 1400 | | | |
| Officer | 222050 B 9 FLR 2 | Tsui, D. | 91749 | 0600 | | 1400 | | | |
| Officer | 222065 RO253 B 10 CNTRL | Castaneda, G. G | 90098 | 0600 | | 1400 | | | |
| Officer | 222085 B 10 FLR 1 | Mclelland, C. J | 61782 | 0600 | | 1400 | | | |
| Officer | 222095 B 10 FLR 2 | Espana, J | 105398 | 0600 | | 1400 | | | |
| Officer | 222155 B SEC PAT 1 | Smith, A | 91659 | 0600 | | 1400 | | | |
| Officer | 222160 B SEC PAT 2 | Parks IV, S. W | 69011 | 0600 | | 1400 | | | |

**Comments:**

RECEIVED JAN 18 2019

Supervisor Check-In Print / Signature:  x

Supervisor Check-Out Print / Signature:  x

Final Review Print / Signature:  x

Administrator Review Print / Signature:  x

Date & Time Printed:  01/21/2019   04.26          Page 2 of 4          Version Revised 6/26/2014

# MCSP - Mule Creek State Prison
Monday, January 21, 2019



| Rank | Post Description | Name | PERNR | Start | Signature Start | End | Signature End | Lunch | Code |
|------|-----------------|------|-------|-------|-----------------|-----|---------------|-------|------|
| Officer | 222165 RO228 B SEC PAT 3 | McKinnon, K. S | 54864 | 0600 | | 1400 | | | |
| Officer | 222170 RO208 B SEC PAT 4 | Radu, D. | 100826 | 0600 | | 1400 | | | |
| Officer | 222205 RO227 B YARD 1 | Mohr, B. | 115771 | 0600 | | 1400 | | | |
| Officer | 222215 B YARD 2 | Larsen, C. | 98758 | 0600 | | 1400 | | | |
| Officer | 222220 RO282 B YARD 3 | Barajas, P. A | 92353 | 0600 | | 1400 | | | |
| Officer | 222230 B GYM SEC | Baker, S. P | 91982 | 0600 | | 1600 | | | |
| Officer | 224001 RO273 HCA B Cinc 1 | Landreth, R. | 88903 | 0600 | | 1400 | | | |
| Officer | 224011 HCA B ESCRT | Bell, S. T | 58663 | 0600 | | 1400 | | | |
| Officer | 224181 HCA B B ESCRT EOP 1 | Lundgren, M. J | 61862 | 0600 | | 1400 | | | |
| Officer | 224182 RO226 HCA B B ESCRT EOP 2 | Decker, R. | 88902 | 0600 | | 1400 | | | |

**Comments:**

RECEIVED FEB 2 0 2019

RECEIVED JAN ? ? '19

**Supervisor Check-In Print / Signature:**  x

**Supervisor Check-Out Print / Signature:**  x

**Final Review Print / Signature:**  x

**Administrator Review Print / Signature:**  x

**EX4 F**

## MULE CREEK STATE PRISON
## Ione, California

## POST ORDER

**REVISION DATE:**          MARCH 2018

**DIVISION:**               PROGRAMS/HOUSING
**POST DESCRIPTION:**       B 8 FLR 2

**POST NUMBER:**            222005
**WATCH:**                  SECOND WATCH
**HOURS OF WORK:**          0600-1400 HOURS, SEVEN DAYS A WEEK
                            NO LUNCH PERIOD PROVIDED
**REGULAR DAYS OFF:**       TUESDAY/ WEDNESDAY
**SUPERVISION:**
**DIRECT:**                 FACILITY "B" PROGRAM SERGEANT
**INDIRECT:**               FACILITY "B" PROGRAM LIEUTENANT

**UNIFORM OF THE DAY:**     CLASS "A", CLASS "B" OR JUMPSUIT

All peace officers have the responsibility to take appropriate action during an emergency (including physical restraint) and to work assignments as necessitated.

**You are required to read & become familiar with all information contained in the General Duties and Responsibilities Handbook.**

### AREA OF RESPONSIBILITY:

You are responsible for the security of your assigned area and the custody, control, discipline and welfare of all inmates assigned therein.

### GENERAL DUTIES AND RESPONSIBILITIES:
**Do not exchange positions without authorization from your supervisor. Do not leave your assigned post without authorization from your supervisor.**

1. You will ensure that unauthorized inmates are not allowed access to your assigned area.
2. Provide constant custodial supervision of inmates.  You shall prepare disciplinary reports for inmates who violate rules and regulations.
3. You will perform a security inspection, a tool inventory, and report any discrepancies to the Program Sergeant.  Routine security inspections and patrol shall be made at different times throughout the watch.
4. Pass on all pertinent information to the relieving officer.  Do not leave your work area until you have been properly relieved or unless your supervisor has given you permission to do so.
5. Actively supervise inmate workers to ensure that they comply with cleanliness/safety standards.  All inmate workers are to be clean and properly attired.
6. All areas of the building will be clean and ready for inspection at all times.
7. Know and understand the California Code of Regulations, DOM sections and operational supplements governing housing units.
8. Prevent the introduction of contraband from other areas, giving special concern to weapons stock and other security discrepancies.  Maintain accountability of all cleaning agents and equipment.
9. Whenever possible, prevent damage to State property.  All acts of inmate destruction, defacement, and damage to State property will be reported and documented.  All reports will be submitted prior to you going off duty.

10. Follow proper key control procedures and ensure the proper operation of all locking devices, reporting all malfunctions immediately to your supervisor and submitting a lock and key work order.
11. Prepare inmate work supervisor time logs, accurately recording the hours worked by all inmates under your supervision.
12. Respond to all emergencies in the building or facility as required.
13. Take and report accurate counts when required.
14. All completed cell searches must be recorded in the unit cell Search Log.
15. Housing Unit Officers shall conduct Housing Unit common area searches at least once during their shift and record them in the Unit Log Book.
16. Staff conducting Close Custody Count, shall verify a positive picture identification card to count all inmates classified as Close Custody.
17. Develop and maintain close cooperation between facility "B" and other departments of the institution.
18. And any other duties/assignments assigned by the supervisor to include redirects based on institutional or facility needs.
19. **Load Bearing Vests:** ███████████████████████████████████████

███████████████████████████████████████████████████████████ Employees are to utilize all chemical agents in accordance with the current use of force policy and follow established protocol when any force is used.

**Location:** The LBV's are located in ███████████████

**Usage:**

20. **DDP Housing (Bldg. 7 & 8):**  Hard copies of all DDP related policy and procedures are maintained in the Health Care office (ext. 7546) and Health Care Manager's office (ext. 5544) and the Facility Program Offices. MCSP Operational Plan pertaining to DDP is MC 64.

The housing officer will review and be familiar with the Adaptive Support needs of every inmate housed within his/her area of responsibility.  When a housing unit receives an inmate, the Officer will check the DECS Roster or SOMS to determine the DDP Classification of the inmate.  If a DDP inmate is received into a housing unit the Housing Officer will ensure all DDP documents for the inmate are received into the Housing Unit and placed into the Clark Binder (128-C2 and Adaptive Support Log {ASL}).  The Officer shall proactively provide the identified Adaptive Support Needs of the inmate and log the Adaptive support provided on the Housing Unit's ASL.

ASL encompasses a one-week period.  The support logs will start on a Monday and end on a Sunday.  The ASL should be kept in the respective housing units, work assignment area etc.  The Clark Sergeant will sign the ASL daily and at the end of the week addressing any discrepancies.

**Emergency Evacuation Procedures**
All DDP inmates will be provided instructions for emergency and/or evacuation procedures during orientation prior to initial classification.  In the event that an emergency evacuation is needed, the emergency alarm will be activated or audible directions on the public address system will be utilized.  The building officer and or the DDP Officer in assigned to an area housing DDP inmates will personally go to the cells of each DDP inmate to assure the inmates are evacuated.  If the inmates are at work or school, the supervisor is responsible for assisting DDP inmates in the evacuation process.

DEF009145

**Count/movement Procedures**
Ensure DDP inmates are provided with necessary prompting to ensure they comply with count time expectations, respond to visits, keep work/school schedules and respond to meals and other movement calls.

**Notices and Verbal Announcements**
MCSP staff shall ensure that CCR notices, orientation packages, announcements and similar printed materials are accessible to inmates with developmental disabilities (DD). Staff shall provide the necessary assistance to all DD inmates on a case-by-case basis. Staff shall provide personal notification for a DD inmate if they do not respond. Effective Communication shall be made with inmates with DD regarding public assess announcements and reporting instructions, including those regarding visiting, yard release and recall, count, lock-up and unlock.

## TIME SCHEDULE:

Report to Facility "B" Sergeant's Office and sign in on the daily roster (FLSA), pick up a Daily Movement Sheet (DMS) and all required equipment.

### YOU MUST BE ON YOUR JOB ASSIGNMENT BY 0600 HOURS

| | |
|---|---|
| 0600 Hours | Report to Building #8 and relieve the first watch officer. Conduct security check. Cell feed those inmates with medical lay-ins. Release building workers for early meal release. |
| 0605 Hours | Prepare for morning meal release. Conduct security check of building. |
| 0615 Hours | With cell lights on walk each tier and conduct security checks. |
| 0630 Hours | Assist in early worker medication line. Do equipment and cleaning supply inventory. |
| 0645 Hours | Observe inmates returning from their meal and locking up. Prepare for worker unlock. Walk tier for unlocks, secure building. |
| 0700 Hours | Upon completion of morning meal, release workers and/or inmates with priority ducats. General population will be released as soon as workers have cleared the yard. Perform security check. |
| 0730 Hours | Supervise workers and general population inmates returning from morning meal. |
| 0800 Hours | Yard release (A1A, A2B).  Supervise unlock and building release. Inventory equipment/supplies.  Issue necessary items to begin building clean-up, supervise workers. Submit bed moves to Program Sergeant. |
| 0830 hours | Conduct cell searches. **A MINIMUM OF THREE CELL/AREA SEARCHES ARE TO BE CONDUCTED DAILY!** |
| 0900 hours | Open Dayroom, C-Status program starts (A1A, A2B, C-Status) |
| 1000 hours | In and Out unlock (A1A, A2B, C-Status) |
| 1045 hours | C-Status program ends (C-Status inmates return to cell), Education Outline |
| 1145 hours | Yard in-line, outline for workers only/Dayroom recall (A1A, A2B) |
| 1200 hours | Close Custody Count, Open Dayroom (A1A, A2B, and all Close Custody inmates) are authorized programming when Building Count clears. |
| 1230 hours | Yard release (A1A, A2B, and all Close Custody inmates) or when institution Close Custody count clears |
| 1330 hours | In and Out unlock (A1A, A2B) |

DEF009146

1400 hours    Off duty when properly relieved.  Sign out on the FLSA time sheet in the Program Sergeant's office.

## MONTHLY SCHEDULE:

1st    Complete inmate time sheets in SOMS on a daily basis. Start new time sheets for inmate workers.  Ensure all inventory sheets, cell search logs, etc. have been turned in to the Program Sergeant.

15th    Inventory existing supplies (clerical, sanitation and personal hygiene) and complete a STD 115, supply order form.

25th    Deadline for turning in STD 115's.

**NOTE:**    These are post orders, not procedures.  See your supervisor for procedures pertaining to your post.  After you read these post orders, sign the post order acknowledgment form indicates you have read and understood the post orders. **You are to re-sign this form each time the post orders are updated or when you return from an extended period of leave.**


K. RODGERS                        S. BUCKNER                        MIKE WILLIAMS
Facility "B" Lieutenant           Facility "B" Captain              Associate Warden
                                                                    Programs and Housing
                                                                    Facilities B & C

DEF009147

**EXH G**

1   PETER J. HIRSIG (State Bar No. 197993)
    peter.hirsig@mcnamaralaw.com
2   MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
    maria.zhurnalova-juppunov@mcnamaralaw.com
3   DANIEL R. MAYER (State Bar No. 300077)
    daniel.mayer@mcnamaralaw.com
4   McNAMARA, AMBACHER, WHEELER,
    HIRSIG & GRAY LLP
5   3480 Buskirk Avenue, Suite 250
    Pleasant Hill, CA 94523
6   Telephone: (925) 939-5330
    Facsimile:  (925) 939-0203
7
    Attorneys for Defendants
8   ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
    BRIZENDINE, BROCKENBOROGH, CEBALLOS,
9   HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
    PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
10  M. SMITH, C. SMITH, TIEBROCK, TOCHE, WAINE

11              UNITED STATES DISTRICT COURT

12              EASTERN DISTRICT OF CALIFORNIA

13

14  Estate of WILLIAM SCHMITZ, deceased,        Case No. 2:20-CV-00195-JAM-CKD
    by and through THOMAS J. SCHMITZ
15  and DIANNE MALLIA, as Successors in         **DEFENDANT ADAM ASMAN'S**
    Interest; THOMAS SCHMITZ,                   **RESPONSES TO PLAINTIFF'S REQUEST**
16  Individually; and DIANNE MALLIA,            **FOR ADMISSIONS, SET ONE**
    Individually,
17                                              Action Filed:  7/16/2020
                 Plaintiffs,
18
           vs.
19
    ASMAN et al,
20
                 Defendants.
21

22  PROPOUNDING PARTY:    Plaintiff DIANNE MALLIA, individually

23  RESPONDING PARTY:     Defendant ADAM ASMAN

24  SET NUMBER:           ONE (Nos. 1-33)

25              **PRELIMINARY STATEMENT**

26       These responses are made solely for the purpose of this action.  Each response is subject

27  to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

28  all other objections and grounds that would require the exclusion of any statements herein, if any

DEF. ASMAN'S  RESPONSES TO PL'S RFA,
SET ONE

1  requests were asked for, or if any statement contained herein were made by a witness present and

2  testifying in court, all of which objections and grounds are reserved and may be interposed at the

3  time of trial.

