THOMAS J. SCHMITZ
DIANNE MALLIA
404 Atkinson St,
Roseville, CA 95678
(707) 694-8158
tsfoot49@gmail.com
deedamallia@gmail.com
PRO SE



FILED

MAR 0 1 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
           DEPUTY CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS SCHMITZ, et al., | NO. 2:20-cv00195-DJC-CKD |
| Plaintiffs, | **PLAINTIFF MALLIA's REPLY TO DEFENDANTS ANDALUZ, ASMAN, BRIZENDINE, CEBALLOS, DIAZ, GIPSON, RAMKUMAR, RUDAS, M. SMITH, AND TOCHE'S OPPOSITION TO PLAINTIFFS' MOTION TO DETERMINE SUFFICIENCY OF DISCOVERY RESPONSES MOTION TO DETERMINE THE SUFFICIENCY OF DISCOVERY RESPONSES** |
| vs. | |
| A ASMAN, et al., | |
| Defendants. | |
| | **COMPLAINT FILED: 1/27/2020**<br>**DATE: MARCH 6, 2024**<br>**TIME: 10:00**<br>**COURTROOM:24, 8th floor**<br>**JUDGE ASSIGNED: Honorable Carolyn K. Delaney** |

1

I.

# INTRODUCTION

Plaintiffs' son died over five years ago due to CDCR's broken system of mental health care, Plaintiffs endure the ongoing evasiveness of Defendants and their teams of attorneys which is again demonstrated in Defendants Andaluz, Asman, Brizendine, Ceballos, Diaz, Gipson, Ramkumar, Rudas, M. Smith, and Toche Opposition to Plaintiffs' Motion to Determine the Sufficiently of Discovery Responses. ("Opposition") Defendants attempt to recast facts and paint pro se plaintiffs as needlessly wasting time and resources while ignoring the actual history of discovery in this case. Particularly, Defendants failed to answer the 4AC in good faith and failed to provide the full medical record of William Schmitz as ordered by this Court. In addition, in attempt to disingenuously limit discovery, Defendants deliberately ignore the underlying allegations of ***proven systemic problems*** in the CDCR system that caused William's individual mental health care to be unconstitutional, causing him to return to a state of psychosis and ultimately leading to William's death.

# II. ARGUMENT

## A. Failure to comply with Court Order

First, as claimed in the motion and now confirmed by the Opposition, Defendants failed to provide the full medical records of William Schmitz by January 8, 2021. (ECF 129 at 4) Plaintiffs stipulated to extensive delays for discovery responses in exchange for the full medical records of William, which they already should have attained at least a year prior to the Court's deadline. The vague reasoning for withholding of a significant portion of William's medical record until over a year after Plaintiffs filed their 4AC, past the last amended complaint allowable by the court, and ***three years after William's death***, is unacceptable. It is symbolic of the evasiveness of Defendants in providing discovery and the pathetic state of the CDCR medical record system that contributed to William's suffering and death as it has numerous mentally ill before him. Defendants vaguely contend the failure of Defendants to comply with the Court's order "Due to way request for production for records were defined during this litigation, it was in December 2022 that defendants' counsel obtained a complete set of medical records…"

(Opposition at 8, Footnote 1) [1] Plaintiffs feel the Court should demand a coherent explanation and also sanction Defendants for their years long failure to provide medical records to plaintiffs and year-long failure to comply with this Court's order.

### B. Objections

Numerous objections made by Defendants and argued against by plaintiffs in the motion are not argued in the Opposition showing their initial intent to frustrate attempts of plaintiffs to attain valid discovery regarding the circumstances leading up to the tragic death of William.

### C. Dodging discovery[2]

As stated in the plaintiffs motion, Defendants choose evasiveness. Since the beginning of discovery Defendants have sought to avoid discovery by failing to include that their individual responses include that within their employer's possession. Opposition again attempts to evade. For example in arguing against RFP No. 85 and No. 86, Opposition argues "To begin with Dr. Toche was not the 'command staff' at MCSP..." (Opposition at 16-17) and "Again, this request is improperly directed at Dr. Toche..." (Opposition at 17). This is quite similar to multiple RFP answers by multiple Defendants. For example, Defendant Andaluz responses to RFP No. 79, 80, and 81 which includes "Responding party is unable to locate such documents." (Motion exhibit K) **Does the Court understand these responses to mean that CDCR as a whole has no documents responsive to these requests?**

Defendants that continue to be employed at CDCR, should no longer be able to deflect discovery to others. Plaintiffs should not have to pose every request to every named Defendant, or other unidentified individuals within CDCR to receive all responsive documents in CDCR's control. **To leave no doubt to all parties, Plaintiff Mallia requests the Court clarify that all discovery responses, previously provided and in the future, by Defendants employed in CDCR implicitly include information within CDCR's possession or knowledge.**

---

[1] In addition, Opposition is simply wrong in the statement that plaintiffs had a set of records released to us in May 2019 and we have refused to produce to Defendants.(Opposition at 7-8) Plaintiffs are happy to present the true interactions regarding this request if the Court desires.