4       Responding party is responding to all of the requests to the extent that information has

5  become known to her. However, responding party's discovery, investigation, and preparation for

6  trial of this matter has not been completed as of the date of these responses and, therefore,

7  responding party does not purport to state anything more than information currently known and

8  discovered by her.

9       Responding party reserves the right to continue discovery and investigation in this matter

10 regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

11 herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

12 are responded to fully and so far as information is currently available to responding party; and

13 responding party is not precluded from presenting at trial information discovered after the date of

14 these responses.

15      This Preliminary Statement is incorporated into each and every response set forth below.

16                              **RESPONSES**

17 **REQUEST FOR ADMISSION NO. 1:**

18      Admit that all documents disclosed by YOU are true and accurate copies of the original

19 documents.

20 **RESPONSE TO REQUEST TO ADMISSION NO. 1:**

21      Objection. Officer Adam Asman is not the duly authorized Custodian of Records and is not

22 authorized to certify the records, pursuant to Federal Rules of Civil Procedure 44. Subject to and

23 without waiving of said objections, Defendant responds: Admit.

24 **REQUEST FOR ADMISSION NO. 2:**

25      Admit that William Schmitz was assigned to Building 8, Floor 2 from 9/29/2018 until the

26 date of his death. (BATES DEF000150).

27 **RESPONSE TO REQUEST TO ADMISSION NO. 2:**

28      Admit.

DEF. ASMAN'S RESPONSES TO PL'S RFA, SET    2
ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1 **REQUEST FOR ADMISSION NO. 3:**

2     Admit that YOU worked Second Watch in Building 8, Floor 2 a total of 60 days between

3 9/29/2018- 1/21/2019. (BATES DEF009613-009615).

4 **RESPONSE TO REQUEST TO ADMISSION NO. 3:**

5     Admit that Officer Asman was assigned to work worked Second Watch in Building 8, Floor

6 2 a total of 60 days between 9/29/2018- 1/21/2019, denied that he did not perform duties outside of

7 Building 8, Floor 2 during his shift from time to time as needed.

8 **REQUEST FOR ADMISSION NO. 4:**

9     Admit that Building 8 was a developmental disabilities placement (DDP) Housing unit.

10 **RESPONSE TO REQUEST TO ADMISSION NO. 4:**

11     Objection. Vague as to time. The request seeks irrelevant information that is not reasonably

12 calculated to lead to admissible evidence. William Schmitz was not in the Development Disability

13 Program. Subject to and without these objections, Defendant responds: Admit that as of 2019

14 Building 8 housed inmates from the Development Disability Program and was a developmental

15 disabilities placement (DDP) Housing unit. Denied that all inmates housed in Building 8 had DDP

16 classification.

17 **REQUEST TO ADMISSION NO. 5:**

18     Admit that YOU never participated in an interdisciplinary treatment team (IDTT) meeting

19 for William Schmitz.

20 **RESPONSE TO REQUEST TO ADMISSION NO. 5**

21     Objection. Defendant objects to the extent that this request seeks information that is not

22 relevant to any party's claim or defense and is not proportionate to the needs of this case. Subject

23 to and without these objections, Defendant responds: Admit that in 2018 and 2019 when defendant

24 had shifts as a floor officer in Building 8 floor 2, he was not present at IDTT meetings for William

25 Schmitz, if any were held.

26 **REQUEST TO ADMISSION NO. 6:**

27     Admit that YOU never received information from an interdisciplinary treatment team

28 (IDTT) meeting about William Schmitz.

DEF. ASMAN'S RESPONSES TO PL'S RFA, SET     3
ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1    **RESPONSE TO REQUEST TO ADMISSION NO. 6**

2       Objection. Defendant objects to the extent that this request seeks information that is not

3    relevant to any party's claim or defense and is not proportionate to the needs of this case. Vague

4    and ambiguous as to "formation." Subject to and without these objections, Defendant responds:

5    Admit that in 2018 and 2019 when defendant had shifts as a floor officer in Building 8 floor 2, he

6    does not recall being informed of discussions or plans from IDDT meetings for William Schmitz,

7    if any were held.

8    **REQUEST TO ADMISSION NO. 7:**

9       Admit that YOU were never informed YOU should closely monitor William Schmitz for

10   drug use.

11   **RESPONSE TO REQUEST TO ADMISSION NO.7 :**

12      Objection. Vague and ambiguous as to informed by whom. Overbroad. Vague and

13   ambiguous as to "closely monitor." Subject to and without these objections, Defendant responds:

14   Admit that Officer Asman was not never informed to closely monitor inmate Schmitz. Officer

15   Asman would monitor all inmates for prevention of contraband or use of illegal substance by

16   inmates.

17   **REQUEST TO ADMISSION NO. 8:**

18      Admit that YOU were never informed that William Schmitz had auditory hallucinations.

19   **RESPONSE TO REQUEST TO ADMISSION NO. 8:**

20      Objection. Argumentative as phrased. Vague and ambiguous as to informed by whom.

21   Subject to and without these objections, Defendant responds: Admit that defendant was not privy

22   to William Schmitz private and confidential medical information. Defendant does not recall being

23   informed by William Schmitz that the latter had auditory hallucinations.

24   **REQUEST TO ADMISSION NO. 9:**

25      Admit that YOU had no knowledge that William Schmitz was diagnosed with a mental

26   illness.

27   **RESPONSE TO REQUEST TO ADMISSION NO. 9:**

28      Objection. Argumentative as phrased. Vague and ambiguous as to mental illness. Vague

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1   and ambiguous as to informed by whom. Subject to and without these objections, Defendant

2   responds: Admit that defendant was not privy to William Schmitz private and confidential medical

3   information. Defendant was only aware that William Schmitz was in with CCCMS classification.

4   Defendant does not recall being informed by William Schmitz about his mental health diagnosis.

5   **REQUEST TO ADMISSION NO. 10:**

6       Admit that YOUR employment record states YOU worked Second Watch in Building 8,

7   Floor 2 from 06:00 to 14:00 on 1/21/2019. (BATES DEF009613-009615.)

8   **RESPONSE TO REQUEST TO ADMISSION NO. 10:**

9       Objection. The Document speaks for itself. Subject to and without these objections,

10   Defendant responds: Admit.

11   **REQUEST FOR ADMISSION NO. 11:**

12       Admit that the log book notes YOU were on duty at 0600. (BATES DEF004937.

13   **RESPONSE TO REQUEST TO ADMISSION NO. 11:**

14       Objection. Vague as to time. Vague and ambiguous as to "on duty." The Document speaks

15   for itself. Subject to and without these objections, Defendant responds: Admit as to January 21,

16   2019, at 6 a.m.

17   **REQUEST FOR ADMISSION NO. 12:**

18       Admit that YOUR responsibilities on 1/21/2019 included those contained in the General

19   Duties and Responsibilities Handbook. (DEF009616).

20   **RESPONSE TO REQUEST TO ADMISSION NO. 12:**

21       Objection. Vague as to time. Subject to and without these objections, Defendant responds:

22   Admit to the extent that defendant as not performing specific tasks during a portion of his shift on

23   January 21, 2019.

24   **REQUEST FOR ADMISSION NO. 13:**

25       Admit that the General Duties and Responsibilities Handbook states, in part: "You will

26   make security checks at least once each hour. Security checks will include checking inmate

27   activities and welfare as well as the security of the building." (DEF009628).

28   ///

DEF. ASMAN'S RESPONSES TO PL'S RFA, SET   5
ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1    **RESPONSE TO REQUEST TO ADMISSION NO. 13**

2    Objection. The document speaks for itself. Subject to and without these objections,

3    Defendant responds: Admit that the Handbook states in part: "You will make security checks at

4    least once each hour. Security checks will include checking inmate activities and welfare as well

5    as the security of the building. Equipment should be checked for missing parts, doors should be

6    checked to make sure that they are secure, etc."

7    **REQUEST FOR ADMISSION NO. 14:**

8    Admit that YOU were one of the custody staff that managed William Schmitz's day-to-day

9    routine starting 9/29/201 until the date of his death.

10    **RESPONSE TO REQUEST TO ADMISSION NO. 14:**

11    Objection. Vague and ambiguous as to managing day –to-day routine. Vague and

12    ambiguous as to time. Subject to and without these objections, Defendant responds: Admit that

13    between 11/01/2018 until the time of William's death defendant was assigned from time to time as

14    a floor officer in Building 8, Floor 2, second watch.

15    **REQUEST FOR ADMISSION NO. 15:**

16    Admit that YOUR post orders for 1/21/2019 state in part "You are responsible for the

17    security of your assigned area and the custody, control, discipline and welfare of all inmates

18    assigned therein." (BATES 009144).

19    **RESPONSE TO REQUEST TO ADMISSION NO. 15:**

20    Objection. The document speaks for itself. Subject to and without these objections,

21    Defendant responds: Admit.

22    **REQUEST FOR ADMISSION NO. 16:**

23    Admit that YOUR post orders for 1/21/2019 state in part "Provide constant custodial

24    supervision of inmates." (BATES 009144.)

25    **RESPONSE TO REQUEST TO ADMISSION NO. 16:**

26    Objection. The document speaks for itself. Subject to and without these objections,

27    Defendant responds: Admit.

28    ///

**REQUEST FOR ADMISSION NO. 17:**

Admit that YOU were never consulted regarding William Schmitz's behavior, functioning or health care status.

**RESPONSE TO REQUEST TO ADMISSION NO. 17:**

Objection. Vague and ambiguous, as to "consulted", "functioning", "health status." Defendant further objects that this request is impermissibly compound and seeks irrelevant information and is not proportionate to the needs of this case. Subject to and without these objections, Defendant responds: For the period of 2028 and 2019 while on shift for floor 2 in building 8, I do not recall any issues with William Schmitz that would necessitate that I request medical assistance for William Schmitz.

**REQUEST FOR ADMISSION NO. 18:**

Admit that YOUR duty statement as a MCSP Correctional officer includes to "prevent…injury by inmates or parolees to themselves."

**RESPONSE TO REQUEST TO ADMISSION NO. 18:**

Objection. The document speaks for itself. Subject to and without these objections, Defendant responds: Admit that duty statement state in part: "25%" inspect quarters of inmates for incoming and outgoing mail; promote acceptable attitudes and behavior of inmates or parolees; prevent escapes and injury by inmates or parolees to themselves, employees, and to property; search for and recapture escaped inmates; receive, check, and issue guns, ammunition, and other supplies and equipment; keep firearms in good working condition; make reports on work performed."

**REQUEST FOR ADMISSION NO. 19:**

Admit that Per Cal. Code Regs. Tit. 15, § 3271 YOU were responsible for the "safe custody" of William.

**RESPONSE TO REQUEST TO ADMISSION NO. 19:**

Objection. The document speaks for itself. The request call for a legal conclusion.

**REQUEST FOR ADMISSION NO. 20:**

ADMIT that the CDCR DOM mandates that all inmates are accurately accounted for at all times.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1    **RESPONSE TO REQUEST TO ADMISSION NO. 20:**

2        Objection. The document speaks for itself. The request call for a legal conclusion.

3    **REQUEST FOR ADMISSION NO. 21:**

4        ADMIT that the CDCR DOM mandates that a physical count of all inmates are performed

5    a minimum of four times each day.

6    **RESPONSE TO REQUEST TO ADMISSION NO. 21:**

7        Objection. The document speaks for itself. The request call for a legal conclusion.

8    **REQUEST FOR ADMISSION NO. 22:**

9        Admit that according to CDCR DOM "physical count" means to count a living, breathing

10   person and physically see that person.