[2] Plaintiffs also note the pending documents from the Subpoena of Dr. Golding and anticipation that he may produce documents that should have already been produced, or identified as withheld for privilege, by the named Defendants as requested years ago. For example, just one of similar requests to multiple Defendants, RFP No. 91 to Andaluz requests "Any and all documents constituting emails in there NATIVE FORMAT that mention or refer to DECEDENT or this lawsuit." (Motion Exhibit K)

3

PLAINTIFF MALLIA's REPLY TO OPPOS MOTION TO DETERMINE THE SUFFICIENCY OF DISCOVERY RESPONSES

## D. REQUESTS FOR ADMISSION OF MEDICAL RECORD STATEMENTS.

As expected, Defendants lament having to Admit to the medical records and documentation claiming its too burdensome and "voluminous". The reality is it takes just a few minutes for defendants to admit to a specific medical record statement especially when the document is described for Defendants by date or Bates number. It is obvious that multiple individual Defendants who were supposed to care for William and his mental health failed to review his medical records when William was alive perhaps finding it too "burdensome" at that time to fulfill their basic duties as mental health providers. Now under the requirements of the Rules of Civ Procedure, these medical providers should be made to review and admit to medical record statements as requested in the RFAs.

Further, Defendants were allowed to avoid admitting to numerous clearly documented factual allegations in their Answer to the 4AC. They should not be allowed to do so with the Requests for Admissions. **They should finally admit to these factual allegations.** As explained in the motion, the wasting of resources was caused by Defendants own decision not answer the 4AC in good faith and not admit to numerous obviously true allegations.

In addition, RFAs regarding medical records from prior to an individual's evaluation of William are relevant as the individual Defendant had the records when forming their own individual opinions of William. For example, when Dr. M. Smith documented "notes over the years absent of any mention of thought disorder, mania or depression" on 6/15/2018, the actual "notes" in the medical record that **Dr. M. Smith** based this statement are relevant. Dr. M. Smith should admit to the content of those notes as requested in **RFAs 22-25.** Once clearly admitted and known to the Court and all parties, it will then allow a focused inquiry into whether schizoaffective- order diagnoses, chronic voices, depressive symptoms, manic symptoms, and positive responses to antipsychotics documented by prior in psychiatrists in the notes are equivalent to "notes over the years absent of any mention of though disorder, mania, or depression." See *County of Los Angeles v. Superior Court*, 224 Cal.App.3d 1446, 1455-56 (Cal. Ct. App. 1990) ("Questions to the defendant physicians about their impressions and reasons for

their action or lack of action at the time the medical procedure was performed are, of course, entirely appropriate.")

### E. PROPORTIONALITY TO THE CASE

As the worst moment of their lives, Plaintiffs feel the death of their son William is quite significant and that the proportionality of his death is more than equal to making defendants spend some time reviewing and producing documents relevant to their care and custody of William and their systemic treatment of mentally ill under their care. Pro se Plaintiffs are quite aware this is not a class action lawsuit litigating the rights of all mentally ill CDCR inmates.[3] However, **the crux of the case against numerous supervisors is that their knowledge of unconstitutional practices attained through the federal court in Coleman gave them detailed knowledge of the deficiencies they failed to correct.[4] They failed to correct these deficiencies and the deficiencies resulted in William's suffering and death.** The requests for production are quite proportional.

### F. DEFENDANT ALEX ANDALUZ RESPONSE TO REQUEST FOR PRODUCTION, SET THREE

**1. Request for Production ("RFP") Nos. 41-52, 54, 56, 61-64, 72, 77-78, 82-88, 90-93**

**Opposition does not argue opposition to plaintiffs Motion against these RFPs responses.** As discussed in the Motion, the objections are not valid and documents responsive to these requests must be produced, inducing those in CDCR's possession and those withheld should be described with a privilege log.

**2. Requests for Production Nos. 53, 55, 57-60, 65-71, 73-76, 79-81, 89.**

As discussed in the Motion, the objections are not valid and documents responsive to these requests must be produced, inducing those in CDCR's possession and those withheld should be described with a privilege log.

---

[3] Plaintiffs also believe that, just like prior cases of mentally ill inmates suffering and dying under CDCR's care help in this case, that findings from this case can help others and eventually help put an end to the dark chapter of CDCR systemically subjecting mentally-ill Californian, to cruel and unusual punishment.

[4] CDCR supervisors have likely had more notice of the unconstitutionality of their practices than anyone in US history!

PLAINTIFF MALLIA's REPLY TO OPPOS MOTION TO DETERMINE THE SUFFICIENCY OF DISCOVERY RESPONSES

**3. Requests for Production Nos. 52**

There is no prejudice to Defendants to have the documents for in camera review, and defendants agree to submit to the emails if ordered by the Court.