11   **RESPONSE TO REQUEST TO ADMISSION NO. 22:**

12       Objection. The document speaks for itself. The request call for a legal conclusion.

13   **REQUEST FOR ADMISSION NO. 23:**

14       Admit that the CDCR DOM mandates, "An informal count is a physical count and positive

15   identification of inmates... Informal counts shall be conducted by all employees supervising

16   inmates. These informal counts shall be completed on an hourly basis. Informal counts shall be

17   conducted to ensure inmates are present in their assigned areas, such as housing units..."

18   **RESPONSE TO REQUEST TO ADMISSION NO. 23:**

19       Objection. The document speaks for itself. The request call for a legal conclusion. Subject

20   to and without these objections, Defendant responds: Admit that the CDCR DOM section 52020.5.5

21   in 2019 stated:

22           "An informal count is a physical count and positive identification of
             inmates who are present at their program/work assignments.
23           Informal counts shall be conducted by all employees supervising
             inmates.
24
             These informal counts shall be completed on an hourly basis. Any
25           discrepancies shall be reported immediately. Informal counts shall
             be conducted to ensure inmates are present in their assigned areas,
26           such as housing units, work centers, minimum support facilities, and
             community work crews."
27

28   ///

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

DEF. ASMAN'S RESPONSES TO PL'S RFA, SET    8
ONE

**REQUEST FOR ADMISSION NO. 24:**

Admit that on 1/21/2019 YOU signed in on the daily roster (FLSA) at 0600 and signed out at 14:00.

**RESPONSE TO REQUEST TO ADMISSION NO. 24:**

Admit.

**REQUEST FOR ADMISSION NO. 25:**

Admit that YOUR responsibilities on 1/21/2019 did not include knowing William Schmitz status as a participant in the Mental Health Services Delivery System (MHSDS).

**RESPONSE TO REQUEST TO ADMISSION NO. 25:**

Objection. Vague and ambiguous and to "responsibilities". Subject to and without these objections, Defendant responds: Admit.

**REQUEST FOR ADMISSION NO. 26:**

Admit YOU received no disciplinary action regarding YOUR activities on 1/21/2019.

**RESPONSE TO REQUEST TO ADMISSION NO. 26:**

Objection. The request is not relevant to any party's claim or defense or proportional to the needs of the case. Vague and ambiguous as to "disciplinary action." Defendant further objects that the request seeks information protected by Pen. Code, § 832.7. Subject to and without waiving these objections: Admit.

**REQUEST FOR ADMISSION NO. 26 (misnumbered):**

Admit YOU never accessed William Schmitz SOMS records.

**RESPONSE TO REQUEST TO ADMISSION NO. 26 (misnumbered):**

Objection. The request is not relevant to any party's claim or defense or proportional to the needs of the case. Subject to and without waiving these objections: Defendant has not contemporaneous recollection of whether he accessed William Schmitz SOMS records and is thus unable to admit or deny the request.

**REQUEST FOR ADMISSION NO. 27:**

Admit that the "Daily Dayroom and Yard Hours Worksheet" for Facility B on 1/21/2019 does not describe any post number as redirected to a different area.

DEF. ASMAN'S RESPONSES TO PL'S RFA, SET ONE          9

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

**RESPONSE TO REQUEST TO ADMISSION NO. 27:**

Objection. The document speaks for itself. Object that the request asks this defendant to interpret a document that he did not create. The request is vague and unambiguous as to "post number redirected." Subject to and without waiving these objections: Admit that the document does not mention "post numbers."  The document states as to 8:00 "No yard/DayRoom per searches in minimum dorms."

**REQUEST FOR ADMISSION NO. 28:**

Admit that on 4/28/2018 and 5/1/2018, YOU read the memo "Cell Inspections and Removal of Window Coverings and/or Privacy Screens". (BATES DEF009387).

**RESPONSE TO REQUEST TO ADMISSION NO. 28:**

Admit that defendant is familiar with and has read the memo "Cell Inspections and Removal of Window Coverings and/or Privacy Screens". Defendant has no independent recollection as to the exact date he has read the memo, but admits that his training record shows he read it on the dates specified.

**REQUEST FOR ADMISSION NO. 29:**

Admit that memo "Cell Inspections and Removal of Window Coverings and/or Privacy Screens" states:  "The purpose of this memo is to reiterate the importance of conducting regular cell inspections and ensuring staff have a clear line of sight into inmate cells. This is an important task, as it ensures clear observation of the inmate population, which helps maintain institutional safety and security. If a staff's line of sight into a cell is impeded, a cell inspection shall be conducted to remove any cell and/or window coverings blocking staff's view into the cell."

**RESPONSE TO REQUEST TO ADMISSION NO. 29:**

Object. The document speaks for itself. Subject to and without waiving these objections: Admit.

**REQUEST FOR ADMISSION NO. 30:**

Admit that on 4/28/2018 and 5/1/2018, YOU read the memo "Inmate Count Expectations". (BATES DEF009385.)

///

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

**RESPONSE TO REQUEST TO ADMISSION NO. 30:**

Admit that defendant is familiar with and has read the memo "Inmate Count Expectations". Defendant has no independent recollection as to the exact date he has read the memo, but admits that his training record shows he read it on the dates specified.

**REQUEST FOR ADMISSION NO. 31:**

Admit that YOU never saw any water outside WILLIAM SCHMITZ cell prior to 1/21/2019.

**RESPONSE TO REQUEST TO ADMISSION NO. 31:**

Based on the information reasonable available, defendant is unable to admit or deny and he does not recall.

**REQUEST FOR ADMISSION NO. 32:**

Admit that YOU saw a cell window covering on William Schmitz cell on 1/21/2019.

**RESPONSE TO REQUEST TO ADMISSION NO. 32:**

Object. Vague and ambiguous as to "window covering." Subject to and without waiving these objections: Admit that he saw William Schmitz's cell window had a sign partially covering it on 1/21/2019.

**REQUEST FOR ADMISSION NO. 33:**

Admit that William Schmitz never left his cell on 1/21/2019.

**RESPONSE TO REQUEST TO ADMISSION NO. 33:**

Based on the information reasonably available, defendant is unable to admit or deny. Defendant was not present as a floor officer throughout the day of 1/21/2019 at Building 8, floor 2.

Dated: July 19, 2023          McNAMARA, AMBACHER, WHEELER,
                              HIRSIG & GRAY LLP

By: _____
    Peter J. Hirsig
    Maria Zhurnalova-Juppunov
    Daniel R. Mayer
    Attorneys for Defendants ADAMS, ANDALUZ,
    ASHE, ASMAN, BRANMAN, BRIZENDINE,
    BROCKENBOROGH, CEBALLOS, HEATLEY, J.
    JOHNSON, R. JOHNSON, LEIDNER, PONCIANO,
    RAMKUMAR, REKART, ROBINSON, RUDAS, M.
    SMITH, C. SMITH, TIEBROCK, TOCHE, WAINE,
    and CALIFORNIA DEPARTMENT OF
    CORRECTIONS AND REHABILITATION (CDCR)

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

*GR*

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

## CERTIFICATE OF SERVICE VIA E-MAIL

I hereby declare that I am a citizen of the United States, am over the age of eighteen years, and not a party to the within action. My electronic notification address is: tami.martin@mcnamaralaw.com.

On this date, I electronically served the foregoing **DEFENDANT ADAM ASMAN'S RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS, SET ONE** based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**Attorneys For Plaintiff Pro Per:**

Dianne Mallia
404 Atkinson Street
Roseville, CA 95678

E-Mail: deedamallia@gmail.com

**Attorneys For Plaintiff in Pro Per:**

Thomas J. Schmitz
404 Atkinson Street
Roseville, CA 95678

E-Mail: tsfoot49@gmail.com

**Attorneys for Defendant Stephen Denigris:**

**Tiffany Cenzianne Sala**
Low McKinley & Salenko, LLP
2150 River Plaza Dr. Suite 250
Sacramento, CA 95833
(916) 231-2400

Email: tcs@lmblaw.net
        jc@lmblaw.net
        bes@lmblaw.net

**Attorney for Defendants Kevin Kuich, Joe A. Lizarraga**

Michael A. Terhorst, Sr.
Beeson Terhorst LLP
510 Bercut Drive, Suite V
Sacramento, CA 95811
Phone: 707-301-7504

E-Mail: michael@beesonterhorst.com
        Jeff@beesonterhorst.com
        mercedes@beesonterhorst.com

**Attorneys for Defendants Eric Bradley, David Brunkhorst,**

Jennifer Nygaard
California Dept. of Justice
Office of the Attorney General
1515 Clay Street, 20th Floor
Oakland, CA 94612
Phone: 510-879-0802
Fax: 510-622-2270
E-Mail: jennifer.nygaard@doj.ca.gov
        jay.goldman@doj.ca.gov
        lucille.santos@doj.ca.gov

DEF. ASMAN'S RESPONSES TO PL'S RFA, SET     12
ONE

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct and that this declaration was executed on July 19, 2023 at Pleasant

3    Hill, California.

Tami Martin

Tami Martin

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

DEF. ASMAN'S RESPONSES TO PL'S RFA, SET    13
ONE



1  PETER J. HIRSIG (State Bar No. 197993)
   peter.hirsig@mcnamaralaw.com
2  MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
   maria.zhurnalova-juppunov@mcnamaralaw.com
3  DANIEL R. MAYER (State Bar No. 300077)
   daniel.mayer@mcnamaralaw.com
4  McNAMARA, AMBACHER, WHEELER,
   HIRSIG & GRAY LLP
5  3480 Buskirk Avenue, Suite 250
   Pleasant Hill, CA 94523
6  Telephone: (925) 939-5330
   Facsimile: (925) 939-0203

7

8  Attorneys for Defendants
   ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
9  BRIZENDINE, BROCKENBOROGH, CEBALLOS,
   HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
10 PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
   M. SMITH, C. SMITH, TIEBROCK, TOCHE, WAINE

11                 UNITED STATES DISTRICT COURT

12               EASTERN DISTRICT OF CALIFORNIA

13

14  Estate of WILLIAM SCHMITZ, deceased,      Case No. 2:20-CV-00195-JAM-CKD
    by and through THOMAS J. SCHMITZ
15  and DIANNE MALLIA, as Successors in       **DEFENDANT ADAM ASMAN'S**
    Interest; THOMAS SCHMITZ,                 **RESPONSES TO PLAINTIFF'S SPECIAL**
16  Individually; and DIANNE MALLIA,          **INTERROGATORIES, SET TWO**
    Individually,
17                                            Action Filed:  7/16/2020
              Plaintiffs,
18
         vs.
19
    ASMAN et al,
20
              Defendants.
21

22  PROPOUNDING PARTY:   Plaintiff DIANNE MALLIA, individually

23  RESPONDING PARTY:    Defendant ADAM ASMAN

24  SET NUMBER:          TWO (Nos. 2-15)

25                    **PRELIMINARY STATEMENT**

26      These responses are made solely for the purpose of this action.  Each response is subject

27  to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

28  all other objections and grounds that would require the exclusion of any statements herein, if any

DEF. ASMAN'S RESPONSES TO PL'S
INTERROGATORIES, SET TWO

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1   requests were asked for, or if any statement contained herein were made by a witness present and

2   testifying in court, all of which objections and grounds are reserved and may be interposed at the

3   time of trial.

4          Responding party is responding to all of the requests to the extent that information has

5   become known to him. However, responding party's discovery, investigation, and preparation for

6   trial of this matter has not been completed as of the date of these responses and, therefore,

7   responding party does not purport to state anything more than information currently known and

8   discovered by him.

9          Responding party reserves the right to continue discovery and investigation in this matter

10  regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

11  herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

12  are responded to fully and so far as information is currently available to responding party; and

13  responding party is not precluded from presenting at trial information discovered after the date of

14  these responses.

15         This Preliminary Statement is incorporated into each and every response set forth below.

16                                          **RESPONSES**

17  **INTERROGATORY NO. 5:**

18         Identify ALL documents RELATING TO YOUR redirection to another facility at about

19  8:00 a.m. on 1/21/2019 as claimed in YOUR response to INTERROGATORY No. 2.

20  **RESPONSE TO INTERROGATORY NO. 5:**

21         Objection. Defendant objects that there request seeks information protected by the attorney-

22  client privilege and work product doctrine. Subject to and without waiving said objection defendant

23  responds: After conducting diligent search and a reasonable inquiry, Defendant identifies the

24  following documents already produced this litigation: DEF004937, DEF115207, DEF115208. (Log

25  Book, Daily Program Status Report, Daily Activities Report.) Defendant also recalls preparing a

26  CDCR Form 115 discipline report for rules violation established during search conducted at the

27  Minimum Support Facility. Defendant is conducting a diligent search of documents and reasonable

28  inquiry and if located, this document will be produced with the necessary redaction to preserve the

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1    privacy right of non-parties.