### G. DEFENDANT SUJATHA RAMKUMAR, M.D.'S RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS, SET ONE

**1. Responses to RFAs Nos. 17, 21, 26.**

Defendants object to this document as it contains the private medical information of another party. Plaintiffs motion explains the pertinence of this document, which has our son's name and date of birth and, inexplicably present in his medical record since 2016[5]. It is relevant to many allegations, including the unbelievable level of poor medical record keeping and the copying and pasting of Defendant Dr. Ramkumar the same information into multiple patients medical records. Once clearly admitted and known to the Court and all parties, it will then allow a focused inquiry into whether the presence of this medical record is one of many problems with William's personal medical records that ultimately contributed to his suffering and whether Defendant Ramkumar's actions of copying and pasting, along with her supervisors allowing the to happen, contributed to William's suffering.

In addition, in footnote 1, Opposition tries to explain why Defendant Ramkumar could not admit or deny to allegations from the 4AC due to not having ready access to the medical records of decedent that had to be obtained through counsel. This argument should not be well taken by the Court. Even without a given note, Defendant Dr. Ramkumar should have known it was her usual custom and practice to copy and paste the same plans into multiple mentally-ill patients.

**2. Responses RFA No. 36, 38-44, 56, 64-68.**

Plaintiffs standby their position and these should be admitted.

**3. Responses RFAs No. 72 and 74.**

Once again, opposition tries to avoid answering by claiming these are requests directed to an expert. These are specifically about her treatment and what she meant by the term "cycling"

---

[5] Yet not even produced until 3 years after his death.

PLAINTIFF MALLIA's REPLY TO OPPOS MOTION TO DETERMINE THE SUFFICIENCY OF DISCOVERY RESPONSES

and the time period between she learned William may be "cycling" until the time she evaluated him.

### H. DEFENDANT ROBERT RUDAS, M.D.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

#### 1. Responses to Special Interrogatories Nos. 1, 2, 4, 5, 6 and 7

Opposition is correct that Plaintiffs are quite skeptical the Defendant Dr. Rudas with access to the information of his current employer CDCR, is unable to answer these due to a lack of knowledge. Again, Plaintiffs request the Court clarify to all parties that the responses to these include information within CDCR 's control. [6]

#### 2. Responses to Special Interrogatory No. 9

William's medical record includes a "Correspondence section". Plaintiffs assume this section is for correspondence among medical providers to enable the information shared between providers is included in the medical record, versus in some other format like email that keeps the medical information secluded from other providers and the patient. Defendant Rudas should be able to identify and provide the documents that relate to using the correspondence section as requested.

### I. DEFENDANT ADAM ASMAN'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DOCUMENT PRODUCTION, SET ONE

#### 1. Response to RFP No . 6

As explained in the motion, this request is relevant . The logbook pages are relevant to show whether or not there was a custom of simply signing in and out at the end of every shift, even if redirected to other parts of the prison for the vast majority of a shift, versus Defendant Asman year later developing a theory for why he did not check on our mentally-ill son who was actively psychotic and hearing voices for over 7 hours!

#### 2. Response to RFP No. 8

Plaintiff stands by the argument in the motion, the request is relevant and all documents in Defendant Asman's, and CDCR's control, should be produced. It is not a leap of faith to

---

[6] The inability of Dr. Rudas and CDCR, to even identify who put William on the End Stage liver Disease list causing him to be told he had end stage liver disease and subjected to invasive tests for a non existent potentially fatal disease is just another incredible example of the medical record keeping that was so tragically flawed.

believe Defendant ASMAN was contacted after 2:00 on the date of William's to inform and question him about the death of a mentally- ill inmate that he was assigned to monitor and protect. There should be documents regarding this interaction.

## J. DEFENDANT DIANNE TOCHE'S RESPONSES TO PLAINTIFF'S REQUESTS FOR DOCUMENT PRODUCTION, SET ONE

Plaintiffs standby their motion and these RFPs requests are relevant and proportional to the needs of the case. The generic claims of privilege and the incorrect use of Calif Evid Code section 1157 should not prevent the relevant production. The 4AC alleges wide spread systemic problems that the supervisors were aware of yet did not fix. In addition to the *Coleman* case, the 4AC details the Golding report, multiple OIG incident reports, the OIG report finding of inadequate overall quality of healthcare at MCSP, Receiver report, and the report on suicides completed in CDCR in 2011. All of these show deficiencies in the mental health care provided at MCSP that contributed to William's suffering and ultimately his death, the various RFP requests seek production relevant to deficiencies identified, often repeatedly, by all of these reports and then the steps, or lack of steps, taken to correct the identified deficiencies. Defendants attempt to provide publicly available documents like the Mental Health Services Program Guide and CDCR Department of Operations Manual rather than all the relevant documents as requested.

## Conclusion

Based on the facts set forth above, Plaintiffs respectfully request this Court order Defendants to eliminate all meritless objections, amend their responses and produce documents. Further, Plaintiffs request the court consider sanctions for failure to Answer the 4AC in good faith based on the information the court now has to review and compare with the Answer to the 4AC.

Dated: March 1, 2024                                    Respectfully submitted,

                                                        */s/ Dianne Mallia*

                                                        Dianne Mallia