2          Without waiving said objections and subject thereto: Pursuant to Rule 26(b)(5)(A) of the

3    Federal Rules of Civil Procedure, defendant identifies the following responsive documents which

4    have been withheld from production:

| Description | Grounds for Non-Disclosure |
|---|---|
| Attorney client email communications with Officer Asman's attorneys of record after the commencement of litigation. | Fed. R. Civ. 26(3)(A) and Fed R. Civ. 26(5)(A) - Attorney Client Privilege and Work Product Doctrine: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." |

**INTERROGATORY NO. 6:**

          Identify WHO redirected YOU to another facility at about 8:00 a.m. on 1/21/2019 as

claimed in YOUR response to INTERROGATORY No. 2.

**RESPONSE TO INTERROGATORY NO. 6:**

          Defendant does not have a specific recollection and refers plaintiff to the following

documents already produced DEF009081-009083. (FLSA Sheets.)

**INTERROGATORY NO. 7:**

          Identify WHO, if anyone, was fulfilling YOUR duties as described in POST ORDERs

(BATES 009144) while YOU were absent from Building 8, Floor 2.

**RESPONSE TO INTERROGATORY NO. 7:**

          Defendant does not have a specific recollection and refers plaintiff to the following

documents already produced: DEF009081-009083. (FLSA Sheets.)

**INTERROGATORY NO. 8:**

          Identify ALL mechanisms available to William Schmitz on 1/21/2019 while locked in his

cell to communicate to individuals outside his cell.

///

///

///

DEF. ASMAN'S RESPONSES TO PL'S          3
INTERROGATORIES, SET TWO

1    **RESPONSE TO INTERROGATORY NO. 8**

2         Objection. The interrogatory is vague and ambiguous as to "mechanisms." Subject to and

3    without waiving said objection, Defendant responds: inmates can bang and/or knock on their cell

4    door; call out; flash their cell light.

5    **INTERROGATORY NO. 9:**

6         Identify ALL Mule Creek State Prison employees present in Building 8 from 6:00 am to

7    2:00 on 1/21/2019.

8    **RESPONSE TO INTERROGATORY NO. 9**

9         Defendants objects to the extent the interrogatory seeks information of which Defendant

10   does not have personal knowledge as not being present at the specified location during the entire

11   period of time indicated in the interrogatory. Subject to and without waiving said objection,

12   defendant responds: Defendant does not have a specific recollection and refers plaintiff to the

13   following documents already produced: DEF009081-009083; DEF004937. (FLSA Sheets, Log

14   Book.)

15   **INTERROGATORY NO. 10:**

16        Identify ALL individuals responsible for YOUR redirection YOU to another facility at

17   about 8:00 a.m. on 1/21/2019 as described in YOUR response to INTERROGATORY No. 2.

18   **RESPONSE TO INTERROGATORY NO. 10:**

19        See response to Interrogatory No. 6.

20   **INTERROGATORY NO. 11:**

21        Identify ALL Documents relating to monitoring of inmates when floor officers are

22   redirected from their assigned posts.

23   **RESPONSE TO INTERROGATORY NO. 11:**

24        After conducting diligent search and a reasonable inquiry, Defendant identifies the

25   following documents already produced: DEF009144-009147 (Post Order).

26   **INTERROGATORY NO. 12:**

27        Identify ALL information YOU received about William Schmitz upon YOUR claimed

28   return at approximately 1:30 PM on 1/21/2019

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

**RESPONSE TO INTERROGATORY NO. 12:**

Objection. The interrogatory is argumentative as phrased. Subject to and without waiving said objection, defendant responds: Defendant does recall anything out of the usual when he returned and was not told any information specifically about William Schmitz.

**INTERROGATORY NO. 13:**

Identify ALL video recordings in and around Building 8 on 1/21/2019.

**RESPONSE TO INTERROGATORY NO. 13:**

Objection. The interrogatory is overbroad and vague and ambiguous. Subject to and without waiving said objection, defendant responds: After conducting diligent search and a reasonable inquiry, defendant is unable to identify any video recordings of Building 8 or the area around Building 8 from 1/21/2019 and upon information and belief such do not exist.

**INTERROGATORY NO. 14:**

Identify ALL video recordings in and around Building 8 on 1/21/2019.

**RESPONSE TO INTERROGATORY NO. 14:**

See Response to Interrogatory No. 13.

**INTERROGATORY NO. 15:**

Identify all documents pertaining to documentation of YOUR movements to various areas of Mule Creek State Prison on 1/21/2019.

**RESPONSE TO INTERROGATORY NO. 15:**

See Response to Interrogatory No. 5.

Dated: October 9, 2023

MCNAMARA, AMBACHER, WHEELER,
HIRSIG & GRAY LLP

By: _____

Peter J. Hirsig
Maria Zhurnalova-Juppunov
Daniel R. Mayer
Attorneys for Defendants ADAMS, ANDALUZ,
ASHE, ASMAN, BRANMAN, BRIZENDINE,
BROCKENBOROGH, CEBALLOS, HEATLEY, J.
JOHNSON, R. JOHNSON, LEIDNER, PONCIANO,
RAMKUMAR, REKART, ROBINSON, RUDAS, M.
SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

## VERIFICATION

I, the undersigned, declare that:

I am a Defendant in the above-entitled action; I have read the foregoing **DEFENDANT ADAM ASMAN'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET TWO** and know the contents thereof; the same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October __8th__, 2023 at __Stockton__, California.
                         (Date)                  (City/State)

_____
ADAM ASMAN

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY AVENUE, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

*SCHMITZ v. ASMAN, ET AL.*

VERIFICATION

1                CERTIFICATE OF SERVICE VIA E-MAIL

2         I hereby declare that I am a citizen of the United States, am over the age of eighteen years,

3 and not a party to the within action. My electronic notification address is:

4 tami.martin@mcnamaralaw.com.

5         On this date, I electronically served the foregoing **DEFENDANT ADAM ASMAN'S**

6 **RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET TWO** based on a

7 court order or an agreement of the parties to accept service by e-mail or electronic transmission, I

8 caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive,

9 within a reasonable time after the transmission, any electronic message or other indication that the

10 transmission was unsuccessful.

11 **Attorneys For Plaintiff Pro Per:**          **Attorneys For Plaintiff in Pro Per:**

12 Dianne Mallia                          Thomas J. Schmitz
     404 Atkinson Street                     404 Atkinson Street

13 Roseville, CA 95678                   Roseville, CA 95678

14 E-Mail: deedamallia@gmail.com        E-Mail: tsfoot49@gmail.com

15

16 **Attorneys for Defendant Stephen Denigris:**    **Attorneys for Defendants Eric Bradley, David Brunkhorst,**

17 **Tiffany Cenzianne Sala**
     Low McKinley & Salenko, LLP         Jennifer Nygaard

18 2150 River Plaza Dr. Suite 250         California Dept. of Justice
     Sacramento, CA 95833               Office of the Attorney General

19 (916) 231-2400                     1515 Clay Street, 20th Floor
                                        Oakland, CA 94612

20 Email: tcs@lmblaw.net              Phone: 510-879-0802
          bes@lmblaw.net             Fax: 510-622-2270

21          KD@lmblaw.net            E-Mail: jennifer.nygaard@doj.ca.gov
         SLC@lmblaw.net            jay.goldman@doj.ca.gov

22 **Attorney for Defendants Kevin Kuich,**              lucille.santos@doj.ca.gov
**Joe A. Lizarraga**

23

24 Michael A. Terhorst, Sr.
     Beeson Terhorst LLP
     510 Bercut Drive, Suite V

25 Sacramento, CA 95811
     Phone: 707-301-7504

26

27 E-Mail: michael@beesonterhorst.com
          Jeff@beesonterhorst.com

28          mercedes@beesonterhorst.com

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct and that this declaration was executed on October 9, 2023 at Pleasant

3    Hill, California.

_____
Tami Martin

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330



DEF004936

1-20-19  Sunday  3rd w

| | |
|---|---|
| 1945 | Close Custody Recall, Pm Med Release |
| 2000 | Close Custody Count |
| 2014 | Close Custody Count Clear, Pm meds |
| 2100 | Yard, Dayroom Recall |
| 2130 | Count |
| 2200 | E.O.W |

t/w 1-21-2019  Monday

| | |
|---|---|
| 0220 | c/o M. Fernandez On Duty |
| | Secr / No Man (Only) |
| 0230 | Count ↓ 66 ↑73 |
| 0280 | Count ↓ 66 ↑73 |
| 0440 | Dining Workers ③ |
| 0430 | Count ↓ 66 ↑70 |
| 0600 | E.O.W. |

1/21/19  Monday  2/w

| | |
|---|---|
| 0600 | C/o's Asman, Joyce & Gonzalez on Duty, Secr & Equip/ |
| 0633 | Chow Release |
| Note ※ | No Program - Searching Minimum Facility |
| 1045 | Med Release |
| 1200 | Count |
| 1430 | E.O.W |

1-21-19  Monday  3rd/w

| | |
|---|---|
| 1400 | C/o's Burns, Bradley, Siddik on Duty, Equip |
| | & Security Check    .1432 |
| 1415 | Yard, 1st Tier dayroom, ✓ Inmate Schmitz |
| | Cell 202 G 35384 found unresponsive in Cell Medical |
| 85B | Code Called, Cpr Started Cart Called & |
| | 911 Activated via Institutional Radio. Cell |
| | booted & locked. Caution tape in place |
| | to Preserve the scene. Temp 73.9° |

right column (partial):

| | |
|---|---|
| 1800 | Count |
| 1630 | Clear |
| 1800 | I.S.U |
| | D.I.G |
| 1847 | Chow |
| 1908 | Rate |
| 1910 | ISU |
| 1913 | Bio |
| | IN Co |
| 2000 | Clos |
| 2100 | Yard |
| | Will |
| | Tomor |
| 2130 | Count |
| 2200 | E.O |
| 2200 | c/o M. Fer |
| | Secr |
| 0230 | Count ↓ |
| 0220 | Count ↓ |
| 0400 | Dining W |
| 0430 | Count ↓ |
| 0600 | Eow |
| | 1/2: |
| 0600 | C/o |
| 0630 | Cho |
| 0840 | Appeals |
| 0800 | Yard |
| 1000 | Inlin |
| 1045 | Me |
| 1145 | Dayro |

DEF004937

Continued                                    29

1·21-19 Monday 3rd/w

| | |
|---|---|
| 'w | |
| Release | Count |
| | Clear., Diabetic Release |
| Pm meds | I.S.U. enters Bldg to investigate crime scene, O.I.G. on scene as well. |
| | Chow Release |
| | Return |
| | ISU Clears Cell |
| | Bio Inmate in unit to Clean BioHazzard in Cell |
| | Close Custody Count |
| | Yard Recall, Cell 202 cleaned and Booted will Be inventoried Later property sent to ISU Tomorrow |
| | Count |
| | E. O. W |

A/w 1·22·2019 Tuesday

| | |
|---|---|
| SEC + EQUIP | C/o M·Fernandez on Duty |
| | Sent + Sorted Mail |
| 1TV | Count ↓66 ↑72 |
| | Count ↓66 ↑72 |
| | Dining Workers (5) |
| | Count ↓66 ↑57 |
| | EOW |

1/22/19 Tuesday 2/w

| | |
|---|---|
| Duty Equip | C/o Joyce and Copeland on Duty SECV Inv |
| : Schmtz | Chow |
| ell medical | Appeals box ② Strazdins |
| Called & | Yard Release / Day Room |
| dio. Cell | Inline/outline |
| nlmo | nada Release |

# DAILY PROGRAM STATUS REPORT PART A – PLAN OF OPERATION / STAFF & INMATE NOTIFICATION

*Describe only this reporting period's specific Plan of Operation*
*Upon completion, distribute to ensure all staff and inmate awareness*

| PLAN EFFECTIVE FOR DATE:<br>Monday, January 21, 2019 | INSTITUTION:<br>MCSP | PROGRAM STATUS NUMBER: |
|---|---|---|

| ☐ NORMAL PROGRAM | ☒ MODIFIED PROGRAM | ☐ LOCKDOWN | ☐ STATE OF EMERGENCY<br>☐ Approved   ☐ Disapproved |
|---|---|---|---|

| ☒ INITIAL | ☐ UPDATE | ☐ CLOSURE |
|---|---|---|

## RELATED INFORMATION (CHECK ALL THAT APPLY)

| AREA AFFECTED | | INMATES AFFECTED | REASON |
|---|---|---|---|
| ☒ INSTITUTION: | All MCSP/MCIC except ASU | ☒ ALL | ☐ BATTERY |
| ☐ FACILITY: | | ☐ SECURITY THREAT GROUP(S): | ☐ DEATH |
| ☐ HOUSING UNIT: | | | ☐ RIOT / DISTURBANCE |
| ☐ HOUSING LEVEL: | | | ☐ THREATS |
| ☐ OTHER: | | ☐ OTHER | ☐ CONTINUING VIOLENCE |
| | | | ☐ MEDICAL QUARANTINE |
| | | | ☒ OTHER  MSF Searches |

| MOVEMENT | WORKERS | DAYROOM |
|---|---|---|
| ☐ NORMAL | ☐ NORMAL | ☐ NORMAL |
| ☐ ESCORT ALL MOVEMENT | ☒ CRITICAL WORKERS ONLY | ☒ NO DAYROOM ACTIVITIES |
| ☐ UNCLOTHED BODY SEARCH PRIOR TO ESCORT | ☐ CULINARY | ☐ MODIFIED: |
| ☐ IN RESTRAINTS | ☐ CLERKS | **RECREATION** |
| ☒ CONTROLLED MOVEMENT | ☐ VOCATION/EDUCATION | ☐ NORMAL |
| ☐ OTHER: | ☐ CANTEEN | ☒ NO RECREATIONAL ACTIVITIES |
| **FEEDING** | ☐ CLOTHING ROOM | ☐ MODIFIED: |
| ☒ NORMAL | ☐ RESTRICTED WORK PROGRAM | **CANTEEN** |
| ☐ CELL FEEDING | ☐ PORTERS | ☐ NORMAL |
| ☐ CONTROLLED FEEDING IN DINING ROOM | ☐ NO INMATE WORKERS | ☒ NO CANTEEN |
| ☐ HOUSING UNIT/DORM AT A TIME | ☐ OTHER: | ☐ MODIFIED |
| ☐ DORM / POD AT A TIME | **SHOWERS** | **PACKAGES** |
| ☐ TIER AT A TIME | ☐ NORMAL | ☐ NORMAL |
| ☐ HOUSING UNIT SECTION AT A TIME | ☐ ESCORTED | ☒ NO PACKAGES |
| ☐ SACK MEAL BREAKFAST | ☐ ONE INMATE PER SHOWER – OWN TIER | ☐ MODIFIED: |
| ☒ SACK MEAL LUNCH | ☐ CELL PARTNERS TOGETHER – OWN TIER | **PHONE CALLS** |
| ☐ SACK MEAL DINNER | ☐ DORM SHOWERING BY GROUP | ☐ NORMAL |
| **DUCATS** | ☒ CRITICAL WORKERS ONLY | ☒ NO PHONE CALLS |
| ☐ NORMAL | ☐ NO SHOWERS | ☐ LEGAL CALLS |
| ☐ CLASSIFICATION DUCATS | **HEALTH CARE SERVICES** | ☐ MODIFIED: |
| ☒ PRIORITY DUCATS ONLY | ☐ NORMAL PROGRAM | **RELIGIOUS SERVICES** |
| ☐ OTHER: | ☒ PRIORITY DUCATS | ☐ NORMAL |
| **VISITING** | ☐ CONDUCT ROUNDS IN UNITS | ☒ CHAPLAINS CONDUCT ROUNDS |
| ☐ NORMAL VISITING | ☐ ESCORTED TO TREATMENT AREA | ☐ MODIFIED:  NONE |
| ☐ NON-CONTACT ONLY | ☐ EMERGENCY ONLY | |
| ☐ NO GENERAL VISITING | ☒ MEDICATION DISTRIBUTION  CLINIC | |
| ☒ LEGAL  VISITING | **LAW LIBRARY** | |
| ☐ OTHER: | ☒ PLU  ☐ GLU ☐ NONE | |

**REMARKS:** On Monday, January 21, 2019, Mule Creek State Prison will be placed on Modified Program to conduct an extensive search of the MSF. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ During modified program there will be no yard, no dayroom, no gym access, no education, no canteen and no ILTAGS will run. Emergency Medical / Mental Health only. ASU will not be affected. Normal program will resume upon notification from the Watch Commander.

| REVIEWED BY: | DATE:<br>1/21/19 | NAME / SIGNATURE (WARDEN) | DATE:<br>1/21/19 | NAME/SIGNATURE (ASSOCIATE DIRECTOR)          DATE:<br>(REQUIRED FOR INITIAL, CLOSURE, & STATE OF EMERGENCY) |
|---|---|---|---|---|

DEF115207

EXH K

| BEGINNING COUNT > | 3988+5 ORMD=3993 | SGT. D. GERKE |
|---|---|---|
| ENDING COUNT > | 3956+5 ORMD=3991 | JANUARY 21, 2019 |

| | |
|---|---|
| 0600 | RELIEVED FIRST WATCH. |
| 0615 | DELTA FACILITY COMMENCED WITH THE MORNING MEAL. |
| 0620 | ALPHA FACILITY COMMENCED WITH THE MORNING MEAL. |
| 0620 | BRAVO FACILITY COMMENCED WITH THE MORNING MEAL. |
| 0620 | CHARLIE FACILITY COMMENCED WITH THE MORNING MEAL. |
| 0630 | ECHO FACILITY COMMENCED WITH THE MORNING MEAL. |
| **0654** | **CODE 1 B YARD CODE 4 @ 0657 (ONE ON ONE)** |
| 0700 | MINIMUM SUPPORT FACILITY (MSF) COMMENCED WITH THE MORNING MEAL. |
| 0707 | OUTER PERIMETER FOOT PATROL INSPECTION COMPLETED BY THE CENTRAL SERVICES S&E. |
| 0713 | DELTA FACILITY COMPLETED THE MORNING MEAL. |
| 0725 | BRAVO FACILITY COMPLETED THE MORNING MEAL. |
| 0730 | MCIC OUTER PERIMETER FOOT PATROL INSPECTION COMPLETED BY THE CENTRAL SERVICES S&E |
| 0730 | MSF COMPLETED THE MORNING MEAL. |
| 0730 | ECHO FACILITY COMPLETED THE MORNING MEAL. |
| 0735 | INNER PERIMETER FOOT PATROL INSPECTION COMPLETED BY THE CENTRAL SERVICES S&E. |
| 0737 | CHARLIE FACILITY A.M. CULINARY TOOL INVENTORY CLEARED. |
| **0738** | **MCSP TRANS. IN W/1 ORMD FROM SJGH, STOCKTON** |
| 0740 | CHARLIE FACILITY COMPLETED THE MORNING MEAL. |
| **0753** | **MCSP TRANS. OUT W/1 ORMD TO SAH,** ▮ **VIA CODE 2 AMBULANCE RETURNED @ 1121** |
| 0800 | CLETS CHECK COMPLETED; NO HOLDS, WARRANTS, OR DETAINERS (HWDS). |
| 0800 | MSF YARD OPENED. |
| 0800 | ALPHA FACILITY COMPLETED THE MORNING MEAL. |
| 0800 | NO YARD/DAYROOM PER PSR SEARCHES IN MINIMUM DORMS |
| 0800 | TOWERS AND ELECTRIFIED FENCE INVENTORIES COMPLETED BY THE OUTSIDE PATROL SERGEANT. |
| **0800** | **(1) INMATE RELEASED:** ▮ **DISCHARGE TO YOLO PROBATION** |
| 0802 | ALPHA FACILITY A.M. CULINARY TOOL INVENTORY CLEARED. |
| 0815 | MCIC INNER PERIMETER FOOT PATROL INSPECTION COMPLETED BY DELTA & ECHO SECURITY PATROL OFFICERS. |
| 0820 | DELTA FACILITY A.M. CULINARY TOOL INVENTORY CLEARED. |
| 0842 | ECHO FACILITY A.M. CULINARY TOOL INVENTORY CLEARED. |
| 0856 | BRAVO FACILITY A.M. CULINARY TOOL INVENTORY CLEARED. |
| 0941 | MSF A.M. CULINARY TOOL INVENTORY CLEARED. |
| 0949 | CTC A.M. KITCHEN TOOL INVENTORY CLEARED. |
| 1000 | SECURITY CHECK OF PRESTON GROUNDS COMPLETED BY THE CENTRAL SERVICE S&E. |
| **1010** | **CODE 1 ECHO PROGRAM CODE 4 @ 1015** |
| 1040 | MSF P.M. CULINARY TOOL INVENTORY CLEARED. |
| 1100 | MINIMUM SUPPORT FACILITY COUNT COMMENCED. COUNT CLEARED @ 1114 |
| 1117 | KVSP TRANS, OUT W/1 TRANSFER |
| 1200 | CLETS CHECK COMPLETED; NO HWDS. |
| 1200 | CLOSE CUSTODY COUNT COMMENCED. COUNT CLEARED @ 1219 |
| 1205 | ALPHA FACILITY P.M. CULINARY TOOL INVENTORY CLEARED. |
| 1214 | CHARLIE FACILITY P.M. CULINARY TOOL INVENTORY CLEARED. |
| 1217 | BRAVO FACILITY P.M. CULINARY TOOL INVENTORY CLEARED. |
| 1222 | DELTA FACILITY P.M. CULINARY TOOL INVENTORY CLEARED. |
| 1225 | ECHO FACILITY P.M. CULINARY TOOL INVENTORY CLEARED. |
| **1226** | **MCSP TRANS. OUT W/1 ORMD TO SJGH, STOCKTON VIA CODE 2  AMBULANCE** |
| 1300 | HOURLY INSPECTIONS OF THE OUTER PERIMETER LEF COMPLETED BY THE OP SGT. |
| 1310 | CENTRAL KITCHEN TOOL INVENTORY CLEARED. |
| 1400 | RELIEVED BY THIRD WATCH. |

R. RODRIGUEZ
WATCH COMMANDER

| | | |
|---|---|---|
| 2 | CODE 1 ALARM | |
| 0 | CODE 2 ALARM(S) | |
| 0 | CODE 3 ALARM(S) | |
| 0 | MEDICAL ALARM(S) | |
| 0 | FENCE ALARM(S) | |
| 0 | FIRE ALARM(S) | |

15

DEF115208

**Exhibit**

**L**

**1**

1  PETER J. HIRSIG (State Bar No. 197993)
   peter.hirsig@mcnamaralaw.com
2  MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
   maria.zhurnalova-juppunov@mcnamaralaw.com
3  DANIEL R. MAYER (State Bar No. 300077)
   daniel.mayer@mcnamaralaw.com
4  McNAMARA, AMBACHER, WHEELER,
   HIRSIG & GRAY LLP
5  3480 Buskirk Avenue, Suite 250
   Pleasant Hill, CA 94523
6  Telephone: (925) 939-5330
   Facsimile:  (925) 939-0203

7

8  Attorneys for Defendants
   ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
9  BRIZENDINE, BROCKENBOROGH, CEBALLOS,
   HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
10 PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
   M. SMITH, C. SMITH, TIEBROCK, TOCHE, WAINE

11                   UNITED STATES DISTRICT COURT

12                   EASTERN DISTRICT OF CALIFORNIA

13

14 | Estate of WILLIAM SCHMITZ, deceased, | Case No. 2:20-CV-00195-JAM-CKD
   | by and through THOMAS J. SCHMITZ
15 | and DIANNE MALLIA, as Successors in | **DEFENDANT KATHERINE TEBROCK'S**
   | Interest; THOMAS SCHMITZ, | **RESPONSES TO PLAINTIFF'S REQUEST**
16 | Individually; and DIANNE MALLIA, | **FOR ADMISSIONS, SET ONE**
   | Individually,
17 |                                      | Action Filed:  7/16/2020
   |         Plaintiffs,
18
   |     vs.
19
   | ASMAN et al,
20
   |         Defendants.
21

22 PROPOUNDING PARTY:    Plaintiff DIANNE MALLIA, individually

23 RESPONDING PARTY:     Defendant KATHERINE TEBROCK

24 SET NUMBER:           ONE

25                      **PRELIMINARY STATEMENT**

26       These responses are made solely for the purpose of this action.  Each response is subject

27 to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

28 all other objections and grounds that would require the exclusion of any statements herein, if any

DEF. TEBROCK'S RESPONSES TO PL'S
RFA, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1  requests were asked for, or if any statement contained herein were made by a witness present and

2  testifying in court, all of which objections and grounds are reserved and may be interposed at the

3  time of trial.

4  Responding party is responding to all of the requests to the extent that information has

5  become known to her. However, responding party's discovery, investigation, and preparation for

6  trial of this matter has not been completed as of the date of these responses and, therefore,

7  responding party does not purport to state anything more than information currently known and

8  discovered by her.

9  Responding party reserves the right to continue discovery and investigation in this matter

10  regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

11  herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

12  are responded to fully and so far as information is currently available to responding party; and

13  responding party is not precluded from presenting at trial information discovered after the date of

14  these responses.

15  This Preliminary Statement is incorporated into each and every response set forth below.

16  **RESPONSES**

17  **REQUEST FOR ADMISSION NO. 1:**

18  Admit that ALL documents disclosed by YOU are true and accurate copies of the original

19  documents.

20  **RESPONSE TO REQUEST TO ADMISSION NO. 1:**

21  Objection. Defendant Tebrock is not the duly authorized Custodian of Records and is not

22  authorized to certify the records, pursuant to Federal Rules of Civil Procedure 44. Subject to and

23  without waiving of said objections, Defendant responds: Admit.

24  **REQUEST FOR ADMISSION NO. 2:**

25  Admit that YOU knew CDCR was mandated in Coleman to keep a vacancy rate of less than

26  10% for mental health providers during the entire time YOU were employed with CDCR.

27  **RESPONSE TO REQUEST TO ADMISSION NO. 2:**

28  Objection. This request calls for information that is irrelevant and not calculated to lead to

DEF. TEBROCK'S RESPONSES TO PL'S                    2
RFA, SET ONE

1    admissible evidence or proportional to the needs of the case. Request is vague and ambiguous as to

2    "mental health providers." The request is vague and ambiguous as to time. Defendant further

3    objects to the extent the request seeks information protected under attorney client privilege and

4    work product, and information protected by California Evidence Code section 1157.

5        Defendant was appointed to Deputy Director of CDCR in 2015, and assumed that role

6    January 1, 2016. She departed the position of Deputy Director of CDCR in 2019. Defendant admits

7    that between the years, 2016 through 2019, defendant Tebrock was aware that the court in the

8    *Coleman* litigation, *Coleman v. Newsom*, No. 2:90-cv-0520 KJM DB P, ordered the defendants in

9    that case to maintain a maximum   vacancy rate of ten percent for specified mental health care

10   classifications.

11   **REQUEST FOR ADMISSION NO. 3:**

12       Admit that YOU knew the vacancy rate for all required mental health providers was never

13   below 10% for Mule Creek State Prison during YOUR time employed with CDCR.

14   **RESPONSE TO REQUEST TO ADMISSION NO. 3:**

15       Objection. This request calls for information that is irrelevant and not calculated to lead to

16   admissible evidence or proportional to the needs of the case. Request is vague and ambiguous as to

17   "required" and to "mental health providers." The request is vague and ambiguous as to time.

18   Defendant further objects to the extent the request seeks information protected under attorney client

19   privilege and work product, and information protected by California Evidence Code section 1157.

20   Subject to and without waiving these objections, defendant responds: After conducting a reasonable

21   inquiry, the information reasonably available to defendant is insufficient to admit or deny.

22   **REQUEST FOR ADMISSION NO. 4:**

23       Admit that YOU had the responsibility to enact the Coleman mandates.

24   **RESPONSE TO REQUEST TO ADMISSION NO. 4:**

25       Objection. This request calls for information that is irrelevant and not calculated to lead to

26   admissible evidence or proportional to the needs of the case. Request is vague and ambiguous as to

27   "enact," as to "Coleman mandates," the request is also vague and ambiguous as to time. Defendant

28   further objects to the extent the request seeks information protected under attorney client privilege

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1  and work product, and information protected by California Evidence Code section 1157. Subject

2  to and without waiving these objections, defendant responds:

3      CDCR and CCHCS comprise a matrix organization, with dispersed responsibility across

4  the organization. Defendant did not have direct supervisory duty over the employees at any

5  particular CDCR or CCHCS facility. On that basis Defendant, denies.

6  **REQUEST FOR ADMISSION NO. 5:**

7      Admit that YOU knew failure to enact the Coleman mandate results in ongoing

8  constitutional violations of mentally ill within CDCR.

9  **RESPONSE TO REQUEST TO ADMISSION NO. 5:**

10     Objection. This request is vague and ambiguous as to "Coleman mandate," this request is

11  vague and ambiguous as to "constitutional violations," and as to "mentally ill." Defendant further

12  objects as to the question as it is argumentative and assumes facts in dispute and further it assumes

13  facts not in evidence. The requests improperly asks for a legal conclusion. Subject to and without

14  waiving these objections, defendant responds: Deny.

15  **REQUEST FOR ADMISSION NO. 6:**

16     Admit that YOU knew failure to keep a vacancy rate of less than 10% for mental health

17  providers at Mule Creek State Prison resulted in prisoners with serious mental disorders, like

18  William Schmitz, from receiving the frequency of care detailed in the Mental Health Services

19  Delivery System Program Guide.

20  **RESPONSE TO REQUEST TO ADMISSION NO. 6:**

21     Objection. Defendant objects as the request is vague and ambiguous as to "serious mental

22  disorders," and to "frequency of care." Defendant further objects that this request is argumentative

23  as phrased, it assumes facts not in evidence and assumes facts in dispute, as phrased Defendant is

24  unable to either admit or deny.

25  **REQUEST FOR ADMISSION NO. 7:**

26     Admit that during YOUR time as Deputy Director of the Statewide Mental Health Program

27  for CDCR YOU could have directed more resources to hiring and retaining mental health providers

28  within CDCR.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1    **RESPONSE TO REQUEST TO ADMISSION NO. 7:**

2          Objection. Request is compound and conjunctive, as retaining and hiring are two separate

3    processes. Request is also vague and ambiguous as to "directed" and to "resources." This request

4    calls for information that is irrelevant and not calculated to lead to admissible evidence or

5    proportional to the needs of the case. Subject to and without waiving said objections, Defendant

6    responds: Deny.

7    **REQUEST FOR ADMISSION NO. 8:**

8          Admit that YOU were aware the majority of individual cases of Coleman class members at

9    Mule Creek State Prison reviewed by the Special Master were found to have inadequate care as

10    defined in the Special Master reports.

11    **RESPONSE TO REQUEST TO ADMISSION NO. 8:**

12          Objection. This request calls for information that is irrelevant and not calculated to lead to

13    admissible evidence or proportional to the needs of the case. The request is vague and ambiguous

14    as to "majority of individual cases"." Additionally, request is vague and ambiguous as to time.

15    Without waiving said objections, Defendant responds: Defendant has insufficient information to

16    enable her to admit or deny the request as phrased.

17    **REQUEST FOR ADMISSION NO. 9:**

18          Admit that during YOUR time as Deputy Director of the Statewide Mental Health Program

19    for CDCR, YOU were aware of the concerns by CDCR psychiatrists that psychologists were

20    practicing above their scope of practice.

21    **RESPONSE TO REQUEST TO ADMISSION NO. 9:**

22          Objection. This request calls for information that is irrelevant and not calculated to lead to

23    admissible evidence or proportional to the needs of the case. The request is vague and ambiguous

24    as to "concerns," as to "scope of practice," as to which "psychiatrists," as to which "psychologists,"

25    vague as to time. Without waiving said objections and subject thereto, Defendant responds: She

26    admits she was aware of Michael Golding's concerns

27    **REQUEST FOR ADMISSION NO. 10:**

28          Admit that from the time YOU were appointed Deputy Director of the Statewide Mental

DEF. TEBROCK'S RESPONSES TO PL'S          5
RFA, SET ONE

1    Health Program for CDCR in 2015 until the date of William Schmitz death on January 21, 2019

2    that CDCR did not have enough psychiatrists to provide the amount of services mandated by the

3    MHSDS Program Guide.

4    **RESPONSE TO REQUEST TO ADMISSION NO. 10:**

5    Objection. This request calls for information that is irrelevant and not calculated to lead to

6    admissible evidence or proportional to the needs of the case. The request is vague and ambiguous

7    as to "enough psychiatrists," and to "the amount of services," also vague as to location and as to

8    time. Without waiving said objections and subject thereto, Defendant responds: Defendant lacks

9    sufficient information to enable her to admit or deny the question as phrased.

10    **REQUEST FOR ADMISSION NO. 11:**

11    Admit that from the time YOU were appointed Deputy Director of the Statewide Mental

12    Health Program for CDCR in 2015 until the date of William Schmitz death on January 21, 2019

13    that the Coleman court had found the insufficient mental health staffing results in ongoing

14    violations of the constitution to Coleman members.

15    **RESPONSE TO REQUEST TO ADMISSION NO. 11:**

16    Objection. This request calls for information that is irrelevant and not calculated to lead to

17    admissible evidence or proportional to the needs of the case. Further, the documents speak for

18    themselves. This request improperly asks for the interpretation of court findings and orders and

19    improperly asks for legal conclusions.

20    **REQUEST FOR ADMISSION NO. 12:**

21    Admit that from the time YOU were appointed Deputy Director of the Statewide Mental

22    Health Program for CDCR in 2015 until the date of William Schmitz death on January 21, 2019

23    that the Coleman court had never found the mental health care provided to CDCR mentally health

24    inmates to be consistent with the community standards.

25    **RESPONSE TO REQUEST TO ADMISSION NO. 12:**

26    Objection. This request calls for information that is irrelevant and not calculated to lead to

27    admissible evidence or proportional to the needs of the case. Further, the documents speak for

28    themselves. This request improperly asks for the interpretation of court findings and orders and

DEF. TEBROCK'S RESPONSES TO PL'S          6
RFA, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1    improperly asks for legal conclusions.

2    **REQUEST FOR ADMISSION NO. 13:**

3    Admit from the time YOU were appointed Deputy Director of the Statewide Mental Health

4    Program for CDCR in 2015 until the date of William Schmitz death on January 21, 2019 YOU

5    could have directed more mental health resources to Mule Creek State Prison.

6    **RESPONSE TO REQUEST TO ADMISSION NO. 13:**

7    Objection. This request calls for information that is irrelevant and not calculated to lead to

8    admissible evidence or proportional to the needs of the case. Further, the request is vague and

9    ambiguous as to "directed," as to "mental health resources." Additionally, defendant objects on the

10    basis the request is argumentative and assumes facts not in evidence and assumes facts in dispute.

11    Without waiving said objections and subject thereto, Defendant answers as follows: Deny.

12    **REQUEST FOR ADMISSION NO. 14:**

13    Admit the ability of a CDCR institution to provide care mandated by Mental Health

14    Program guide directly depends on the number of psychiatrists available at the institution.

15    **RESPONSE TO REQUEST TO ADMISSION NO. 14:**

16    Objection. This request calls for information that is irrelevant and not calculated to lead to

17    admissible evidence or proportional to the needs of the case. The request is argumentative, it

18    assumes facts not in evidence and assumes facts in dispute, and is vague and ambiguous as to

19    "directly depends". The requests also calls for a premature expert opinion. Without waiving said

20    objections and subject thereto, Defendant responds as follows: Defendant does not have sufficient

21    information to enable her to either admit nor deny the request as phrased.

22    **REQUEST FOR ADMISSION NO. 15:**

23    Admit that YOU were the direct supervisor of Kevin KUICH, MD.

24    **RESPONSE TO REQUEST TO ADMISSION NO. 15:**

25    This request calls for information that is irrelevant and not calculated to lead to admissible

26    evidence or proportional to the needs of the case. Without waiving said objections and subject

27    thereto, Defendant responds: Admit.

28    **REQUEST FOR ADMISSION NO. 16:**

DEF. TEBROCK'S RESPONSES TO PL'S          7
RFA, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1    Admit from the time YOU were appointed Deputy Director of the Statewide Mental Health

2    Program for CDCR in 2015 until the date of William Schmitz death on January 21, 2019, there

3    were not enough psychiatrists at MCSP to provide a minimal constitutional level of mental

4    health care to the mentally ill inmates.

5    **RESPONSE TO REQUEST TO ADMISSION NO. 16:**

6    Objection. This request calls for information that is irrelevant and not calculated to lead to

7    admissible evidence or proportional to the needs of the case. Request is vague and ambiguous as to

8    "constitutional level of mental health care." Request is further argumentative and assumes facts not

9    in evidence and assumes facts in dispute. The request improperly calls for a legal conclusion.

10   Without waiving said objections and subject thereto, Defendant responds as follows: Deny.

11   **REQUEST FOR ADMISSION NO. 17**

12   Admit that YOU received an email on July 2, 2018 from Dr. Michael Golding and labeled

13   exhibit U in his first whistleblower report in the Coleman case.

14   **RESPONSE TO REQUEST TO ADMISSION NO. 17:**

15   Objection. This request calls for information that is irrelevant and not calculated to lead to

16   admissible evidence. Without waiving said objections and subject thereto, Defendant responds as

17   follows: Admit that the referenced email was sent by Dr. Golding to me on July 6, 2018.

18   **REQUEST FOR ADMISSION NO. 18:**

19   Admit that YOU knowingly presented data to the Coleman court that was inaccurate in

20   regards to compliance with psychiatry visit timelines.

21   **RESPONSE TO REQUEST TO ADMISSION NO. 18:**

22   Objection. This request calls for information that is irrelevant and not calculated to lead to

23   admissible evidence or proportional to the needs of the case. Request is argumentative, assumes

24   facts not in evidence and assumes facts in dispute. Without waiving said objections and subject

25   thereto, Defendant responds: Deny.

26   **REQUEST FOR ADMISSION NO. 19:**

27   Admit that during YOUR time as Deputy Director of the Statewide Mental Health Program

28   for CDCR, YOU were aware that CDCR psychiatrists were unable to attend IDTT meetings due to

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1   their workload.

2   ///

3   **RESPONSE TO REQUEST TO ADMISSION NO. 19:**

4           Objection. This request calls for information that is irrelevant and not calculated to lead to

5   admissible evidence or proportional to the needs of the case. Request is argumentative, assumes

6   facts not in evidence and assumes facts in dispute. Defendant further objects the Request is vague

7   and ambiguous as to time. Without waiving said objections and subject thereto, Defendant

8   responds: Deny. Defendant was aware that there could have been a multitude of reasons an

9   individual psychiatrist would not have been able to attend an IDTT.

10  **REQUEST FOR ADMISSION NO. 20:**

11          Admit that during YOUR time as Deputy Director of the Statewide Mental Health Program

12  for CDCR, YOU were aware that CDCR psychiatrists were unable to meet with inmates in the EOP

13  at the frequency mandated by the Program Guide due to their workload.

14  **RESPONSE TO REQUEST TO ADMISSION NO. 20:**

15          Objection. This request calls for information that is irrelevant and not calculated to lead to

16  admissible evidence or proportional to the needs of the case. Request is argumentative, assumes

17  facts not in evidence and assumes facts in dispute. Defendant further objects the Request is vague

18  and ambiguous as to time. Without waiving said objections and subject thereto, Defendant

19  responds: Deny. Defendant was aware that there could have been a multitude of reasons an

20  individual psychiatrist would not have been able to meet with inmates in EOP.

21  **REQUEST FOR ADMISSION NO. 21:**

22          Admit that during YOUR time as Deputy Director of the Statewide Mental Health Program

23  for CDCR, YOU were aware that CDCR psychiatrists were leaving CDCR due to ethical concerns

24  working within CDCR.

25  **RESPONSE TO REQUEST TO ADMISSION NO. 21:**

26          Objection. This request calls for information that is irrelevant and not calculated to lead to

27  admissible evidence or proportional to the needs of the case. Request is vague and ambiguous as to

28  "ethical concerns." Further, Request assumes facts not in evidence and assumes facts in dispute,

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

*LJO*

1  request is argumentative as phrased. Without waiving said objections, and subject thereto,

2  Defendant responds: Deny.

3  **REQUEST FOR ADMISSION NO. 22:**

4      Admit that during YOUR time as Deputy Director of the Statewide Mental Health Program

5  for CDCR, YOU were aware that CDCR psychiatrists were concerned psychologists were

6  performing tasks that were above their scope of practice.

7  **RESPONSE TO REQUEST TO ADMISSION NO. 22:**

8      Objection. This request calls for information that is irrelevant and not calculated to lead to

9  admissible evidence or proportional to the needs of the case. Further, this request is duplicative,

10  and has been asked and answered. Without waiving said objection and subject thereto, Defendant

11  responds: See response to Request No. 9.

12  **REQUEST FOR ADMISSION NO. 23:**

13      Admit that during YOUR time as Deputy Director of the Statewide Mental Health Program

14  for CDCR, YOU were aware that CDCR psychiatrists were concerned they were unable to provide

15  psychiatric care up to community standards.

16  **RESPONSE TO REQUEST TO ADMISSION NO. 23:**

17      Objection. This request calls for information that is irrelevant and not calculated to lead to

18  admissible evidence or proportional to the needs of the case. Request is vague and ambiguous as to

19  "community standards," and to "unable to provide." Further, the request assumes facts not in

20  evidence and assumes facts in dispute, request is argumentative as phrased. Without waiving said

21  objections, and subject thereto, Defendant responds: Admit she was aware of Michael Golding's

22  concerns.

23  **REQUEST FOR ADMISSION NO. 24:**

24      Admit that during YOUR time as Deputy Director of the Statewide Mental Health Program

25  for CDCR, YOU were aware that CDCR psychiatrists were concerned the medical record system

26  was not sufficient to provide psychiatric care up to community standards.

27  **RESPONSE TO REQUEST TO ADMISSION NO. 24:**

28      Objection. This request calls for information that is irrelevant and not calculated to lead to

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1  admissible evidence or proportional to the needs of the case. Further, this request is duplicative,

2  and has been asked and answered. Without waiving said objection and subject thereto, Defendant

3  responds: See response to Request No. 23.

4  **REQUEST FOR ADMISSION NO. 25:**

5      Admit that allowing non- psychiatrists to over rule decisions by psychiatrists regarding care

6  of mentally ill endangers mentally ill.

7

8  **RESPONSE TO REQUEST TO ADMISSION NO. 25:**

9      Objection. This request calls for information that is irrelevant and not calculated to lead to

10  admissible evidence or proportional to the needs of the case. Defendant objects that the Request is

11  argumentative and assumes facts not in evidence, and assumes facts in dispute. Request is vague

12  and ambiguous as to "over rule decisions," to "endangers mentally ill." Without waiving said

13  objections, and subject thereto, Defendant responds: Defendant lacks sufficient information to

14  enable her to admit or deny the Request as phrased.

15  **REQUEST FOR ADMISSION NO. 26:**

16      Admit that failure to meet the Coleman mandates results in the deaths of mentally ill

17  individuals.

18  **RESPONSE TO REQUEST TO ADMISSION NO. 26:**

19      Objection. This request calls for information that is irrelevant and not calculated to lead to

20  admissible evidence or proportional to the needs of the case. Defendant objects that the Request is

21  argumentative and assumes facts not in evidence, and assumes facts in dispute. Further, the request

22  is vague and ambiguous as to what is meant by "the Coleman mandates." Without waiving said

23  objections, and subject thereto, Defendant responds: Deny

24

25

26

27

28

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

Dated: November 1, 2023

MCNAMARA, AMBACHER, WHEELER,
HIRSIG & GRAY LLP

By: _____*Daniel Mayer*_____
Peter J. Hirsig
Maria Zhurnalova-Juppunov
Daniel R. Mayer
Attorneys for Defendants
ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
BRIZENDINE, BROCKENBOROGH, CEBALLOS,
HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
PONCIANO, RAMKUMAR, REKART, ROBINSON,
RUDAS, M. SMITH, C. SMITH, TIEBROCK,
TOCHE, WAINE, and CALIFORNIA DEPARTMENT
OF CORRECTIONS AND REHABILITATION
(CDCR)

MCNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

*EXH M*

*1*

1  PETER J. HIRSIG (State Bar No. 197993)
   peter.hirsig@mcnamaralaw.com
2  MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
   maria.zhurnalova-juppunov@mcnamaralaw.com
3  DANIEL R. MAYER (State Bar No. 300077)
   daniel.mayer@mcnamaralaw.com
4  McNAMARA, AMBACHER, WHEELER,
   HIRSIG & GRAY LLP
5  639 Kentucky Street
   Fairfield, CA 94533-5530
6  Telephone: (707) 427-3998
   Facsimile:  (707) 427-0268

7

8  Attorneys for Defendants
   ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
9  BRIZENDINE, BROCKENBOROGH, CEBALLOS,
   HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
10  PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
   M. SMITH, C. SMITH, TEBROCK, TOCHE and WAINE

11              UNITED STATES DISTRICT COURT

12              EASTERN DISTRICT OF CALIFORNIA

13

14  Estate of WILLIAM SCHMITZ, deceased,        Case No. 2:20-CV-00195-JAM-CKD
    by and through THOMAS J. SCHMITZ
15  and DIANNE MALLIA, as Successors in         **DEFENDANT KATHERINE TEBROCK'S**
    Interest; THOMAS SCHMITZ,                   **RESPONSES TO PLAINTIFF'S SPECIAL**
16  Individually; and DIANNE MALLIA,            **INTERROGATORIES, SET ONE**
    Individually,
17                                              Action Filed:  7/16/2020
              Plaintiffs,
18
         vs.
19
20  ASMAN et al,

           Defendants.
21

22  PROPOUNDING PARTY:    Plaintiff DIANNE MALLIA, individually

23  RESPONDING PARTY:     Defendant KATHERINE TEBROCK

24  SET NUMBER:           ONE

25                   **PRELIMINARY STATEMENT**

26      These responses are made solely for the purpose of this action.  Each response is subject

27  to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

28  all other objections and grounds that would require the exclusion of any statements herein, if any

DEF. TEBROCK'S RESPONSES TO PL'S
INTERROGATORIES, SET ONE

1  requests were asked for, or if any statement contained herein were made by a witness present and

2  testifying in court, all of which objections and grounds are reserved and may be interposed at the

3  time of trial.

4      Responding party is responding to all of the requests to the extent that information has

5  become known to her. However, responding party's discovery, investigation, and preparation for

6  trial of this matter has not been completed as of the date of these responses and, therefore,

7  responding party does not purport to state anything more than information currently known and

8  discovered by her.

9      Responding party reserves the right to continue discovery and investigation in this matter

10  regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

11  herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

12  are responded to fully and so far as information is currently available to responding party; and

13  responding party is not precluded from presenting at trial information discovered after the date of

14  these responses.

15      This Preliminary Statement is incorporated into each and every response set forth below.

16  **RESPONSES**

17  **INTERROGATORY NO. 1:**

18      Identify all of YOUR duties while Deputy Director of the Statewide Mental Health Program

19  for CDCR.

20  **RESPONSE TO INTERROGATORY NO. 1:**

21      The request seeks information that is irrelevant and not likely to lead to admissible evidence or

22  proportional to the needs of the case. Subject to and without waiving said objections, Defendant

23  responds: Defendant refers Plaintiffs to the duty statement which contains a comprehensive list of

24  defendant's duties while Deputy Director of the Statewide Mental Health Program.

25  **INTERROGATORY NO. 2:**

26      Identify all of YOUR responsibilities relating to enacting the Coleman mandates while

27  Deputy Director of the Statewide Mental Health Program for CDCR.

28  **RESPONSE TO INTERROGATORY NO. 2:**

DEF. TEBROCK'S RESPONSES TO PL'S    2
INTERROGATORIES, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1  Objection. The Interrogatory seeks information that is irrelevant and not likely to lead to

2  admissible evidence or proportional to the needs of the case. This interrogatory is argumentative as

3  phrased and assumes facts not in evidence, that the Defendant was responsible for "enacting"

4  mandates. Further, Defendant objects, this Interrogatory is vague and ambiguous as to "enacting"

5  and to the "Coleman mandates". Subject to and without waving said objection, Defendant responds:

6  Defendants' role within CDCR was to promulgate policy, while enforcing policy was the province

7  of facility level employees, over whom she had no direct supervisory authority.

8  **INTERROGATORY NO. 3:**

9  Identify all information YOU received relating to CDCR's inability to reach a vacancy rate

10  for mental health providers of below 10% at Mule Creek State Prison during YOUR time as Deputy

11  Director of the Statewide Mental Health Program for CDCR.

12  **RESPONSE TO INTERROGATORY NO. 3:**

13  Objection. The Interrogatory seeks information that is irrelevant and not likely to lead to

14  admissible evidence or proportional to the needs of the case. The Interrogatory is vague and

15  ambiguous as to "identify all information," "inability," and to "mental health providers." Subject

16  to and without waving said objection, defendant responds: Defendant recalls she received statewide

17  staffing reports from either the CCHCS HR department or mental health headquarters staff who

18  assembled reports. She may have received information via email, but Defendant is not in possession

19  of any responsive documentation, as she is not the custodian of record for any documents, and is

20  not able to access any such information.

21  **INTERROGATORY NO. 4:**

22  Identify ALL proposals YOU reviewed relating to decreasing mental health provider

23  vacancies from January 1, 2010 until January 30, 2019.

24  **RESPONSE TO INTERROGATORY NO. 4**

25  Objection. The Interrogatory seeks information that is irrelevant and not likely to lead to

26  admissible evidence or proportional to the needs of the case. The Interrogatory also seeks

27  information protected by attorney-client privilege, and the attorney work product doctrine, and

28  deliberative privilege. Furthermore, where this interrogatory seeks information not protected by

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    privilege, it seeks information equally available to the propounding party, through public record

2    filings. Subject to and without waving said objection, defendant responds: Proposals not

3    confidential and privileged are available either through BCPs or on the Coleman docket, which are

4    equally available to Plaintiffs. Defendant is not in possession of any responsive documentation, is

5    not the custodian of record for any documents, and is not able to access any such information.

6    **INTERROGATORY NO. 5:**

7    Identify ALL information YOU received from Dr. Golding relating to Psychiatrists within

8    CDCR being unable to comply with the MHSDS Program Guide.

9    **RESPONSE TO INTERROGATORY NO. 5**

10    Objection. The Interrogatory seeks information that is irrelevant and not likely to lead to

11    admissible evidence or proportional to the needs of the case. The Interrogatory is also vague and

12    ambiguous. Subject to and without waving said objection, defendant responds: Defendant and Dr.

13    Golding communicated via email and through in-person and telephonic meetings. Defendant is not

14    in possession of any responsive documentation, is not the custodian of record for any documents,

15    and is not able to access any such information.

16    **INTERROGATORY NO. 6:**

17    Identify ALL documents relating to the duties of individuals who played a role in hiring of

18    mental health providers at Mule Creek State Prison between January 1, 2010 and January 22, 2019.

19    ///

20    **RESPONSE TO INTERROGATORY NO. 6:**

21    Objection: The Interrogatory seeks information that is irrelevant and not likely to lead to

22    admissible evidence or proportional to the needs of the case. The interrogatory is vague and

23    ambiguous as to "played a role" as there were different personnel involved with posting ads,

24    interviewing, background checks, etc., and to "mental health providers." Subject to and without

25    waving said objection, defendant responds: Defendant was not responsible for establishing duties

26    of individuals who played a role in hiring of mental health providers at Mule Creek State Prison.

27    Defendant is not in possession of any responsive documentation, is not the custodian of record for

28    any documents, and is not able to access any such information.

DEF. TEBROCK'S RESPONSES TO PL'S          4
INTERROGATORIES, SET ONE

m 5

1    **INTERROGATORY NO. 7**

2         Identify ALL documents relating to the CDCR's response to the whistleblower reports of

3    Dr. Michael Golding in the Coleman litigation.

4    **RESPONSE TO INTERROGATORY NO. 7:**

5         Objection. This interrogatory seeks information not reasonably calculated to lead to the

6    discovery of admissible evidence, as decedent's death was in no way related to the findings in the

7    Coleman court. This Interrogatory seeks information protected by attorney-client privilege, and the

8    attorney work product doctrine. Further, this interrogatory seeks information that is equally

9    available to plaintiffs from the court docket in the Coleman litigation. Subject to and without

10   waiving said objection, defendant responds: Defendant is not in possession of any responsive

11   documentation, is not the custodian of record for any documents, and is not able to access any such

12   information.

13   **INTERROGATORY NO. 8:**

14        Identify ALL allegations that YOU disagree with from the whistleblower reports of Dr.

15   Michael Golding in the Coleman litigation.

16   **RESPONSE TO INTERROGATORY NO. 8:**

17        Objection. This interrogatory seeks irrelevant information not reasonably calculated to lead

18   to the discovery of admissible evidence, is unduly burdensome and harassing. Subject to and

19   without waiving said objections, Defendant responds: Plaintiff is referred to the public docket and

20   to review the position of CDCR and its disputes with Dr. Golding's report.

21   **INTERROGATORY NO. 9:**

22        Identify ALL documents relating to the CDCR's response to the March of 2015, Receiver

23   J. Clark Kelso report. (BATES PLAINTIFFS 6357)

24   **RESPONSE TO INTERROGATORY NO. 9:**

25        Objection. The Interrogatory seeks information that is irrelevant and not likely to lead to

26   admissible evidence or proportional to the needs of the case. The interrogatory also seeks

27   information protected by attorney-client privilege and the attorney work product doctrine, as the J.

28   Clark Kelso report was published while Defendant was in-house counsel to CDCR. Further, it

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1 would be unduly burdensome to require Defendant to identify all document's related to CDCR's

2 response to the J. Clark Kelso report. Subject to and without waiving said objection Defendant

3 responds: Defendant is unaware of any responsive documents, Defendant is not in possession of

4 any responsive documentation, is not the custodian of record for any documents, and is not able to

5 access any such information.

6 **INTERROGATORY NO. 10:**

7 Identify ALL documents relating to the CDCR's response to the July 2018 OIG report of

8 Mule Creek State Prison. (BATES PLAINTIFFS 5752-5871)

9 **RESPONSE TO INTERROGATORY NO. 10:**

10 Objection. The Interrogatory seeks information that is irrelevant and not likely to lead to

11 admissible evidence or proportional to the needs of the case. Further, this Interrogatory is

12 argumentative and assumes facts not in evidence. Subject to and without waiving said objection,

13 Defendant responds: Defendant is unaware of any responsive documents, Defendant is not in

14 possession of any responsive documentation, is not the custodian of record for any documents, and

15 is not able to access any such information.

16 **INTERROGATORY NO. 11:**

17 As one of YOUR duties described in YOUR duty statement (BATES DEF009353-009354)

18 was to ensure that program delivery was consistent with community standards, identify ALL time

19 periods while YOU were Deputy Director of the Statewide Mental Health Program for CDCR that

20 YOU believe Mule Creek State Prison did not meet the community standards for the delivery of

21 mental health services.

22 **RESPONSE TO INTERROGATORY NO. 11:**

23 Objection. The interrogatory seeks information that is irrelevant and disproportionate to the

24 needs of the case. Further, Defendant objects to the extent this Interrogatory calls for a premature

25 expert opinion and ask for a legal conclusion. Subject to and without waiving said objection,

26 Defendant responds: Defendant does not recall any particular time period that Mule Creek State

27 Prison did not meet the community standards for the delivery of mental health services. To the

28 extent the Coleman Special Master or the Federal Court opined that a facility was out of compliance

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    with a particular mandate, plaintiff is referred to the Coleman court docket, which is equally

2    available to plaintiff.

3    **INTERROGATORY NO. 12:**

4        As one of YOUR duties described in YOUR duty statement (BATES DEF009353-009354)

5    was to ensure compliance with mandated court orders including the Mental Health Program guide,

6    identify ALL time periods that CDCR was out of compliance with any mandated court orders while

7    YOU were Deputy Director of the Statewide Mental Health Program for CDCR.

8    **RESPONSE TO INTERROGATORY NO. 12:**

9        Objection. The interrogatory seeks information that is irrelevant and disproportionate to the

10   needs of the case. This Interrogatory is overly broad, unduly burdensome and vague and ambiguous

11   as to time and scope, compound and asks for a premature expert opinion. Further, this interrogatory

12   seeks information that is equally available to plaintiffs from the court docket in the Coleman

13   litigation. Subject to and without waiving said objection, defendant responds: To the extent the

14   Coleman Special Master or the Federal Court opined that a facility was out of compliance with a

15   particular mandate, plaintiff is referred to the Coleman court docket, which is equally available to

16   plaintiff.

17   **INTERROGATORY NO. 13:**

18       As one of YOUR duties described in YOUR duty statement (BATES DEF009353-009354)

19   was to ensure that headquarters and regional mental health staff are adhering to statewide mental

20   health policies, procedures, programs, and processes, identify ALL documents relating to regional

21   mental health staff failing to adhere to statewide mental health policies.

22   **RESPONSE TO INTERROGATORY NO. 13:**

23       Objection. The interrogatory seeks information that is irrelevant and disproportionate to the

24   needs of the case. This Interrogatory is vague and ambiguous as to time and location, and as to as

25   to "failing to adhere" and as to "statewide mental healthcare policies." The interrogatory is unduly

26   burdensome and harassing as phrased. Subject to and without waiving said objection Defendant

27   responds: Defendant is unaware of any responsive documents, Defendant is not in possession of

28   any responsive documentation, is not the custodian of record for any documents, and is not able to

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    access any such information.

2    **INTERROGATORY NO. 14:**

3        As one of YOUR duties described in YOUR duty statement (BATES DEF009353-009354)

4    was to ensure that program delivery was consistent with community standards, identify ALL

5    documents relating to the CDCR's determination of the community standards for the delivery of

6    mental health services.

7    **RESPONSE TO INTERROGATORY NO. 14:**

8        Objection. The interrogatory seeks information that is irrelevant and disproportionate to the

9    needs of the case. This Interrogatory is vague and ambiguous as to time and location, and as to

10    "community standards" as to "mental health services" and as to "standards for delivery." Subject

11    to and without waiving said objection Defendant responds: As part of her duties, the Mental Health

12    headquarters staff and Defendant drafted proposed policies in response to court mandates. Policies

13    were negotiated with plaintiffs' attorneys, the federal court special master, and his team of experts,

14    before being promulgated.

15    **INTERROGATORY NO. 15:**

16        As one of YOUR duties described in YOUR duty statement (BATES DEF009353-009354)

17    was to ensure that headquarters and regional mental health staff are adhering to statewide mental

18    health policies, procedures, programs, and processes, identify ALL documents relating to

19    headquarters mental health staff failing to adhere to statewide mental health policies.

20    **RESPONSE TO INTERROGATORY NO. 15:**

21        Objection. This interrogatory is duplicative and identical to Special Interrogatory No. 13,

22    as such it is also asked and answered, see response to Interrogatory No. 13. Additionally, the

23    interrogatory seeks information that is irrelevant and disproportionate to the needs of the case. This

24    Interrogatory is vague and ambiguous as to time and location, and as to "failing to adhere" and as

25    to "statewide mental healthcare policies." Subject to and without waiving said objection Defendant

26    responds: Defendant is unaware of any responsive documents, Defendant is not in possession of

27    any responsive documentation, is not the custodian of record for any documents, and is not able to

28    access any such information.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

Dated:  October 9, 2023

MCNAMARA, AMBACHER, WHEELER,
HIRSIG & GRAY LLP


By: _____Daniel Mayer_____
Peter J. Hirsig
Maria Zhurnalova-Juppunov
Daniel R. Mayer
Attorneys for Defendants ADAMS, ANDALUZ,
ASHE, ASMAN, BRANMAN, BRIZENDINE,
BROCKENBOROGH, CEBALLOS, HEATLEY, J.
JOHNSON, R. JOHNSON, LEIDNER, PONCIANO,
RAMKUMAR, REKART, ROBINSON, RUDAS, M.
SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

Exhibit N   - Declaration OF DIANNE MALLIA

I, Dianne Mallia, offer this declaration in opposition to Defendants' motion for protective order. The following exhibits are included with PLAINTIFFS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER AGAINST ENFORCEMENT OF PLAINTIFFS' SUBPOENA TO MICHAEL GOLDING, M.D. BY CALIFORNIA DEPARTMENT OF  CORRECTIONS AND REHABILITATIONS AND  DEFENDANTS ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN, BRIZENDINE, BROCKENBOROGH, CEBALLOS, HEATLEY, J. JOHNSON, R.  JOHNSON, LEIDNER, PONCIANO, RAMKUMAR, REKART,      ROBINSON, RUDAS, M. SMITH, C. SMITH, TEBROCK, TOCHE, AND WAINE

1. Attached as Exhibit A is a true and correct copy of Michael Golding, MD Response to Request for Production of Documents

2. Attached as Exhibit B is a true and correct copy of PLAINTIFF DIANNE MALLIA'S INTERROGATORIES TO DEFENDANT DIANA TOCHE, SET ONE

3. Attached as Exhibit C is a true and correct copy of Defendant TOCHE'S RESPONSES TO Plaintiff Mallia's INTERROGATORIES, SET ONE

4. Attached as Exhibit D  is a true and correct copy- Defendant Troche Duty Statement (Bates number DEF009363)

5. Attached as Exhibit E is a true and correct copy   (Bates number DEF 009081-009083) (FLSA)

6. Attached as Exhibit F is a true and correct copy- Defendant Asman Post Orders from 1/21/2019   (Bates number DEF009144-009147)

7. Attached as Exhibit G is a true and correct copy - Defendant ASMAN'S RESPONSES TO Plaintiff Mallia's request for admission,  SET ONE

8. Attached as Exhibit H is a true and correct copy- DEFENDANT ADAM ASMAN'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET TWO

9. Attached as Exhibit I is a true and correct copy-  (Bates number DEF004936-4938) (Log Book)

10. Attached as Exhibit J  is a true and correct copy-  (Bates number DEF115207) (PSR 1-21-19- redacted)

11. Attached as Exhibit K is a true and correct copy-  (Bates number DEF115208) (Daily Activities Report 1-21-19 redacted)

Affidavit of DIANNE MALLIA

*12. Attached as Exhibit L is a true and correct copy Exhibit L - DEFENDANT KATHERINE TEBROCK'S RESPONSES TO PLAINTIFF' Dianne Mallia's REQUEST FOR ADMISSIONS, SET ONE*

*13. Attached as Exhibit M is a true and correct copy Exhibit M- DEFENDANT KATHERINE TEBROCK'S RESPONSES TO PLAINTIFF Dianne Mallia's SPECIAL INTERROGATORIES, SET ONE*

I declare under penalty of perjury under the laws of California that the foregoing is true and correct and that this Declaration was executed on the 20th day of December 2023, in Roseville, California.

DIANNE MALLIA

Affidavit of DIANNE MALLIA