1  DIANNE MALLIA
   404 Atkinson St,
2  Roseville, CA 95678
   (530) 828-9143
3  deedamallia@gmail.com
   PRO SE



FILED

AUG 1 3 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Estate of WILLIAM SCHMITZ, deceased, by and through THOMAS J. SCHMITZ and DIANNE MALLIA, as Successors in Interest; THOMAS SCHMITZ, Individually; and DIANNE MALLIA, Individually,<br><br>    Plaintiffs,<br><br>    vs.<br><br>ASMAN, et al.,<br><br>    Defendants. | Case No.: 2:20-CV-00195-KJM-CKD<br><br>**JOINT STATEMENT RE DISCOVERY DISAGREEMENT** |

       Pursuant to Local Rule 251, the parties hereby submit to the Court a Joint Statement re

Discovery Disagreement regarding Defendants Drs. ADAMS, RAMKUMAR, REKART, and

TOCHE responses to discovery. The statement was drafted by Pro Se Plaintiff Mallia and edited

and approved by counsel for Defendants Drs. ADAMS, RAMKUMAR, TOCHE, and REKART

and by Plaintiff.

**A. Meet and Confer Conference**

       On June 7, 2024, Plaintiff Mallia emailed Defendants' attorneys requesting Defendants

ADAMS and RAMKUMAR respond to the proposed interrogatories and allow for up to 35

1    Interrogatories over the standard 25.  In addition, multiple communications and extensions were

2    discussed and allowed for Defendants TOCHE and REKART to amend their responses to

3    Plaintiff Mallia's special interrogatories set one, requests for production, set one and requests for

4    admission set one.  Multiple good faith communications were exchanged. On June 25, 2024, the

5    parties engaged in a meet and confer conference via Zoom to discuss and made a good faith effort

6    to resolve the dispute without court intervention, in accordance with Federal Rules of Civil

7    Procedure 26(c)(1). All parties attempted to meet and confer in good faith and were unable to

8    come to agreement on the additional Interrogatories for DEFENDANT Dr. RAMKUMAR and

9    DEFENDANT Dr. ADAMS. Defense offered to provide 3 additional interrogatories each, which

10   subsequently increased to 5 after the meeting, and explained that a delay in discovery documents

11   is normal in a case like this.  Defense proposed an informal discovery conference; however,

12   Plaintiff MALLIA preferred the formal briefing pursuant to Local Rule 251 process as it allows

13   her more time to review and process the positions versus a verbal conference. In regards, to the

14   amended responses of Defendant TOCHE and REKART, Defense requested an additional

15   extension of two weeks and agreed that a motion by Plaintiff MALLIA would be appropriate if

16   the responses were not received.

17

18         **B. Contentions of Each Party as to the General Contested Issue**

19         Plaintiff MALLIA contends that the proposed interrogatories to Defendants Dr. ADAMS

20   and Dr. RAMKUMAR are all relevant and seek specific information that is relevant to the claims

21   and no other purpose. In addition to responses to the currently proposed interrogatories, Plaintiff

22   MALLIA requests leeway to propose up to 60 total interrogatories, 35 above the standard 25,

23   which will allow leeway to create interrogatories that may be spurred by further discovery

24   responses and unpredictable document releases by Defendants. Without the leeway that Plaintiff

25   MALLIA may have to file repeat motions with the court taking up valuable resources. Given the

26   complexity of the case and that additional interrogatories may make a deposition completely

27   unnecessary for these defendants, Plaintiff contends that 35 additional interrogatories is

28   reasonable. Finally, it is Plaintiff MALLIA's contention that given Dr. Schmitz's current inability

<div align="center">1</div>

Joint Statement Re Discovery Disagreement
Case No.: 2:20-CV-0195-KJM-CKD

1    to conduct depositions, delaying or possibly eliminating a deposition at this time allows the case

2    to make some progress while avoiding potential duplicate depositions.

3        Further Plaintiff Mallia contends that Defendant TOCHE and REKART original

4    responses to Plaintiff Mallia's special interrogatories set one, requests for production, set one and

5    requests for admission set one do not comply with the Federal rules of Civil Procedures as they

6    consist entirely of generic general objections.

7        Defendants Dr. RAMKUMAR and Dr. ADAMS contend that Plaintiff Mallia has failed to

8    articulate good cause for the 35 additional interrogatories that she seeks to propound from each of

9    these defendants. Defendants contend that the additional interrogatories sought are not

10    proportionate to the needs of the case and are harassing and overly burdensome. Defendants

11    further contend that a deposition is a more appropriate discovery tool, should plaintiff Mallia

12    desire to ask further questions. Defendants disagree that granting leave to plaintiff Mallia to

13    propound the number of additional interrogatories, in a number itself exceeding the presumptive

14    statutory limit, has any relevance to Dr. Schmitz's (in)ability to engage in discovery, including

15    depositions absent a stipulation by the latter.

16        Counsel for Defendants Drs. Toche and Rekart do not dispute that amended responses are

17    warranted at least as to some of Defendants Drs. TOCHE and REKART's responses to Plaintiff

18    Mallia's special interrogatories set one, requests for production, set one and requests for

19    admission set one. Counsel requested a last extension due to personal issues and will be working

20    to provide such responses to obviate the need of a hearing as to such responses.

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

Joint Statement Re Discovery Disagreement
Case No.:  2:20-CV-0195-KJM-CKD

1    The motion will be briefed pursuant to Local Rule 251(c) (3), with plaintiff Mallia

2 submitting her memorandum of points and authorizes to Defendants no later than July 19, 2024,

3 Defendants submitting to Plaintiff Mallia their memorandum of points and authorities in opposition

4 no later than August 2, 2024 and plaintiff Mallia submitting her reply arguments no later than

5 August 12, 2024.

6 Dated: July 16 , 2024    DIANNE MALLIA

7

8         By: *Diane Mallia*
            Dianne Mallia

9

10

11 Dated: July 16, 2024    MCNAMARA, AMBACHER, WHEELER,
            HIRSIG & GRAY LLP

12

13         By: 
            Peter J. Hirsig

14           Maria Zhurnalova-Juppunov
           Daniel R. Mayer

15           Attorneys for Defendants
           ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,

16           BRIZENDINE, BROCKENBOROGH, CEBALLOS,
           HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,

17           PONCIANO, RAMKUMAR, REKART, ROBINSON,
           RUDAS, M. SMITH, C. SMITH, TIEBROCK,

18           TOCHE, and WAINE

19

20

21

22

23

24

25

26

27

28

3

DIANNE MALLIA
404 Atkinson St,
Roseville, CA 95678
(530) 828-9143
deedamallia@gmail.com
PRO SE

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THOMAS SCHMITZ, et al.,** | **NO. 2:20-cv00195-DJC-CKD** |
| Plaintiffs, | **PLAINTIFF DIANNE MALLIA'S** |
| vs. | **MOTION FOR LEAVE TO SERVE** |
| **A ASMAN, et al.,** | **ADDITIONAL DISCOVERY ON** |
| | **DEFENDANT SUJATHA** |
| | **RAMKUMAR, M.D. AND JACOB** |
| Defendants. | **ADAMS, M.D. AND TO** |
| | **DETERMINE SUFFICIENCY OF** |
| | **RESPONSES BY DEFENDANT** |
| | **DIANA TOCHE AND JOHN** |
| | **REKART** |

**COMPLAINT FILED: 1/27/2020**
**DATE: SEPTEMBER 4, 2024**
**COURTROOM:24**
**TRIAL DATE: TBD**
**JUDGE ASSIGNED: Honorable**
**Carolyn K. Delaney**

## I. INTRODUCTION

Plaintiff DIANNE MALLIA hereby requests this Court to allow her to propound additional discovery to DEFENDANT SUJATHA RAMKUMAR, M.D. and JACOB ADAMS, M.D. for the purpose of a good faith attempt to attain information about subject matter relevant to claims against these Defendants. Further, Plaintiff MALLIA requests the Court determine the sufficiency of Defendant DIANA TOCHE's and JOHN REKART's responses to Plaintiff

1

1  Mallia's special interrogatories set one, requests for production, set one and requests for

2  admission set one.[1] (EXHIBIT A)

3         For the reasons argued below, Plaintiff Mallia has good cause to propound additional

4  interrogatories in accordance with Federal Rule of Civil Procedure 26(b)(2). Thus, in good faith,

5  Plaintiff respectfully requests this Court grant her leave to do so, under Federal Rule of Civil

6  Procedure 33(a)(1). Further, the responses of Defendant TOCHE and REKART were objections

7  only. These responses were made solely to delay and with a claimed intention of completing

8  amended versions "as soon as practicable" (Exhibit B at 1) Defendants have had repeated

9  extensions and must finally adequately respond.

10                              **II. PROCEDURAL HISTORY**

11         The discovery requests pertaining to this motion regarding Defendants TOCHE and

12  REKART were **originally served on Defendants electronically on October 7, 2023**. (Exhibit

13  C) On October 26, 2023 Defendants' attorney MARIA ZHURNALOVA-JUPPUNOV requested

14  an extension until December 1, 2023. Plaintiffs originally did not agree, however when learning

15  of Attorney DANIEL MAYER'S  illness they allowed the extension until December 1, 2023. On

16  November 20, 2023 attorney DANIEL MAYER requested a further extension as his father was

17  hospitalized. Plaintiffs granted a 2 week extension, moving the deadline an additional 14 days to

18  December 15, 2023. On December 14, 2023, attorney DANIEL MAYER requested further

19  extension until January 15, 2024, and detailed that if not granted the responses would only

20  consist only of objections.(Exhibit B at 1) Plaintiffs would not agree to further extension. On

21  December 14, 2023, Responses were served and consisted entirely of objections.(Exhibit A) On

22  December 26, 2023, Plaintiff Mallia informed Defendants that answers were deficient and gave a

23  due date of January 15, 2024 for amended responses as this was the date attorney DANIEL

24  MAYER previously requested. On January 22, 2024, Plaintiff Mallia followed up requesting the

25  amended answers by January 28, 2024.(Exhibit B at 10)  On February 1, 2024 Plaintiff Mallia

26  
27  
28  

[1] Plaintiff Mallia has allowed repeated extensions of responses that Defendants acknowledged from the very beginning were made solely to meet the deadline. The court should take appropriate sanctions for the unnecessary motion work created by these inadequate responses and repeated extensions and should not simply disregard the consideration for sanctions if Defendants finally produce amended responses prior to the resolution of this motion.

PLAINTIFF MALLIA'S MOTION FOR FOR LEAVE TO SERVE ADDITIONAL DISCOVERY ON
DEFENDANT SUJATHA RAMKUMAR, M.D. AND JACOB ADAMS, M.D. AND TO DETERMINE
SUFFICIENCY OF RESPONSES BY DEFENDANT DIANA TOCHE AND JOHN REKART

1  followed up once again and again extended deadline to February 5, 2024,  advising if not
2  received a motion would be filed with the court.(Exhibit B at 11) On April 22, 2024, Plaintiff
3  MALLIA requested a meet and confer date to discuss the deficient responses.(Exhibit B at 4) On
4  April 30, 2024, Attorney DANIEL MAYER responded he understood the deficiencies and that he
5  would get Plaintiff MALLIA the amended responses as soon as possible.(Exhibit B at 3) On May
6  30, 2024, Plaintiff MALLIA again requested meet and confer dates.(Exhibit B at 6) On June 19,
7  2024, Plaintiff Mallia once again followed up after not receiving a response. (Exhibit B at 7)
8  During the Meet and confer meeting on June 25, 2024, parties agreed to a final two week
9  extension for the amended responses. On July 9, 2024, Attorney MAYER notified Plaintiff
10  MALLIA that he was unable to provide the responses and stated he would work on the discovery
11  this week of July 9th. Plaintiff MALLIA did not agree to an another extension.(Exhibit B at 9) **It**
12  **has been 9 months since the requests were first served.**

13         Starting June 7, 2024, Plaintiff Mallia emailed Defendants' attorneys regarding the
14  refusal of Defendant Dr. ADAMS and Defendant Dr. RAMKUMAR to provide more that 25
15  interrogatories. Multiple good faith communications were exchanged. On June 25, 2024 the
16  parties engaged in a meet and confer conference to discuss a potential increase  and made a good
17  faith effort to resolve the dispute without court intervention, in accordance with Federal Rules of
18  Civil Procedure 26(c)(1). Pro Se Plaintiff MALLIA sought to follow the formal briefing pursuant
19  to Local Rule 251 as it is easier to process arguments and reasoning in a written  form than a
20  verbal informal conference.

21                              **III. ARGUMENT**

22         **1. Increase number of interrogatories**

23         Federal Rule of Civil Procedure 33(a)(1) allows each party to submit 25 interrogatories to
24  the opposing party. However, this rule doesn't serve as a strict limit; its intention, like other
25  discovery rules, is to minimize expenses, prevent delays, and focus on the key issues for trial
26  (see Moore's Federal Practice § 33.03 (2006)). The Plaintiff's Motion aims to significantly
27  reduce the burden and expenses of discovery as the interrogatory answers will allow for more
28  focused depositions and perhaps completely eliminate the need for deposition of both Defendant

1   RAMKUMAR and ADAMS. Moreover, Rule 33 acknowledges that parties can petition the court

2   for additional interrogatories, provided the request aligns with Rule 26(b)(2) (Fed. R. Civ. P.

3   33(a)(1)). Rule 26 limits parties to discovery requests that are relevant to the subject matter

4   involved in the pending action, or reasonably calculated to lead to discovery of admissible

5   evidence. *Epstein v. MCA, Inc.*, 54 F.3d 1422 (9th Cir. 1995), citing Fed. R. Civ. Pro. 26(b)(1).

6       Claims surviving against Defendant SUJATHA RAMKUMAR, M.D. include: deliberate

7   indifference to William's serious medical needs; deprivation of familial relationship between

8   William and his parents, including Plaintiff Mallia, and wrongful death. Claims surviving against

9   Defendant JACOB ADAMS, M.D. include: supervisory liability under § 1983, deprivation of

10  familial relationship between William and his parents, including Plaintiff Mallia, and wrongful

11  death.

12      **CDCR has repeatedly and for decades been found to violate the constitutional rights**

13  **of mentally ill individuals in the *Coleman* case and seemingly it would be quite**

14  **straightforward to conclude that William, a mentally ill young man, was also subjected to**

15  **the same unconstitutional level of care resulting in his suffering and death.** However, pro se

16  plaintiffs believe they must show how each of the individual Defendant within CDCR

17  contributed William's suffering and death. Further, unlike medical records found in cases

18  involving medical or mental health care outside of CDCR, the notoriously deficient medical

19  record system, as must be well-known to this Court and outlined in *Coleman*, significantly

20  complicates fact-finding and discovery. Consequently, it is not surprising that the discovery

21  process will necessitate a higher number of interrogatories compared to a typical case.

22      Defendant Ramkumar was William's primary treating psychiatrist at multiple times over

23  the last few years of his life. Plaintiff Mallia seeks specific information that is relevant to the

24  claims and no other purpose. Exhibit D is Defendant Ramkumar's DEFENDANT SUJATHA

25  RAMKUMAR, M.D.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET

26  *ONE*. The Court can see that all interrogatories are relevant to the claims including the ones

27  Defendant RAMKUMAR has refused to answer.

28

4

1    Defendant Jacob Adams, MD, both directly treated William as a psychiatrist and was the

2    Acting Chief psychiatrist at Mule Creek State Prison. Plaintiff Mallia seeks specific information that

3    is relevant to the claims and no other purpose.  Exhibit E is DEFENDANT JACOB ADAMS, M.D.'S

4    *RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET TWO* and the Court can

5    see that all interrogatories are relevant to the claims including the ones Defendant ADAMS has

6    refused to answer.

7    The discovery released by Defendants in this case has thus far been consistent with the

8    well-known deficiencies of CDCR's medical records system. For example, Plaintiffs still are

9    missing years of medical documents from William's time at Mule Creek State Prison. Plaintiffs

10   are still receiving discovery documents regarding William's mental heath care years after the

11   initiation of this lawsuit and over 5 years after William's death. Specifically, on May 17, 2024,

12   Plaintiffs finally received email communications concerning William's mental healthcare by Dr.

13   Ramkumar in 2016 and 2018.[2] (Exhibit F) On April 10, 2024, Plaintiffs finally received email

14   communications concerning William's mental healthcare by Dr. Jacob Adams in 2017. (Exhibit

15   G) These ongoing, incredibly delayed, releases of medical information, create the need for

16   further interrogatories. Allowing up to 35 additional interrogatories will allow leeway to create

17   interrogatories that may be spurred by further discovery responses and unpredictable document

18   releases by Defendants. Defendants should not benefit by disclosing documents with years of

19   delays by preventing Plaintiff Mallia to propound specific interrogatories in response to further

20   interrogatories.

21   An example of discovery production creating the need for more interrogatories that are

22   relevant to the claims is the production on May 17, 2024 of email communications concerning

23   William's mental healthcare by Dr. Ramkumar in 2016 and 2018.[3]

24

25

26   [2] Of note, the Emails contain the name of defense attorney "Maria Zhurnalova-Juppunov" in the header on many pages.

27   [3] Plaintiff Mallia does not understand why it has taken years to receive these documents other than a lack

28   of diligence or perhaps because these same documents  or ones indicating the existence of these documents may soon be released in the production by Dr. Golding?

5

PLAINTIFF MALLIA'S MOTION FOR FOR LEAVE TO SERVE ADDITIONAL DISCOVERY ON
DEFENDANT SUJATHA RAMKUMAR, M.D. AND JACOB ADAMS, M.D. AND TO DETERMINE
SUFFICIENCY OF RESPONSES BY DEFENDANT DIANA TOCHE AND JOHN REKART

1    The E-mail received by Defendant Ramkumar on Wednesday, March 16, 2016 from

2  Maria Rivas-Torres consists entirely of an attachment without any message. The attachment is

3  the unsigned psychiatry note by T. Rivas MD for William dated 2/17/16.(Exhibit F at 1-3).

4  Questions created by these documents include:

5        1. Why was this Email necessary?  Presumably this medical document were

6        readily available to Dr. Ramkumar in William's actual medical record.

7        2. Was this a standard practice to email psychiatric notes?  Was this a work

8        around that the psychiatrists tried to prevent even worse transfers of care and lack of

9        communication?

10    The E-mail communications between Defendant Ramkumar and Defendant Robinson on

11  Thursday, February 1, 2018. (Exhibit  F at 4-10). Questions created by these documents include :

12    1.  These communications occurred on the date of William's February 1, 2018 IDTT

13  meeting. Dr. Ramkumar was William's psychiatrist on this date. Why did she not attend the

14  IDTT meeting for William on that date? Was it a routine practice that the treating psychiatrist did

15  not attend the IDTT as directed by the Program Guide? This would be consistent with Defendant

16  Dr. Jevon Johnson who never once attended an IDTT for William seemingly because he was not

17  even scheduled to work at the prison on the dates of William's IDTTs.

18    2.  On 2/1/18 at 9:00, prior to the IDTT, Dr. Robinson entered the MH IDTT housing

19  recommendation. On 2/1/2018 at 9:58 the medical record shows the 2/1/2018 IDTT was

20  completed. These newly released emails show that Defendant Robinson and Defendant

21  Ramkumar spoke after 10:26 on 2/1/2018. On 2/1/2018 at 11:24, the laboratory orders in

22  William's record show that Defendant Ramkumar ordered a Urine drug screen. On 2/1/2018 at

23  11:26,  Defendant Ramkumar documented "spoke to dr robinson , and will order an uds , it was

24  discovered in idtt that inmate was caught with drugs - heroin and meth about 5 mths ago".

25  However, there is not one mention of any recent drug use in the IDTT documentation from that

26  same date. On 2/1/2018 at 13:12, which is after talking to Defendant Ramkumar, Defendant

27  Robinson, not only documented nothing about drug use, she even documented that William had

28  no behavioral problems. Specifically, she documented in the "MH Case Formulation" section

6

1    "Biological factors (schizoaffective disorder, subarachnoid cyst) exacerbated by substance abuse

2    precipitated the instant offense. IP does not have a criminal history other than 1 DUI. No

3    behavior problems."

4    　　　With the new timeline of that day, how does Defendant Ramkumar explain where she

5    received the information, that is not documented anywhere else in William's medical record or

6    any other records disclosed by Defendants, that William was caught at with heroin and meth five

7    months earlier?

8    　　　3. There is a "correspondence" section in the electronic medical record. Defendant

9    Robinson and Defendant Ramkumar both have messages in William's medical record

10   correspondence section dated prior to the email communications on 2/1/2018. Why did

11   Defendant Ramkumar use the email system rather than the Correspondence section to

12   communicate about her patient's mental health care?

13   　　　An example of discovery production creating the need for more interrogatories is the

14   production on April 10, 2024 of the email communications concerning William's mental

15   healthcare involving Defendant Jacob Adams from 2017.(Exhibit H) A the Court can see, several

16   relevant interrogatories were created based on this information as seen in DEFENDANT JACOB

17   ADAMS, M.D.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET

18   TWO. (Exhibit E). Interrogatories created by these documents include:

19   　　　1.    The communications show that in fact Defendant Dr. Jevon Johnson did receive

20   emails from Joseph Schmitz, MD, William's older brother, with concerns that William was not

21   doing well and that it may be because William did not receive his antipsychotic. Dr. Schmitz

22   even apologized in the message and explained that there was really no good way to contact

23   medical at MCSP in a timely manner.[4] Defendant Dr. Johnson then forwarded the email to

24   Defendant Dr. Adams, not to address Dr. Schmitz's concern for William's mental health or

25   possibly not receiving antipsychotic medications, but because Dr. Johnson thought it seemed

26   _____

27   [4] Of note, these communications are another example of the systemic problems within MCSP mental
     health care. To his credit, Dr. Adams sent many emails trying to figure out whether or not William

28   received the antipsychotics and then the reason he did not receive them. The emails reveal that this was
     not an isolated problem to William but a systemic issue.

PLAINTIFF MALLIA'S MOTION FOR FOR LEAVE TO SERVE ADDITIONAL DISCOVERY ON
DEFENDANT SUJATHA RAMKUMAR, M.D. AND JACOB ADAMS, M.D. AND TO DETERMINE
SUFFICIENCY OF RESPONSES BY DEFENDANT DIANA TOCHE AND JOHN REKART

1  inappropriate for Dr. Schmitz to be emailing him directly about Dr. Schmitz's concerns about his
2  mentally ill brother. Defendant Dr. Adams advised Defendant Dr. Jevon Johnson to do nothing in
3  response to the email until he received more clarity. This communication was the nexus for
4  Interrogatories No. 22 and No. 23. The responses revealed important information that Defendant
5  Dr. Adams never provided more information to Defendant Dr. Johnson on how to approach the
6  email. It also shows that Defendant Dr. Adams claims he elevated the issue to the "chief of
7  mental health". And a new question is did Defendant Dr. Adams receive any information from
8  the chief of mental health regarding the communications?

9       2. The same email communications created the nexus for interrogatories to Defendant Dr.
10  Jevon Johnson. For example, Interrogatory No. 14 and the response which shows **that Dr. Jevon**
11  **Johnson was not even aware that his severely mentally ill patient, William, did not receive**
12  **antipsychotic medications prior to receiving the email from Dr. Joseph Schmitz**. (Exhibit G
13  at 6)

14       In summary, the crux of the request for additional interrogatories, as Plaintiff Mallia is
15  seeking, hinges on its alignment with Rule 26(b)(2). Upon reviewing Rule 26(b)(2), it becomes
16  apparent that the aim is to alleviate the burden and expenses associated with discovery when
17  deemed essential. In this instance, Plaintiff Mallia seeks permission to pose up to 35 further
18  interrogatories to Defendant RAMKUMAR and Defendant JACOBS pertaining to nonprivileged
19  matters relevant to the claims against Defendant RAMKUMAR and Defendant ADAMS.
20  Furthermore, there exists good cause to justify this discovery, as specific facts indicate its
21  necessity for effective trial preparation or to prevent unforeseen surprises during trial.

22       **2. Insufficient Answers**

23       **Response to every RFA, except no. 1, individually to Defendant Toche, Rekart:**

24
25       "Objection. This request is burdensome, oppressive, harassing, vague and
         ambiguous, and not reasonably calculated to lead to the discovery of admissible
26       evidence. Discovery remains ongoing, and Defendant reserves the right to amend
         or supplement this response as appropriate in
27       the future."

28

8

PLAINTIFF MALLIA'S MOTION FOR FOR LEAVE TO SERVE ADDITIONAL DISCOVERY ON
DEFENDANT SUJATHA RAMKUMAR, M.D. AND JACOB ADAMS, M.D. AND TO DETERMINE
SUFFICIENCY OF RESPONSES BY DEFENDANT DIANA TOCHE AND JOHN REKART

**Response to every RFP by Defendants Toche, Rekart:**

"Objection. See objections stated in Response to Plaintiff's Requests for Admission and incorporated by reference hereto respectfully. Defendant further objects to the extent this request seeks documents protected by attorney-client privilege and the work production doctrine. This request is further burdensome, oppressive, harassing, vague and ambiguous as to time, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in the future."

**Response to every interrogatory by Defendants Toche, Rekart:**

"Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in the future."

**A. Responses not in good faith**

**Defendants knowingly only responded with objections they knew were not valid** in order to meet the response deadline that was already extended multiple times under the guise amended responses were to follow. (Exhibit B at 1) Now over 6 months after those responses and nine months since the original requests were served, the amended responses are still yet to be received. Defendants waste precious time that is needed for Pro se Plaintiff Mallia to complete thorough discovery to best attempt to represent the case for her deceased son William. Future discovery requests may depend on these pending discovery responses.

**B. Generic Objections**

Generic objections are not sufficient. see Taylor v. Cnty. of Calaveras, No. 1:18-cv-00760-BAM, at *6 (E.D. Cal. Nov. 26, 2019) ("Generic, boilerplate objections to discovery are not sufficient. See Marti v. Baires, 2012 U.S. Dist. LEXIS 77962, 2012 WL 2029720 (E.D. Cal. June 5, 2012) (reliance on boilerplate objections is an abuse of the discovery process); see A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D.Cal.2006) (general or boilerplate objections such as "overly burdensome and harassing" are improper); see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990) (objections that

PLAINTIFF MALLIA'S MOTION FOR FOR LEAVE TO SERVE ADDITIONAL DISCOVERY ON
DEFENDANT SUJATHA RAMKUMAR, M.D. AND JACOB ADAMS, M.D. AND TO DETERMINE
SUFFICIENCY OF RESPONSES BY DEFENDANT DIANA TOCHE AND JOHN REKART

1  document requests were overly broad, burdensome, oppressive, and irrelevant were insufficient

2  to meet objecting party's burden of explaining why discovery requests were objectionable).

3  Rather, a party resisting discovery must make some showing as to how each discovery request is

4  not relevant and/or is overly broad or unduly burdensome. See Dolarian Capital, Inc. v. SOC,

5  LLC, 2012 WL 4026818, at *2 (E.D. Cal. Sept. 12, 2012).")

6

7                                    **IV. CONCLUSION**

8         Based on the aforementioned, Plaintiff Mallia respectfully requests this Court grant leave

9  to propound up to 35 additional interrogatories on Defendants  SUJATHA RAMKUMAR, M.D.

10 and JACOB ADAMS, M.D.  Further, Defendants DIANA TOCHE and JOHN REKART should

11 face sanctions as seen appropriate by the court  and required to adequately respond.

12

13 Dated: July 19, 2024                        Respectfully submitted,

14

15                                    _Dianne Mallia_

16

17                                    Dianne Mallia

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF MALLIA'S MOTION FOR FOR LEAVE TO SERVE ADDITIONAL DISCOVERY ON
DEFENDANT SUJATHA RAMKUMAR, M.D. AND JACOB ADAMS, M.D. AND TO DETERMINE
SUFFICIENCY OF RESPONSES BY DEFENDANT DIANA TOCHE AND JOHN REKART

1 | PETER J. HIRSIG (State Bar No. 197993)
peter.hirsig@mcnamaralaw.com
2 | MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
maria.zhurnalova-juppunov@mcnamaralaw.com
3 | DANIEL R. MAYER (State Bar No. 300077)
daniel.mayer@mcnamaralaw.com
4 | McNAMARA, AMBACHER, WHEELER,
HIRSIG & GRAY LLP
5 | 639 Kentucky Street
Fairfield, CA 94533-5530
6 | Telephone: (707) 427-3998
Facsimile: (707) 427-0268
7 |
Attorneys for Defendants
8 | ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
BRIZENDINE, BROCKENBOROGH, CEBALLOS,
9 | HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
10 | M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11 | UNITED STATES DISTRICT COURT

12 | EASTERN DISTRICT OF CALIFORNIA

13 |

14 | Estate of WILLIAM SCHMITZ, deceased, | Case No. 2:20-CV-00195-JAM-CKD
by and through THOMAS J. SCHMITZ
15 | and DIANNE MALLIA, as Successors in | **DEFENDANT JOHN REKART'S**
Interest; THOMAS SCHMITZ, | **RESPONSES TO PLAINTIFF'S REQUEST**
16 | Individually; and DIANNE MALLIA, | **FOR ADMISSION, SET ONE**
Individually,
17 | | Action Filed: 7/16/2020
Plaintiffs,
18 |
vs.
19 |
ASMAN et al,
20 |
Defendants.
21 |

22 | PROPOUNDING PARTY:    Plaintiff DIANNE MALLIA, individually

23 | RESPONDING PARTY:    Defendant JOHN REKART

24 | SET NUMBER:    ONE

25 | **PRELIMINARY STATEMENT**

26 | These responses are made solely for the purpose of this action. Each response is subject

27 | to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

28 | all other objections and grounds that would require the exclusion of any statements herein, if any

DEF. REKART'S RESPONSES TO PL'S
REQUEST FOR ADMISSION, SET ONE

*(sidebar, left margin)*
McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    requests were asked for, or if any statement contained herein were made by a witness present and

2    testifying in court, all of which objections and grounds are reserved and may be interposed at the

3    time of trial.

4          Responding party is responding to all of the requests to the extent that information has

5    become known to her. However, responding party's discovery, investigation, and preparation for

6    trial of this matter has not been completed as of the date of these responses and, therefore,

7    responding party does not purport to state anything more than information currently known and

8    discovered by her.

9          Responding party reserves the right to continue discovery and investigation in this matter

10   regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

11   herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

12   are responded to fully and so far as information is currently available to responding party; and

13   responding party is not precluded from presenting at trial information discovered after the date of

14   these responses.

15         This Preliminary Statement is incorporated into each and every response set forth below.

16                               **RESPONSES**

17   **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

18         Objection. Defendant is not the duly authorized Custodian of Records and is not authorized

19   to certify the records, pursuant to Federal Rules of Civil Procedure 44. This request is moreover

20   burdensome, oppressive, harassing, vague and ambiguous, including as to time, and not reasonably

21   calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and

22   Defendant reserves the right to amend or supplement this response as appropriate in the future.

23   **RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

24         Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

25   not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

26   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

27   the future.

28   **RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

DEF. REKART'S RESPONSES TO PL'S        2
REQUEST FOR ADMISSION, SET ONE

*Exh. A*

1    Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

2    not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

3    ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

4    the future.

5    **RESPONSE TO REQUEST FOR ADMISSION NO. 4**

6    Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

7    including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

8    Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

9    as appropriate in the future.

10   **RESPONSE TO REQUEST FOR ADMISSION NO. 5**

11   Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

12   including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

13   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

14   as appropriate in the future.

15   **RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

16   Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

17   including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

18   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

19   as appropriate in the future.

20   **RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

21   Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

22   including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

23   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

24   as appropriate in the future.

25   **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

26   Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

27   including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

28   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

*3*

Exh. A

1    as appropriate in the future.

2    **RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

3        Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and
4    not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains
5    ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in
6    the future.

7    **RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

8        Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and
9    not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains
10   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in
11   the future.

12   **RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

13       Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and
14   not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains
15   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in
16   the future.

17   **RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

18       Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and
19   not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains
20   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in
21   the future.

22   **RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

23       Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and
24   not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains
25   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in
26   the future.

27   **RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

28       Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

DEF. REKART'S RESPONSES TO PL'S          4
REQUEST FOR ADMISSION, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

*Exh. A*

1    including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

2    Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

3    as appropriate in the future.

4    **RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

5         Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

6    not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

7    ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

8    the future.

9    **RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

10         Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

11    not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

12    ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

13    the future.

14    **RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

15         Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

16    not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

17    ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

18    the future.

19    **RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

20         Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

21    including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

22    Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

23    as appropriate in the future.

24    **RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

25         Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

26    not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

27    ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

28    the future.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

*S*

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in the future.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in the future.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in the future.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in the future.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

DEF. REKART'S RESPONSES TO PL'S
REQUEST FOR ADMISSION, SET ONE

6

<div style="float:left">McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP<br>ATTORNEYS AT LAW<br>639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530<br>TELEPHONE: (707) 427-0268</div>

1  | Dated: December 14, 2023

McNAMARA, AMBACHER, WHEELER,
HIRSIG & GRAY LLP


By: *Daniel Mayer*
    Peter J. Hirsig
    Maria Zhurnalova-Juppunov
    Daniel R. Mayer
    Attorneys for Defendants ADAMS, ANDALUZ,
    ASHE, ASMAN, BRANMAN, BRIZENDINE,
    BROCKENBOROGH, CEBALLOS, HEATLEY, J.
    JOHNSON, R. JOHNSON, LEIDNER, PONCIANO,
    RAMKUMAR, REKART, ROBINSON, RUDAS, M.
    SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

DEF. REKART'S RESPONSES TO PL'S
REQUEST FOR ADMISSION, SET ONE

7

*Exh A.*

1  PETER J. HIRSIG (State Bar No. 197993)
   peter.hirsig@mcnamaralaw.com
2  MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
   maria.zhurnalova-juppunov@mcnamaralaw.com
3  DANIEL R. MAYER (State Bar No. 300077)
   daniel.mayer@mcnamaralaw.com
4  McNAMARA, AMBACHER, WHEELER,
   HIRSIG & GRAY LLP
5  639 Kentucky Street
   Fairfield, CA 94533-5530
6  Telephone: (707) 427-3998
   Facsimile:  (707) 427-0268
7
   Attorneys for Defendants
8  ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
   BRIZENDINE, BROCKENBOROGH, CEBALLOS,
9  HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
   PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
10 M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11              UNITED STATES DISTRICT COURT

12              EASTERN DISTRICT OF CALIFORNIA

13

14 Estate of WILLIAM SCHMITZ, deceased,      Case No. 2:20-CV-00195-JAM-CKD
   by and through THOMAS J. SCHMITZ
15 and DIANNE MALLIA, as Successors in      **DEFENDANT JOHN REKART'S**
   Interest; THOMAS SCHMITZ,                **RESPONSES TO PLAINTIFF'S**
16 Individually; and DIANNE MALLIA,         **REQUESTS FOR PRODUCTION OF**
   Individually,                            **DOCUMENTS, SET ONE**
17
              Plaintiffs,                    Action Filed:  7/16/2020
18
         vs.
19
   ASMAN et al,
20
              Defendants.
21

22 PROPOUNDING PARTY:   Plaintiff DIANNE MALLIA, individually

23 RESPONDING PARTY:   Defendant JOHN REKART

24 SET NUMBER:   ONE

25              **PRELIMINARY STATEMENT**

26      These responses are made solely for the purpose of this action.  Each response is subject

27 to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

28 all other objections and grounds that would require the exclusion of any statements herein, if any

DEF. REKART'S RESPONSES TO PL'S
REQUEST FOR PRODUCTION, SET ONE

*8*

*A*

1    requests were asked for, or if any statement contained herein were made by a witness present and

2    testifying in court, all of which objections and grounds are reserved and may be interposed at the

3    time of trial.

4        Responding party is responding to all of the requests to the extent that information has

5    become known to her. However, responding party's discovery, investigation, and preparation for

6    trial of this matter has not been completed as of the date of these responses and, therefore,

7    responding party does not purport to state anything more than information currently known and

8    discovered by her.

9        Responding party reserves the right to continue discovery and investigation in this matter

10    regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

11    herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

12    are responded to fully and so far as information is currently available to responding party; and

13    responding party is not precluded from presenting at trial information discovered after the date of

14    these responses.

15        This Preliminary Statement is incorporated into each and every response set forth below.

16                                **RESPONSES**

17    **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

18        Objection. See objections stated in Response to Plaintiff's Requests for Admission and

19    incorporated by reference hereto respectfully. Defendant further objects to the extent this request

20    seeks documents protected by attorney-client privilege and the work production doctrine. This

21    request is further burdensome, oppressive, harassing, vague and ambiguous as to time, and not

22    reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing,

23    and Defendant reserves the right to amend or supplement this response as appropriate in the future.

24    **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

25        Objection. See objections stated in Response to Plaintiff's Request for Admission and

26    incorporated by reference hereto respectfully. Defendant further objects to the extent this request

27    seeks documents protected by attorney-client privilege and the work production doctrine. This

28    request is further burdensome, oppressive, harassing, vague and ambiguous as to time, and not

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

*9*

*Exh. A*

1    reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing,

2    and Defendant reserves the right to amend or supplement this response as appropriate in the future.

3

4    Dated: December 14, 2023       McNamara, Ambacher, Wheeler,
                                       Hirsig & Gray LLP

5

6                             By: _____ *Daniel Mayer* _____
7                                   Peter J. Hirsig
                                  Maria Zhurnalova-Juppunov
8                                   Daniel R. Mayer
                                  Attorneys for Defendants ADAMS, ANDALUZ,
9                                   ASHE, ASMAN, BRANMAN, BRIZENDINE,
                                  BROCKENBOROGH, CEBALLOS, HEATLEY, J.
10                                 JOHNSON, R. JOHNSON, LEIDNER, PONCIANO,
                                RAMKUMAR, REKART, ROBINSON, RUDAS, M.
11                                 SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

DEF. REKART'S RESPONSES TO PL'S          3
REQUEST FOR PRODUCTION, SET ONE

EXH A.

1   PETER J. HIRSIG (State Bar No. 197993)
    peter.hirsig@mcnamaralaw.com
2   MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
    maria.zhurnalova-juppunov@mcnamaralaw.com
3   DANIEL R. MAYER (State Bar No. 300077)
    daniel.mayer@mcnamaralaw.com
4   McNAMARA, AMBACHER, WHEELER,
    HIRSIG & GRAY LLP
5   639 Kentucky Street
    Fairfield, CA 94533-5530
6   Telephone: (707) 427-3998
    Facsimile:  (707) 427-0268
7
    Attorneys for Defendants
8   ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
    BRIZENDINE, BROCKENBOROGH, CEBALLOS,
9   HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
    PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
10  M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11                  UNITED STATES DISTRICT COURT

12                EASTERN DISTRICT OF CALIFORNIA

13

14  Estate of WILLIAM SCHMITZ, deceased,         Case No. 2:20-CV-00195-JAM-CKD
    by and through THOMAS J. SCHMITZ
15  and DIANNE MALLIA, as Successors in          **DEFENDANT JOHN REKART'S**
    Interest; THOMAS SCHMITZ,                    **RESPONSES TO PLAINTIFF'S SPECIAL**
16  Individually; and DIANNE MALLIA,             **INTERROGATORIES, SET ONE**
    Individually,
17                                               Action Filed:  7/16/2020
                Plaintiffs,
18
          vs.
19
    ASMAN et al,
20
                Defendants.
21

22  PROPOUNDING PARTY:   Plaintiff DIANNE MALLIA, individually

23  RESPONDING PARTY:    Defendant JOHN REKART

24  SET NUMBER:          ONE

25                      **PRELIMINARY STATEMENT**

26       These responses are made solely for the purpose of this action.  Each response is subject

27  to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

28  all other objections and grounds that would require the exclusion of any statements herein, if any

    DEF. REKART'S RESPONSES TO PL'S
    INTERROGATORIES, SET ONE

*(left margin, vertical text)*
McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

11

*Exh A*

1  requests were asked for, or if any statement contained herein were made by a witness present and

2  testifying in court, all of which objections and grounds are reserved and may be interposed at the

3  time of trial.

4      Responding party is responding to all of the requests to the extent that information has

5  become known to her. However, responding party's discovery, investigation, and preparation for

6  trial of this matter has not been completed as of the date of these responses and, therefore,

7  responding party does not purport to state anything more than information currently known and

8  discovered by her.

9      Responding party reserves the right to continue discovery and investigation in this matter

10  regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

11  herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

12  are responded to fully and so far as information is currently available to responding party; and

13  responding party is not precluded from presenting at trial information discovered after the date of

14  these responses.

15      This Preliminary Statement is incorporated into each and every response set forth below.

16                      **RESPONSES**

17  **RESPONSE TO INTERROGATORY NO. 1:**

18      Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

19  and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

20  ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

21  the future.

22  **RESPONSE TO INTERROGATORY NO. 2:**

23      Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

24  and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

25  ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

26  the future.

27

28

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

12

*Ex. A*

1  Dated: December 14, 2023          McNAMARA, AMBACHER, WHEELER,
                                      HIRSIG & GRAY LLP
2

3

4                                    By:  _____*Daniel Mayer*_____
                                          Peter J. Hirsig
5                                         Maria Zhurnalova-Juppunov
                                          Daniel R. Mayer
6                                         Attorneys for Defendants ADAMS, ANDALUZ,
                                          ASHE, ASMAN, BRANMAN, BRIZENDINE,
7                                         BROCKENBOROGH, CEBALLOS, HEATLEY, J.
                                          JOHNSON, R. JOHNSON, LEIDNER, PONCIANO,
8                                         RAMKUMAR, REKART, ROBINSON, RUDAS, M.
                                          SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF. REKART'S RESPONSES TO PL'S                    3
INTERROGATORIES, SET ONE

13

EYh A

1   PETER J. HIRSIG (State Bar No. 197993)
    peter.hirsig@mcnamaralaw.com
2   MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
    maria.zhurnalova-juppunov@mcnamaralaw.com
3   DANIEL R. MAYER (State Bar No. 300077)
    daniel.mayer@mcnamaralaw.com
4   McNAMARA, AMBACHER, WHEELER,
    HIRSIG & GRAY LLP
5   639 Kentucky Street
    Fairfield, CA 94533-5530
6   Telephone: (707) 427-3998
    Facsimile:  (707) 427-0268
7
    Attorneys for Defendants
8   ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
    BRIZENDINE, BROCKENBOROGH, CEBALLOS,
9   HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
    PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
10  M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11              UNITED STATES DISTRICT COURT

12              EASTERN DISTRICT OF CALIFORNIA

13

14  Estate of WILLIAM SCHMITZ, deceased,          Case No. 2:20-CV-00195-JAM-CKD
    by and through THOMAS J. SCHMITZ
15  and DIANNE MALLIA, as Successors in           **DEFENDANT DIANA TOCHE'S**
    Interest; THOMAS SCHMITZ,                     **RESPONSES TO PLAINTIFF'S REQUEST**
16  Individually; and DIANNE MALLIA,              **FOR ADMISSION, SET ONE**
    Individually,
17                                                Action Filed:  7/16/2020
                  Plaintiffs,
18
          vs.
19
    ASMAN et al,
20
                  Defendants.
21

22  PROPOUNDING PARTY:    Plaintiff DIANNE MALLIA, individually

23  RESPONDING PARTY:     Defendant DIANE TOCHE

24  SET NUMBER:           ONE

25                    **PRELIMINARY STATEMENT**

26       These responses are made solely for the purpose of this action.  Each response is subject

27  to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

28  all other objections and grounds that would require the exclusion of any statements herein, if any

    DEF. TOCHE'S RESPONSES TO PL'S REQUEST
    FOR ADMISSION, SET ONE

*(left margin vertical text)* McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

14

1    requests were asked for, or if any statement contained herein were made by a witness present and

2    testifying in court, all of which objections and grounds are reserved and may be interposed at the

3    time of trial.

4         Responding party is responding to all of the requests to the extent that information has

5    become known to her. However, responding party's discovery, investigation, and preparation for

6    trial of this matter has not been completed as of the date of these responses and, therefore,

7    responding party does not purport to state anything more than information currently known and

8    discovered by her.

9         Responding party reserves the right to continue discovery and investigation in this matter

10   regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

11   herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

12   are responded to fully and so far as information is currently available to responding party; and

13   responding party is not precluded from presenting at trial information discovered after the date of

14   these responses.

15        This Preliminary Statement is incorporated into each and every response set forth below.

16                                   **RESPONSES**

17   **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

18        Objection. Defendant is not the duly authorized Custodian of Records and is not authorized

19   to certify the records, pursuant to Federal Rules of Civil Procedure 44. This request is moreover

20   burdensome, oppressive, harassing, vague and ambiguous, including as to time, and not reasonably

21   calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and

22   Defendant reserves the right to amend or supplement this response as appropriate in the future.

23   **RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

24        Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

25   not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

26   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

27   the future.

28   **RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

DEF. TOCHE'S RESPONSES TO PL'S REQUEST    2
FOR ADMISSION, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

2    not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

3    ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

4    the future.

5    **RESPONSE TO REQUEST FOR ADMISSION NO. 4**

6    Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

7    including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

8    Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

9    as appropriate in the future.

10    **RESPONSE TO REQUEST FOR ADMISSION NO. 5**

11    Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

12    including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

13    Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

14    as appropriate in the future.

15    **RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

16    Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

17    including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

18    Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

19    as appropriate in the future.

20    **RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

21    Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

22    including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

23    Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

24    as appropriate in the future.

25    **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

26    Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

27    including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

28    Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

A

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

as appropriate in the future.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in the future.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in the future.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in the future.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in the future.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in the future.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

17

1   including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

2   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

3   as appropriate in the future.

4   **RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

5       Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

6   not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

7   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

8   the future.

9   **RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

10      Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

11  not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

12  ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

13  the future.

14  **RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

15      Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

16  not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

17  ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

18  the future.

19  **RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

20      Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

21  including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

22  Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

23  as appropriate in the future.

24  **RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

25      Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

26  not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

27  ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

28  the future.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

2      Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

3   not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

4   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

5   the future.

6   **RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

7      Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

8   not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

9   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

10  the future.

11  **RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

12     Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

13  not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

14  ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

15  the future.

16  **RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

17     Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

18  not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

19  ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

20  the future.

21  Dated:  December 14, 2023           McNAMARA, AMBACHER, WHEELER,
                                       HIRSIG & GRAY LLP
22

23

24                                     By:   _Daniel Mayer_
                                             Peter J. Hirsig
25                                           Maria Zhurnalova-Juppunov
                                             Daniel R. Mayer
26                                           Attorneys for Defendants ADAMS, ANDALUZ,
                                             ASHE, ASMAN, BRANMAN, BRIZENDINE,
27                                           BROCKENBOROGH, CEBALLOS, HEATLEY, J.
                                             JOHNSON, R. JOHNSON, LEIDNER, PONCIANO,
28                                           RAMKUMAR, REKART, ROBINSON, RUDAS, M.
                                             SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

A

1   PETER J. HIRSIG (State Bar No. 197993)
    peter.hirsig@mcnamaralaw.com
2   MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
    maria.zhurnalova-juppunov@mcnamaralaw.com
3   DANIEL R. MAYER (State Bar No. 300077)
    daniel.mayer@mcnamaralaw.com
4   McNAMARA, AMBACHER, WHEELER,
    HIRSIG & GRAY LLP
5   639 Kentucky Street
    Fairfield, CA 94533-5530
6   Telephone: (707) 427-3998
    Facsimile:  (707) 427-0268
7
    Attorneys for Defendants
8   ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
    BRIZENDINE, BROCKENBOROGH, CEBALLOS,
9   HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
    PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
10  M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11              UNITED STATES DISTRICT COURT

12              EASTERN DISTRICT OF CALIFORNIA

13

14  Estate of WILLIAM SCHMITZ, deceased,    Case No. 2:20-CV-00195-JAM-CKD
    by and through THOMAS J. SCHMITZ
15  and DIANNE MALLIA, as Successors in     **DEFENDANT DIANA TOCHE'S**
    Interest; THOMAS SCHMITZ,               **RESPONSES TO PLAINTIFF'S**
16  Individually; and DIANNE MALLIA,        **REQUESTS FOR PRODUCTION OF**
    Individually,                           **DOCUMENTS, SET ONE**
17
            Plaintiffs,                     Action Filed:  7/16/2020
18
        vs.
19
    ASMAN et al,
20
            Defendants.
21

22  PROPOUNDING PARTY:   Plaintiff DIANNE MALLIA, individually

23  RESPONDING PARTY:    Defendant DIANA TOCHE

24  SET NUMBER:          ONE

25              **PRELIMINARY STATEMENT**

26      These responses are made solely for the purpose of this action.  Each response is subject

27  to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

28  all other objections and grounds that would require the exclusion of any statements herein, if any

DEF. TOCHE'S RESPONSES TO PL'S REQUEST
FOR PRODUCTION, SET ONE

20

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1   requests were asked for, or if any statement contained herein were made by a witness present and

2   testifying in court, all of which objections and grounds are reserved and may be interposed at the

3   time of trial.

4          Responding party is responding to all of the requests to the extent that information has

5   become known to her. However, responding party's discovery, investigation, and preparation for

6   trial of this matter has not been completed as of the date of these responses and, therefore,

7   responding party does not purport to state anything more than information currently known and

8   discovered by her.

9          Responding party reserves the right to continue discovery and investigation in this matter

10  regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

11  herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

12  are responded to fully and so far as information is currently available to responding party; and

13  responding party is not precluded from presenting at trial information discovered after the date of

14  these responses.

15         This Preliminary Statement is incorporated into each and every response set forth below.

16                              **RESPONSES**

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

18         Objection. See objections stated in Response to Plaintiff's Requests for Admission and

19  incorporated by reference hereto respectfully. Defendant further objects to the extent this request

20  seeks documents protected by attorney-client privilege and the work production doctrine. This

21  request is further burdensome, oppressive, harassing, vague and ambiguous as to time, and not

22  reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing,

23  and Defendant reserves the right to amend or supplement this response as appropriate in the future.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

25         Objection. See objections stated in Response to Plaintiff's Request for Admission and

26  incorporated by reference hereto respectfully. Defendant further objects to the extent this request

27  seeks documents protected by attorney-client privilege and the work production doctrine. This

28  request is further burdensome, oppressive, harassing, vague and ambiguous as to time, and not

DEF. TOCHE'S RESPONSES TO PL'S REQUEST       2
FOR PRODUCTION, SET ONE

21

1   reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing,

2   and Defendant reserves the right to amend or supplement this response as appropriate in the future.

3

4   Dated: December 14, 2023            MCNAMARA, AMBACHER, WHEELER,
                                        HIRSIG & GRAY LLP

5

6                                       By:    *Daniel Mayer*

7                                           Peter J. Hirsig
                                            Maria Zhurnalova-Juppunov
8                                           Daniel R. Mayer
                                            Attorneys for Defendants ADAMS, ANDALUZ,
9                                           ASHE, ASMAN, BRANMAN, BRIZENDINE,
                                            BROCKENBOROGH, CEBALLOS, HEATLEY, J.
10                                          JOHNSON, R. JOHNSON, LEIDNER, PONCIANO,
                                            RAMKUMAR, REKART, ROBINSON, RUDAS, M.
11                                          SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF. TOCHE'S RESPONSES TO PL'S REQUEST        3
FOR PRODUCTION, SET ONE

MCNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

A

1    PETER J. HIRSIG (State Bar No. 197993)
     peter.hirsig@mcnamaralaw.com
2    MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
     maria.zhurnalova-juppunov@mcnamaralaw.com
3    DANIEL R. MAYER (State Bar No. 300077)
     daniel.mayer@mcnamaralaw.com
4    McNAMARA, AMBACHER, WHEELER,
     HIRSIG & GRAY LLP
5    639 Kentucky Street
     Fairfield, CA 94533-5530
6    Telephone: (707) 427-3998
     Facsimile:  (707) 427-0268
7
     Attorneys for Defendants
8    ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
     BRIZENDINE, BROCKENBOROGH, CEBALLOS,
9    HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
     PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
10   M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11                   UNITED STATES DISTRICT COURT

12                  EASTERN DISTRICT OF CALIFORNIA

13

14   Estate of WILLIAM SCHMITZ, deceased,        Case No. 2:20-CV-00195-JAM-CKD
     by and through THOMAS J. SCHMITZ
15   and DIANNE MALLIA, as Successors in         **DEFENDANT DIANA TOCHE'S**
     Interest; THOMAS SCHMITZ,                   **RESPONSES TO PLAINTIFF'S SPECIAL**
16   Individually; and DIANNE MALLIA,            **INTERROGATORIES, SET ONE**
     Individually,
17                                               Action Filed:  7/16/2020
                     Plaintiffs,
18
             vs.
19
     ASMAN et al,
20
                     Defendants.
21

22   PROPOUNDING PARTY:    Plaintiff DIANNE MALLIA, individually

23   RESPONDING PARTY:     Defendant DIANA TOCHE

24   SET NUMBER:           ONE

25                     **PRELIMINARY STATEMENT**

26          These responses are made solely for the purpose of this action.  Each response is subject

27   to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

28   all other objections and grounds that would require the exclusion of any statements herein, if any

     DEF. TOCHE'S RESPONSES TO PL'S
     INTERROGATORIES, SET ONE

23

*A*

1    requests were asked for, or if any statement contained herein were made by a witness present and

2    testifying in court, all of which objections and grounds are reserved and may be interposed at the

3    time of trial.

4        Responding party is responding to all of the requests to the extent that information has

5    become known to her. However, responding party's discovery, investigation, and preparation for

6    trial of this matter has not been completed as of the date of these responses and, therefore,

7    responding party does not purport to state anything more than information currently known and

8    discovered by her.

9        Responding party reserves the right to continue discovery and investigation in this matter

10   regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

11   herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

12   are responded to fully and so far as information is currently available to responding party; and

13   responding party is not precluded from presenting at trial information discovered after the date of

14   these responses.

15       This Preliminary Statement is incorporated into each and every response set forth below.

16   <div align="center">**RESPONSES**</div>

17   **RESPONSE TO INTERROGATORY NO. 1:**

18       Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

19   and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

20   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

21   the future.

22   **RESPONSE TO INTERROGATORY NO. 2:**

23       Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

24   and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

25   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

26   the future.

27   **RESPONSE TO INTERROGATORY NO. 3:**

28       Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

*McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP*
*ATTORNEYS AT LAW*
*639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530*
*TELEPHONE: (707) 427-0268*

DEF. TOCHE'S RESPONSES TO PL'S                    2
INTERROGATORIES, SET ONE

24

1   and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

2   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

3   the future.

4   **RESPONSE TO INTERROGATORY NO. 4**

5          Objection. This interrogatory is burdensome, oppressive, harassing, vague, and ambiguous,

6   and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

7   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

8   the future.

9   **RESPONSE TO INTERROGATORY NO. 5**

10         Objection. This interrogatory is burdensome, oppressive, harassing, vague, and ambiguous

11  as to time, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery

12  remains ongoing, and Defendant reserves the right to amend or supplement this response as

13  appropriate in the future.

14  **RESPONSE TO INTERROGATORY NO. 6:**

15         Objection. This interrogatory is burdensome, oppressive, harassing, vague, and ambiguous,

16  and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

17  ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

18  the future.

19  **RESPONSE TO INTERROGATORY NO. 7:**

20         Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

21  including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

22  Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

23  as appropriate in the future.

24  **RESPONSE TO INTERROGATORY NO. 8:**

25         Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

26  including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

27  Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

28  as appropriate in the future.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0266

25

1   **RESPONSE TO INTERROGATORY NO. 9:**

2       Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

3   and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

4   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

5   the future.

6   **RESPONSE TO INTERROGATORY NO. 10:**

7       Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

8   and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

9   ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

10   the future.

11   **RESPONSE TO INTERROGATORY NO. 11:**

12       Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

13   and not reasonably calculated to lead to the discovery of admissible evidence. The interrogatory is

14   phrased in such a way that it amounts to a request for admission. Discovery remains ongoing, and

15   Defendant reserves the right to amend or supplement this response as appropriate in the future.

16   **RESPONSE TO INTERROGATORY NO. 12:**

17       Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

18   including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

19   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

20   as appropriate in the future.

21   **RESPONSE TO INTERROGATORY NO. 13:**

22       Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

23   including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

24   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

25   as appropriate in the future.

26   **RESPONSE TO INTERROGATORY NO. 14:**

27       Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

28   including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

26

1  Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

2  as appropriate in the future.

3  **RESPONSE TO INTERROGATORY NO. 15:**

4  Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

5  including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

6  Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

7  as appropriate in the future.

8  **RESPONSE TO INTERROGATORY NO. 16:**

9  Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

10  and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

11  ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

12  the future.

13  **RESPONSE TO INTERROGATORY NO. 17:**

14  Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

15  and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains

16  ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in

17  the future.

18  **RESPONSE TO INTERROGATORY NO. 18:**

19  Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

20  including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

21  Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

22  as appropriate in the future.

23  **RESPONSE TO INTERROGATORY NO. 19:**

24  Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

25  including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

26  Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

27  as appropriate in the future.

28  **RESPONSE TO INTERROGATORY NO. 20:**

DEF. TOCHE'S RESPONSES TO PL'S    5
INTERROGATORIES, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

27

Exh A

1        Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

2    including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

3    Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response

4    as appropriate in the future.

5    Dated:  December 14, 2023        McNAMARA, AMBACHER, WHEELER,
                                       HIRSIG & GRAY LLP

6

7

8                    By: _____*Daniel Mayer*_____

9                      Peter J. Hirsig
     Maria Zhurnalova-Juppunov

10   Daniel R. Mayer
     Attorneys for Defendants ADAMS, ANDALUZ,
     ASHE, ASMAN, BRANMAN, BRIZENDINE,

11   BROCKENBOROGH, CEBALLOS, HEATLEY, J.
     JOHNSON, R. JOHNSON, LEIDNER, PONCIANO,
     RAMKUMAR, REKART, ROBINSON, RUDAS, M.

12   SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF. TOCHE'S RESPONSES TO PL'S          6
INTERROGATORIES, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

28

 **Gmail**

Dianne Mallia <deedamallia@gmail.com>

---

# Re: Schmitz v. Asman
1 message

---

**Dianne Mallia** <deedamallia@gmail.com>                    Thu, Dec 14, 2023 at 1:36 PM
To: Daniel Mayer <daniel.mayer@mcnamaralaw.com>
Cc: Heather Permison <heather.permison@mcnamaralaw.com>, Liesl Swartwood <liesl.swartwood@mcnamaralaw.com>,
Maria Zhurnalova-Juppunov <maria.zhurnalova-juppunov@mcnamaralaw.com>, "Nicholas R. Newman"
<Nicholas.Newman@mcnamaralaw.com>, Peter Hirsig <peter.hirsig@mcnamaralaw.com>, Tami Martin
<tami.martin@mcnamaralaw.com>, "tsfoot49@gmail.com" <tsfoot49@gmail.com>

Dear Mr. Mayer,
We have agreed several times to extensions and do not agree to extend again at this time. We understand the
response la of some will be solely objections.

Sincerely,
Dianne Mallia

On Thu, Dec 14, 2023 at 12:20 PM Daniel Mayer <daniel.mayer@mcnamaralaw.com> wrote:

Dear Ms. Mallia,

We are prepared to provide responses to your recent discovery today on behalf of Robinson
and Tebrock, which we will do one way or another. Unfortunately, the remainder, Rekart,
Leidner, Toche, and Diaz, are not finished, despite our very best efforts.

We would request an extension of one additional month, considering the holiday, on these to
January 15, 2023. If you are unable to grant the extension, we will need to respond to
discovery with objections only, for the time being, with the understanding that we will be
completing them as soon as practicable and amending/supplementing at the appropriate time.

Please advise. Thank you very much.

**Daniel R. Mayer**
**Associate**



639 Kentucky Street
Fairfield, CA 94533
707.427.3998
707.427.0268 Fax
www.mcnamaralaw.com

vCard

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients



Gmail - Re: Schmitz v. Asman                                                                        7/13/24, 10:55 AM

identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

 **Gmail**                                   Dianne Mallia <deedamallia@gmail.com>

## Re: Meet and Confer
1 message

**Daniel Mayer** <daniel.mayer@mcnamaralaw.com>                   Tue, Apr 30, 2024 at 9:14 PM
To: Dianne Mallia <deedamallia@gmail.com>, Maria Zhurnalova-Juppunov <maria.zhurnalova-juppunov@mcnamaralaw.com>, "Nicholas R. Newman" <Nicholas.Newman@mcnamaralaw.com>, Tami Martin <tami.martin@mcnamaralaw.com>, Peter Hirsig <peter.hirsig@mcnamaralaw.com>, Liesl Swartwood <liesl.swartwood@mcnamaralaw.com>, Taylor Dickson <taylor.dickson@mcnamaralaw.com>, Heather Permison <heather.permison@mcnamaralaw.com>
Cc: Tom JOSEPH schmitz <tsfoot49@gmail.com>

Hi, sorry I missed this. I certainly understand the deficiencies of the responses served to these sets of discovery and on behalf of these defendants, and I am working on all of them Will get you amended responses as soon as possible. Very sorry for the delay. Thanks.

**Daniel R. Mayer**
**Associate**



639 Kentucky Street
Fairfield, CA 94533
707.427.3998
707.427.0268 Fax
www.mcnamaralaw.com

vCard

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

---

**From:** Dianne Mallia <deedamallia@gmail.com>
**Sent:** Monday, April 22, 2024 8:36 AM
**To:** Daniel Mayer <daniel.mayer@mcnamaralaw.com>; Maria Zhurnalova-Juppunov <maria.zhurnalova-juppunov@mcnamaralaw.com>; Nicholas R. Newman <Nicholas.Newman@mcnamaralaw.com>; Tami Martin <tami.martin@mcnamaralaw.com>; Peter Hirsig <peter.hirsig@mcnamaralaw.com>; Liesl Swartwood <liesl.swartwood@mcnamaralaw.com>; Taylor Dickson <taylor.dickson@mcnamaralaw.com>; Heather Permison <heather.permison@mcnamaralaw.com>

Gmail - Re: Meet and Confer                                                                                          7/13/24, 11:00 AM

**Cc:** Tom JOSEPH schmitz <tsfoot49@gmail.com>
**Subject:** Meet and Confer

> **CAUTION: [External E-Mail] - DO NOT** click on links or open attachments unless you recognize the **source of the email AND know the content is safe. ALWAYS VERIFY** the source of **unexpected or suspicious emails** before opening.

Good Morning Mr. Mayer,

I believe you are handling these ones. We need to formally meet and confer on the below so we can renew our motion to the Court to receive the actual answers and not just objections promised long ago. Please provide some dates and times to meet and confer.

1. Defendant DIANA TOCHE's responses to Plaintiff Mallia's special interrogatories , set one
2. Defendant DIANA TOCHE's responses to Plaintiff Mallia's Request for Admission , set one
3. Defendant DIANA TOCHE's responses to Plaintiff Mallia's request for production of documents, set one
4. Defendant JOHN REKART's responses to Plaintiff Mallia's special interrogatories , set one
5. Defendant JOHN REKART's responses to Plaintiff Mallia's Request for Admission, set one
6. Defendant JOHN REKART's responses to Plaintiff Mallia's request for production of documents , set one

**Response to every RFA, except no. 1, individually to Defendant Toche, Rekart:**
"Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in the future. "

**Response to every RFP by Defendants Toche, Rekart:**
Objection. See objections stated in Response to Plaintiff's Requests for Admission and incorporated by reference hereto respectfully. Defendant further objects to the extent this request seeks documents protected by attorney-client privilege and the work production doctrine. This request is further burdensome, oppressive, harassing, vague and ambiguous as to time, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in the future.

**Response to every interrogatory by Defendants Toche, Rekart:**
Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in the future.

For background from the prior motion:

The discovery requests pertaining to this motion were originally served on Defendants electronically on October 7, 2023. (Exhibit A)
On October 26, 2023 Defendants' attorney MARIA ZHURNALOVA-JUPPUNOV requested an extension until December 1, 2023. Plaintiffs originally did not agree, however when learning of Attorney DANIEL MAYER'S illness they allowed the extension until December 1, 2023.

On November 20, 2023 attorney DANIEL MAYER requested a further extension as his father was hospitalized. Plaintiffs granted a 2 week extension, moving the deadline an additional 14 days to December 15, 2023.
On December 14, 2023, attorney DANIEL MAYER requested further extension until January 15, 2024, and that if not granted explained that the responses would only consist only of objections. Plaintiffs would not agree to further extension.
     On December 14, 2023, Responses were served and consisted entirely of objections. (Exhibits B-J)
     On December 26, 2023, Plaintiff Mallia informed Defendants that answers were deficient and gave a timeline of until January 15, 2024 for amended responses as this was the date attorney DANIEL MAYER previously requested.
     On January 22, 2024, Plaintiff Mallia followed up requesting the amended answers by January 28, 2024.
     On February 1, 2024 Plaintiff Mallia again followed up once again and extended deadline to February 5 advising if not received a motion would be filed with the court. (Exhibit M at 1)
     On February 2, 2024 attorney DANIEL MAYER requested an extension as the firm had been involved in a trial.
On February 2, 2024, Plaintiff Mallia once again explained concern of the court's timeline for discovery completion and that Defendants inability to respond is going to make discovery completion impossible for the Court ordered timeline. Plaintiff Mallia offered to allow

4

another extension if the Court would allow a six month extension on completion of fact discovery and advising that if Attorney Mayer would draft the stipulation for discovery extension plaintiffs would sign.

On February 6, Defendants' attorney Mayer did not want to agree to stipulate to the extension of the discovery cut-off.

On February 6, Plaintiff Mallia responded referring to Court Order ECF 286 and the seemingly very firm cut-off of May 17, 2024 and advised she would file a motion since Defendants would not agree to stipulate to the extension.

As of today, I don't believe any further response has been received by me.


**A. Responses not in good faith**

Defendants only responded with objections to meet the response deadline that was extended multiple times under the guise amended responses were to follow. Now months later, the amended responses are ambiguous as to if and when they are to be served. Defendants waste precious time that is needed for Plaintiffs to complete discovery by the current deadline. Future discovery requests depend on the current discovery production. Further, Defendants failure to stipulate to a request to extend a discovery deadline makes it more suspect of an alternative motive of simply trying to exhaust all time for Pro se Plaintiffs to complete discovery.


**B. Generic Objections**

Generic objections are not sufficient. *see Taylor v. Cnty. of Calaveras*, No. 1:18-cv-00760-BAM, at *6 (E.D. Cal. Nov. 26, 2019) ("Generic, boilerplate objections to discovery are not sufficient. *See Marti v. Baires*, 2012 U.S. Dist. LEXIS 77962, 2012 WL 2029720 (E.D. Cal. June 5, 2012) (reliance on boilerplate objections is an abuse of the discovery process); *see A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D.Cal.2006) (general or boilerplate objections such as "overly burdensome and harassing" are improper); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (objections that document requests were overly broad, burdensome, oppressive, and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable). Rather, a party resisting discovery must make some showing as to how each discovery request is not relevant and/or is overly broad or unduly burdensome. *See Dolarian Capital, Inc. v. SOC, LLC*, 2012 WL 4026818, at *2 (E.D. Cal. Sept. 12, 2012).")

Sincerely,
Dianne Mallia



 **Gmail**

Dianne Mallia <deedamallia@gmail.com>

---

## Re: Meet and Confer
1 message

---

**Dianne Mallia** <deedamallia@gmail.com>                                   Wed, Jun 19, 2024 at 8:42 PM
To: Daniel Mayer <daniel.mayer@mcnamaralaw.com>
Cc: Maria Zhurnalova-Juppunov <maria.zhurnalova-juppunov@mcnamaralaw.com>, "Nicholas R. Newman"
<Nicholas.Newman@mcnamaralaw.com>, Tami Martin <tami.martin@mcnamaralaw.com>, Peter Hirsig
<peter.hirsig@mcnamaralaw.com>, Liesl Swartwood <liesl.swartwood@mcnamaralaw.com>, Taylor Dickson
<taylor.dickson@mcnamaralaw.com>, Heather Permison <heather.permison@mcnamaralaw.com>, Tom JOSEPH schmitz
<tsfoot49@gmail.com>

> Dear Mr. Mayer,
> I don't think I received a response.  Please resend if you did.  I believe these amended response shave still not be
> delivered as promised despite repeated extensions.  I would like to discuss these in a meet and confer at the zoom
> meeting that we are planning for next week.   I plan to file a motion if I do not have the amended responses by
> Wednesday next week.
> Sincerely,
> Dianne Mallia
>
> On Thu, May 30, 2024 at 9:44 AM Dianne Mallia <deedamallia@gmail.com> wrote:
>> Mr. Mayer,
>> Please provide available dates to meet and confer prior to me filing the motion with the Court or a date these will be
>> amended and provided within the next two weeks.  These were originally served in October of 2023.
>> Thank you,
>> Dianne Mallia
>>
>> On Tue, Apr 30, 2024 at 9:14 PM Daniel Mayer <daniel.mayer@mcnamaralaw.com> wrote:
>>> Hi, sorry I missed this. I certainly understand the deficiencies of the responses served to
>>> these sets of discovery and on behalf of these defendants, and I am working on all of them
>>> Will get you amended responses as soon as possible. Very sorry for the delay. Thanks.
>>>
>>> **Daniel R. Mayer**
>>> **Associate**
>>>
>>> 
>>>
>>> 639 Kentucky Street
>>> Fairfield, CA 94533
>>> 707.427.3998
>>> 707.427.0268 Fax
>>> www.mcnamaralaw.com
>>>
>>>
>>> vCard
>>>
>>> _____
>>>
>>> This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients
>>> identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or

copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email,
delete the communication and destroy all copies.

_____

**From:** Dianne Mallia <deedamallia@gmail.com>
**Sent:** Monday, April 22, 2024 8:36 AM
**To:** Daniel Mayer <daniel.mayer@mcnamaralaw.com>; Maria Zhurnalova-Juppunov
<maria.zhurnalova-juppunov@mcnamaralaw.com>; Nicholas R. Newman
<Nicholas.Newman@mcnamaralaw.com>; Tami Martin <tami.martin@mcnamaralaw.com>; Peter
Hirsig <peter.hirsig@mcnamaralaw.com>; Liesl Swartwood <liesl.swartwood@mcnamaralaw.
com>; Taylor Dickson <taylor.dickson@mcnamaralaw.com>; Heather Permison
<heather.permison@mcnamaralaw.com>
**Cc:** Tom JOSEPH schmitz <tsfoot49@gmail.com>
**Subject:** Meet and Confer



CAUTION: [External E-Mail] - DO NOT click on links or open attachments unless you recognize the source
of the email AND know the content is safe. ALWAYS VERIFY the source of unexpected or suspicious
emails before opening.

Good Morning Mr. Mayer,
I believe you are handling these ones. We need to formally meet and confer on the below so we can renew our motion to the Court
to receive the actual answers and not just objections promised long ago. Please provide some dates and times to meet and confer.

1. Defendant DIANA TOCHE's responses to Plaintiff Mallia's special interrogatories , set one
2. Defendant DIANA TOCHE's responses to Plaintiff Mallia's Request for Admission , set one
3. Defendant DIANA TOCHE's responses to Plaintiff Mallia's request for production of documents, set one
4. Defendant JOHN REKART's responses to Plaintiff Mallia's special interrogatories , set one
5. Defendant JOHN REKART's responses to Plaintiff Mallia's Request for Admission, set one
6. Defendant JOHN REKART's responses to Plaintiff Mallia's request for production of documents , set one

**Response to every RFA, except no. 1, individually to Defendant Toche, Rekart:**
"Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and not reasonably calculated to lead to the
discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response
as appropriate in the future. "

**Response to every RFP by Defendants Toche, Rekart:**
Objection. See objections stated in Response to Plaintiff's Requests for Admission and incorporated by reference hereto respectfully.
Defendant further objects to the extent this request seeks documents protected by attorney-client privilege and the work production
doctrine. This request is further burdensome, oppressive, harassing, vague and ambiguous as to time, and not reasonably calculated to
lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this
response as appropriate in the future.

**Response to every interrogatory by Defendants Toche, Rekart:**
Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous, and not reasonably calculated to lead to the
discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response
as appropriate in the future.

For background from the prior motion:

The discovery requests pertaining to this motion were originally served on Defendants electronically on October 7, 2023. (Exhibit A)

On October 26, 2023 Defendants' attorney MARIA ZHURNALOVA-JUPPUNOV requested an extension until December 1, 2023. Plaintiffs originally did not agree, however when learning of Attorney DANIEL MAYER'S illness they allowed the extension until December 1, 2023.

On November 20, 2023 attorney DANIEL MAYER requested a further extension as his father was hospitalized. Plaintiffs granted a 2 week extension, moving the deadline an additional 14 days to December 15, 2023.

On December 14, 2023, attorney DANIEL MAYER requested further extension until January 15, 2024, and that if not granted explained that the responses would only consist only of objections. Plaintiffs would not agree to further extension.

    On December 14, 2023, Responses were served and consisted entirely of objections. (Exhibits B-J)

    On December 26, 2023, Plaintiff Mallia informed Defendants that answers were deficient and gave a timeline of until January 15, 2024 for amended responses as this was the date attorney DANIEL MAYER previously requested.

    On January 22, 2024, Plaintiff Mallia followed up requesting the amended answers by January 28, 2024.

    On February 1, 2024 Plaintiff Mallia again followed up once again and extended deadline to February 5 advising if not received a motion would be filed with the court. (Exhibit M at 1)

    On February 2, 2024 attorney DANIEL MAYER requested an extension as the firm had been involved in a trial.

On February 2, 2024, Plaintiff Mallia once again explained concern of the court's timeline for discovery completion and that Defendants inability to respond is going to make discovery completion impossible for the Court ordered timeline. Plaintiff Mallia offered to allow another extension if the Court would allow a six month extension on completion of fact discovery and advising that if Attorney Mayer would draft the stipulation for discovery extension plaintiffs would sign.

On February 6, Defendants' attorney Mayer did not want to agree to stipulate to the extension of the discovery cut-off.

On February 6, Plaintiff Mallia responded referring to Court Order ECF 286 and the seemingly very firm cut-off of May 17, 2024 and advised she would file a motion since Defendants would not agree to stipulate to the extension.

As of today, I don't believe any further response has been received by me.

### A. Responses not in good faith

Defendants only responded with objections to meet the response deadline that was extended multiple times under the guise amended responses were to follow. Now months later, the amended responses are ambiguous as to if and when they are to be served. Defendants waste precious time that is needed for Plaintiffs to complete discovery by the current deadline. Future discovery requests depend on the current discovery production. Further, Defendants failure to stipulate to a request to extend a discovery deadline makes it more suspect of an alternative motive of simply trying to exhaust all time for Pro se Plaintiffs to complete discovery.

### B. Generic Objections

Generic objections are not sufficient. *see Taylor v. Cnty. of Calaveras*, No. 1:18-cv-00760-BAM, at *6 (E.D. Cal. Nov. 26, 2019) ("Generic, boilerplate objections to discovery are not sufficient. *See Marti v. Baires*, 2012 U.S. Dist. LEXIS 77962, 2012 WL 2029720 (E.D. Cal. June 5, 2012) (reliance on boilerplate objections is an abuse of the discovery process); *see A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D.Cal.2006) (general or boilerplate objections such as "overly burdensome and harassing" are improper); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (objections that document requests were overly broad, burdensome, oppressive, and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable). Rather, a party resisting discovery must make some showing as to how each discovery request is not relevant and/or is overly broad or unduly burdensome. *See Dolarian Capital, Inc. v. SOC, LLC*, 2012 WL 4026818, at *2 (E.D. Cal. Sept. 12, 2012).")

Sincerely,
Dianne Mallia



 **Gmail**                    Dianne Mallia <deedamallia@gmail.com>

## Re: Schmitz v. Asman

**Dianne Mallia <deedamallia@gmail.com>**                           Wed, Jul 10, 2024 at 8:00 AM
To: Daniel Mayer <daniel.mayer@mcnamaralaw.com>
Cc: Heather Permison <heather.permison@mcnamaralaw.com>, Liesl Swartwood <liesl.swartwood@mcnamaralaw.com>,
Maria Zhurnalova-Juppunov <maria.zhurnalova-juppunov@mcnamaralaw.com>, "Nicholas R. Newman"
<Nicholas.Newman@mcnamaralaw.com>, Peter Hirsig <peter.hirsig@mcnamaralaw.com>, Tami Martin
<tami.martin@mcnamaralaw.com>, Taylor Dickson <taylor.dickson@mcnamaralaw.com>

Good morning Mr. Mayer,
I am sorry for the multiple issues you are going through but can not longer grant an extension. I will include the issue
in the discovery dispute that we are drafting based on the last meet and confer. It's seems you should probably have
time to get the discovery in before the court even reviews the motion. However, I am willing to do the extra work to at
least get this in front of the court in the coming month or so if n case the responses still do not come through.
Sincerely,
Dianne Mallia
On Tue, Jul 9, 2024 at 10:14 PM Daniel Mayer <daniel.mayer@mcnamaralaw.com> wrote:

Dear Ms. Mallia,

I know I promised you responses by today, and very sorry that hasn't happened.
Unfortunately, in the last week, I sustained a worse-than-usual cycling injury, and also my car
broke down, which has pulled me in a million directions. I will be working on this discovery this
week. Sorry about that again. Let me know if you'd like to set a new date. Thanks.

**Daniel R. Mayer**
**Associate**



639 Kentucky Street
Fairfield, CA 94533
707.427.3998
707.427.0268 Fax
www.mcnamaralaw.com

vCard

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients
identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying
of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the
communication and destroy all copies.

9

 **Gmail**

**Dianne Mallia <deedamallia@gmail.com>**

---

## Re: Schmitz v. Asman

---

**Dianne Mallia** <deedamallia@gmail.com>                                      Thu, Feb 1 at 5:39 PM
To: Daniel Mayer <daniel.mayer@mcnamaralaw.com>
Cc: Heather Permison <heather.permison@mcnamaralaw.com>, Liesl Swartwood <liesl.swartwood@mcnamaralaw.com>,
Maria Zhurnalova-Juppunov <maria.zhurnalova-juppunov@mcnamaralaw.com>, Nicholas R. Newman
<Nicholas.Newman@mcnamaralaw.com>, Peter Hirsig <peter.hirsig@mcnamaralaw.com>, Tami Martin
<tami.martin@mcnamaralaw.com>, tsfoot49@gmail.com <tsfoot49@gmail.com>

Good Afternoon,
We do not believe we have received a response regarding these pending amended responses.  If we do not have these
amended responses by February 5 we will file a motion with the Court to rule on the objections and determine
sufficiency of the objections.
Sincerely,
Dianne Mallia

On Mon, Jan 22, 2024 at 8:00 AM Dianne Mallia <deedamallia@gmail.com> wrote:
  Good Morning Mr. Mayer or Ms. Zhurnalova-Juppunov,
  I am not sure how your firm is breaking up the work but it seems Mr. Mayer was working on these? I don't think we
  have received the amended responses. My understanding was you could provide compliant responses by 1/15.
  Please provide by 1/28/2024,to avoid unnecessary motion practice.
  Thank you,
  Dianne Mallia.

On Tue, Dec 26, 2023 at 8:00 AM Dianne Mallia <deedamallia@gmail.com> wrote:
  Good Morning Mr. Mayer,

  This is in response to various Defendants responses  to the following:

  PLAINTIFF DIANNE MALLIA'S REQUESTS FOR PRODUCTION OF
  DOCUMENTS TO DEFENDANT RALPH DIAZ, SET ONE

   PLAINTIFF DIANNE MALLIA'S REQUESTS FOR PRODUCTION OF
  DOCUMENTS TO DEFENDANT DIANA TOCHE, SET ONE

   PLAINTIFF DIANNE MALLIA's Request For Admissions TO
  DEFENDANT Diana TOCHE, SET ONE

  PLAINTIFF DIANNE MALLIA's REQUESTS FOR ADMISSION, SET
  ONE TO DEFENDANT RALPH DIAZ

   PLAINTIFF DIANNE MALLIA's INTERROGATORIES TO DEFENDANT
  DIANA TOCHE, SET ONE

   PLAINTIFF DIANNE MALLIA's INTERROGATORIES TO DEFENDANT
  RALPH DIAZ, SET ONE

   PLAINTIFF DIANNE MALLIA's Request For Admissions TO
  DEFENDANT DAVID LEIDNER , SET ONE

   PLAINTIFF DIANNE MALLIA's Request For Admissions TO
  DEFENDANT JOHN REKART, SET ONE

10

ß

PLAINTIFF DIANNE MALLIA's INTERROGATORIES TO DEFENDANT
DAVID LEIDNER, SET ONE

PLAINTIFF DIANNE MALLIA's INTERROGATORIES TO DEFENDANT
JOHN REKART, SET ONE

PLAINTIFF DIANNE MALLIA'S REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT JOHN REKART , SET ONE

As you informed us prior to providing the responses, these are all composed solely of objections. We are sending this email as a
formal record of our belief that they are all inadequate responses. As you seemed to acknowledge prior to sending them that they
would be like this due to a lack of time to adequately prepare them, we will not go through each individual one to point out the
deficiency. Please provide fully compliant responses by January 15th, 2024 to avoid unnecessary motion practice.

Thank you,

Dianne Mallia

On Thu, Dec 14, 2023 at 1:47 PM Daniel Mayer <daniel.mayer@mcnamaralaw.com> wrote:

> Understood. Thanks.
>
> **Daniel R. Mayer**
> **Associate**
>
> 
>
> 639 Kentucky Street
> Fairfield, CA 94533
> 707.427.3998
> 707.427.0268 Fax
> www.mcnamaralaw.com
>
> vCard
>
> _____
>
> This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients
> identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or
> copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email,
> delete the communication and destroy all copies.

---

**From:** Dianne Mallia <deedamallia@gmail.com>
**Sent:** Thursday, December 14, 2023 1:36 PM
**To:** Daniel Mayer <daniel.mayer@mcnamaralaw.com>
**Cc:** Heather Permison <heather.permison@mcnamaralaw.com>; Liesl Swartwood
<diesl.swartwood@mcnamaralaw.com>; Maria Zhurnalova-Juppunov <maria.zhurnalova-
juppunov@mcnamaralaw.com>; Nicholas R. Newman <Nicholas.Newman@mcnamaralaw.com>;
Peter Hirsig <peter.hirsig@mcnamaralaw.com>; Tami Martin <tami.martin@mcnamaralaw.com>;
tsfoot49@gmail.com <tsfoot49@gmail.com>

**Subject:** Re: Schmitz v. Asman

> **CAUTION: [External E-Mail] - DO NOT** click on links or open attachments unless you recognize the **source** of the email AND know the content is safe. **ALWAYS VERIFY** the source of **unexpected or suspicious** emails before opening.

Dear Mr. Mayer,
We have agreed several times to extensions and do not agree to extend again at this time. We understand the response la of some will be solely objections.

Sincerely,
Dianne Mallia

On Thu, Dec 14, 2023 at 12:20 PM Daniel Mayer <daniel.mayer@mcnamaralaw.com> wrote:

Dear Ms. Mallia,

We are prepared to provide responses to your recent discovery today on behalf of Robinson and Tebrock, which we will do one way or another. Unfortunately, the remainder, Rekart, Leidner, Toche, and Diaz, are not finished, despite our very best efforts.

We would request an extension of one additional month, considering the holiday, on these to January 15, 2023. If you are unable to grant the extension, we will need to respond to discovery with objections only, for the time being, with the understanding that we will be completing them as soon as practicable and amending/supplementing at the appropriate time.

Please advise. Thank you very much.

**Daniel R. Mayer**
**Associate**



639 Kentucky Street
Fairfield, CA 94533
707.427.3998
707.427.0268 Fax
www.mcnamaralaw.com

vCard

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.



*Exhibit C*

**Certificate of service**

1.Case Name: Thomas Schmitz, et al. v. A. Asman et al

2.Case Number: 2:20-cv00195-DJC-CKD

3. What Documents were served?

   1. PLAINTIFF THOMAS SCHMITZ AMENDED ANSWERS TO DEFENDANT SUJATHA RAMKUMAR, M.D. REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

2.   PLAINTIFF DIANNE MALLIA AMENDED ANSWERS TO DEFENDANT SUJATHA RAMKUMAR, M.D. REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

3. PLAINTIFF THOMAS SCHMITZ AMENDED ANSWERS TO DEFENDANT ERIC BRANMAN REQUEST FOR PRODUCTION OF DOCUMENTS SET ONE

4. PLAINTIFF DIANNE MALLIA AMENDED ANSWERS TO DEFENDANT ERIC BRANMAN REQUEST FOR PRODUCTION OF DOCUMENTS SET ONE

5. PLAINTIFF DIANNE MALLIA AMENDED ANSWERS TO DEFENDANT ALEX ANDALUZ REQUEST FOR PRODUCTION OF DOCUMENTS SET ONE

6. PLAINTIFF THOMAS SCHMITZ AMENDED ANSWERS TO DEFENDANT ALEX ANDALUZ REQUEST FOR PRODUCTION OF DOCUMENTS SET ONE

7. PLAINTIFF DIANNE MALLIA AMENDED ANSWERS TO DEFENDANT ROBERT JOHNSON, M.D.'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

8. PLAINTIFF THOMAS SCHMITZ AMENDED ANSWERS TO DEFENDANT ROBERT JOHNSON, M.D.'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

9. PLAINTIFF THOMAS SCHMITZ AMENDED ANSWERS TO DEFENDANT VIOLKA WANIE REQUEST FOR PRODUCTION OF DOCUMENTS SET ONE

10. PLAINTIFF DIANNE MALLIA AMENDED ANSWERS TO DEFENDANT VIOLKA WANIE REQUEST FOR PRODUCTION OF DOCUMENTS SET ONE

11. PLAINTIFF THOMAS SCHMITZ AMENDED ANSWERS TO DEFENDANT VIOLKA WANIE SPECIAL INTERROGATORIES, SET ONE

12. PLAINTIFF DIANNE MALLIA AMENDED ANSWERS TO DEFENDANT VIOLKA WANIE SPECIAL INTERROGATORIES, SET ONE

13. PLAINTIFF THOMAS SCHMITZ AMENDED ANSWERS TO DEFENDANT ROBERT JOHNSON, M.D.'S, SPECIAL INTERROGATORIES, SET ONE

14. PLAINTIFF DIANNE MALLIA AMENDED ANSWERS TO DEFENDANT ROBERT JOHNSON, M.D.'S, SPECIAL INTERROGATORIES, SET ONE

15. PLAINTIFF THOMAS SCHMITZ AMENDED ANSWERS TO DEFENDANT JEVON JOHNSON, M.D.'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

16. PLAINTIFF DIANNE MALLIA AMENDED ANSWERS TO DEFENDANT JEVON JOHNSON, M.D.'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

17. PLAINTIFF DIANNE MALLIA's REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT RALPH DIAZ, SET ONE

18. PLAINTIFF DIANNE MALLIA's REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT DIANA TOCHE, SET ONE

19. PLAINTIFF DIANNE MALLIA's REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT KATHERINE TEBROCK, SET ONE

2

20. PLAINTIFF DIANNE MALLIA's Request For Admissions TO
DEFENDANT Katherine Tebrock, SET ONE

21. PLAINTIFF DIANNE MALLIA's Request For Admissions TO
DEFENDANT Diana TOCHE, SET ONE

22. PLAINTIFF DIANNE MALLIA's INTERROGATORIES TO DEFENDANT
Katherine Tebrock, SET ONE

23. PLAINTIFF DIANNE MALLIA's REQUESTS FOR ADMISSION, SET
ONE TO DEFENDANT RALPH DIAZ

24. PLAINTIFF DIANNE MALLIA's INTERROGATORIES TO DEFENDANT
DIANA TOCHE, SET ONE

25. PLAINTIFF DIANNE MALLIA's INTERROGATORIES TO DEFENDANT
RALPH DIAZ, SET ONE

26. PLAINTIFF DIANNE MALLIA's Request For Admissions TO
DEFENDANT Kevin KUICH, MD  SET ONE

27. PLAINTIFF DIANNE MALLIA's REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT REBECCA ROBINSON, SET ONE

28. PLAINTIFF DIANNE MALLIA's INTERROGATORIES TO DEFENDANT
REBECCA ROBINSON, SET ONE

29. PLAINTIFF DIANNE MALLIA's Request For Admissions TO
DEFENDANT JOE LIZARRAGA, SET ONE

30. PLAINTIFF DIANNE MALLIA's Request For Admissions TO
DEFENDANT REBECCA ROBINSON, SET ONE

31. PLAINTIFF DIANNE MALLIA's Request For Admissions TO
DEFENDANT DAVID LEIDNER , SET ONE

32. PLAINTIFF DIANNE MALLIA's Request For Admissions TO
DEFENDANT JOHN REKART, SET ONE

33. PLAINTIFF DIANNE MALLIA's INTERROGATORIES TO DEFENDANT DAVID LEIDNER, SET ONE

34. PLAINTIFF DIANNE MALLIA's INTERROGATORIES TO DEFENDANT JOHN REKART, SET ONE

35. PLAINTIFF DIANNE MALLIA's REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JOHN REKART , SET ONE

36. PLAINTIFF DIANNE MALLIA's REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT DAVID LEIDNER, SET ONE

4. How was the document served? <u>By electronic service</u>

5. Who did you send the document to?

Maria Zhurnalova-Juppunov

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
Email: Maria.Zhurnalova-Juppunov@mcnamaralaw.com

MICHAEL TERHORST, State Bar No. 164679
Beeson Terhorst, LLP
510 Bercut Drive, Suite V
Sacramento, CA 95811
Telephone: (916) 444-3400

E-mail: michaelbeesonterhorst.com

JENNIFER J. NYGAARD, State Bar No. 229494
Deputy Attorney General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA  94612-0550
Telephone:  (510) 879-0802
Fax:  (510) 622-2270
E-mail:  Jennifer.Nygaard@doj.ca.gov

Tiffany SALA
LOW McKINLEY & SALENKO, LLP
2150 River Plaza Drive, Suite 250
Sacramento, CA 95833
Telephone: (916) 231- 2400
Email: tcs@lmblaw.net

6.When were the documents sent?
October 7, 2023

Who served the documents?
I declare under penalty of perjury under the laws of the

United States that the foregoing is true and correct.

Signature: *Dianne Mallia*

Name:    Dianne Mallia
Address: 404 Atkinson St
Roseville, CA 95678

Email:    deedamallia@gmail.com

5

Exhibit D

1    PETER J. HIRSIG (State Bar No. 197993)
     peter.hirsig@mcnamaralaw.com
2    MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
     maria.zhurnalova-juppunov@mcnamaralaw.com
3    DANIEL R. MAYER (State Bar No. 300077)
     daniel.mayer@mcnamaralaw.com
4    McNAMARA, AMBACHER, WHEELER,
     HIRSIG & GRAY LLP
5    639 Kentucky Street,
     Fairfield, CA 94533
6    Telephone: (707) 427-3998
     Facsimile:  (707) 427-0268
7
     Attorneys for Defendants
8    ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
     BRIZENDINE, BROCKENBOROGH, CEBALLOS, DIAZ,
9    GIBSON, HEATLEY, J. JOHNSON, R. JOHNSON, KERNAN,
     PONCIANO, RAMKUMAR, REKART, ROBINSON, RU,
10   DAS, M. SMITH, C. SMITH, TIEBROCK, TOCHE and
     WAINE
11

12                    UNITED STATES DISTRICT COURT

13                    EASTERN DISTRICT OF CALIFORNIA

14

15   Estate of WILLIAM SCHMITZ, deceased,      Case No. 2:2020CV00195
     by and through THOMAS J. SCHMITZ
16   and DIANNE MALLIA, as Successors in       **DEFENDANT SUJATHA RAMKUMAR,**
     Interest; THOMAS SCHMITZ,                 **M.D.'S RESPONSES TO PLAINTIFF'S**
17   Individually; and DIANNE MALLIA,          **SPECIAL INTERROGATORIES, SET**
     Individually,                             **ONE**
18
                 Plaintiffs,                   Action Filed:  7/16/2020
19
          vs.
20
     ASMAN et al,
21
                 Defendants.
22

23   PROPOUNDING PARTY:   Plaintiff DIANNE MALLIA, individually

24   RESPONDING PARTY:    Defendant SUJATHA RAMKUMAR, M.D.

25   SET NUMBER:          ONE

26                        **PRELIMINARY STATEMENT**

27        These responses are made solely for the purpose of this action.  Each response is subject

28

     DEFT DR. RAMKUMAR'S RK TO MALLIA
     SPECIAL INTERROGATORIES, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1    to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

2    all other objections and grounds that would require the exclusion of any statements herein, if any

3    requests were asked for, or if any statement contained herein were made by a witness present and

4    testifying in court, all of which objections and grounds are reserved and may be interposed at the

5    time of trial.

6         Responding party is responding to all of the requests to the extent that information has

7    become known to him. However, responding party's discovery, investigation, and preparation for

8    trial of this matter has not been completed as of the date of these responses and, therefore,

9    responding party does not purport to state anything more than information currently known and

10   discovered by him.

11        Responding party reserves the right to continue discovery and investigation in this matter

12   regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

13   herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

14   are responded to fully and so far as information is currently available to responding party; and

15   responding party is not precluded from presenting at trial information discovered after the date of

16   these responses.

17        This Preliminary Statement is incorporated into each and every response set forth below.

18                           **RESPONSES**

19   **INTERROGATORY NO. 1:**

20        Identify all documents describing YOUR duties while employed within CDCR.

21   **RESPONSE TO INTERROGATORY NO. 1:**

22        Objection. The interrogatory seeks information that is irrelevant and not likely to lead to

23   admissible evidence or evidence proportional to the needs of this case. Subject to and without

24   waiving said objections, Defendant responds: Dr. Ramkumar was a staff psychiatrist with MCSP

25   form 2014 and from about 2017 she was a tele psychiatrist. Dr. Ramkumar duties are described by

26   the duty statement for the position she held at any given time in CDCR and these duty statements

27   have been produced to plaintiffs.

28   ///

DEFT DR. RAMKUMAR'S RK TO MALLIA     2
SPECIAL INTERROGATORIES, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

**INTERROGATORY NO. 2:**

Identify who were YOUR supervisors while employed within CDCR.

**RESPONSE TO INTERROGATORY NO. 2:**

Objection. The interrogatory is overbroad and seeks information that is irrelevant and not likely to lead to admissible evidence or evidence proportional to the needs of this case. Subject to and without waiving said objections, Defendant responds: to the best of Dr. Ramkumar's recollection Dr. Mann was her supervisors for a period of time, and there may have been other supervisors.

**INTERROGATORY NO. 3:**

On 1/31/2018 DEF117064, when YOU had an appointment with Williams Schmitz he had not been seen by a psychiatrist for several months and Dr. J Johnson had ordered a 30 day follow up from his 10/31/2017 appointment. Why did YOU not have an appointment with William sooner than January 31, 2018?

**RESPONSE TO INTERROGATORY NO. 3:**

Objections. This interrogatory seeks information that is irrelevant and disproportionate to the needs of this case and is vague and ambiguous as to "several." Subject to and without waiving said objections, Defendant responds: After a diligent search and reasonable injury defendant has insufficient information to respond to this interrogatory.

**INTERROGATORY NO. 4:**

Identify all dates that YOU were William Schmitz's primary psychiatrist.

**RESPONSE TO INTERROGATORY NO. 4**

Objection. This interrogatory is unduly burdensome and harassing and seeks information equally available to the propounding party. This interrogatory seeks information that is irrelevant and disproportionate to the needs of this case. Subject to and without waiving said objection, defendant responds: Defendant refers plaintiff to the MCSP medical records of William Schmitz. On information and belief, William Schmitz was on Dr. Ramkumar's case load in 2016 and then again in 2018.

///

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

**INTERROGATORY NO. 5:**

Were YOU aware of YOUR requirement to attend IDTTs for patients under YOUR care?

**RESPONSE TO INTERROGATORY NO. 5**

Objection. Asks for a legal conclusion. Vague and ambiguous as to time and the term "required." Subject to and without waiving said objection, defendant responds:  As a staff psychiatrist and tele-psychiatrist at MCSP Dr. Ramkumar was aware that per the Mental Health Program Guide psychiatrists were a members of the Interdisciplinary Treatment Teams.

**INTERROGATORY NO. 6:**

On 5/19/2016, (DEF116811) why did YOU not participate in William Schmitz's IDTT?

**RESPONSE TO INTERROGATORY NO. 6:**

Objections. The interrogatory asks for information that is irrelevant and not likely to lead to admissible evidence. Subject to and without waiving said objections, defendant responds:  After a diligent search and reasonable inquiry Dr. Ramkumar, has no recollection as to why the documentation notes that she was unavailable on that date.

**INTERROGATORY NO. 7**

Did YOU ever feel that YOU were unable to meet the Program Guide requirements in the care of William Schmitz?

**RESPONSE TO INTERROGATORY NO. 7:**

Objection. Vague and ambiguous as to "Program Guide requirements." Subject to and without waiving said objection, defendant responds: No.

**INTERROGATORY NO. 8:**

When YOU requested to see William on 4/4 or 4/5 (as documented in DEF116390).  Why did you not see him?

**RESPONSE TO INTERROGATORY NO. 8:**

Objection.  The interrogatory seeks information that it irrelevant and not likely to lead to admissible deveined and is disproportionate to the needs of this case. Subject to and without waiving said objections, defendant responds: Based on information and belief, William Schmitz's medication was renewed on April 4, 2018 until June 3, 2018.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

///

**INTERROGATORY NO. 9:**

Were YOU aware that YOU were required to provide care as described in the Program Guide?

**RESPONSE TO INTERROGATORY NO. 9:**

Objections. Vague and ambiguous as to "care as described in the Program Guide." Vague and ambiguous as to time. During her practice as a psychiatrist defendant has always been aware that she needs to provide care in compliance with the applicable community standard of care.

**INTERROGATORY NO. 10:**

On 9/1/2017 William had an RVR for unauthorized possession of drug paraphernalia, on 10/4/2017 he was required to start monthly "mandatory drug testing" With an end date of 10/8/2018 (see DEF000124), did YOU have any responsibility to ensure he completed the monthly testing?

**RESPONSE TO INTERROGATORY NO. 10:**

Objection. The interrogatory assumes facts not evidence and asks for a legal conclusion. Subject to and without waiving said objection defendant responds: No.

**INTERROGATORY NO. 11:**

Do YOU feel that YOU at all times had enough resources to provide care that was compliant with the program guide for all mentally ill patients that YOU were required to treat at MCSP?

**RESPONSE TO INTERROGATORY NO. 11:**

Objection. Argumentative as phrased. The interrogatory seeks information that is irrelevant and not likely to lead to admissible evidence Vague and ambiguous as to "resources," and "compliant with the program guide." The interrogatory is overbroad and seeks information that is irrelevant and disproportionate to the needs of this case. The interrogatory seeks premature expert opinion. Subject to and without waiving said objections, defendant responds as follows: Defendant does not recall the specific number of inmates she was providing care to around the time she saw William Schmitz, but her duties towards other inmates would not have affected the care and treatment she provided to William Schmitz on that date.

**INTERROGATORY NO. 12:**

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

EX D

1    On 1/16/2018, YOU documented as show in Bates DEF116395 "inmate was last seen by dr

2    Johnson, in October and his clinician is worried that he is cycling and not taking his medications

3    too, please can we book him as soon as possible." At that time, what was YOUR understanding of

4    the term "cycling" when YOU wrote it and deciding to have William booked as soon as possible?

5    **RESPONSE TO INTERROGATORY NO. 12:**

6        Objection. The interrogatory seeks information that is irrelevant and not reasonably

7    calculated to lead to admissible evidence. Defendant further objects that the interrogatory asks for

8    speculation about the as defendant's note states that "his clinician is worried that he is cycling and

9    not taking his medications too, please can we book him as soon as possible." Defendant did not see

10   the patient on January 16, 2018 and did not herself assess the patient as "cycling."

11   **INTERROGATORY NO. 13:**

12       On 3/7/2018 (DEF117063), YOU documented "cerner euhr chart, maxor and decs were

13   reviewed prior to seeing" William.  What were these items that were reviewed?

14   **RESPONSE TO INTERROGATORY NO. 13:**

15       "Eurner chart" would refer to the medical records, "decs" would refer to the inmate patient

16   legal documents, such as the crime he was incarcerated for. Dr. Ramkuamr does not presently recall

17   what "maxor" referred to.

18   **INTERROGATORY NO. 14:**

19       When William refused to do the Urine Drug test on 2/6/2018, who was required to place

20   William on the institution's Mandatory Random Drug Testing list as described in 52010.15?

21   **RESPONSE TO INTERROGATORY NO. 14:**

22       Objection. Vague and ambiguous as to "52010.15." Assuming plaintiff is referring to

23   CDCR Operations Manual, defendant objects that the interrogatory improperly asks for a legal

24   conclusion.

25   **INTERROGATORY NO. 15:**

26       On 1/16/2018, YOU documented as shown in Bates DEF116395 "inmate was last seen by

27   dr. Johnson, in oictober and his clinician is worried that he is cycling and not taking his

28

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

EVb D

1  medications too, please can we book him as soon as possible." At that time, were YOU

2  concerned that William's clinician was correct and he was not taking his medications?

3  **RESPONSE TO INTERROGATORY NO. 15:**

4  Objection. The interrogatory seeks information that is irrelevant and not reasonably

5  calculated to lead to admissible evidence. Subject to and without waving said objection,

6  Defendant responds: Dr. Ramkumar would have been concerned about the information that the

7  inmate patient was not taking his medications.

8  **INTERROGATORY NO. 16:**

9  On 3/27/2018 when YOU documented YOU educated William about risks and benefits of

10  taking and not taking medications what specifically were the risks and benefits that YOU

11  educated William on at that time?

12  **RESPONSE TO INTERROGATORY NO. 16:**

13  Objection. On information and belief based on the medical records, Dr. Ramkumar did not

14  see William Schmitz on 3/27/2018. On the assumption that plaintiff is referring to Dr.

15  Ramkumar's note from 3/7/2018, Dr. Ramkumar responds that based on her custom and practice

16  Dr. Ramkumar would have discussed with William Schmitz the benefits, side effects, risks and

17  likely consequences of each medication he was prescribed and the risk and benefits of not talking

18  the medication.

19  **INTERROGATORY NO. 17:**

20  On 1/16/2018, YOU documented as shown in Bates DEF116395 "inmate was last seen by

21  dr. Johnson, in oictober and his clinician is worried that he is cycling and not taking his

22  medications too, please can we book him as soon as possible." At that time, when YOU

23  requested William to be booked "as soon as possible", were YOU surprised that 2 weeks was as

24  soon as YOUR schedule would allow for William to be booked?

25  **RESPONSE TO INTERROGATORY NO. 17:**

26  Objection. The interrogatory seeks information that is irrelevant not likely to lead to

27  admissible evidence. Subject to and without waiving said objection: Dr. Ramkumar does not recall

28  and is unable to answer this interrogatory.

DEFT DR. RAMKUMAR'S RK TO MALLIA        7
SPECIAL INTERROGATORIES, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

Exb D

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1 **INTERROGATORY NO. 18:**

2      In DEF117065 on 1/31/2018 – YOU documented "Continue level of care safety

3 protocols". Describe in detail YOUR understanding of the EOP "level of care safety protocols"

4 that YOU planned for William to continue.

5 **RESPONSE TO INTERROGATORY NO. 18:**

6      Dr. Ramkumar would have referred to treatment and programming provided at the EOP

7 level, as described in the Program Guide equally available to plaintiff.

8 **INTERROGATORY NO. 19:**

9      On 3/7/2018 when YOU documented YOU educated William about his diagnosis- which

10 diagnosis did YOU educate William on?

11 **RESPONSE TO INTERROGATORY NO. 19:**

12      Based on information and belief and her custom and practice, defendant responds: Dr.

13 Ramkumar would have educated William Schmitz regarding the fact that he had a history of drug

14 abuse starting at an early age, co-morbid with a psychiatric illness and also having a stable

15 arachnoid cyst. See also Response to Interrogatory No. 16 as to education about medications.

16 **INTERROGATORY NO. 20:**

17      On 3/3/2016, why were YOU unavailable for William Schmitz's IDTT?

18 **RESPONSE TO INTERROGATORY NO. 20:**

19      Objection. The interrogatory seeks information that is irrelevant and not likely to lead to

20 admissible evidence and disproportionate to the needs of this case. Assumes facts not in evidence.

21 Subject to and without waiving said objection, defendant responds: On information and belief Dr.

22 Ramkumar attended the IDTT meeting on 3/3/2016.

23 **INTERROGATORY NO. 21:**

24      When YOU saw William via Telehealth where was William located during examinations.

25 **RESPONSE TO INTERROGATORY NO. 21:**

26      Objection. The interrogatory seeks information that is irrelevant and not likely to lead to

27 admissible evidence and disproportionate to the needs of this case. Subject to and without waiving

28 said objection, defendant responds: The patient would have located in the psychiatry office at

DEFT DR. RAMKUMAR'S RK TO MALLIA          8
SPECIAL INTERROGATORIES, SET ONE

*Exhibit D*

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1  Muscle Creek State Prison.

2  ///

3  **INTERROGATORY NO. 22:**

4      On 2/1/2018, when YOU documented that "spoke to dr Robinson , and will order an uds ,

5  it was discovered in idtt that inmate was caught with drugs – heroin and meth about 5 mths ago?

6  Do YOU believe YOU documented the wrong patient chart as William was never caught with

7  heroin and meth?

8  **RESPONSE TO INTERROGATORY NO. 22:**

9      Objection. This interrogatory improperly asks a treating physician for a retrospective

10  opinion. Subject to and without waiving said objection, defendant responds: No. This

11  documentation was based upon Dr. Ramkumar's understanding at the time about the rule

12  violation of William Schmitz in September 2017.

13  **INTERROGATORY NO. 23:**

14      On 3/7/2018, when YOU could not complete examination on William since he was upset,

15  what components of a complete examination were you able to perform?

16  **RESPONSE TO INTERROGATORY NO. 23:**

17      Objection. Vague and ambiguous as phrased. Subject to and without waiving said objection,

18  Defendant responds: As documented, Dr. Ramkumar would have been unable to complete the

19  clinical interview part of her examination as William Schmitz became upset and did not wish to

20  answer questions about why he refused the urine drug screen.

21  **INTERROGATORY NO. 24:**

22      On 3/7/2018, even though YOU documented that YOU could not complete a full exam,

23  did YOU actually complete everything YOU documented in the "Plan/disposition" section?

24  **RESPONSE TO INTERROGATORY NO. 24:**

25      Objection. Argumentative as phrased. Subject to and without waiving said objection,

26  defendant responds: Based on custom and practice, yes. The exmaiantion part that was not

27  completed would have been the discussion about urine drug screen refusal.

28  **INTERROGATORY NO. 25:**

DEFT DR. RAMKUMAR'S RK TO MALLIA    9
SPECIAL INTERROGATORIES, SET ONE

1    On 3/7/2018 YOU planned to f/u William in 2 weeks.  Why was William not evaluated by

2    YOUJ in 2 weeks? (DEF117063)

3    **RESPONSE TO INTERROGATORY NO. 25:**

4        After a diligent search and reasonable inquiry defendant is unable to recall and has

5    inefficient readily available information to respond to this interrogatory.

6    **INTERROGATORY NO. 26:**

7        On 3/7/2018, was it YOUR normal custom and practice to discuss hydration in preference

8    to completing an examination?

9    **RESPONSE TO INTERROGATORY NO. 26:**

10        Objection. Under FRCP 33, a party may serve no more than 25 interrogatories to any

11    other party, absent a stipulation or court order. Dr. Ramkumar does not stipulate for Plaintiff

12    Malila to exceed the numeral limit on interrogatories specified in FRCP 33 and Plaintiff Mallia

13    has not obtained leave to Court to exceed this limit. Thus, no response shall be provided.

14    **INTERROGATORY NO. 27:**

15        If YOU did complete everything YOU document in the "Plan/disposition" section on

16    3/7/2018, at what point during YOUR appointment with William did YOU discuss adequate

17    hydration?

18    **RESPONSE TO INTERROGATORY NO. 27:**

19        Objection. Under FRCP 33, a party may serve no more than 25 interrogatories to any

20    other party, absent a stipulation or court order. Dr. Ramkumar does not stipulate for Plaintiff

21    Mallia to exceed the numeral limit on interrogatories specified in FRCP 33 and Plaintiff Mallia

22    has not obtained leave of Court to exceed this limit. Thus, no response shall be provided.

23    **INTERROGATORY NO. 28:**

24        When YOU did not have a follow-up appointment with William two weeks after 3/7/18

25    were YOU aware he did not have an appointment?

26    **RESPONSE TO INTERROGATORY NO. 28:**

27        Objection .Under FRCP 33, a party may serve no more than 25 interrogatories to any

28    other party, absent a stipulation or court order. Dr. Ramkumar does not stipulate for Plaintiff

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

Exh D

1   Mallia to exceed the numeral limit on interrogatories specified in FRCP 33 and Plaintiff Mallia

2   has not obtained leave of Court to exceed this limit. Thus, no response shall be provided.

3   **INTERROGATORY NO. 29:**

4        YOU signed results for William Schmitz on 10/18/2014, why were YOU signing these

5   results?

6   **RESPONSE TO INTERROGATORY NO. 29:**

7        Objection. Under FRCP 33, a party may serve no more than 25 interrogatories to any

8   other party, absent a stipulation or court order. Dr. Ramkumar does not stipulate for Plaintiff

9   Malila to exceed the numeral limit on interrogatories specified in FRCP 33 and Plaintiff Mallia

10  has not obtained leave of Court to exceed this limit. Thus, no response shall be provided.

11  **INTERROGATORY NO. 30:**

12       During YOUR time as William's Primary psychiatrist in 2018, William was required to

13  have monthly random drug testing, was this ever discussed at an IDTT?

14  **RESPONSE TO INTERROGATORY NO. 30:**

15       Objection. Under FRCP 33, a party may serve no more than 25 interrogatories to any

16  other party, absent a stipulation or court order. Dr. Ramkumar does not stipulate for Plaintiff

17  Mallia to exceed the numeral limit on interrogatories specified in FRCP 33 and Plaintiff Mallia

18  has not obtained leave of Court to exceed this limit. Thus, no response shall be provided.

19  **INTERROGATORY NO. 31:**

20       Why was William Schmitz not subjected to disciplinary action under CCR 3323(h)(5) for

21  refusal to do Urine Drug test on 2/6/2018?

22  **RESPONSE TO INTERROGATORY NO. 31:**

23       Objection. Under FRCP 33, a party may serve no more than 25 interrogatories to any

24  other party, absent a stipulation or court order. Dr. Ramkumar does not stipulate for Plaintiff

25  Mallia to exceed the numeral limit on interrogatories specified in FRCP 33 and Plaintiff Mallia

26  has not obtained leave of Court to exceed this limit. Thus, no response shall be provided.

27  **INTERROGATORY NO. 32:**

28

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

EXH D

1    Under CCR 3315(f)(4)(C) William's refusal to do a urine drug test should have resulted in

2    the issuance of an RVR and a new mandatory drug testing order, why did this not occur?

3    ///

4    **RESPONSE TO INTERROGATORY NO. 32:**

5    Objection. Under FRCP 33, a party may serve no more than 25 interrogatories to any

6    other party, absent a stipulation or court order. Dr. Ramkumar does not stipulate for Plaintiff

7    Mallia to exceed the numeral limit on interrogatories specified in FRCP 33 and Plaintiff Mallia

8    has not obtained leave of Court to exceed this limit. Thus, no response shall be provided.

9    Dated: May 16, 2024

McNamara, Ambacher, Wheeler,
Hirsig & Gray LLP

By: _____
Peter J. Hirsig
Maria Zhurnalova-Juppunov
Daniel R. Mayer
Attorneys for Defendants
ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
BRIZENDINE, BROCKENBOROGH, CEBALLOS,
DIAZ, GIBSON, HEATLEY, J. JOHNSON, R.
JOHNSON, KERNAN, PONCIANO, RAMKUMAR,
REKART, ROBINSON, RUDAS, M. SMITH, C.
SMITH, TIEBROCK, TOCHE and WAINE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1

2          **VERIFICATION**

3          I, the undersigned, declare that:

4          I am a Defendant in the above-entitled action; I have read the foregoing **DEFENDANT**

5    **SUJATHA  RAMKUMAR,  M.D.'S  RESPONSES  TO  PLAINTIFF'S  SPECIAL**

6    **INTERROGATORIES, SET ONE** and know the contents thereof; the same is true of my own

7    knowledge, except as to those matters which are therein stated on information and belief, and as to

8    those matters, I believe it to be true.

9          I declare under penalty of perjury under the laws of the State of California that the foregoing

10   is true and correct.

11         Executed on May 15   , 2024 at  elk grove               , California.
                                (Date)              (City/State)
12

13                                          *sujatha ramkumar*
                                    SUJATHA RAMKUMAR
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   *Schmitz v. Asman, et al.*

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

13

CERTIFICATE OF SERVICE VIA E-MAIL

I hereby declare that I am a citizen of the United States, am over the age of eighteen years, and not a party to the within action. My electronic notification address is: carol.oneil@mcnamaralaw.com.

On this date, I electronically served the foregoing **DEFENDANT SUJATHA RAMKUMAR'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE** based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**Attorneys For Plaintiff Pro Per:**

Dianne Mallia
404 Atkinson Street
Roseville, CA 95678

E-Mail: deedamallia@gmail.com

**Attorney for Defendants Kevin Kuich, Joe A. Lizarraga**

Michael A. Terhorst, Sr.
Beeson Terhorst LLP
510 Bercut Drive, Suite V
Sacramento, CA 95811
Phone: 707-301-7504

E-Mail: michael@beesonterhorst.com
        Jeff@beesonterhorst.com
        mercedes@beesonterhorst.com

**Attorneys For Plaintiff in Pro Per:**

Thomas J. Schmitz
404 Atkinson Street
Roseville, CA 95678

E-Mail: tsfoot49@gmail.com

**Attorneys for Defendants Eric Bradley**

Jennifer Nygaard
California Dept. of Justice
Office of the Attorney General
1515 Clay Street, 20th Floor
Oakland, CA 94612
Phone: 510-879-0802
Fax: 510-622-2270
E-Mail: jennifer.nygaard@doj.ca.gov
        jay.goldman@doj.ca.gov
        lucille.santos@doj.ca.gov

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on May 16, 2024 at Pleasant Hill, California.

Carol L. N. O'Neil

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1  PETER J. HIRSIG (State Bar No. 197993)
   peter.hirsig@mcnamaralaw.com
2  MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
   maria.zhurnalova-juppunov@mcnamaralaw.com
3  DANIEL R. MAYER (State Bar No. 300077)
   daniel.mayer@mcnamaralaw.com
4  McNAMARA, AMBACHER, WHEELER,
   HIRSIG & GRAY LLP
5  639 Kentucky Street,
   Fairfield, CA 94533
6  Telephone: (707) 427-3998
   Facsimile:  (707) 427-0268
7
   Attorneys for Defendants
8  ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
   BRIZENDINE, BROCKENBOROGH, CEBALLOS, DIAZ,
9  GIBSON, HEATLEY, J. JOHNSON, R. JOHNSON, KERNAN,
   PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
10 M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11

12                    UNITED STATES DISTRICT COURT

13                    EASTERN DISTRICT OF CALIFORNIA

14

15 Estate of WILLIAM SCHMITZ, deceased,        Case No. 2:2020CV00195
   by and through THOMAS J. SCHMITZ
16 and DIANNE MALLIA, as Successors in         **DEFENDANT JACOB ADAMS, M.D.'S**
   Interest; THOMAS SCHMITZ,                   **RESPONSES TO PLAINTIFF'S SPECIAL**
16 Individually; and DIANNE MALLIA,            **INTERROGATORIES, SET TWO**
17 Individually,
                                               Action Filed:  7/16/2020
18           Plaintiffs,

19      vs.

20 ASMAN et al,

21           Defendants.

22

23 PROPOUNDING PARTY:   Plaintiff DIANNE MALLIA

24 RESPONDING PARTY:    Defendant JACOB ADAMS, M.D.

25 SET NUMBER:          TWO

26                    **PRELIMINARY STATEMENT**

27      These responses are made solely for the purpose of this action.  Each response is subject

28 to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

DEFT DR. ADAMS' RK TO PLAINTIFF'S
SPECIAL INTERROGATORIES, SET TWO

1   all other objections and grounds that would require the exclusion of any statements herein, if any

2   requests were asked for, or if any statement contained herein were made by a witness present and

3   testifying in court, all of which objections and grounds are reserved and may be interposed at the

4   time of trial.

5           Responding party is responding to all of the requests to the extent that information has

6   become known to him. However, responding party's discovery, investigation, and preparation for

7   trial of this matter has not been completed as of the date of these responses and, therefore,

8   responding party does not purport to state anything more than information currently known and

9   discovered by him.

10           Responding party reserves the right to continue discovery and investigation in this matter

11   regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

12   herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

13   are responded to fully and so far as information is currently available to responding party; and

14   responding party is not precluded from presenting at trial information discovered after the date of

15   these responses.

16           This Preliminary Statement is incorporated into each and every response set forth below.

17   **RESPONSES**

18   <u>**INTERROGATORY NO. 16:**</u>

19           What was the "ambulatory organizer" which was referred to under MHMD consult urgent

20   on 4/30 2018 (DEF115452)

21   <u>**RESPONSE TO INTERROGATORY NO. 16**</u>

22           Objection. The interrogatory asks for expert opinion from defendant who did not schedule

23   the appointment, and defendant was not the Acting Chief Psychiatrist at the time, and has not

24   been disclosed as an expert, or person most scheduling as to scheduling psychiatrist

25   appointments. Thus, no response will be provided.

26   <u>**INTERROGATORY NO. 17:**</u>

27           During YOUR time as acting Chief Psychiatrist, which YOU claim was 4/1/2017 to

28   07/31/2017, William had two IDTTs 5/25/2017 and 4/20/2017. During both IDTTs, William's

DEFT DR. ADAMS' RK TO PLAINTIFF'S      2
SPECIAL INTERROGATORIES, SET TWO

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1   psychiatrist, Dr. Jevon Johnson was absent. Were YOU aware of his absence? (DEF116774 and

2   DEF116885 were the IDTTs)

3   **RESPONSE TO INTERROGATORY NO. 17:**

4            Objection. This interrogatory seeks information that is irrelevant and disproportionate to

5   the needs of this case. The interrogatory assumes facts not in evidence. Subject to and without

6   waiving said objections, defendant responds:  No.

7   **INTERROGATORY NO. 18:**

8            During Your time as acting Chief Psychiatrist was there required documentation for the

9   reason a psychiatrist was absent from an IDTT?

10  **RESPONSE TO INTERROGATORY NO. 18:**

11           Objection. This interrogatory seeks information that is irrelevant and disproportionate to

12  the needs of this case. Vague and ambiguous as to "required." Subject to and without waiving said

13  objections, defendant responds: To the best of Dr. Adams' recollection, such documentation was

14  not required. IDTT paperwork was to reflect the presence of the IDTT members.

15  **INTERROGATORY NO. 19:**

16           Were psychiatrists allowed to individually decide whether or not to attend an IDTT while

17  YOU were acting Chief psychiatrist?

18  **RESPONSE TO INTERROGATORY NO. 19**

19           Objection. Vague and ambiguous as to "individually decide" and "allowed." Subject to and

20  without waiving said objections, defendant responds: No.

21  **INTERROGATORY NO. 20:**

22           Was it mandatory for Psychiatrists to attend IDTTs while YOU were acting Chief

23  psychiatrist?

24  **RESPONSE TO INTERROGATORY NO. 20:**

25           Objection. Calls for a legal conclusion. Subject to and without waiving this objection,

26  defendant responds:  Yes, per the Mental Health Program Guide psychiatrists were a members of

27  the Interdisciplinary Treatment Teams.

28  ///

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1  **INTERROGATORY NO. 21:**

2  How did YOU know that Dr. Johnson was William's assigned staff psychiatrist on

3  6/8/2017? (as documented in DEF 119460).

4  **RESPONSE TO INTERROGATORY NO. 21:**

5  Objection. This interrogatory asks for irrelevant information and that not reasonably

6  calculated to lead to admissible evince and is disproportionate to the needs if this case. Subject

7  and without waving said objection, defendant responds: Dr. Adams does not specially recall.

8  **INTERROGATORY NO. 22:**

9  On June 6, 2017, YOU received an email from Dr. Jevon Johnson and advised him to do

10 nothing in response to the email until you received more clarity. Did YOU ever provide more

11 information to Dr. Johnson on how to approach the email? (the email is documented in

12 DEF120524)

13 **RESPONSE TO INTERROGATORY NO. 22:**

14 Objection. This interrogatory asks for irrelevant information and that not reasonably

15 calculated to lead to admissible evince and is disproportionate to the needs if this case. Subject

16 and without waving said objection, defendant responds: No. Dr. Adams elevated the issue to the

17 chief of mental health to provide provide guidance.

18 **INTERROGATORY NO. 23:**

19 On June 6, 2017, YOU received an email from Dr. Jevon Johnson and advised him you

20 would "elevate this". Did YOU ever "elevate" to someone else? (the email is documented in

21 DEF120524)

22 **RESPONSE TO INTERROGATORY NO. 23:**

23 Objection. This interrogatory asks for irrelevant information and that not reasonably

24 calculated to lead to admissible evince and is disproportionate to the needs if this case. Defendant

25 farther objects to the extent this calls for information protected under attorney client privilege and

26 wok product doctrine. Subject and without waving said objection, defendant responds: See

27 Response to Interrogatory No. 23.

28 ///

MCNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

Exhibit E

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1    **INTERROGATORY NO. 24:**

2       On 6/2/2017 and 6/3/2017 William Schmitz was not given his paliperodone (DEF 120548),

3   how did YOU learn William did not receive his antipsychotic medications?

4    **RESPONSE TO INTERROGATORY NO. 24:**

5       Objection. This interrogatory asks for irrelevant information and that not reasonably

6   calculated to lead to admissible evince and is disproportionate to the needs if this case. Subject and

7   without waving said objection, defendant responds: Dr. Adams refers plaintiff to the emails

8   produced detailing the information received by Dr. Adam and his follow up investigation regarding

9   the same. DEF120526 - DEF120606.

10   **INTERROGATORY NO. 25:**

11      During YOUR time as Acting Chief of psychiatry at Mule Creek State Prison, were YOU

12   aware psychologists were writing physician's orders?

13   **RESPONSE TO INTERROGATORY NO. 25:**

14      Objection. The interrogatory is vague and ambiguous as to "physician order." This

15   interrogatory is argumentative as phrased and assumes facts not in evidence and calls for an expert

16   opinion and legal conclusion. Subject to and without waiving said objection, defendant responds:

17   Dr. Adams not aware of psychologists writing orders beyond their scope of practice.

18   **INTERROGATORY NO. 26:**

19      If YOU were aware psychologists were writing physician orders, did YOU consider writing

20   physician orders within the psychologist's scope of practice?

21   **RESPONSE TO INTERROGATORY NO. 26:**

22      Objection. Under FRCP 33, a party may serve no more than 25 interrogatories to any other

23   party, absent a stipulation or court order. Dr. Adams does not stipulate for Plaintiff Malila to exceed

24   the numeral limit on interrogatories specified in FRCP 33 and Plaintiff Mallia has not obtained

25   leave to Court to exceed this limit. Thus, no response shall be provided.

26   **INTERROGATORY NO. 27:**

27      During YOUR time as Acting Chief psychiatrist were YOU aware of psychiatrists writing

28   physician orders on patients they had not seen or examined?

   DEFT DR. ADAMS' RK TO PLAINTIFF'S        5
   SPECIAL INTERROGATORIES, SET TWO

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1  **RESPONSE TO INTERROGATORY NO. 27:**

2      Objection. Under FRCP 33, a party may serve no more than 25 interrogatories to any other

3  party, absent a stipulation or court order. Dr. Adams does not stipulate for Plaintiff Malila to exceed

4  the numeral limit on interrogatories specified in FRCP 33 and Plaintiff Mallia has not obtained

5  leave to Court to exceed this limit. Thus, no response shall be provided.

6  **INTERROGATORY NO. 28:**

7      If YOU were aware of psychiatrists writing physician orders on patients they had not seen

8  or examined, did YOU consider this within the community standards of practice for psychiatrists

9  to write physician orders on patients they had not seen or examined?

10  **RESPONSE TO INTERROGATORY NO. 28:**

11      Objection. Under FRCP 33, a party may serve no more than 25 interrogatories to any other

12  party, absent a stipulation or court order. Dr. Adams does not stipulate for Plaintiff Malila to exceed

13  the numeral limit on interrogatories specified in FRCP 33 and Plaintiff Mallia has not obtained

14  leave to Court to exceed this limit. Thus, no response shall be provided.

15  **INTERROGATORY NO. 29:**

16      Did YOU consider psychologists as "physicians" when you Acting Chief psychiatrist?

17  **RESPONSE TO INTERROGATORY NO. 29:**

18      Objection. Under FRCP 33, a party may serve no more than 25 interrogatories to any other

19  party, absent a stipulation or court order. Dr. Adams does not stipulate for Plaintiff Malila to exceed

20  the numeral limit on interrogatories specified in FRCP 33 and Plaintiff Mallia has not obtained

21  leave to Court to exceed this limit. Thus, no response shall be provided.

22  **INTERROGATORY NO. 30:**

23      YOU identify the "Go-Live" date for the change from paper to electronic medical records

24  system at MCSP as 10/31/2017. After this date, how were the medical records that were created

25  prior to the 10/31/2017 "go-live" date accessible to providers?

26  **RESPONSE TO INTERROGATORY NO. 30:**

27      Objection. Under FRCP 33, a party may serve no more than 25 interrogatories to any other

28  party, absent a stipulation or court order. Dr. Adams does not stipulate for Plaintiff Malila to exceed

1 the numeral limit on interrogatories specified in FRCP 33 and Plaintiff Mallia has not obtained

2 leave to Court to exceed this limit. Thus, no response shall be provided.

3 **INTERROGATORY NO. 31:**

4    From RFA 3 and RFA 6: I identify all documents show how You "worked diligently

5 within the limits of YOUR position to improve staffing and retention." For example all written

6 communications with supervisors.

7 **RESPONSE TO INTERROGATORY NO. 31:**

8    Objection. Under FRCP 33, a party may serve no more than 25 interrogatories to any other

9 party, absent a stipulation or court order. Dr. Adams does not stipulate for Plaintiff Malila to exceed

10 the numeral limit on interrogatories specified in FRCP 33 and Plaintiff Mallia has not obtained

11 leave to Court to exceed this limit. Thus, no response shall be provided.

12 **INTERROGATORY NO. 32:**

13    ON 8/3/2017- You report William was last seen on 6/1/2017, why did YOU evaluate

14 William and not his primary psychiatrist. Why was there a 2 month gap from his last psychiatrist

15 visit?

16 **RESPONSE TO INTERROGATORY NO. 32:**

17    Objection. Under FRCP 33, a party may serve no more than 25 interrogatories to any other

18 party, absent a stipulation or court order. Dr. Adams does not stipulate for Plaintiff Malila to exceed

19 the numeral limit on interrogatories specified in FRCP 33 and Plaintiff Mallia has not obtained

20 leave to Court to exceed this limit. Thus, no response shall be provided.

21 Dated: May 16, 2024    McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP

22

23    By: _____

24    Peter J. Hirsig
   Maria Zhurnalova-Juppunov

25    Daniel R. Mayer
   Attorneys for Defendants

26    ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN, BRIZENDINE, BROCKENBOROGH, CEBALLOS,
   DIAZ, GIBSON, HEATLEY, J. JOHNSON, R.

27    JOHNSON, KERNAN, PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS, M. SMITH, C.

28    SMITH, TIEBROCK, TOCHE and WAINE

DEFT DR. ADAMS' RK TO PLAINTIFF'S    7
SPECIAL INTERROGATORIES, SET TWO

*Exhibit E*

1

**VERIFICATION**

2

3          I, the undersigned, declare that:

4          I am a Defendant in the above-entitled action; I have read the foregoing **DEFENDANT**

5    **JACOB    ADAMS    M.D.'S    RESPONSES    TO    PLAINTIFF'S    SPECIAL**

6    **INTERROGATORIES, SET TWO** and know the contents thereof; the same is true of my own

7    knowledge, except as to those matters which are therein stated on information and belief, and as to

8    those matters, I believe it to be true.

9          I declare under penalty of perjury under the laws of the State of California that the foregoing

10   is true and correct.

11          Executed on May 13ᵀᴴ, 2024 at ___ELK GROVE___, California.
                              (Date)                    (City/State)

12

13                                          **JACOB ADAMS**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   *Schmitz v. Asman, et al.*

MCNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5536
TELEPHONE: (707) 427-3998

8

CERTIFICATE OF SERVICE VIA E-MAIL

I hereby declare that I am a citizen of the United States, am over the age of eighteen years, and not a party to the within action. My electronic notification address is: carol.oneil@mcnamaralaw.com.

On this date, I electronically served the foregoing **DEFENDANT JACOB ADAMS, M.D.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET TWO** based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**Attorneys For Plaintiff Pro Per:**

Dianne Mallia
404 Atkinson Street
Roseville, CA 95678

E-Mail: deedamallia@gmail.com

**Attorneys For Plaintiff in Pro Per:**

Thomas J. Schmitz
404 Atkinson Street
Roseville, CA 95678

E-Mail: tsfoot49@gmail.com

**Attorney for Defendants Kevin Kuich, Joe A. Lizarraga**

Michael A. Terhorst, Sr.
Beeson Terhorst LLP
510 Bercut Drive, Suite V
Sacramento, CA 95811
Phone: 707-301-7504

E-Mail: michael@beesonterhorst.com
          Jeff@beesonterhorst.com
          mercedes@beesonterhorst.com

**Attorneys for Defendants Eric Bradley**

Jennifer Nygaard
California Dept. of Justice
Office of the Attorney General
1515 Clay Street, 20th Floor
Oakland, CA 94612
Phone: 510-879-0802
Fax: 510-622-2270
E-Mail: jennifer.nygaard@doj.ca.gov
          jay.goldman@doj.ca.gov
          lucille.santos@doj.ca.gov

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on May 16, 2024 at Pleasant Hill, California.

Carol L. N. O'Neil

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998


*Exhibit 1*

## Maria Zhurnalova-Juppunov

| | |
|---|---|
| **From:** | Rivas-Torres, Maria █████████████████ |
| **Sent:** | Wednesday, March 16, 2016 9:36 AM |
| **To:** | Ramkumar, Sujatha █████ |
| **Subject:** | Schmitz |
| **Attachments:** | SchmitzG35384.021716.pdf |

DEF120607

State of California
**Interdisciplinary Progress Note – General Psychiatry**
CDCR MH-7230F (Rev. 01/12)

Department of Corrections and Rehabilitation

| Date: 02/17/16 | Time: 11:10 | | Location: MCSP/b mod |
|---|---|---|---|

| Level of Care: ☐ CCCMS  ■ EOP  ☐ OHU  ☐ MHCB | Custody Housing: ☐ GP  ☐ CTC  ☐ RC  ■ SNY  ☐ ASU  ☐ SHU |
|---|---|

| Location of Interview: ■ Face-to-Face  ☐ MOD or RN | Was the setting confidential? ■ Yes  ☐ No |
|---|---|

*(Example: 41 yo HM w/ BAD and psychotic sxs, last seen x/x/xx, tx with olanzapine. I/P seen for F/U.)*

33 yo, CM, w/hx of mood and psychotic symptoms. IP seen for F/U. Last seen on 02/11/16 by me
Dx: Schizoaffective Disorder, bipolar type, polysubstance dependence in controlled environment
Incarceration date: 2/5/2009 for 2nd degree murder    Arrival date 7/14/14    EPRD ——    EOP since 2007
TABE 12.9   DD Code NCF

*(What the inmate-patient tells you.)*

ALLERGIES: NKDA                                 Clinician: S. McNitt, LCSW
cc: Ever since I started the lithium I started having acne
HPI: During interview, IP reported sleep disturbances, sleeping not great, he slept 5 days and for the last two days has been not sleeping. Feeling a little better than last appointment but still complaining of racing thoughts and AH/paranoia. He reports worsening auditory hallucinations since he stopped clozaril. Voices are telling derogatory statements. Mood: I get extremely irritated, notes irritate me. He also wants to know why his previous psychiatrist is still reviewing his laboratory test and why he is having laboratory test every week. I informed him that monthly cbc was discontinued on December 2015 and although Dr. Haspel has been reviewing his lab results also I have been informed about his lab results and I told him I will call the phlebotomist to follow the order of d/c monthly cbc

Past Psych Hx: No Hx of SA. IP's chart states that IP has been previously hospitalized at Langley Porter Neuropsychiatric hospital at age 20 due to reported delusions and remained there for one week. IP was admitted to Napa State hospital in 2008, after his crime for 14 months where he was diagnosed with Bipolar Disorder, Polysubstance Dependence and Malingering. IP was admitted to DSH and prescribed Clozaril. Fleeting suicidal ideation but not thinking to act on. denies suicidal plan, denies suicidal intention
Substance abuse Hx: IP has history of marijuana, cocaine and methamphetamine abuse and was high at the time of his crime. IP was also involved in sales of marijuana and methamphetamine prior to his arrest.
Social Hx: IP completed two years of college et California State University, Chico. IP was employed with the California Department of Forestry prior to his crime. He was never married and has no children.
Legal Hx: IP was convicted of a DUI in 2002.
Medical Hx: HTN, subarachnoid cyst with mild mass effect on the L temporal lobe, hyperlipidemia, chronic HA

Medications trial: Abilify, CLOZARIL (d/c due to acute transaminitis), Depakote, sertraline
Current medications: Lithium ER 450 mg po qam and 900 mg po qpm, invega 3 mg po qpm
docusate sodium 100 mg, 1-2 po bid prn (constipation), topiramate 50 mg po bid
Compliance: Good compliance with lithium however he is not taking invega because invega is a non formulary medication and it was approved today.
Refusal: none
Side effects: acne
Response to medications: Partial

*(Mental Status Examination. New Data.)*

Vital signs Wt 178 (178) (183) (189)  (215) Ht 5'8" BP 141/93  HR 82 O2 100%  Temp 96.6
MSE:
Appearance/behavior: fair grooming and hygiene, cooperative, good eye contact.
Motor activity, no abnormal motor activity, no tics/no tremors
Speech, regular rate/rhythm and volume
Mood described as I get extremely irritated,
Affect, irritable
Thought Process: Grossly linear, goal directed
Thought Content: Is without suicidal ideation or homicidal ideation, reports AH but currently not responding to internal stimulus, denies visual hallucination, denies tactile hallucination, no evidence of delusions but he complains of feeling paranoid, fairly organized, there is no evidence of vegetative symptoms of depression, no evidence of manic or post traumatic stress symptoms
Cognition: alert, oriented X 4, recent immediate and remote memory are grossly intact, estimated to be of average intellect
Insight Poor            Judgment: -Limited

Laboratory results: ***************************02/16/2016 CBC wnl
02/01/2016 CMP LOW BUN @ 6 and HIGH ALT @ 61. TSH wnl, INR/PT wnl, CBC HIGH WBC @ 11.3  12/30/15 Hepatic function panel showed H bilirubin total @1.4, High bilirubin direct @0.4  High AST @ 62 and High ALT @ 88. Lithium level 1.0
12/09/15 cbc L MCHC #31.9 RDW 16.5 high absolute lympho at 4362.12/02/15 CMP high bilirubin @ 2.1, H AST @ 139, H ALT @ 229. TSH normal and Lithium 0.7;
11/20/15  alkaline phosphatase high @ 152, AST high @ 240, ALT high @ 308;  11/12/15 cmp high glucose at 160, BILIRRUBIN TOTAL 11.2, ALKALINE PHOSPHATASE HIGH @ 226  AST HIGH @ 1006, ALT HIGH @ 936, CBC l mcHc @ 31.4  h rdw @ 18.2  h ABSOLUTE MONOCYTES a 988. 10/29/15 wbc 8.1, absolute neutrophils 2041, 10/14/15 wbc 8.2, abolute neutrophils 2378; 9/4/15
Hemoglobin A1c 5.8, cbc
EKG : 7/10/15  QTc 443 Normal sinus rhythm, normal EKG
AIMS 4/2/15  = 2
Medication consent: 02/11/16 Lithium and invega.  11/24/15

Recent 115:

| 1. Disability Code: ☐ TABE score ≤ 4.0  ☐ DPH ☐ DPV ☐ LD  ☐ DPS ☐ DNH  ☐ DNS ☐ DDP  ■ NOT APPLICABLE | 2. Accommodation: ☐ Additional time  ☐ Equipment ☐ SLI  ☐ Louder ☐ Slower  ☐ Basic ☐ Transcribe  ☐ Other* | 3. Effective Communication: ☐ P/I asked questions  ☐ P/I summed information  Please check one:  ☐ Not reached* ☐ Reached  *See chrono/notes | Inmate's Name (Last, First, MI), CDC Number, DOB  Schmitz, William  G35384  6/11/82 |
|---|---|---|---|
| 4. Comments: | | | T. Rivas MD |

State of California
**Interdisciplinary Progress Note – General Psychiatry**
CDCR MH-7230F (Rev. 01/12)

Department of Corrections and Rehabilitation

*(Include diagnosis, rationale and any collateral information.)*

Axis I: Schizoaffective Disorder, bipolar type, polysusbtance dependence in controlled environment
II: Deferred
III: Hyperlipidemia, HTN, subarachnoid cyst, Hep C
IV: Incarcerated
V: 40-45

- Symptoms and history reviewed and appears to be consistent with the diagnoses listed above
- Medications-
- Medication compliance appears not to be a concern.
- Laboratory studies ordered include: d/c order for monthly cbc was discontinued again.
Will request lithium level and cmp on April 2016 (3 months f/u)
- AIMS, consents and heat risk are up to date.  AIMS NEXT APPOINTMENT

*(Note medication refusals and completion of CDCR 7225.  Include rational for admission, any medication changes, and note heat risk medications prescriptions.)*

Rx:
 Lithium ER 450 mg po qam and 900 mg po qpm
 Invega 3 mg po qpm
- Continue with current medications. Recommended to book an appointment with his PCP for acne follow up
- Rationale for continued EOP includes incarceration and ongoing mental health needs without posing as an acute danger to self or others.
- IP to meet regularly with primary clinician and encouraged to participate in groups
- Routine medical care
- Patient not at imminent risk to hurt himself or others
- IP consented to treatment plan as documented in this note, and was able to communicate plan effectively back to provider
- Follow up 15d or prn treatment team discretion or inmate request.

I used simple, slow, basic language/syntax/grammar to communicate with IP and effective communication was reached as evidenced by IP's ability to summarize clinical content and verbalize back to clinician.
IP provided with psychoeducation regarding the risks/benefits/alternatives (including no treatment) of psychotropic medications prescribed
IP provided with psychoeducation regarding the heat risks of his psychotropic medications.
IP provided with psychoeducation regarding his mental illness and available resources to utilize if he is feeling unsafe or violent.
IP provided with psychoeducation regarding exercise and healthy nutrition
IP informed that if he is caught cheeking medications or skipping doses,  MD will be informed and the medications will possibly be discontinued or changed to open/float or crush form.  IP informed he will be expected to attend evaluations regularly  to evaluate medication appropriateness and response, and that failing to show up to designated appointments in a timely manner may trigger medications being discontinued or tapered.  IP also informed he may be subject to random drug tests to assure compliance, especially for drugs that can be sold and abused.

**Interdisciplinary Progress Note – General Psychiatry**
**CDCR MH-7230F (Rev. 01/12)**

Confidential Inmate-Patient Information

Inmate's Name (Last, First, MI), CDC Number, DOB
Schmitz, William
G35384
6/11/82

T. Rivas MD

DEF120609

**Maria Zhurnalova-Juppunov**

| | |
|---|---|
| **From:** | Aamot, Jack███████████████ |
| **Sent:** | Thursday, March 17, 2016 3:32 PM |
| **To:** | Clark, Charity |
| **Cc:** | Ramkumar, Sujatha███████ |
| **Subject:** | Schmitz G35384 |

Hi Charity,
 Could you work in an appointment for IP Schmitz G35384 with Dr. Ramkumar.
He was recently transferred to her and has seen her one time. He states he is experiencing an increase in auditory
 hallucinations and irritability.
There is no SI and he is not a danger to other, by his report. However he would like to meet with his doctor for follow up.

Thanks,
-aamot

Jack Aamot, PsyD.
B-EOP Staff Psychologist
███████████████

1

DEF120610

**Maria Zhurnalova-Juppunov**

| | |
|---|---|
| **From:** | Ramkumar, Sujatha ████████████████████ |
| **Sent:** | Thursday, February 1, 2018 10:25 AM |
| **To:** | Robinson, Rebecca ████ |
| **Subject:** | RE: Schmitz G35384 |

Calling you

Sujatha Ramkumar,MD
Staff Psychiatrist
Telepsychiatry
**CDCR Mental Health**
**P. O. Box: 588500, Bldg. G**
**Elk Grove, CA 95758**
████████████

**RDO : Monday**

**From:** Robinson, Rebecca ████
**Sent:** Thursday, February 01, 2018 10:15 AM
**To:** Ramkumar, Sujatha ████████████████
**Subject:** RE: Schmitz G35384

Ok, we'll talk when you're free.

*Rebecca Robinson, Psy.D.*
*Clinical Psychologist*
*Mule Creek State Prison, B Yard—EOP*
████████████

 
**CALIFORNIA CORRECTIONAL**
**HEALTH CARE SERVICES**

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

**From:** Ramkumar, Sujatha ████
**Sent:** Thursday, February 01, 2018 10:14 AM
**To:** Robinson, Rebecca ████████████████
**Subject:** RE: Schmitz G35384

Wit an inmate

Sujatha Ramkumar,MD

1

DEF120611





Staff Psychiatrist
Telepsychiatry
**CDCR Mental Health**
**P. O. Box: 588500, Bldg. G**

███████████
███████████

**RDO : Monday**

---

**From:** Robinson, Rebecca ███
**Sent:** Thursday, February 01, 2018 10:13 AM
**To:** Ramkumar, Sujatha ███████████
**Subject:** RE: Schmitz G35384

Do you have a minute?


*Rebecca Robinson, Psy.D.*
*Clinical Psychologist*
*Mule Creek State Prison, B Yard—EOP*

███████████

 

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

---

**From:** Ramkumar, Sujatha ███
**Sent:** Thursday, February 01, 2018 7:55 AM
**To:** Robinson, Rebecca ███████████
**Subject:** RE: Schmitz G35384

Please can you call me

Sujatha Ramkumar,MD
Staff Psychiatrist
Telepsychiatry
**CDCR Mental Health**
**P. O. Box: 588500, Bldg. G**
**Elk Grove, CA 95758**

███████████

**RDO : Monday**

---

**From:** Robinson, Rebecca@CDCR
**Sent:** Thursday, February 01, 2018 7:54 AM

DEF120612 

**To:** Ramkumar, Sujatha
**Subject:** Schmitz G35384

Good morning!

I was wondering if you could tell me about your meeting with Schmitz yesterday. He's one inmate that I'm a little concerned about. I've been working with him for about seven months and have never seen a medication actually work to help his frequent mood swings. He's someone who gets genuinely hopeless because of these symptoms, especially since they're just added on top of the brain tumor.

He's coming to IDTT today, but figured I'd ask you what's your take. I'm definitely skeptical about many inmates' stories, but with this IP I feel that his rapid cycling of mood is actually very real and causing major distress.

Look forward to speaking with you! Have a good morning!


*Rebecca Robinson, Psy.D.*
*Clinical Psychologist*
*Mule Creek State Prison, B Yard—EOP*

  

CALIFORNIA CORRECTIONAL
HEALTH CARE SERVICES

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

DEF120613 

**Maria Zhurnalova-Juppunov**

| | |
|---|---|
| **From:** | Ramkumar, Sujatha ████████████████ > |
| **Sent:** | Thursday, February 1, 2018 10:26 AM |
| **To:** | Robinson, Rebecca@CDCR |
| **Subject:** | RE: Schmitz G35384 |

Call me the phone goes to dr aamot

Sujatha Ramkumar,MD
Staff Psychiatrist
Telepsychiatry
**CDCR Mental Health**
**P. O. Box: 588500, Bldg. G**

████████████████████

**RDO : Monday**

**From:** Robinson, Rebecca ████
**Sent:** Thursday, February 01, 2018 10:15 AM
**To:** Ramkumar, Sujatha █████████████████
**Subject:** RE: Schmitz G35384

Ok, we'll talk when you're free.

*Rebecca Robinson, Psy.D.*
*Clinical Psychologist*
*Mule Creek State Prison, B Yard–EOP*

████████████████

 

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

**From:** Ramkumar, Sujatha ████
**Sent:** Thursday, February 01, 2018 10:14 AM
**To:** Robinson, Rebecca ██████████████ >
**Subject:** RE: Schmitz G35384

Wit an inmate

Sujatha Ramkumar,MD

DEF120614

Staff Psychiatrist
Telepsychiatry
**CDCR Mental Health**
**P. O. Box: 588500, Bldg. G**
**Elk Grove, CA 95758**

**RDO : Monday**

---

**From:** Robinson, Rebecca@CDCR
**Sent:** Thursday, February 01, 2018 10:13 AM
**To:** Ramkumar, Sujatha
**Subject:** RE: Schmitz G35384

Do you have a minute?

*Rebecca Robinson, Psy.D.*
*Clinical Psychologist*
*Mule Creek State Prison, B Yard–EOP*

 

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

---

**From:** Ramkumar, Sujatha
**Sent:** Thursday, February 01, 2018 7:55 AM
**To:** Robinson, Rebecca
**Subject:** RE: Schmitz G35384

Please can you call me

Sujatha Ramkumar,MD
Staff Psychiatrist
Telepsychiatry
**CDCR Mental Health**
**P. O. Box: 588500, Bldg. G**
**Elk Grove, CA 95758**

**RDO : Monday**

---

**From:** Robinson, Rebecca@CDCR
**Sent:** Thursday, February 01, 2018 7:54 AM

DEF120615



**To:** Ramkumar, Sujatha ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Subject:** Schmitz G35384

Good morning!

I was wondering if you could tell me about your meeting with Schmitz yesterday. He's one inmate that I'm a little concerned about. I've been working with him for about seven months and have never seen a medication actually work to help his frequent mood swings. He's someone who gets genuinely hopeless because of these symptoms, especially since they're just added on top of the brain tumor.

He's coming to IDTT today, but figured I'd ask you what's your take. I'm definitely skeptical about many inmates' stories, but with this IP I feel that his rapid cycling of mood is actually very real and causing major distress.

Look forward to speaking with you! Have a good morning!


*Rebecca Robinson, Psy.D.*
*Clinical Psychologist*
*Mule Creek State Prison, B Yard–EOP*


CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**


CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

DEF120616

1   PETER J. HIRSIG (State Bar No. 197993)
    peter.hirsig@mcnamaralaw.com
2   MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
    maria.zhurnalova-juppunov@mcnamaralaw.com
3   DANIEL R. MAYER (State Bar No. 300077)
    daniel.mayer@mcnamaralaw.com
4   McNAMARA, AMBACHER, WHEELER,
    HIRSIG & GRAY LLP
5   639 Kentucky Street,
    Fairfield, CA 94533
6   Telephone: (707) 427-3998
    Facsimile: (707) 427-0268
7
    Attorneys for Defendants
8   ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
    BRIZENDINE, BROCKENBOROGH, CEBALLOS, DIAZ,
9   GIBSON, HEATLEY, J. JOHNSON, R. JOHNSON, KERNAN,
    PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
10  M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11

12                  UNITED STATES DISTRICT COURT

13                  EASTERN DISTRICT OF CALIFORNIA

14
    Estate of WILLIAM SCHMITZ, deceased,        Case No. 2:2020CV00195
15  by and through THOMAS J. SCHMITZ
    and DIANNE MALLIA, as Successors in        DEFENDANT JEVON JOHNSON, M.D.'S
16  Interest; THOMAS SCHMITZ,                   RESPONSES TO PLAINTIFF'S SPECIAL
    Individually; and DIANNE MALLIA,            INTERROGATORIES, SET ONE
17  Individually,
                                                Action Filed:  7/16/2020
18                  Plaintiffs,

19          vs.

20  ASMAN et al,

21                  Defendants.

22

23  PROPOUNDING PARTY:    Plaintiff DIANNE MALLIA, individually

24  RESPONDING PARTY:     Defendant JEVON JOHNSON, M.D.

25  SET NUMBER:           ONE

26                      PRELIMINARY STATEMENT

27

28  to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

1   all cases whatsoever and request that you, to the exclusion of any statements herein, if any

2   requests or any portion of the statements contained herein were made by a witness present and

3   testifying in court, after which objections and grounds are reserved and may be interposed at the

4   time of trial.

5       Responding party is responding to all of the requests to the extent that information has

6   become known to them. However, responding party's discovery, investigation, and preparation for

7   trial of this matter has not been completed as of the date of these responses and, therefore,

8   responding party does not purport to state anything more than information currently known and

9   discovered by them.

10      Responding party reserves the right to continue discovery and investigation in this matter

11  regardless of the issue of these responses. Additionally, to the extent that the requests

12  herein are so broad as to require production of "all documents" or the identity of "all documents," etc., they

13  are responsible only for such documents as are presently available to responding party; and

14  responding party reserves the right to use at trial information discovered after the date of

15  these responses.

16      This Preliminary Statement is incorporated into each and every response set forth below.

17                                   **RESPONSES**

18  **INTERROGATORY NO. 1:**

19      Identify all dates that YOU were William Schmitz's primary psychiatrist.

20  **RESPONSE TO INTERROGATORY NO. 1:**

21      Objection. This interrogatory is overly burdensome and harassing and seeks information

22  equally available to the propounding party. Vague and ambiguous as to "primary psychiatrist."

23  This interrogatory is not relevant to any claim or defense and disproportionate to the needs of this

24  case. Subject to and without waiving objections, Defendant responds: Defendant refers

25  plaintiff to the MCSP medical records of William Schmitz. On information and belief William

26  Schmitz was as Defendant's patient from about 2017 until about end of October 2017.

27  ///

28  ///

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1    **INTERROGATORY NO. 2:**

2        On 11/9/2017, why were YOU absent for the IDTT for William Schmitz? (DEF 003597-

3    003602)

4    **RESPONSE TO INTERROGATORY NO. 2:**

5        Objection. Seeks information that is irrelevant and not likely to lead to admissible evidence

6    and is discorporate to the needs of this case. Subject to and without waiving said objection,

7    defendant responds: Dr. Johnson does not specifically recall, he but believes the meeting would

8    have been scheduled on a date that he was not working at the prison or on that yard.

9    **INTERROGATORY NO. 3:**

10        On 8/17/2017, why were YOU absent for the IDTT for William Schmitz? (DEF116765)

11    **RESPONSE TO INTERROGATORY NO. 3:**

12        Objection. Seeks information that is irrelevant and not likely to lead to admissible

13    evidence and is discorporate to the needs of this case. Subject to and without waiving said

14    objection, defendant responds: Dr. Johnson does not specifically recall, he but believes the

15    meeting would have been scheduled on a date that Dr. Johnson was not working at the prison.

16    **INTERROGATORY NO. 4:**

17        On 10/31/2017, YOU reported last seeing William on 6/1/2017, why did YOU not see him

18    for 4 months?

19    **RESPONSE TO INTERROGATORY NO. 4:**

20        Objection. Seeks information that is irrelevant and not likely to lead to admissible evidence

21    and is discorporate to the needs of this case. Subject to and without waiving said objection,

22    defendant responds: Based on information and belief, between 6/1/2017 and 10/31/2027, William

23    Schmitz was seen by Dr. Jacob Adams on 8/3/2017, Dr. Fred Fowler on 8/29/2017; by Dr. Johnson

24    on 9/14/2017. Dr. Johnson does not recall why the patient was seen by other psychiatrists in

25    between.

26    **INTERROGATORY NO. 5:**

27        Were YOU aware of YOUR requirement to attend IDTTs for patients under YOUR care?

28    ///

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

DEFT DR. J. JOHNSON'S RESP. TO MALLIA          3
SPECIAL INTERROGATORIES, SET ONE

**RESPONSE TO INTERROGATORY NO. 5**

Objection. Calls for a legal conclusion. Vague and ambiguous as to time and the term "required." Subject to and without waiving said objection, defendant responds: As a staff psychiatrist at MCSP, he was aware that per the Mental Health Program Guide per the Mental Health Program Guide psychiatrists were members of the Interdisciplinary Treatment Teams.

**INTERROGATORY NO. 6:**

Do YOU feel that YOU at all times had enough resources, including available time, to provide care that was compliant with the objective requirements of Program Guide, such as frequency of visits and attendance at IDTTs, for William Schmitz?

**RESPONSE TO INTERROGATORY NO. 6:**

Objection. Vague and ambiguous as to "resources" and "objective requirements of Program Guide." Defendant further objects that to the extent the request seeks a legal conclusion. The interrogatory is also compound and argumentative. Subject to and without waiving said objections, defendant responds as follows: defendant does not recall the specific number of inmates he was providing care to around the time he saw William Schmitz, but his duties towards other inmates would not have affected the care and treatment he provided to William Schmitz.

**INTERROGATORY NO. 7**

Were YOU aware that YOU were required to provide care as described in the Program Guide?

**RESPONSE TO INTERROGATORY NO. 7:**

Objections. Vague and ambiguous as to "care as described in the Program Guide." Vague and ambiguous as to time. Subject to and without waiving said objections, defendant responds as follows: During his tenure as a psychiatrist Dr. Johnson has always been aware that he needs to provide care in compliance with the applicable community standards of care.

**INTERROGATORY NO. 8:**

On 5/2, did you attend the IDTT for William Schmitz? (DEF116768).

///

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

G

**RESPONSE TO INTERROGATORY NO. 8:**

Objection. The interrogatory seeks information that is irrelevant and not likely to lead to admissible evidence and is disproportionate to the needs of this case. Subject to and without waiving said objections, defendant responds as follows: Dr. Johnson does not specifically recall, he but believes the meeting would have been scheduled on a date that Dr. Johnson was not working at the prison.

**INTERROGATORY NO. 9:**

On 9/1/2017 William had an RVR for unauthorized possession of drug paraphernalia, on 10/4/2017 he was required to start monthly "mandatory drug testing" with an end date of 10/8/2018 (see DEF0001 _____ responsibility to ensure he completed the monthly testing?

**RESPONSE TO INTERROGATORY NO. 9:**

Objection. Defendant further objects that the interrogatory asks for a legal conclusion and assumes facts not in evidence. Subject to and without waiving said objection defendant responds: No.

**INTERROGATORY NO. 10:**

Why was William transferred from YOUR care as his primary psychiatrist?

**RESPONSE TO INTERROGATORY NO. 10:**

As of November of 2017, Dr. Johnson moved to a different yard and the William Schmitz would have been assigned to the caseload of a different psychiatrist.

**INTERROGATORY NO. 11:**

On 4/20/201_ _____ did YOU not attend IDTT for William Schmitz? (DEF116785)

**RESPONSE TO INTERROGATORY NO. 11:**

Objection. The interrogatory seeks information that is irrelevant and not likely to lead to admissible evidence and is disproportionate to the needs of this case. Subject to and without waiving said objection defendant responds: Dr. Johnson does not specifically recall, he but believes the meeting would have been scheduled on a date that Dr. Johnson was not working at the prison.

///

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

G

1    **INTERROGATORY NO. 12:**

2          Please explain why you felt it was inappropriate for Dr. Joseph Schmitz to be emailing you

3    directly about William, his mentally ill brother not doing well and not receiving his antipsychotic

4    medication?

5    **RESPONSE TO INTERROGATORY NO. 12:**

6          Objection. The interrogatory seeks information that is irrelevant and not likely to lead to

7    admissible evidence and is disproportionate to the needs of this case. Subject to and without

8    waiving said objection defendant responds: It was Dr. Johnson's belief that family members of

9    inmates were not allowed by policy to reach out to CDCR providers directly, in addition to Dr.

10   Johnson's concern with HIPAA compliance. For this reason, Dr. Johnson sought guidance from his

11   chief at the time.

12   **INTERROGATORY NO. 13:**

13         Did you ever respond to Dr. Joseph Schmitz Emails to you in 2017?

14   **RESPONSE TO INTERROGATORY NO. 13:**

15         Objection. The interrogatory seeks information that is irrelevant and not likely to lead to

16   admissible evidence and is disproportionate to the needs of this case. Subject to and without

17   waiving said objection defendant responds: No, see response to Interrogatory No. 12.

18   **INTERROGATORY NO. 14:**

19         Were YOU aware that William Schmitz did not receive his antipsychotics medicines prior

20   to receiving the Email communication from Dr. Joseph Schmitz?

21   **RESPONSE TO INTERROGATORY NO. 14:**

22         On information and belief: No.

23   **INTERROGATORY NO. 15:**

24         Did YOU ever discuss William Schmitz medical care with is family?

25   **RESPONSE TO INTERROGATORY NO. 15:**

26         Objection. The interrogatory seeks information that is irrelevant and not likely to lead to

27   admissible evidence and is disproportionate to the needs of this case. Subject to and without

28   waiving said objections, defendant responds as follows: No.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1    **INTERROGATORY NO. 16:**

2        Was it YOUR custom and practice when caring for mentally ill inmates in 2017 to avoid

3    involving family members in their care.

4    **RESPONSE TO INTERROGATORY NO. 16:**

5        Objection. This interrogatory is argumentative as phrased and assumes facts not in evidence.

6    Vague and ambiguous as to "avoid" and "involving family members in their care." Subject to and

7    without waiving said objections, defendant responds as follows: No.

8    **INTERROGATORY NO. 17:**

9        On 10/31/2017 YOU ordered a one month psychiatry follow-up for William, did YOU

10    have any responsibility to make sure William was seen in one month by a psychiatrist?

11    **RESPONSE TO INTERROGATORY NO. 17:**

12        Dr. Johnson transferred to a different yard within the next month and the care would have

13    been assigned to a different provider.

14    **INTERROGATORY NO. 18:**

15        On October 31, 2017, how did YOU decide William had no major shifts in benefits to

16    psychotropic med trials (as described in DEF003472-003473)

17    **RESPONSE TO INTERROGATORY NO. 18:**

18        As part of his evaluation, Dr. Johnson reviewed William Schmitz's medical records and

19    talked to William Schmitz.

20    **INTERROGATORY NO. 19:**

21        Did YOU ever attend an IDTT for William Schmitz.

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

DEFT DR. J. JOHNSON'S RK TO MALLIA            7
SPECIAL INTERROGATORIES, SET ONE

1  **RESPONSE TO INTERROGATORY NO. 19:**

2      Objection. The interrogatory seeks information that is irrelevant and not likely to lead to

3  admissible evidence and is disproportionate to the needs of this case.  Subject to and without

4  waiving said objections, defendant responds as follows: On information and belief, no.

5  Dated:  May 16, 2024                    MCNAMARA, AMBACHER, WHEELER,
                                           HIRSIG & GRAY LLP
6

7

8                              By: _____

9                                  Peter J. Hirsig
                                   Maria Zhurnalova-Juppunov
10                                 Daniel R. Mayer
                                   Attorneys for Defendants
11                                 ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
                                   BRIZENDINE, BROCKENBOROGH, CEBALLOS,
12                                 DIAZ, GIBSON, HEATLEY, J. JOHNSON, R.
                                   JOHNSON, KERNAN, PONCIANO, RAMKUMAR,
13                                 REKART, ROBINSON, RUDAS, M. SMITH, C.
                                   SMITH, TIEBROCK, TOCHE and WAINE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFT DR. J. JOHNSON'S RK TO MALLIA          8
SPECIAL INTERROGATORIES, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1

2

**VERIFICATION**

3

I, the undersigned, declare that:

4

I am a Defendant in the above-entitled action; I have read the foregoing **DEFENDANT**

5

**JEVON   JOHNSON,   M.D.'S   RESPONSES   TO   PLAINTIFF'S   SPECIAL**

6

**INTERROGATORIES, SET ONE** and know the contents thereof; the same is true of my own

7

knowledge, except as to those matters which are therein stated on information and belief, and as to

8

those matters, I believe it to be true.

9

I declare under penalty of perjury under the laws of the State of California that the foregoing

10

is true and correct.

11

Executed on May **13**, 2024 at _____**Sacramento**_____, California.
(Date)                          (City/State)

12

13

_____
**JEVON JOHNSON, M.D.**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*SCHMITZ v. ASMAN, ET AL.*                              **VERIFICATION**

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
639 KENTUCKY AVENUE, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

9

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

**CERTIFICATE OF SERVICE VIA E-MAIL**

I hereby declare that I am a citizen of the United States, am over the age of eighteen years, and not a party to the within action. My electronic notification address is: carol.oneil@mcnamaralaw.com.

On this date, I electronically served the foregoing **DEFENDANT JEVON JOHNSON, M.D.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE** based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

| Attorneys For Plaintiff in Pro Per: | Attorneys For Plaintiff in Pro Per: |
|---|---|
| Dianne Mallia<br>404 Atkinson Street<br>Roseville, CA 95678<br><br>E-Mail: deedamallia@gmail.com | Thomas J. Schmitz<br>404 Atkinson Street<br>Roseville, CA 95678<br><br>E-Mail: tsfoot49@gmail.com |
| **Attorney for Defendants Kevin Kuich, Joe A. Lizarraga**<br><br>Michael A. Terhorst, Sr.<br>Beeson Terhorst LLP<br>510 Bercut Drive, Suite V<br>Sacramento, CA 95811<br>Phone: 707-301-7504<br><br>E-Mail: michael@beesonterhorst.com<br>  Jeff@beesonterhorst.com<br>  mercedes@beesonterhorst.com | **Attorneys for Defendants Eric Bradley**<br><br>Jennifer Nygaard<br>California Dept. of Justice<br>Office of the Attorney General<br>1515 Clay Street, 20th Floor<br>Oakland, CA 94612<br>Phone:  510-879-0802<br>Fax:  510-622-2270<br>E-Mail:  jennifer.nygaard@doj.ca.gov<br>  jay.goldman@doj.ca.gov<br>  lucille.santos@doj.ca.gov |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on May 16, 2024 at Pleasant Hill, California.

_Carol L. N. O'Neil_
Carol L. N. O'Neil

Exhibit 4 

| | |
|---|---|
| **From:** | Johnson, Jevon |
| **Sent:** | Tuesday, June 6, 2017 4:03 PM |
| **To:** | Adams, Jake |
| **Subject:** | RE: William Schmitz medical concern |

Thanks Dr. Adams, inmates name is William Schmitz #G35384.

**From:** Adams, Jake
**Sent:** Tuesday, June 06, 2017 9:01 AM
**To:** Johnson, Jevon >
**Cc:** Worrell, Wendy >
**Subject:** RE: William Schmitz medical concern

I'm going to elevate this. It is very odd that they would have your work email address in the first place.

I have attached the family phone call memo, but it really doesn't address the email issue, or what to do now that they have your email.

Until we get more clarity on how to approach this, I advise doing nothing.

Thanks for bringing this to my attention,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** Johnson, Jevon
**Sent:** Tuesday, June 06, 2017 8:38 AM
**To:** Adams, Jake >
**Subject:** FW: William Schmitz medical concern

Hi Dr. Adams,

This the second email I have received from the son of an inmate on my panel. I haven't responded to either. Is there a protocol for this type of thing? It seems inappropriate for him to be emailing me directly.

Jevon

**From:** s5jschmitz@yahoo.com [mailto:s5jschmitz@yahoo.com]
**Sent:** Sunday, June 04, 2017 5:20 PM
**To:** Johnson, Jevon
**Subject:** William Schmitz medical concern

Dear Dr Johnson,
Sorry to bother you again, but apparently MCSP ran out of Invega. My father visited my brother today and said he did not seem to be doing well and a big reason may be he did not receive the antipsychotic because it is not available. Hopefully, you can check in on him and make sure he receives the medication. Unfortunately, with the added stress of not having his stuff and being moved around a lot recently it's not a good time for him to not receive the medication. Again sorry to bother you, but there is really no good way

DEF120524

to contact medical there in a timely manner.
Thank you,
Joe Schmitz

DEF120525

**From:**     Johnson, Jevon█████████████████████████████

**Sent:**     Thursday, June 8, 2017 3:47 PM

**To:**       Adams, Jake█████████████████████████)

**Subject:**  FW: Lifetime med for Schmitz G35384

I assume the hotline is the more appropriate way for family members to send messages. This particular I/P seems to have a very involved family.

**From:** ██████████████████████

**Sent:** Wednesday, June 07, 2017 8:53 AM

**To:** Johnson, Jevon████████████████████████

**Subject:** Lifetime med for Schmitz G35384

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days * (6/2, 6/3, 6/4) It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend) He now has current order until 8/31/17. I am just bring the situation to your attention to avoid this happening in the future

Thank you,

████████████████████

Controlled Correspondence Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS
███████████████

3

DEF120526

Case 2:20-cv-00195-DJC-CKD    Document 389    Filed 08/13/24    Page 107 of 289

**From:** Adams, Jake█████████████████
**Sent:** Thursday, June 8, 2017 3:59 PM
**To:** Johnson, Jevon█████████████████
**Subject:** RE: Lifetime med for Schmitz G35384

Can you please forward me this email?

**From:** Johnson, Jevon█████
**Sent:** Thursday, June 08, 2017 8:48 AM
**To:** Adams, Jake█████████
**Subject:** FW: Lifetime med for Schmitz G35384

I assume the hotline is the more appropriate way for family members to send messages. This particular I/P seems to have a very involved family.

**From:** ████████████████
**Sent:** Wednesday, June 07, 2017 8:53 AM
**To:** Johnson, Jevon█████████████
**Subject:** Lifetime med for Schmitz G35384

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days * (6/2, 6/3, 6/4) It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend) He now has current order until 8/31/17. I am just bring the situation to your attention to avoid this happening in the future

Thank you,

███████████████
Controlled Correspondence Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS
███████████

$\mathcal{Cl}$

DEF120527

**From:**        Johnson, Jevon ██████████████
**Sent:**        Thursday, June 8, 2017 4:02 PM
**To:**          Adams, Jake ██████████████
**Subject:**     RE: Lifetime med for Schmitz G35384

The email from ██████████ was forwarded below.  I haven't gotten another one directly from patient's brother/ father since the last one I sent.

**From:** Adams, Jake ██████
**Sent:** Thursday, June 08, 2017 9:00 AM
**To:** Johnson, Jevon ██████████████ >
**Subject:** RE: Lifetime med for Schmitz G35384

Can you please forward me this email?

**From:** Johnson, Jevon ██████
**Sent:** Thursday, June 08, 2017 8:48 AM
**To:** Adams, Jake ██████████████
**Subject:** FW: Lifetime med for Schmitz G35384

I assume the hotline is the more appropriate way for family members to send messages.  This particular I/P seems to have a very involved family.

**From:** ██████████████
**Sent:** Wednesday, June 07, 2017 8:53 AM
**To:** Johnson, Jevon ██████████████
**Subject:** Lifetime med for Schmitz G35384

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *
(6/2, 6/3, 6/4)  It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend)  He now has current order until 8/31/17.  I am just bring the situation to your attention to avoid this happening in the future

Thank you,

████████████████████

Controlled Correspondence Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS
████████████████

ς

DEF120528

**From:** Adams, Jake ███████████████████████
**Sent:** Thursday, June 8, 2017 4:26 PM
**To:** Worrell, Wendy █████████████████████
**Subject:** FW: RE: Lifetime med for Schmitz G35384

Hi Wendy,

I forgot to include you on this email.

This is about Dr. Johnson's patient whose family was contacting him directly by email.

I attached the RN's note that prompted my email below.

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** Adams, Jake █████████
**Sent:** Thursday, June 08, 2017 9:08 AM
**To:** ████████████████████████████
**Cc:** Johnson, Jevon █████████████
**Subject:** RE: Lifetime med for Schmitz G35384

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison
████████████████████████

------------------
**From:** ████████████████████
**Sent:** Wednesday, June 07, 2017 8:53 AM

**To:** Johnson, Jevon ████████████████████████████
**Subject:** Lifetime med for Schmitz G35384

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *
(6/2, 6/3, 6/4) It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend) He now has current order
until 8/31/17. I am just bring the situation to your attention to avoid this happening in the future

Thank you,

████████████████████
Controlled Correspondence Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS
████████████████

$\mathcal{7}$

DEF120530

**From:** Adams, Jake ███████████████████)
**Sent:** Thursday, June 8, 2017 4:47 PM
**To:** ████████████████████████████████
██████████████████████

**CC:** Worrell, Wendy ██████████████████
**Subject:** Medication error?
**Attachment:** ACS2.pdf

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison
████████████████████

---

**From:** Adams, Jake ████████
**Sent:** Thursday, June 08, 2017 9:08 AM
**To:** ████████
**Cc:** Johnson, Jevon ████████████████████
**Subject:** RE: Lifetime med for Schmitz G35384

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD

*8*

DEF120531

Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

██████████████████████

------------------
**From:** ███████████████
**Sent:** Wednesday, June 07, 2017 8:53 AM
**To:** Johnson, Jevon ███████████████████████
**Subject:** Lifetime med for Schmitz G35384

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *
(6/2, 6/3, 6/4) It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend) He now has current order
until 8/31/17. I am just bring the situation to your attention to avoid this happening in the future

Thank you,

████████████████

Controlled Correspondence Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS

██████████████

*9*

**From:**
**Sent:**  Thursday, June 8, 2017 5:08 PM
**To:**  Adams, Jake

**CC:**  Worrell, Wendy                                    )
**Subject:**  RE: Medication error?

I will get back to you with more details shortly

**From:** Adams, Jake
**Sent:** Thursday, June 08, 2017 9:47 AM
**To:**
**Cc:** Worrell, Wendy
**Subject:** Medication error?

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

---

**From:** Adams, Jake
**Sent:** Thursday, June 08, 2017 9:08 AM
**To:**                                                                  >
**Cc:** Johnson, Jevon                                                   >
**Subject:** RE: Lifetime med for Schmitz G35384

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

/0

DEF120533

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

███████████████████████

------------------
**From:** ███████████████
**Sent:** Wednesday, June 07, 2017 8:53 AM
**To:** Johnson, Jevon█████████████████>
**Subject:** Lifetime med for Schmitz G35384

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *
(6/2, 6/3, 6/4) It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend) He now has current order
until 8/31/17. I am just bring the situation to your attention to avoid this happening in the future

Thank you,

██████████████████nit
Office of Third Level Appeals
Risk Management Branch
CCHCS

███████████████

*ll*

| | |
|---|---|
| **From:** | ████████████████████████) |
| **Sent:** | Thursday, June 8, 2017 5:31 PM |
| **To:** | Adams, Jake████████████ |
| **Subject:** | RE: RE: Lifetime med for Schmitz G35384 |

Thank you very much for looking into this for me.

████████████████████

Controlled Correspondence Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS
██████████████

---

**From:** Adams, Jake█████████
**Sent:** Thursday, June 08, 2017 9:08 AM
**To:** ████████████████████████
**Cc:** Johnson, Jevon████████████████
**Subject:** RE: Lifetime med for Schmitz G35384

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison
████████████████████████

/2

**From:**
**Sent:** Thursday, June 8, 2017 6:09 PM
**To:** Adams, Jake
**CC:** Worrell, Wendy
**Subject:** IT
**Attachments:** image002.jpg, image005.jpg

On **5/16/2017** Invega was filled for a 30 day supply
IP was a ctc **discharge** to D18 on that **5/16/2017**
Invega prescription **expires on 6/15/17**
On **6/1/17** prescription was renewed by Dr. Johnson
On **6/2/17** pharmacy received the order which was typed and put **on hold till the next fill of 6/14/2017** ( pharmacy staff was not notified to send out medication immediately)

  **The Problem's I have identified here are**
1.  IP moved on 6/1/17 from D18 to b10 and his medication did not transfer with him
2.  There was no mention from staff that IP moved from D18 TO B-10. This information would have helped me trigger a call to D 18 to search for the medication

On Saturday 6/3/17 at about 8:45 pm , I received a call from house sup Goodgame stating IP needed medication
I got a hold of the on-call pharmacist at about 9 pm and he arrived the facility at 11:20 pm and gave the 9 mg Invega to TTA
Thanks
Mourine



DEF120536



HISTORICAL DATA — MAY BE INCOMPLETE — CONSULT HEALTH RECORD

From: Adams, Jake
Sent: Thursday, June 08, 2017 9:47 AM
To:
Cc: Worrell, Wendy
Subject: Medication error?

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

From: Adams, Jake
Sent: Thursday, June 08, 2017 9:08 AM
To:
Cc: Johnson, Jevon

14

Subject: Re: Lifetime med for Schmitz G35384

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

██████████████████████

------------------
From: █
Sent: Wednesday, June 07, 2017 8:53 AM
To: Johnson, Jevon █████████████████
Subject: Lifetime med for Schmitz G35384

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *(6/2, 6/3, 6/4)  It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend)  He now has current order until 8/31/17.  I am just bring the situation to your attention to avoid this happening in the future

Thank you,

████████████████ Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS

███████████

15

DEF120538

| | |
|---|---|
| **From:** | Adams, Jake ███████████████ |
| **Sent:** | Thursday, June 8, 2017 6:34 PM |
| **To:** | ███████████████████████████████ |
| **CC:** | Worrell, Wendy ████████████████████ |
| **Subject:** | RE: IT |
| **Attachments:** | image001.jpg, image002.jpg |

Thanks for looking into this.

However, SOMS shows the following housing moves:

| | |
|---|---|
| 05/12/17 | D-yard |
| 05/12/17 | CTC |
| 05/16/17 | D-yard |
| 05/18/17 | B-yard 010-1 |
| 05/21/17 | B-yard 010-2 |
| 06/01/17 | B-yard 006-1 |

So, the move on 06/01 was from B-yard 10 building to B-yard 6 building.

Also, can anyone confirm whether or not the patient missed any doses 06/02 or 06/04, as per the family concern in the attached email?

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ███████████████
**Sent:** Thursday, June 08, 2017 11:10 AM
**To:** Adams, Jake ██████████████████████████████████
◀ ████████████████████ ▶
**Cc:** Worrell, Wendy ███████████████████ ▶
**Subject:** IT

On **5/16/2017** Invega was filled for a 30 day supply
IP was a **ctc discharge** to D18 on that **5/16/2017**
Invega prescription **expires on 6/15/17**
On 6/1/17 prescription was renewed by Dr. Johnson
On 6/2/17 pharmacy received the order which was typed and put **on hold till the next** fill **of 6/14/2017** ( pharmacy staff was not notified to send out medication immediately)
        **The Problem's I have identified here are**
1. IP moved on 6/1/17 from D18 to b10 and **his medication did not transfer with him**
2. There was no mention from staff that IP moved from D18 TO B-10. This information would have helped me trigger a call to D 18 to search for the medication

On Saturday 6/3/17 at about 8:45 pm , I received a call from house sup ████████ stating IP needed medication
I got a hold of the on-call pharmacist at about 9 pm and he arrived the facility at 11:20 pm and gave the 9 mg Invega to TTA
Thanks
Mourine

*16*

DEF120539

HISTORICAL DATA – MAY BE INCOMPLETE – CONSULT HEALTH RECORD

HISTORICAL DATA – MAY BE INCOMPLETE – CONSULT HEALTH RECORD

17

From: Adams, Jake ████
Sent: Thursday, June 08, 2017 9:47 AM
To: ████████████████████████████████
Cc: Worrell, Wendy ████
Subject: Medication error

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

████████████████████

---

From: Adams, Jake ████
Sent: Thursday, June 08, 2017 9:08 AM
To: ████████████████████
Cc: Johnson, Jevon ████████████████
Subject: RE: Lifetime med for Schmitz G35584

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

████████████████████

------------------
From: ████████████
Sent: Wednesday, June 07, 2017 8:53 AM
To: Johnson, Jevon ████████████████
Subject: Lifetime med for Schmitz G35584

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *(6/2, 6/3, 6/4) It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend) He now has current order until 8/31/17. I am just bring the situation to your attention to avoid this happening in the future

*18*

DEF120541

Thank you,

█████████████████ Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS

████████████

*19*

DEF120542

**From:**

**Sent:** Thursday, June 8, 2017 8:59 PM

**To:**

**CC:** Worrell, Wendy

**Subject:** RE: IT

**Attachments:** image001.jpg, image002.jpg, invega Scan MCSP 1039 .pdf

This is the MAR the clinic just sent to me
Thanks

---

**From:** Adams, Jake

**Sent:** Thursday, June 08, 2017 11:34 AM

**To:**

**Cc:** Worrell, Wendy

**Subject:** RE: IT

Thanks for looking into this.

However, SOMS shows the following housing moves:

| | |
|---|---|
| 05/12/17 | D-yard |
| 05/12/17 | CTC |
| 05/16/17 | D-yard |
| 05/18/17 | B-yard 010-1 |
| 05/21/17 | B-yard 010-2 |
| 06/01/17 | B-yard 006-1 |

So, the move on 06/01 was from B-yard 10 building to B-yard 6 building.

Also, can anyone confirm whether or not the patient missed any doses 06/02 or 06/04, as per the family concern in the attached email?

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

---

**From:**

**Sent:** Thursday, June 08, 2017 11:10 AM

**To:** Adams, Jake

**Cc:** Worrell, Wendy

**Subject:** IT

On **5/16/2017** Invega was filled for a 30 day supply
IP was a ctc **discharge** to D18 on that **5/16/2017**
Invega prescription **expires on 6/15/17**
On 6/1/17 prescription was renewed by Dr. Johnson
On **6/2/17** pharmacy received the order which was typed and put **on hold till the next** fill of **6/14/2017** ( pharmacy staff was not notified to send out medication immediately)

      **The Problem's I have identified here are**
1. IP moved on 6/1/17 from D18 to b10 **and his medication did not transfer with him**
2. There was no mention from staff that IP moved from D18 TO B-10. This information would have helped me trigger a call to D 18 to search for the medication

On Saturday 6/3/17 at about 8:45 pm , I received a call from house sup     stating IP needed medication
I got a hold of the on-call pharmacist at about 9 pm and he arrived the facility at 11:20 pm and gave the 9 mg Invega to TTA
Thanks

20

DEF120543



21

DEF120544

**From:** Adams, Jake
**Sent:** Thursday, June 08, 2017 9:47 AM
**To:**
**Cc:** Worrell, Wendy
**Subject:** Medication error

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

---

**From:** Adams, Jake
**Sent:** Thursday, June 08, 2017 9:08 AM
**To:**
**Cc:** Johnson, Jevon
**Subject:** RE: Lifetime med for Schmitz G35384

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

------------------

**From:**
**Sent:** Wednesday, June 07, 2017 8:53 AM
**To:** Johnson, Jevon@CDCR <Jevon.Johnson@cdcr.ca.gov>
**Subject:** Lifetime med for Schmitz G35384

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *(6/2, 6/3, 6/4)  It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend)  He now has current order until 8/31/17.  I am just bring the situation to your attention to avoid this happening in the future

22

DEF120545

Thank you,

████████████████████ Unit
**Office of Third Level Appeals**
**Risk Management Branch**
**CCHCS**

███████████████

23

**DEF120546**

# MEDICATION ADMINISTRATION RECORD

**NAME OF RN/LVN/PT** | **TRATION RECORD** | **INITIAL** | **NAME OF RN/LVN/PT** | **INITIAL** | **NAME OF RN/LVN/PT** | **INITIAL** | **NAME OF RN/LVN/PT** | **INITIAL**

**hydrOXYzine pamoate 50 mg capsule** (hydroxyzine pam 50 mg cap ud)
TAKE 1 CAPSULE BY MOUTH EVERY EVENING FOR 30 DAYS DISCHARGE-CTC
**DOT**

Fill Date: 5/16/2017   Orig Fill Date: 5/16/2017   Ref: 5390035980
Days Supply: 30   Expire Date: 6/15/2017   Doctor

**PALIPERIDONE 3 MG TAB ER 24** (paliperidone er 3 mg tablet)
TAKE 3 TABLETS (9MG) BY MOUTH EVERY EVENING FOR PSYCHOSIS FOR 30 DAYS
DISCHARGE-CTC **DOT** NON-FORMULARY APPROVED UNTIL 3/8/18

Fill Date: 5/16/2017   Orig Fill Date: 5/16/2017   Ref: 5390035980
Days Supply: 30   Expire Date: 6/15/2017   Doctor

**SERTRALINE HCL 50 MG TABLET** (sertraline hcl 50 mg tablet ud)
TAKE 1 TABLET BY MOUTH EVERY EVENING FOR MOOD SYMPTOMS FOR 30 DAYS
DISCHARGE-CTC **DOT**

Fill Date: 5/16/2017   Orig Fill Date: 5/16/2017   Ref: 5390035980
Days Supply: 30   Expire Date: 6/15/2017   Doctor

**TOPIRAMATE 200 MG TABLET** (topiramate 200 mg tablet ud)
TAKE 1 TABLET BY MOUTH EVERY EVENING FOR MOOD SYMPTOMS FOR 30 DAYS
DISCHARGE-CTC **DOT** NON-FORMULARY APPROVED UNTIL 8/31/17

Fill Date: 5/16/2017   Orig Fill Date: 5/16/2017   Ref: 5390035980
Days Supply: 30   Expire Date: 6/15/2017   Doctor

**TREATMENT** **KETOROLAC TROMETHAMINE**
**60 MG/2 ML VIAL** (ketorolac 30 mg/ml vial) (TO BE GIVEN IN MPR) INJECT 60MG IM ONCE A
WEEK AS NEEDED FOR HEADACHE FOR 30 DAYS
**DOT** DISCHARGE-CTC

Fill Date: 5/16/2017   Expire Date: 6/15/2017   Ref: 5390035987

CDCR# G35384   Building: MCSP-8 Yard   B 010 22020011UN

Name: SCHMITZ, WILLIAM
DOB:
Allergies: codeine

| | |
|---|---|
| **From:** | Adams, Jake█████████████ |
| **Sent:** | Thursday, June 8, 2017 9:29 PM |
| **To:** | ████████████████████████████ |
| **CC:** | Worrell, Wendy████████████ |
| **Subject:** | RE: IT |
| **Attachments:** | image001.jpg, image002.jpg |

Thanks again for the information.

So if I am reading this MAR correctly the timeline of events goes like this:

05/12/17 Patient is transferred to D-yard
05/12/17 Patient is placed in the CTC
05/16/17 Patient is placed back in D-yard
05/18/17 Patient is transferred to B-yard 010-1
05/21/17 Patient is transferred to B-yard 010-2
06/01/17 Patient is transferred to B-yard 006-1
06/02/17 MAR: "PM Paliperidone not given"
06/03/17 MAR: "PM Paliperidone not given error [indecipherable] PT at PM pass med not available SRN II and PIC notified"
06/04/17 "HS Paliperidone picked up & med administered" with the assistance of the on-call pharmacist; Med recon for 06/04/17 says "gave six tabs".

So, it does seem that the patient did *not* get paliperidone on 06/02/17 or 06/03/17 after moving from B10 to B6.

Does anyone know what follow up there was?

Has a medication error or HCIR been filed for this?

Unfortunately, I think that we need to identify this event as a significant issue.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ████████████████████████
**Sent:** Thursday, June 08, 2017 1:59 PM
**To:** Adams, Jake████████████████████████████████████
<████████████████████
**Cc:** Worrell, Wendy████████████
**Subject:** RE: IT

This is the MAR the clinic just sent to me
Thanks
████████

**From:** Adams, Jake████████
**Sent:** Thursday, June 08, 2017 11:34 AM
**To:** ████████████████████████████████
**Cc:** Worrell, Wendy████████
**Subject:** RE: IT

Thanks for looking into this.

However, SOMS shows the following housing moves:

05/12/17      D-yard
05/12/17      CTC
05/16/17      D-yard
05/18/17      B-yard 010-1
05/21/17      B-yard 010-2
06/01/17      B-yard 006-1

So, the move on 06/01 was from B-yard 10 building to B-yard 6 building.

*25*

DEF120548

Also, can anyone confirm whether or not the patient missed any doses 06/02 or 06/04, as per the family concern in the attached email?

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:**
**Sent:** Thursday, June 08, 2017 11:10 AM
**To:** Adams, Jake
<                                                          >
**Cc:** Worrell, Wendy
**Subject:** IT

On **5/16/2017** Invega was filled for a 30 day supply
IP was a **ctc discharge** to D18 on that **5/16/2017**
Invega prescription **expires on 6/15/17**
On 6/1/17 prescription was renewed by Dr. Johnson
On **6/2/17** pharmacy received the order which was typed and put **on hold till the next fill** of **6/14/2017** ( pharmacy staff was not notified to send out medication immediately)

      **The Problem's I have identified here are**

1. IP moved on 6/1/17 from D18 to b10 **and his medication did not transfer with him**
2. There was no mention from staff that IP moved from D18 TO B-10. This information would have helped me trigger a call to D 18 to search for the medication

On Saturday 6/3/17 at about 8:45 pm , I received a call from house sup      stating IP needed medication
I got a hold of the on-call pharmacist at about 9 pm and he arrived the facility at 11:20 pm and gave the 9 mg Invega to TTA
Thanks



DEF120549



From: Adams, Jake
Sent: Thursday, June 08, 2017 9:47 AM
To:
Cc: Worrell, Wendy
Subject: Medication error

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

From: Adams, Jake
Sent: Thursday, June 08, 2017 9:08 AM
To:
Cc: Johnson, Steven

27

DEF120550

~~Subject: RE: Lifetime med for Schmitz G59964~~

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

███████████████ ████

-------------------
**From:**
**Sent:** ███████████████ 17 8:53 AM
**To:** Johnson, Jevon
**Subject:** Lifetime ██████████████████

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *(6/2, 6/3, 6/4)  It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend)  He now has current order until 8/31/17.  I am just bring the situation to your attention to avoid this happening in the future

Thank you,

████████████████████Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS

██████████████

*28*

**From:**
**Sent:** Thursday, June 8, 2017 9:49 PM
**To:** Adams, Jake

Wendy                                                                                                   Worrell,
**Subject:** Invega
**Attachments:** image001.jpg, image002.jpg, invega Scan MCSP 1039 .pdf

Yes that looks right
It a transport and a communication issue
It happens a lot with IP's  moving from yard to yard and their medication do not follow them
If the nurse had notified pharmacy that  the medication was missing, we would have sent it out Friday evening
I have cced ▮▮▮▮ and ▮▮▮▮ to check what follow up was done
Thanks
▮▮▮▮

**From:** Adams, Jake▮▮
**Sent:** Thursday, June 08, 2017 2:30 PM
**To:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Cc:** Worrell, Wendy▮
**Subject:** RE: IT

Thanks again for the information.

So if I am reading this MAR correctly the timeline of events goes like this:

05/12/17 Patient is transferred to D-yard
05/12/17 Patient is placed in the CTC
05/16/17 Patient is placed back in D-yard
05/18/17 Patient is transferred to B-yard 010-1
05/21/17 Patient is transferred to B-yard 010-2
06/01/17 Patient is transferred to B-yard 006-1
06/02/17 MAR: "PM Paliperidone not given"
06/03/17 MAR: "PM Paliperidone not given error [indecipherable] PT at PM pass med not available SRN II and PIC notified"
06/04/17 "HS Paliperidone picked up & med administered" with the assistance of the on-call pharmacist; Med recon for 06/04/17 says "gave six tabs".

So, it does seem that the patient did **not** get paliperidone on 06/02/17 or 06/03/17 after moving from B10 to B6.

Does anyone know what follow up there was?

Has a medication error or HCIR been filed for this?

Unfortunately, I think that we need to identify this event as a significant issue.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Sent:** Thursday, June 08, 2017 1:59 PM
**To:** Adams, Jake▮
**Cc:** Worrell, Wendy▮
**Subject:** RE: IT

This is the MAR the clinic just sent to me
Thanks
▮▮▮▮

**From:** Adams, Jake▮▮▮▮
**Sent:** Thursday, June 08, 2017 11:34 AM
**To:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Cc:** Worrell, Wendy▮
**Subject:** RE: IT

*29*

Thanks for looking into this.

However, SOMS shows the following housing moves:

| | |
|---|---|
| 05/12/17 | D-yard |
| 05/12/17 | CTC |
| 05/16/17 | D-yard |
| 05/18/17 | B-yard 010-1 |
| 05/21/17 | B-yard 010-2 |
| 06/01/17 | B-yard 006-1 |

So, the move on 06/01 was from B-yard 10 building to B-yard 6 building.

Also, can anyone confirm whether or not the patient missed any doses 06/02 or 06/04, as per the family concern in the attached email?

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ███████████████
**Sent:** Thursday, June 08, 2017 11:10 AM
**To:** Adams, Jake███████████████

**Cc:** Worrell, Wendy███████████
**Subject:** IT

On **5/16/2017** Invega was filled for a 30 day supply
IP was a **ctc discharge** to D18 on that **5/16/2017**
Invega prescription **expires on 6/15/17**
On 6/1/17 prescription was renewed by Dr. Johnson
On **6/2/17** pharmacy received the order which was typed and put **on hold till the next** fill **of 6/14/2017** ( pharmacy staff was not notified to send out  medication immediately)
   **The Problem's I have identified here are**
1. IP moved on 6/1/17 from D18 to b10 **and his medication did not transfer with him**
2. There was no mention from staff that IP moved from D18 TO B-10. This information would have helped me trigger a call to D 18 to search for the medication

On Saturday 6/3/17 at about 8:45 pm , I received a call from house sup ████████ stating IP needed medication
I got a hold of the on-call pharmacist at about 9 pm and he  arrived the facility at 11:20 pm  and gave the 9 mg Invega to TTA
Thanks

████



31

DEF120554

**From:** Adams, Jake ▮▮
**Sent:** Thursday, June ▮▮, 2017 9:47 AM
**To:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Cc:** ▮▮▮▮▮▮▮▮▮▮
**Subject:** Medicatio▮▮▮▮

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

▮▮▮▮▮▮▮▮▮▮▮▮

---

**From:** Adams, Jake ▮▮
**Sent:** Thursday, June ▮▮, 2017 9:08 AM
**To:** ▮▮▮▮▮▮▮▮▮▮▮▮
**Cc:** Johnson, Jevon ▮▮▮▮▮▮▮▮
**Subject:** RE: Lifetime med for ▮▮▮▮▮ ▮▮▮▮▮

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

▮▮▮▮▮▮▮▮▮▮

------------------
**From:** ▮▮▮▮▮▮▮▮▮▮
**Sent:** Wednesday, June ▮▮, 2017 8:53 AM
**To:** Johnson, Jevon ▮▮▮▮▮▮▮▮▮
**Subject:** Lifetime med for ▮▮▮▮▮ ▮▮▮▮▮

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *(6/2, 6/3, 6/4) It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend) He now has current order until 8/31/17.  I am just bring the situation to your attention to avoid this happening in the future

32

DEF120555

Thank you,

██████████████Unit
**Office of Third Level Appeals**
**Risk Management Branch**
**CCHCS**

██████████

33

DEF120556

| | |
|---|---|
| **From:** | ████████████████████ |
| **Sent:** | Thursday, June 8, 2017 9:56 PM |
| **To:** | Adams, Jake |
| **CC:** | ████████████████ ] Worrell, Wendy |
| **Subject:** | Re: IT |
| **Attachments:** | image001.jpg, image002.jpg |

Please double check the below information and complete a medication error if indicated. Did the meds get moved to the new medication distribution area?  Custody should have moved them with the patient

████████████

Chief Nurse Executive (A)
Mule Creek State Prison

██████████

On Jun 8, 2017, at 2:29 PM, Adams, Jake ██████████████████ > wrote:

> Thanks again for the information.
>
> So if I am reading this MAR correctly the timeline of events goes like this:
>
> 05/12/17 Patient is transferred to D-yard
> 05/12/17 Patient is placed in the CTC
> 05/16/17 Patient is placed back in D-yard
> 05/18/17 Patient is transferred to B-yard 010-1
> 05/21/17 Patient is transferred to B-yard 010-2
> 06/01/17 Patient is transferred to B-yard 006-1
> 06/02/17 MAR: "PM Paliperidone not given"
> 06/03/17 MAR: "PM Paliperidone not given error [indecipherable] PT at PM pass med not available SRN II and PIC notified"
> 06/04/17 "HS Paliperidone picked up & med administered" with the assistance of the on-call pharmacist; Med recon for 06/04/17 says "gave six tabs".
>
> So, it does seem that the patient did *not* get paliperidone on 06/02/17 or 06/03/17 after moving from B10 to B6.
>
> Does anyone know what follow up there was?
>
> Has a medication error or HCIR been filed for this?
>
> Unfortunately, I think that we need to identify this event as a significant issue.
>
> Thanks,
>
> J. Adams MD

34

Chief Psychiatrist MCSP (A)

---

**From:** ███████████████████████
**Sent:** Thursday, June 08, 2017 1:59 PM
**To:** Adams, Jake█████████████████████████████████>
**Cc:** Worrell, Wendy██████████████████████>
**Subject:** RE: IT

This is the MAR the clinic just sent to me
Thanks
████████

---

**From:** Adams, Jake██████
**Sent:** Thursday, June 08, 2017 11:34 AM
**To:** █████████████████████████████████████████
**Cc:** Worrell, Wendy████████████
**Subject:** RE: IT

Thanks for looking into this.

However, SOMS shows the following housing moves:

| | |
|---|---|
| 05/12/17 | D-yard |
| 05/12/17 | CTC |
| 05/16/17 | D-yard |
| 05/18/17 | B-yard 010-1 |
| 05/21/17 | B-yard 010-2 |
| 06/01/17 | B-yard 006-1 |

So, the move on 06/01 was from B-yard 10 building to B-yard 6 building.

Also, can anyone confirm whether or not the patient missed any doses 06/02 or 06/04, as per the family concern in the attached email?

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

---

**From:** ███████████████████████
**Sent:** Thursday, June 08, 2017 11:10 AM
**To:** Adams, Jake█████████████████████████████████>
**Cc:** Worrell, Wendy███████████████████████
**Subject:** IT

On **5/16/2017** Invega was filled for a 30 day supply
IP was a **ctc discharge** to D18 on that **5/16/2017**
Invega prescription **expires on 6/15/17**

$35$

DEF120558

On 6/1/17 prescription was renewed by Dr. Johnson
**On 6/2/17** pharmacy received the order which was typed and put **on hold till the next** fill **of 6/14/2017** ( pharmacy staff was not notified to send out medication immediately)
           **The Problem's I have identified here are**
1. IP moved on 6/1/17 from D18 to b10 **and his medication did not transfer with him**
2. There was no mention from staff that IP moved from D18 TO B-10. This information would have helped me trigger a call to D 18 to search for the medication

On Saturday 6/3/17 at about 8:45 pm , I received a call from house sup ████████ stating IP needed medication
I got a hold of the on-call pharmacist at about 9 pm and he arrived the facility at 11:20 pm and gave the 9 mg Invega to TTA
Thanks
████

<image001.jpg><image002.jpg>

---

**From:** Adams, Jake█████
**Sent:** Thursday, June 08, 2017 9:47 AM
**To:** ████████████████████████████████████████
**Cc:** Worrell, Wendy█████
**Subject:** Medication error?

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison
████████████████

---

**From:** Adams, Jake█████

$3\wp$

**Sent:** Thursday, June 08, 2017 9:08 AM
**To:** ▮
**Cc:** Johnson, Jevon ▮
**Subject:** RE: Lifetime med for Schmitz G59384

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison
▮

------------------
**From:** ▮
**Sent:** Wednesday, June 07, 2017 8:53 AM
**To:** Johnson, Jevon ▮
**Subject:** Lifetime med for Schmitz G59384

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *(6/2, 6/3, 6/4) It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend) He now has current order until 8/31/17. I am just bring the situation to your attention to avoid this happening in the future


Thank you,

▮ Unit
Office of Third Level Appeals
Risk Management Branch

DEF120560

CCHCS

3 8

DEF120561

**From:** Ndamukong-Gwandiku, Mourine@CDCR
**Sent:** Thursday, June 08, 2017 2:49 PM
**To:** Adams, Jake
**Cc:**                                                                    Worrell, Wendy
**Subject:** Invega

Yes that looks right
It a transport and a communication issue
It happens a lot with IP's  moving from yard to yard and their medication do not follow them
If the nurse had notified pharmacy that  the medication was missing, we would have sent it out Friday evening
I have cced           and           to check what follow up was done
Thanks
Mourine

**From:** Adams, Jake
**Sent:** Thursday, June 08, 2017 2:30 PM
**To:**
**Cc:** Worrell, Wendy
**Subject:** RE: IT

Thanks again for the information.

So if I am reading this MAR correctly the timeline of events goes like this:

05/12/17 Patient is transferred to D-yard
05/12/17 Patient is placed in the CTC
05/16/17 Patient is placed back in D-yard
05/18/17 Patient is transferred to B-yard 010-1
05/21/17 Patient is transferred to B-yard 010-2
06/01/17 Patient is transferred to B-yard 006-1
06/02/17 MAR: "PM Paliperidone not given"
06/03/17 MAR: "PM Paliperidone not given error [indecipherable] PT at PM pass med not available SRN II and PIC notified"
06/04/17 "HS Paliperidone picked up & med administered" with the assistance of the on-call pharmacist; Med recon for 06/04/17 says "gave six tabs".

So, it does seem that the patient did *not* get paliperidone on 06/02/17 or 06/03/17 after moving from B10 to B6.

Does anyone know what follow up there was?

Has a medication error or HCIR been filed for this?

Unfortunately, I think that we need to identify this event as a significant issue.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:**
**Sent:** Thursday, June 08, 2017 1:59 PM
**To:** Adams, Jake

**Cc:** Worrell, Wendy

39

DEF120562

**Subject:** RE: IT

This is the MAR the clinic just sent to me
Thanks

███

---

**From:** Adams, Jake ███
**Sent:** Thursday, June 08, 2017 11:34 AM
**To:** ████████████████████
**Cc:** Worrell, Wendy ███
**Subject:** RE: IT

Thanks for looking into this.

However, SOMS shows the following housing moves:

| | |
|---|---|
| 05/12/17 | D-yard |
| 05/12/17 | CTC |
| 05/16/17 | D-yard |
| 05/18/17 | B-yard 010-1 |
| 05/21/17 | B-yard 010-2 |
| 06/01/17 | B-yard 006-1 |

So, the move on 06/01 was from B-yard 10 building to B-yard 6 building.

Also, can anyone confirm whether or not the patient missed any doses 06/02 or 06/04, as per the family concern in the attached email?

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

---

**From:** ████
**Sent:** Thursday, June 08, 2017 11:10 AM
**To:** Adams, Jake ███████████
**Cc:** Worrell, Wendy ████████
**Subject:** IT

On **5/16/2017** Invega was filled for a 30 day supply
IP was a **ctc discharge** to D18 on that **5/16/2017**
Invega prescription **expires on 6/15/17**
On 6/1/17 prescription was renewed by Dr. Johnson
On **6/2/17** pharmacy received the order which was typed and put **on hold till the next fill of 6/14/2017** ( pharmacy staff was not notified to send out medication immediately)

**The Problem's I have identified here are**
1. IP moved on 6/1/17 from D18 to b10 **and his medication did not transfer with him**
2. There was no mention from staff that IP moved from D18 TO B-10. This information would have helped me trigger a call to D 18 to search for the medication

On Saturday 6/3/17 at about 8:45 pm , I received a call from house sup ██████ stating IP needed medication
I got a hold of the on-call pharmacist at about 9 pm and he arrived the facility at 11:20 pm and gave the 9 mg Invega to TTA
Thanks

███

40

DEF120563



41

DEF120564

**From:** Adams, Jake ██████
**Sent:** Thursday, Ju██ ██, ██17 9:47 AM
**To:** ████████████████████████████████████
**Cc:** ██████████████
**Subject:** Medicatio█ ██████

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

██████████████████

**From:** Adams, Jake ██████
**Sent:** Thursday, Ju██ ██, ██17 9:08 AM
**To:** ██████████████████████
**Cc:** ██████████████████████████████
**Subject:** RE: Lifeti██ ████████████████████

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

██████████████████

-------------------
**From:** ████████████████████
**Sent:** █████████████████ ██17 8:53 AM
**To:** Johnson, Jevon ████████████████
**Subject:** Lifetime n ████████████████████

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *(6/2, 6/3, 6/4) It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend) He now has current order until 8/31/17. I am just bring the situation to your attention to avoid this happening in the future

42

DEF120565

Thank you,

████████████████ Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS

████████████

43

**From:**        Worrell, Wendy█████████████████████
**Sent:**        Thursday, June 8, 2017 10:17 PM
**To:**          Adams, Jake██████████████
**Subject:**     FW: Invega
**Attachments:** image001.jpg, image002.jpg, invega Scan MCSP 1039 .pdf

Holy cow.  This issue has been a lot of work for you to unravel.  I'm bummed that nursing and pharmacy did not take the lead to review the problem and report back to you instead of you having to take the initiative.  Do you feel like you end up doing a lot of these kinds of things when someone else could/should be doing them?

**From:** ████████████████████
**Sent:** Thursday, June 08, 2017 2:49 PM
**To:** Adams, Jake█████████████████████████████████
███████████████████████
**Cc:** █████████████████████████████████████████████████ Worrell, Wendy██████████
███████████████████
**Subject:** Invega

Yes that looks right
It a transport and a communication issue
It happens a lot with IP's  moving from yard to yard and their medication do not follow them
If the nurse had notified pharmacy that  the medication was missing, we would have sent it out Friday evening
I have cced ████████ and ████████ to check what follow up was done
Thanks
Mourine

**From:** Adams, Jake████████
**Sent:** Thursday, June 08, 2017 2:30 PM
**To:** ████████████████████████████████
**Cc:** Worrell, Wendy████████████
**Subject:** RE: IT

Thanks again for the information.

So if I am reading this MAR correctly the timeline of events goes like this:

05/12/17 Patient is transferred to D-yard
05/12/17 Patient is placed in the CTC
05/16/17 Patient is placed back in D-yard
05/18/17 Patient is transferred to B-yard 010-1
05/21/17 Patient is transferred to B-yard 010-2
06/01/17 Patient is transferred to B-yard 006-1
06/02/17 MAR: "PM Paliperidone not given"
06/03/17 MAR: "PM Paliperidone not given error [indecipherable] PT at PM pass med not available SRN II and PIC notified"
06/04/17 MAR: "HS Paliperidone picked up & med administered" with the assistance of the on-call pharmacist; Med recon for 06/04/17 says "gave six tabs".

So, it does seem that the patient did *not* get paliperidone on 06/02/17 or 06/03/17 after moving from B10 to B6.

Does anyone know what follow up there was?

Has a medication error or HCIR been filed for this?

Unfortunately, I think that we need to identify this event as a significant issue.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ████████████████████████
**Sent:** Thursday, June 08, 2017 1:59 PM
**To:** Adams, Jake███████████████████████████████████████████████
**Cc:** Worrell, Wendy████████████████████████
**Subject:** RE: IT

This is the MAR the clinic just sent to me

44

DEF120567

Thanks

███

From: Adams, Jake ███
Sent: Thursday, June 08, 2017 11:34 AM
To: ████████████████████████████████
Cc: Worrell, Wendy ███
Subject: RE: IT

Thanks for looking into this.

However, SOMS shows the following housing moves:

| 05/12/17 | D-yard |
| 05/12/17 | CTC |
| 05/16/17 | D-yard |
| 05/18/17 | B-yard 010-1 |
| 05/21/17 | B-yard 010-2 |
| 06/01/17 | B-yard 006-1 |

So, the move on 06/01 was from B-yard 10 building to B-yard 6 building.

Also, can anyone confirm whether or not the patient missed any doses 06/02 or 06/04, as per the family concern in the attached email?

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

From: ████████████████████
Sent: Thursday, June 08, 2017 11:10 AM
To: Adams, Jake ████████████████████████████████
<████████████████ >
Cc: Worrell, Wendy ███████
Subject: IT

On **5/16/2017** Invega was filled for a 30 day supply
IP was a **ctc discharge** to D18 on that **5/16/2017**
Invega prescription **expires on 6/15/17**
On 6/1/17  prescription was renewed by Dr. Johnson
On **6/2/17** pharmacy received the order which was typed and put **on hold till the next fill of 6/14/2017** ( pharmacy staff was not notified to send out  medication immediately)
      **The Problem's I have identified here are**
1. IP moved on 6/1/17 from D18 to b10 and **his medication did not transfer with him**
2. There was no mention from staff that IP moved from D18 TO B-10. This information would have helped me trigger a call to D 18 to search for the medication

On Saturday 6/3/17 at about 8:45 pm ,  I received a call from house sup  Goodgame stating IP needed medication
I got a hold of the on-call pharmacist at about 9 pm and he  arrived the facility at 11:20 pm  and  gave the 9 mg Invega to TTA
Thanks

███



DEF120568



46

DEF120569

From: Adams, Jake ▮▮▮
Sent: Thursday, Ju▮▮▮ ▮▮ ▮▮17 9:47 AM
To: ▮▮▮
Cc: ▮▮▮
Subject: Medicatio▮ ▮▮▮▮▮

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

▮▮▮▮▮▮▮▮▮▮▮▮

---

From: Adams, Jake ▮▮▮
Sent: Thursday, Ju▮▮▮ ▮▮ ▮▮17 9:08 AM
To: ▮▮▮
Cc: ▮▮▮
Subject: RE: Lifetim▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

▮▮▮▮▮▮▮▮▮▮▮▮

-------------------
From: ▮▮▮
Sent: V▮▮▮▮▮▮▮▮▮▮17 8:53 AM
To: Johnson, Jevon ▮▮▮▮▮▮▮▮▮▮▮▮▮ >
Subject: Lifetime n▮▮▮▮▮▮▮▮▮▮▮▮

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *(6/2, 6/3, 6/4) It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend) He now has current order until 8/31/17. I am just bring the situation to your attention to avoid this happening in the future

47

DEF120570

Thank you,

███████████████ Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS

████████████

48

DEF120571



**From:** █████████
**Sent:** Thursday, June 08, 2017 2:49 PM
**To:** Adams, Jake
◄█████████████████►
**Cc:** ████████████████████████████████████ Worrell, Wendy ████████
**Subject:** Invega

Yes that looks right
It a transport and a communication issue
It happens a lot with IP's moving from yard to yard and their medication do not follow them
If the nurse had notified pharmacy that the medication was missing, we would have sent it out Friday evening
I have cced Ms. Haynes and Mrs. Tabor to check what follow up was done
Thanks
█████████

**From:** Adams, Jake █████████
**Sent:** Thursday, June 08, 2017 2:30 PM
**To:** █████████████████████████████████
**Cc:** Worrell, Wendy █████████
**Subject:** RE: IT

Thanks again for the information.

So if I am reading this MAR correctly the timeline of events goes like this:

05/12/17 Patient is transferred to D-yard
05/12/17 Patient is placed in the CTC
05/16/17 Patient is placed back in D-yard
05/18/17 Patient is transferred to B-yard 010-1
05/21/17 Patient is transferred to B-yard 010-2
06/01/17 Patient is transferred to B-yard 006-1
06/02/17 MAR: "PM Paliperidone not given"
06/03/17 MAR: "PM Paliperidone not given error [indecipherable] PT at PM pass med not available SRN II and PIC notified"
06/04/17 MAR: "HS Paliperidone picked up & med administered" with the assistance of the on-call pharmacist; Med recon for 06/04/17 says "gave six tabs".

So, it does seem that the patient did *not* get paliperidone on 06/02/17 or 06/03/17 after moving from B10 to B6.

Does anyone know what follow up there was?

Has a medication error or HCIR been filed for this?

Unfortunately, I think that we need to identify this event as a significant issue.

Thanks,



DEF120572

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ▓▓▓▓▓▓▓▓▓▓▓▓▓
**Sent:** Thursday, June 08, 2017 1:59 PM
**To:** Adams, Jake ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
◄▓▓▓▓▓▓▓▓▓▓▓▓▓▓►
**Cc:** Worrell, Wendy ▓▓▓▓▓▓▓▓▓▓▓▓▓▓►
**Subject:** RE: IT

This is the MAR the clinic just sent to me
Thanks
▓▓▓▓

**From:** Adams, Jake ▓▓▓▓
**Sent:** Thursday, June 08, 2017 11:34 AM
**To:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Cc:** Worrell, Wendy ▓▓▓▓
**Subject:** RE: IT

Thanks for looking into this.

However, SOMS shows the following housing moves:

| | |
|---|---|
| 05/12/17 | D-yard |
| 05/12/17 | CTC |
| 05/16/17 | D-yard |
| 05/18/17 | B-yard 010-1 |
| 05/21/17 | B-yard 010-2 |
| 06/01/17 | B-yard 006-1 |

So, the move on 06/01 was from B-yard 10 building to B-yard 6 building.

Also, can anyone confirm whether or not the patient missed any doses 06/02 or 06/04, as per the family concern in the attached email?

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ▓▓▓▓▓▓▓▓▓▓▓▓▓
**Sent:** Thursday, June 08, 2017 11:10 AM
**To:** Adams, Jake ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Cc:** Worrell, Wendy ▓▓▓▓▓▓▓▓▓▓▓▓
**Subject:** IT

On **5/16/2017** Invega was filled for a 30 day supply
IP was a **ctc discharge** to D18 on that **5/16/2017**
Invega prescription **expires on 6/15/17**
On **6/1/17** prescription was renewed by Dr. Johnson
On **6/2/17** pharmacy received the order which was typed and put **on hold till the next fill of 6/14/2017** ( pharmacy staff was not notified to send out medication immediately)

            **The Problem's I have identified here are**
1. IP moved on 6/1/17 from D18 to b10 **and his medication did not transfer with him**
2. There was no mention from staff that IP moved from D18 TO B-10. This information would have helped me trigger a call to D 18 to search for the medication

On Saturday 6/3/17 at about 8:45 pm , I received a call from house sup ▓▓▓▓▓▓ stating IP needed medication
I got a hold of the on-call pharmacist at about 9 pm and he arrived the facility at 11:20 pm  and  gave the 9 mg Invega to TTA
Thanks
▓▓▓▓

*50*

DEF120573





DEF120574

**From:** Adams, Jake
**Sent:** Thursday, June ██, 2017 9:47 AM
**To:** ████████████
**Cc:** ████████████
**Subject:** Medication ██████

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

---

**From:** Adams, Jake
**Sent:** Thursday, June ██, 2017 9:08 AM
**To:** ████████████
**Cc:** ████████████
**Subject:** RE: Lifetim ████████████

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

-----------------
**From:** ████████████
**Sent:** ████████ 17 8:53 AM
**To:** Johnson, Jevon ████████████
**Subject:** Lifetime r ████████████

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *(6/2, 6/3, 6/4) It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend) He now has current order until 8/31/17. I am just bring the situation to your attention to avoid this happening in the future

DEF120575

Thank you,

███████████████ Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS

███████████

$\zeta\zeta$

DEF120576



**From:** Worrell, Wendy███
**Sent:** Thursday, June 08, 2017 3:13 PM
**To:** ███████████████ Adams, Jake███████████████
**Cc:** ██████████████████████
**Subject:** RE: Invega

███ – from your perspective, it is not unusual for an IP to change yards and his meds to do not follow? If this is a consistent issue in our system, I wonder if it should be worked on in the Patient Safety Committee? Seems like something that should be fixed before we have a worse outcome.

**From:** ████████████████
**Sent:** Thursday, June 08, 2017 2:49 PM
**To:** Adams, Jake████████████████████████████████
███████████████████████████████████████████████ Worrell, Wendy████
**Subject:** Invega

Yes that looks right
It a transport and a communication issue
It happens a lot with IP's moving from yard to yard and their medication do not follow them
If the nurse had notified pharmacy that the medication was missing, we would have sent it out Friday evening
I have cced Ms. Haynes and Mrs. Tabor to check what follow up was done
Thanks
████

**From:** Adams, Jake██████
**Sent:** Thursday, June 08, 2017 2:30 PM
**To:** ████████████████████████████████
**Cc:** Worrell, Wendy██████
**Subject:** RE: IT

Thanks again for the information.

So if I am reading this MAR correctly the timeline of events goes like this:

05/12/17 Patient is transferred to D-yard
05/12/17 Patient is placed in the CTC
05/16/17 Patient is placed back in D-yard
05/18/17 Patient is transferred to B-yard 010-1
05/21/17 Patient is transferred to B-yard 010-2
06/01/17 Patient is transferred to B-yard 006-1
06/02/17 MAR: "PM Paliperidone not given"
06/03/17 MAR: "PM Paliperidone not given error [indecipherable] PT at PM pass med not available SRN II and PIC notified"
06/04/17 "HS Paliperidone picked up & med administered" with the assistance of the on-call pharmacist; Med recon for 06/04/17 says "gave six tabs".

So, it does seem that the patient did *not* get paliperidone on 06/02/17 or 06/03/17 after moving from B10 to B6.

Does anyone know what follow up there was?

Has a medication error or HCIR been filed for this?

Unfortunately, I think that we need to identify this event as a significant issue.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:**
**Sent:** Thursday, June 08, 2017 1:59 PM
**To:** Adams, Jake

**Cc:** Worrell, Wendy
**Subject:** RE: IT

This is the MAR the clinic just sent to me
Thanks

**From:** Adams, Jake
**Sent:** Thursday, June 08, 2017 11:34 AM
**To:**
**Cc:** Worrell, Wendy
**Subject:** RE: IT

Thanks for looking into this.

However, SOMS shows the following housing moves:

| Date | Location |
|---|---|
| 05/12/17 | D-yard |
| 05/12/17 | CTC |
| 05/16/17 | D-yard |
| 05/18/17 | B-yard 010-1 |
| 05/21/17 | B-yard 010-2 |
| 06/01/17 | B-yard 006-1 |

So, the move on 06/01 was from B-yard 10 building to B-yard 6 building.

Also, can anyone confirm whether or not the patient missed any doses 06/02 or 06/04, as per the family concern in the attached email?

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:**
**Sent:** Thursday, June 08, 2017 11:10 AM
**To:** Adams, Jake

**Cc:** Worrell, Wendy
**Subject:** IT

On **5/16/2017** Invega was filled for a 30 day supply
IP was a **ctc discharge** to D18 on that **5/16/2017**
Invega prescription **expires on 6/15/17**
On 6/1/17 prescription was renewed by Dr. Johnson
**On 6/2/17** pharmacy received the order which was typed and put **on hold till the next fill of 6/14/2017** ( pharmacy staff was not notified to send out medication immediately)
         **The Problem's I have identified here are**
    1.   IP moved on 6/1/17 from D18 to b10 and **his medication did not transfer with him**



DEF120578

2. There was no mention from staff that IP moved from D18 TO B-10. This information would have helped me trigger a call to D 18 to search for the medication

On Saturday 6/3/17 at about 8:45 pm , I received a call from house sup  Goodgame stating IP needed medication
I got a hold of the on-call pharmacist at about 9 pm and he  arrived the facility at 11:20 pm  and  gave the 9 mg Invega to TTA
Thanks
Mourine



$\int b$

DEF120579



HISTORICAL DATA — MAY BE INCOMPLETE — CONSULT HEALTH RECORD

**From:** Adams, Jake
**Sent:** Thursday, Ju███ ███17 9:47 AM
**To:**
**Cc:**
**Subject:** Medicatio███

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

**From:** Adams, Jake
**Sent:** Thursday, Ju███ ███17 9:08 AM
**To:**
**Cc:**

$57$

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

███████████████    ████

------------------
**From:** 
**Sent:** ██████████ 17 8:53 AM
**To:** Johnson, Jevon
**Subject:** Lifetime n███████████████████████

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *(6/2, 6/3, 6/4)  It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend)  He now has current order until 8/31/17.  I am just bring the situation to your attention to avoid this happening in the future

Thank you,

████████████████████Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS

████████████

$\int 8$

**From:**         Adams, Jake ▓▓▓▓▓
**Sent:**         Thursday, June 8, 2017 10:36 PM
**To:**           Worrell, Wendy ▓▓▓▓▓▓
**Subject:**      RE: Invega
**Attachments:**  image001.jpg, image002.jpg

Yes, I am afraid it is all too common.

Add a few other things like trying to find the "lost" blood pressure machine at MCIC D-yard and having to educate grown professionals to be professional about sharing office space, arrange cross coverage for a sick MA, field 3 new complaints from ▓▓▓ about her colleagues, hold another gown professional's hand, bridge orders from "surprise" patients from Cerner live institutions. There was some other fun stuff too, just for flavor. Don't forget not to try going home at the regular time, that's when they call about the Cerner institution patients.

Leah asked why I was a little snippy today.

I'm sure you feel a similar pain.

Just venting. ☺

**From:** Worrell, Wendy ▓▓▓▓▓▓
**Sent:** Thursday, June 08, 2017 3:17 PM
**To:** Adams, Jake ▓▓▓▓▓▓▓▓
**Subject:** FW: Invega

Holy cow. This issue has been a lot of work for you to unravel. I'm bummed that nursing and pharmacy did not take the lead to review the problem and report back to you instead of you having to take the initiative. Do you feel like you end up doing a lot of these kinds of things when someone else could/should be doing them?

**From:** ▓▓▓▓▓▓▓▓▓▓
**Sent:** Thursday, June 08, 2017 2:49 PM
**To:** Adams, Jake ▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Cc:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Worrell, Wendy ▓▓▓▓
**Subject:** Invega ▓▓▓▓▓

Yes that looks right
It a transport and a communication issue
It happens a lot with IP's moving from yard to yard and their medication do not follow them
If the nurse had notified pharmacy that the medication was missing, we would have sent it out Friday evening
I have cced Ms. Haynes and Mrs. Tabor to check what follow up was done
Thanks
▓▓▓▓

**From:** Adams, Jake ▓▓▓▓▓
**Sent:** Thursday, June 08, 2017 2:30 PM
**To:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Cc:** Worrell, Wendy ▓▓▓▓▓
**Subject:** RE: IT

Thanks again for the information.

So if I am reading this MAR correctly the timeline of events goes like this:

05/12/17 Patient is transferred to D-yard
05/12/17 Patient is placed in the CTC
05/16/17 Patient is placed back in D-yard
05/18/17 Patient is transferred to B-yard 010-1
05/21/17 Patient is transferred to B-yard 010-2
06/01/17 Patient is transferred to B-yard 006-1
06/02/17 MAR: "PM Paliperidone not given"
06/03/17 MAR: "PM Paliperidone not given error [indecipherable] PT at PM pass med not available SRN II and PIC notified"
06/04/17 "HS Paliperidone picked up & med administered" with the assistance of the on-call pharmacist; Med recon for 06/04/17 says "gave six tabs".

So, it does seem that the patient did *not* get paliperidone on 06/02/17 or 06/03/17 after moving from B10 to B6.

Does anyone know what follow up there was?

59

Has a medication error or HCIR been filed for this?

Unfortunately, I think that we need to identify this event as a significant issue.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ████████
**Sent:** Thursday, June 08, 2017 1:59 PM
**To:** Adams, Jake ████████
**Cc:** Worrell, Wendy ████
**Subject:** RE: IT

This is the MAR the clinic just sent to me
Thanks

████

**From:** Adams, Jake ████
**Sent:** Thursday, June 08, 2017 11:34 AM
**To:** ████████
**Cc:** Worrell, Wendy ████
**Subject:** RE: IT

Thanks for looking into this.

However, SOMS shows the following housing moves:

| 05/12/17 | D-yard |
| 05/12/17 | CTC |
| 05/16/17 | D-yard |
| 05/18/17 | B-yard 010-1 |
| 05/21/17 | B-yard 010-2 |
| 06/01/17 | B-yard 006-1 |

So, the move on 06/01 was from B-yard 10 building to B-yard 6 building.

Also, can anyone confirm whether or not the patient missed any doses 06/02 or 06/04, as per the family concern in the attached email?

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ████████
**Sent:** Thursday, June 08, 2017 11:10 AM
**To:** Adams, Jake ████
**Cc:** Worrell, Wendy ████
**Subject:** IT

On **5/16/2017** Invega was filled for a 30 day supply
IP was a **ctc discharge** to D18 on that **5/16/2017**
Invega prescription **expires on 6/15/17**
On 6/1/17 prescription was renewed by Dr. Johnson
On **6/2/17** pharmacy received the order which was typed and put **on hold till the next** fill **of 6/14/2017** ( pharmacy staff was not notified to send out medication immediately)

    **The Problem's I have identified here are**

1. IP moved on 6/1/17 from D18 to b10 **and his medication did not transfer with him**
2. There was no mention from staff that IP moved from D18 to B-10. This information would have helped me trigger a call to D 18 to search for the medication

On Saturday 6/3/17 at about 8:45 pm , I received a call from house sup ████████ stating IP needed medication



DEF120583

I got a hold of the on-call pharmacist at about 9 pm and he  arrived the facility at 11:20 pm  and  gave the 9 mg invega to I I A
Thanks
Mourine



61

DEF120584

**From:** Adams, Jake ▮▮▮
**Sent:** Thursday, June ▮▮ 2017 9:47 AM
**To:** ▮▮▮
**Cc:** ▮▮▮▮▮▮▮
**Subject:** Medicatio ▮▮▮

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

▮▮▮▮▮▮

---

**From:** Adams, Jake ▮▮▮
**Sent:** Thursday, June ▮▮ 2017 9:08 AM
**To:** ▮
**Cc:** ▮▮▮▮▮
**Subject:** RE: Lifetin ▮▮▮

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

▮▮▮▮▮▮

------------------
**From:** ▮▮▮▮▮▮
**Sent:** V▮▮▮▮▮▮ 17 8:53 AM
**To:** Johnson, Jevon ▮▮▮
**Subject:** Lifetime n ▮▮▮▮▮▮

Dr. Johnson,

b2

DEF120585

expired 6/2/17 and renewed 6/5/17 (over a weekend) He now has current order until 8/31/17.  I am just bring the situation to your attention to avoid this happening in the future

Thank you,

███████████████ Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS

███████████

$6\,3$

DEF120586



**From:** ▮▮▮▮▮▮▮▮
**Sent:** Thursday, June 08, 2017 2:49 PM
**To:** Adams, Jake ▮▮▮▮
**Cc:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Worrell, Wendy ▮▮▮
**Subject:** Invega

Yes that looks right
It a transport and a communication issue
It happens a lot with IP's moving from yard to yard and their medication do not follow them
If the nurse had notified pharmacy that the medication was missing, we would have sent it out Friday evening
I have cced ▮▮▮▮▮ and ▮▮▮▮▮ to check what follow up was done

64

DEF120587

Thanks

**From:** Adams, Jake ███
**Sent:** Thursday, June 08, 2017 2:30 PM
**To:** ███████████████████████████████████████
**Cc:** Worrell, Wendy ███
**Subject:** RE: IT

Thanks again for the information.

So if I am reading this MAR correctly the timeline of events goes like this:

05/12/17 Patient is transferred to D-yard
05/12/17 Patient is placed in the CTC
05/16/17 Patient is placed back in D-yard
05/18/17 Patient is transferred to B-yard 010-1
05/21/17 Patient is transferred to B-yard 010-2
06/01/17 Patient is transferred to B-yard 006-1
06/02/17 MAR: "PM Paliperidone not given"
06/03/17 MAR: "PM Paliperidone not given error [indecipherable] PT at PM pass med not available SRN II and PIC notified"
06/04/17 "HS Paliperidone picked up & med administered" with the assistance of the on-call pharmacist; Med recon for 06/04/17 says "gave six tabs".

So, it does seem that the patient did *not* get paliperidone on 06/02/17 or 06/03/17 after moving from B10 to B6.

Does anyone know what follow up there was?

Has a medication error or HCIR been filed for this?

Unfortunately, I think that we need to identify this event as a significant issue.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ███████████
**Sent:** Thursday, June 08, 2017 1:59 PM
**To:** Adams, Jake ███████████████████████████
**Cc:** Worrell, Wendy ███
**Subject:** RE: IT

This is the MAR the clinic just sent to me
Thanks

███

**From:** Adams, Jake ███
**Sent:** Thursday, June 08, 2017 11:34 AM
**To:** ███████████████████████
**Cc:** Worrell, Wendy ███
**Subject:** RE: IT

Thanks for looking into this.

However, SOMS shows the following housing moves:

05/12/17    D-yard
05/12/17    CTC
05/16/17    D-yard
05/18/17    B-yard 010-1
05/21/17    B-yard 010-2
06/01/17    B-yard 006-1

So, the move on 06/01 was from B-yard 10 building to B-yard 6 building.

Also, can anyone confirm whether or not the patient missed any doses 06/02 or 06/04, as per the family concern in the attached email?

65

DEF120588

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ██████████████████
**Sent:** Thursday, June 08, 2017 11:10 AM
**To:** Adams, Jake

**Cc:** Worrell, Wendy
**Subject:** IT

On **5/16/2017**  Invega was filled for a 30 day supply
IP was a ctc **discharge** to D18 on that **5/16/2017**
Invega prescription **expires on 6/15/17**
On 6/1/17  prescription was renewed by Dr. Johnson
On **6/2/17** pharmacy received the order which was typed and put **on hold till the next fill of 6/14/2017** ( pharmacy staff was not notified to send out  medication immediately)

       **The Problem's I have identified here are**
1.  IP moved on 6/1/17 from D18 to b10 **and his medication did not transfer with him**
2.  There was no mention from staff that IP moved from D18 TO B-10. This information would have helped me trigger a call to D 18 to search for the medication

On Saturday 6/3/17 at about 8:45 pm ,  I received a call from house sup  Goodgame stating IP needed medication
I got a hold of the on-call pharmacist at about 9 pm and he  arrived the facility at 11:20 pm  and  gave the 9 mg Invega to TTA
Thanks
Mourine



66

DEF120589



From: Adams, Jake
Sent: Thursday, June __, 2017 9:47 AM
To:
Cc:
Subject: Medicatio

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

From: Adams, Jake
Sent: Thursday, June __, 2017 9:08 AM
To:
Cc: Johnson, Steven

67

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

████████████████████████

------------------
**From:** ████████████
**Sent:** ████████ 17 8:53 AM
**To:** Johnson, Jevon
**Subject:** Lifetime ██████████████████

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *(6/2, 6/3, 6/4)  It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend)  He now has current order until 8/31/17.  I am just bring the situation to your attention to avoid this happening in the future

Thank you,

████████████████ Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS

██████████████





**From:**
**Sent:** Friday, June 9, 2017 4:19 PM
**To:** ) Adams, Jake
) Worrell, Wendy

**Subject:** RE: IT

I am forwarding to ██████ as I believe this was the psych techs IP.  TY

**From:** ██████████
**Sent:** Thursday, June 08, 2017 2:57 PM
**To:** Adams, Jake
**Cc:**
Worrell, Wendy
**Subject:** Re: IT

Please double check the below information and complete a medication error if indicated. Did the meds get moved to the new medication distribution area?  Custody should have moved them with the patient

Chief Nurse Executive (A)
Mule Creek State Prison

On Jun 8, 2017, at 2:29 PM, Adams, Jake@CDCR <Jake.Adams██████████> wrote:

Thanks again for the information.

So if I am reading this MAR correctly the timeline of events goes like this:

05/12/17 Patient is transferred to D-yard
05/12/17 Patient is placed in the CTC
05/16/17 Patient is placed back in D-yard
05/18/17 Patient is transferred to B-yard 010-1
05/21/17 Patient is transferred to B-yard 010-2
06/01/17 Patient is transferred to B-yard 006-1
06/02/17 MAR: "PM Paliperidone not given"
06/03/17 MAR: "PM Paliperidone not given error [indecipherable] PT at PM pass med not available SRN II and PIC notified"
06/04/17 "HS Paliperidone picked up & med administered" with the assistance of the on-call pharmacist; Med recon for 06/04/17 says "gave six tabs".

So, it does seem that the patient did *not* get paliperidone on 06/02/17 or 06/03/17 after moving from B10 to B6.

Does anyone know what follow up there was?

b1

DEF120592

Has a medication error or HCIR been filed for this?

Unfortunately, I think that we need to identify this event as a significant issue.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ███████████████
**Sent:** Thursday, June 08, 2017 1:59 PM
**To:** Adams, Jake ██████████████████████
██████████████████
**Cc:** Worrell, Wendy ████████████████
**Subject:** RE: IT

This is the MAR the clinic just sent to me
Thanks
██████

**From:** Adams, Jake ██████
**Sent:** Thursday, June 08, 2017 11:34 AM
**To:** ███████████████████████████
**Cc:** Worrell, Wendy ██████████
**Subject:** RE: IT

Thanks for looking into this.

However, SOMS shows the following housing moves:

| | |
|---|---|
| 05/12/17 | D-yard |
| 05/12/17 | CTC |
| 05/16/17 | D-yard |
| 05/18/17 | B-yard 010-1 |
| 05/21/17 | B-yard 010-2 |
| 06/01/17 | B-yard 006-1 |

So, the move on 06/01 was from B-yard 10 building to B-yard 6 building.

Also, can anyone confirm whether or not the patient missed any doses 06/02 or 06/04, as per the family concern in the attached email?

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ██████████████████████
**Sent:** Thursday, June 08, 2017 11:10 AM
**To:** Adams, Jake ████████████████████████

10

DEF120593

**Cc:** Worrell, Wendy ███████████████████
**Subject:** IT

On **5/16/2017** Invega was filled for a 30 day supply
IP was a **ctc discharge** to D18 on that **5/16/2017**
Invega prescription **expires on 6/15/17**
On 6/1/17 prescription was renewed by Dr. Johnson
**On 6/2/17** pharmacy received the order which was typed and put **on hold till the next** fill **of 6/14/2017** (
pharmacy staff was not notified to send out medication immediately)

      **The Problem's I have identified here are**
1. IP moved on 6/1/17 from D18 to b10 **and his medication did not transfer with him**
2. There was no mention from staff that IP moved from D18 TO B-10. This information would have
   helped me trigger a call to D 18 to search for the medication

On Saturday 6/3/17 at about 8:45 pm , I received a call from house sup ████████ stating IP needed
medication
I got a hold of the on-call pharmacist at about 9 pm and he arrived the facility at 11:20 pm and gave the 9 mg
Invega to TTA
Thanks
███████

<image001.jpg><image002.jpg>

---

**From:** Adams, Jake ████
**Sent:** Thursday, June 08, 2017 9:47 AM
**To:** ████████████████████████████████
**Cc:** Worrell, Wendy ████
**Subject:** Medication error?

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is
a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or
the administration of the patient's paliperidone.

Thanks,

J. Adams MD

DEF120594

Chief Psychiatrist (a)
Mule Creek State Prison

███████████████████████

—————————————————————————————————————————

**From:** Adams, Jake█████
**Sent:** Thursday, June 08, 2017 9:08 AM
**To:** ████████████████████████████▷
**Cc:** Johnson, Jevon██████████████████▷
**Subject:** RE: Lifetime med for Schmitz G35384

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

████████████████████████

------------------
**From:** █████████████████
**Sent:** Wednesday, June 07, 2017 8:53 AM
**To:** Johnson, Jevon█████████████████
**Subject:** Lifetime med for Schmitz G35384

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *(6/2, 6/3, 6/4) It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend) He now has current order until 8/31/17.  I am just bring the situation to your attention to avoid this happening in the future

Thank you,

████████████████

Controlled Correspondence Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS

████████████████

13

DEF120596

**From:**  ██████████████
**Sent:**  Friday, June 9, 2017 5:14 PM
**To:**  ████████████████████████ Adams, Jake ██████████████████
████████████████████████ Worrell, Wendy ████████

**Subject:**  RE: IT
**Attachment:**  image001.jpg

I will follow up with this employee.

Everyone please cc me right away if incidents like this involving my staff occur in the future so I can address the problem right away.

Thank you!

████████████

Unit Supervisor
Mule Creek State Prison

████████████████

 

**CONFIDENTIALITY NOTICE:** *This communication and contents may have sensitive, confidential and/or legally privileged information. Any unauthorized disclosure, distribution, or action in reliance on the contents of this communication is strictly prohibited and may be unlawful. If you are not the intended recipient, please contact the sender and destroy all events of this communication. For IT Issues contact our Solutions Center at 1-888-735-3470.*

---

**From:** ████████████████
**Sent:** Friday, June 09, 2017 9:19 AM
**To:** ████████████████████ Adams, Jake ██████████████████████
**Cc:** ████████████████████████████████████
████████████ Worrell, Wendy ███████████ >
**Subject:** RE: IT

I am forwarding to ████████████ as I believe this was the psych techs IP.  TY

---

**From:** ████████████████
**Sent:** Thursday, June 08, 2017 2:57 PM
**To:** Adams, Jake ████████████████████████████████ >
**Cc:** ████████████████████████████████████████
████████████ Worrell, Wendy ██████████
**Subject:** Re: IT

Please double check the below information and complete a medication error if indicated. Did the meds get moved to the

74

DEF120597

new medication distribution area?  Custody should have moved them with the patient

████████

Chief Nurse Executive (A)
Mule Creek State Prison

████████

On Jun 8, 2017, at 2:29 PM, Adams, Jake ███████████████ wrote:

Thanks again for the information.

So if I am reading this MAR correctly the timeline of events goes like this:

05/12/17 Patient is transferred to D-yard
05/12/17 Patient is placed in the CTC
05/16/17 Patient is placed back in D-yard
05/18/17 Patient is transferred to B-yard 010-1
05/21/17 Patient is transferred to B-yard 010-2
06/01/17 Patient is transferred to B-yard 006-1
06/02/17 MAR: "PM Paliperidone not given"
06/03/17 MAR: "PM Paliperidone not given error [indecipherable] PT at PM pass med not available SRN II and PIC notified"
06/04/17 "HS Paliperidone picked up & med administered" with the assistance of the on-call pharmacist; Med recon for 06/04/17 says "gave six tabs".

So, it does seem that the patient did *not* get paliperidone on 06/02/17 or 06/03/17 after moving from B10 to B6.

Does anyone know what follow up there was?

Has a medication error or HCIR been filed for this?

Unfortunately, I think that we need to identify this event as a significant issue.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ██████████████████
**Sent:** Thursday, June 08, 2017 1:59 PM
**To:** Adams, Jake████████████████████████
████████████████████████████████████████
**Cc:** Worrell, Wendy████████████████
**Subject:** RE: IT

This is the MAR the clinic just sent to me
Thanks
████████

7S

DEF120598

**From:** Adams, Jake ▮▮▮▮
**Sent:** Thursday, June 08, 2017 11:34 AM
**To:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Cc:** Worrell, Wendy ▮▮▮▮
**Subject:** RE: IT

Thanks for looking into this.

However, SOMS shows the following housing moves:

| | |
|---|---|
| 05/12/17 | D-yard |
| 05/12/17 | CTC |
| 05/16/17 | D-yard |
| 05/18/17 | B-yard 010-1 |
| 05/21/17 | B-yard 010-2 |
| 06/01/17 | B-yard 006-1 |

So, the move on 06/01 was from B-yard 10 building to B-yard 6 building.

Also, can anyone confirm whether or not the patient missed any doses 06/02 or 06/04, as per the family concern in the attached email?

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Sent:** Thursday, June 08, 2017 11:10 AM
**To:** Adams, Jake ▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Cc:** Worrell, Wendy ▮▮▮▮
**Subject:** IT

On **5/16/2017** Invega was filled for a 30 day supply
IP was a **ctc discharge** to D18 on that **5/16/2017**
Invega prescription **expires on 6/15/17**
On 6/1/17 prescription was renewed by Dr. Johnson
**On 6/2/17** pharmacy received the order which was typed and put **on hold till the next** fill **of 6/14/2017 (** pharmacy staff was not notified to send out medication immediately)
**The Problem's I have identified here are**
1. IP moved on 6/1/17 from D18 to b10 **and his medication did not transfer with him**
2. There was no mention from staff that IP moved from D18 TO B-10. This information would have helped me trigger a call to D 18 to search for the medication

On Saturday 6/3/17 at about 8:45 pm , I received a call from house sup ▮▮▮▮ stating IP needed medication
I got a hold of the on-call pharmacist at about 9 pm and he arrived the facility at 11:20 pm and gave the 9 mg Invega to TTA
Thanks

DEF120599



&lt;image001.jpg&gt;&lt;image002.jpg&gt;

**From:** Adams, Jake
**Sent:** Thursday, June 08, 2017 9:47 AM
**To:**
**Cc:** Worrell, Wendy
**Subject:** Medication error?

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

**From:** Adams, Jake
**Sent:** Thursday, June 08, 2017 9:08 AM
**To:**
**Cc:** Johnson, Jevon
**Subject:** RE: Lifetime med for Schmitz G35384

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to

DEF120600

be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

██████████████████

------------------
**From:** ████████████
**Sent:** Wednesday, June 07, 2017 8:53 AM
**To:** Johnson, Jevon█████████████████████
**Subject:** Lifetime med for Schmitz G35584

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *(6/2, 6/3, 6/4) It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend) He now has current order until 8/31/17. I am just bring the situation to your attention to avoid this happening in the future

Thank you,

████████████████
Controlled Correspondence Unit
Office of Third Level Appeals
Risk Management Branch
CCHCS

██████████████

78



**Subject:** Invega

Yes that looks right
It a transport and a communication issue
It happens a lot with IP's moving from yard to yard and their medication do not follow them
If the nurse had notified pharmacy that the medication was missing, we would have sent it out Friday evening
I have cced ███████████████ to check what follow up was done
Thanks

█████

**From:** Adams, Jake ███
**Sent:** Thursday, June 08, 2017 2:30 PM
**To:** ████████████████████████████
**Cc:** Worrell, Wendy ██████
**Subject:** RE: IT

Thanks again for the information.

So if I am reading this MAR correctly the timeline of events goes like this:

05/12/17 Patient is transferred to D-yard
05/12/17 Patient is placed in the CTC
05/16/17 Patient is placed back in D-yard
05/18/17 Patient is transferred to B-yard 010-1
05/21/17 Patient is transferred to B-yard 010-2
06/01/17 Patient is transferred to B-yard 006-1
06/02/17 MAR: "PM Paliperidone not given"
06/03/17 MAR: "PM Paliperidone not given error [indecipherable] PT at PM pass med not available SRN II and PIC notified"
06/04/17 "HS Paliperidone picked up & med administered" with the assistance of the on-call pharmacist; Med recon for 06/04/17 says "gave six tabs".

So, it does seem that the patient did *not* get paliperidone on 06/02/17 or 06/03/17 after moving from B10 to B6.

Does anyone know what follow up there was?

Has a medication error or HCIR been filed for this?

Unfortunately, I think that we need to identify this event as a significant issue.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ████████████████████████
**Sent:** Thursday, June 08, 2017 1:59 PM
**To:** Adams, Jake ██████████████████████████████████████
**Cc:** Worrell, Wendy ████████████████████
**Subject:** RE: IT

This is the MAR the clinic just sent to me
Thanks

████

**From:** Adams, Jake ███
**Sent:** Thursday, June 08, 2017 11:34 AM
**To:** ████████████████████████████
**Cc:** Worrell, Wendy ██████
**Subject:** RE: IT

Thanks for looking into this.

However, SOMS shows the following housing moves:

05/12/17    D-yard
05/12/17    CTC

DEF120603

| 05/16/17 | D-yard |
| 05/18/17 | B-yard 010-1 |
| 05/21/17 | B-yard 010-2 |
| 06/01/17 | B-yard 006-1 |

So, the move on 06/01 was from B-yard 10 building to B-yard 6 building.

Also, can anyone confirm whether or not the patient missed any doses 06/02 or 06/04, as per the family concern in the attached email?

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

**From:** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
**Sent:** Thursday, June 08, 2017 11:10 AM
**To:** Adams, Jake▇▇▇▇▇▇▇▇▇▇▇; ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
**Cc:** Worrell, Wendy ▇▇▇▇▇▇▇▇▇▇▇▇
**Subject:** IT

On **5/16/2017** Invega was filled for a 30 day supply
IP was a ctc **discharge** to D18 on that **5/16/2017**
Invega prescription **expires on 6/15/17**
On 6/1/17 prescription was renewed by Dr. Johnson
**On 6/2/17** pharmacy received the order which was typed and put **on hold till the next fill of 6/14/2017** ( pharmacy staff was not notified to send out medication immediately)
      **The Problem's I have identified here are**
1. IP moved on 6/1/17 from D18 to b10 **and his medication did not transfer with him**
2. There was no mention from staff that IP moved from D18 TO B-10. This information would have helped me trigger a call to D 18 to search for the medication

On Saturday 6/3/17 at about 8:45 pm , I received a call from house sup ▇▇▇▇▇▇ stating IP needed medication
I got a hold of the on-call pharmacist at about 9 pm and he arrived the facility at 11:20 pm and gave the 9 mg Invega to TTA
Thanks

▇▇▇▇▇▇

$4\big)$

DEF120604





DEF120605

**From:** Adams, Jake ███
**Sent:** Thursday, June ██, 2017 9:47 AM
**To:** ████████
**Cc:** ████████████████████████████
**Subject:** Medication ████

Hello,

Attached please find an unusual medication reconciliation form. I really am not sure what to make of it.

This patient's family has reported that he missed his medications for a few days (see email below), but there is a renewal order in the chart from Dr. Johnson 06/01/17.

I am not sure what exactly happened, but it seems to me that there was a problem with either the delivery or the administration of the patient's paliperidone.

Thanks,

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

████████████████

**From:** Adams, Jake ███
**Sent:** Thursday, June ██, 2017 9:08 AM
**To:** ████████████████████ >
**Cc:** ████████████████████
**Subject:** RE: Lifetim ████████

Hello,

Dr. Johnson renewed this patients medications including Invega ER for 90 days on June 1st, 2017. When he renewed it the expiration on the prior order was 06/15/17. The medication is non-formulary approved through 2018.

Also please note that the MAR you mention is for May, 2017. We will have to wait for the June, 2017 MAR to be scanned to determine if the medication indeed expired, but regardless, it does not seem that it was a psychiatry issue if the patient did not get his medication.

I do see that there was a dose given in the TTA 06/03/17.

My best guess is that there was a potential pharmacy issue in getting the medication or a nursing issue in administration.

Thanks,

J. Adams MD
Chief Psychiatrist MCSP (A)

J. Adams MD
Chief Psychiatrist (a)
Mule Creek State Prison

████████████████

------------------
**From:** ████████
**Sent:** ██████████ 17 8:53 AM
**To:** Johnson, Jevon ████████████ >
**Subject:** Lifetime r ████████████

Dr. Johnson,

We have a hotline call from P/I Schmitz father wanting to know why patient did not receive Paliperidone for three days *(6/2, 6/3, 6/4) It looks like on the MAR med expired 6/2/17 and renewed 6/5/17 (over a weekend) He now has current order until 8/31/17. I am just bring the situation to your attention to avoid this happening in the future

83

DEF120606

Thank you,

█████████████████ Unit
**Office of Third Level Appeals**
**Risk Management Branch**
**CCHCS**

████████████

$8^4$

DIANNE MALLIA
404 Atkinson St,
Roseville, CA 95678
deedamallia@gmail.com
PRO SE

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS SCHMITZ, et al., | NO. 2:20-cv00195-DJC-CKD |
| Plaintiffs, | |
| vs. | DECLARATION OF DIANNE |
| A ASMAN, et al., | MALLIA IN SUPPORT OF PLAINTIFF MALLIA's MOTION FOR LEAVE TO SERVE ADDITIONAL DISCOVERY ON DEFENDANT SUJATHA |
| Defendants. | RAMKUMAR, M.D. AND JACOB ADAMS, M.D. AND TO DETERMINE SUFFICIENCY OF RESPONSES BY DEFENDANT DIANA TOCHE AND JOHN REKART |

I, Dianne Mallia, declare:

1. Exhibit A is true and correct copies that I received from Defendants of:

   DEFENDANT JOHN REKART'S RESPONSES TO PLAINTIFF'S REQUEST FOR

   ADMISSION, SET ONE; DEFENDANT JOHN REKART'S RESPONSES TO

   PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE;

1  DEFENDANT JOHN REKART'S RESPONSES TO PLAINTIFF'S SPECIAL
2  INTERROGATORIES, SET ONE; DEFENDANT DIANA TOCHE'S RESPONSES
3  TO PLAINTIFF'S REQUEST FOR ADMISSION, SET ONE; DEFENDANT
4  DIANA TOCHE'S RESPONSES TO PLAINTIFF'S REQUEST FOR
5  PRODUCTION OF DOCUMENTS, SET ONE; DEFENDANT DIANA TOCHE'S
6  RESPONSES TO PLAINTIFF's SPECIAL INTERROGATORIES , SET ONE;

7  2.  Exhibit B is true and correct copies of Email communications between myself and
8     Defendant attorneys

9  3.  Exhibit C is a true and correct copy of a certificate of service served on October 7,
10    2023

11  4.  Exhibit D is a true and correct copy of DEFENDANT SUJATHA RAMKUMAR,
12    M.D.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET
13    *ONE* that I received from Defendants

14  5.  Exhibit E is a true and correct copy of DEFENDANT JACOB ADAMS, M.D.'S
15    *RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET TWO* that I
16    received from Defendants

17  6.  Exhibit F is a true and correct copy of discovery documents I received from Defense
18    with Bates numbers DEF120607- DEF120616

19  7.  Exhibit G is a true and correct copy of DEFENDANT JEVON JOHNSON, M.D.'S
20    *RESPONSES TO PLAINTIFF'S SPECIAL  INTERROGATORIES, SET ONE* that I
21    received from Defendants.

22  8.  Exhibit H is a true and correct copy of discovery documents I received from Defense
23    with Bates numbers DEF120524- DEF120607

24  9.  Exhibit I is this Declaration.

DECLARATION OF DIANNE MALLIA    NO. 2:20-cv00195-DJC-CKD.    2

1    I declare under penalty of perjury under the laws of this Court and the State of California that the

2    foregoing is true and correct. This Declaration was executed on the 19th of July 2024, in

3    Roseville, California.

*Dianne Mallia*

Dianne Mallia

DECLARATION OF DIANNE MALLIA    NO. 2:20-cv00195-DJC-CKD.    3

1  PETER J. HIRSIG (State Bar No. 197993)
   peter.hirsig@mcnamaralaw.com
2  MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
   maria.zhurnalova-juppunov@mcnamaralaw.com
3  DANIEL R. MAYER (State Bar No. 300077)
   daniel.mayer@mcnamaralaw.com
4  McNAMARA, AMBACHER, WHEELER,
   HIRSIG & GRAY LLP
5  639 Kentucky Street,
   Fairfield, CA 94533
6  Telephone: (707) 427-3998
   Facsimile:  (707) 427-0268
7
   Attorneys for Defendants
8  ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
   BRIZENDINE, BROCKENBOROGH, CEBALLOS, DIAZ,
9  GIBSON, HEATLEY, J. JOHNSON, R. JOHNSON, KERNAN,
   PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
10 M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11                    UNITED STATES DISTRICT COURT

12                    EASTERN DISTRICT OF CALIFORNIA

13

14

15 Estate of WILLIAM SCHMITZ, deceased,      Case No. 2:20-CV-0195 DJC CKD (PS)
   by and through THOMAS J. SCHMITZ
16 and DIANNE MALLIA, as Successors in       **DEFENDANTS' OPPOSITION TO**
   Interest; THOMAS SCHMITZ,                 **PLAINTIFF MALLIA'S MOTION FOR**
17 Individually; and DIANNE MALLIA,          **LEAVE TO SERVE ADDITIONAL**
   Individually,                             **DISCOVERY ON DEFENDANT SUJATHA**
18                                           **RAMKUMAR, M.D. AND JACOB ADAMS,**
                                             **M.D. AND TO DETERMINE**
19              Plaintiffs,                   **SUFFICIENCY OF RESPONSES BY**
                                             **DEFENDANT DIANA TOCHE AND JOHN**
20       vs.                                 **REKART**

21 CDCR Correctional Officer ADAM            Date:
   ASMAN; et al.,                            Time:
22                                           Courtroom:
              Defendants.                    Action Filed:        1/27/2020
23

24       Defendants Sujatha Ramkumar, M.D., Jacob Adams, M.D., John Rekart M.D., and Diana

25 Toche, M.D. hereby submit their opposition to Plaintiff Mallia's Motion on the ground that Plaintiff

26 has not established good cause for the requested number of additional interrogatories for Dr.

27 Ramkumar and Dr. Adams and that amended responses to the discovery requests to Dr. Toche and

28 DEFTS' OPPOSITION TO MALLIA'S MTN FOR
   LEAVE TO SERVE ADDT'L DISCOVERY
   RAMKUMAR, M.D./ADAMS, M.D.
   Case No.: 2:20-CV-0195-DJC-CKD

*(left margin, rotated)* McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1    Rekart have been served.

2                                    **I. RELEVANT FACTS**

3          The Court, at this point, is very familiar with the allegations in this case and its procedural

4    history. This case arises out of the death of a former CDCR inmate, William Thomas Schmitz

5    ("Decedent"), on January 21, 2019 at Mule Creek State Prison ("MCSP") from accidental

6    methamphetamine overdose. Plaintiffs DIANE MALLIA and THOMAS SCHMITZ, Decedent's

7    parents, proceeding Pro Se, Individually and as Successor in Interest of the Estate of Decedent,

8    filed their initial Complaint on January 27, 2020. (ECF No. 1.) Plaintiffs' operative Fourth

9    Amended Complaint ("4AC") alleges that Decedent's death was the result of the deliberate

10   indifference and/or negligence of a multitude of CDCR employees. (ECF No. 173.) The following

11   is a summary of the allegations against Dr. Ramkumar and Dr. Adams, to whom plaintiff Mallia

12   seeks to propound 35 additional interrogatories.

13         Defendant Dr. Ramkumar:

14         As to Dr. Ramkumar, plaintiffs allege a state law wrongful death claim, and federal claims

15   for deliberate indifference. The crux of plaintiffs' case against Dr. Ramkumar is that she wrote the

16   same plan in her first visit with decedent in 2018, as she did when she saw him three times in 2016

17   and that she allegedly did not recall in 2018 that she had seen the patient three times in 2016, which

18   inexplicably somehow "directly resulted in William's suffering, worsening psychosis and

19   ultimately his death." (ECF 173, ¶¶ 259-307.)

20         Plaintiffs also apparently contend that, at the January 2018 visit, Dr. Ramkumar should have

21   prescribed clozapine or increased decedent's existing medications.  (ECF 173, ¶ 433.) Finally,

22   Plaintiffs allege that, after having been apprised that decedent had a rule violation for use of drug

23   paraphernalia, Dr. Ramkumar "chose" not to "follow the guidelines for disciplinary actions and

24   "filed to provide William" opportunities for long-term recovery from addiction." (ECF 173, ¶ 453.)

25   Plaintiff Mallia is aware of the fact that Dr. Ramkumar, as a psychiatrist was providing medical

26   care to decedent and was not and could not enforce disciplinary sanctions against him.  Finally,

27   Plaintiffs allege that Dr. Ramkumar did not see decedent as planned in her note March 2018,

28   although she could have located him at MCSP. (ECF, ¶ 455-458.)

DEFTS' OPPOSITION TO MALLIA'S MTN FOR          2
LEAVE TO SERVE ADDT'L DY
Case No.: 2:20-CV-0195-DJC-CKD

1   Dr. Ramkumar has responded already to the following discovery by plaintiffs:[1]

2   &bull; 25 Interrogatories by plaintiff Mallia;

3   &bull; 84 Requests for Admissions by plaintiff Mallia;

4   &bull; 93 Requests for Document Production by the plaintiff Estate, and 1 Request for

5   Production by Plaintiff Mallia.

6   (Zhurnalova-Juppunov Dec. l, ¶ 3.)

7   <u>Defendant Dr. Adams:</u>

8   As to Dr. Adams, Plaintiffs allegations said to be in support of their claims for deliberate

9   indifference and supervisory liability under Section 1983 are all generic and conclusory, such as,

10  that he "propagated or failed in [his] individual responsibility to correct the broad elements set out

11  in the Coleman case and directly resulted in William's suffering and ultimately his death" and

12  allegedly did not correct a "culture of repeated Program Guide violations." (ECF 173, ¶¶ 113, 142.)

13  Plaintiff also alleged that Dr. Adams had some supervisory responsibility over Dr. Ramkumar and

14  should have been aware that she allegedly had a "routine practice" of providing substandard care.

15  (ECF 173, ¶ 328.) Finally, although Plaintiffs acknowledged that in June 2017, Dr. Adams

16  documented a conversation he had with decedent's brother, regarding a notice that decedent was

17  out of Invega medication for a few days, Dr. Adams allegedly did not document that decedent did

18  in fact miss a few doses and that "they were violating William's constitutional rights by neglecting

19  the Program Guide requirements to assure William was evaluated by a psychiatrist monthly." (ECF

20  173, ¶ 328-333.)

21  Apart from the fact that the above allegations against Dr. Ramkumar in no way support a

22  wrongful death action or a deliberate indifference claim against her, plaintiff Mallia is now aware

23  that during the three months that Dr. Adams acted as a Chief Psychiatrist, he was not monitoring

24  Dr. Ramkumar's provision of care (Zhurnalova-Juppunov Decl., **Exh. A**, Response to Interrogatory

25  No.4.) Plaintiff Mallia is also aware Dr. Adams conducted a thorough investigation about whether

26  medications had expired, which was concluded after his call with decedent's brother and it was

27

28  [1] The discovery propounded by both plaintiffs is listed here, because their allegations and their claims are identical.

DEFTS' OPPOSITION TO MALLIA'S MTN FOR        3
LEAVE TO SERVE ADDT'L DY
Case No.: 2:20-CV-0195-DJC-CKD

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1    determined that although Dr. Johnson had re-ordered the medication, the patient missed two days

2    of medication due to transportation and a communication issues, when decedent moved yards. (Exh.

3    H to plaintiff Mallia decl.) This transportation error that resulted in a couple of missed doses, is no

4    way relevant to plaintiffs' wrongful death or deliberate indifference causes of actions.

5        Dr. Adams also saw decedent once, on August 3, 2017. There is no claim that his care and

6    treatment during that single visit caused decedent any of the claimed injuries in this case.

7        Dr. Adams has responded already to the following discovery by plaintiffs:

8        • 25 Interrogatories by plaintiff Mallia;

9        • 19 Requests for Admissions by plaintiff Mallia;

10       • 93 Requests for Document Production by the plaintiff Estate, and 3 Requests for

11           Production by Plaintiff Mallia;

12       All defendants have produced voluminous documents in response to plaintiffs' requests for

13   production and have been diligently supplementing their production and initial discovery upon

14   discovery of further potentially relevant documents exceeding 12,000 pages.

15       Plaintiff has also indicated that she plans to take the deposition of both Dr. Ramkumar and

16   Dr. Adams. (Zhurnalova-Juppunov Decl., ¶ 5.)

17       Plaintiff initially propounded special interrogatories beyond the statutory limit to both Dr.

18   Ramkumar and Dr. Adams. Plaintiffs did not seek leave of court and did not request counsel for

19   defendants to stipulate to these additional interrogatories before propounding them. (Zhurnalova-

20   Juppunov Decl., ¶ 6.) Therefore, defendants exercised their right to refuse to answer these

21   additional interrogatories. (Exhs. E and D and to plaintiff Mallia's declaration.)    Plaintiffs

22   subsequently filed a motion to seek leave of court to propounded additional interrogatories, without

23   meeting and conferring with defense counsel, which the court found deficient and ordered to be re-

24   noticed in compliance with Local Rule 251. (ECF 382, 383.)

25       The parties exchanged written meet and confer communication and met over Zoom video-

26   link. (Zhurnalova-Juppunov Decl., ¶ 7, **Exh. B.**) Defense counsel consistently expressed the

27   position that plaintiff has not shown good cause as to why 35 additional interrogatories to Dr.

28   Ramkumar and 35 additional interrogatories to Dr. Adams, each additional set containing

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

DEFTS' OPPOSITION TO MALLIA'S MTN FOR        4
LEAVE TO SERVE ADDT'L DY
Case No.: 2:20-CV-0195-DJC-CKD

1    interrogatories exceeding the presumptive limit was warranted. However, in the interest of
2    compromise and avoidance of motion practice, defense counsel offered up to three and
3    subsequently up to five additional interrogatories for each of the two defendant doctors,
4    respectively. This offer was rejected by Plaintiff. (Zhurnalova-Juppunov Decl., ¶ 7.)

## II. ARGUMENT

### A.    Legal Standard

7    Federal Rule of Civil Procedure 33(a)(1) provides: "Unless otherwise stipulated or ordered
8    by the court, a party may serve on any other party no more than 25 written interrogatories, including
9    all discrete subparts. Leave to serve additional interrogatories may be granted to the extent
10   consistent with Rule 26(b)(2)." (Fed. R. Civ. P. 33.) "The limitation is not intended 'to prevent
11   needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of
12   this discovery device,' and '[i]n many cases, it will be appropriate for the court to permit a larger
13   number of interrogatories. . . .' (*McNeil v. Hayes*, No. 1:10-cv-01746-AWI-SKO (PC), 2014 U.S.
14   Dist. LEXIS 37023, at *4 (E.D. Cal. Mar. 20, 2014) (citing to Advisory Committee Notes to the
15   1993 Amendments of Fed. R. Civ. P. 33.))

16   It is the burden on the party requesting leave for additional interrogatories to make the
17   necessary showing warranting leave to exceed the statutory presumptive limit. "Generally, a party
18   requesting additional interrogatories must make a "particularized showing" as to why additional
19   discovery is necessary. (*James v. Lee*, No. 16-cv-01592-AJB (JLB), 2020 U.S. Dist. LEXIS
20   159311, at *16-17 (S.D. Cal. Aug. 31, 2020).) Some courts have applied a more relaxed burden on
21   a pro se litigant, a showing of good cause, particularly when the plaintiff is a pro se litigant who is
22   incarcerated. (See *Garcia v. Folks*, No. 2:14-cv-2378 JAM DB P, 2017 U.S. Dist. LEXIS 27318,
23   at *3-4 (E.D. Cal. Feb. 27, 2017.) "Additionally, a court may deny a pro se plaintiff's request for
24   additional interrogatories if the plaintiff has not sufficiently specified why additional interrogatories
25   are necessary." (*Stephenson v. Clendenin*, No. 2:22-cv-01521-DAD-JDP (PC), 2024 U.S. Dist.
26   LEXIS 86902, at *2 (E.D. Cal. May 13, 2024).) Plaintiff, although a pro se litigant, is a
27   sophisticated party, and has filed numerous motions with the Court and should held to the ordinary
28   standard. Additionally, courts have required that "parties moving to serve additional interrogatories

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1    submit the proposed interrogatories for review by the court with the motion." (*Hardy v. Davis*, No.

2    2:13-cv-0726 JAM DB, 2017 U.S. Dist. LEXIS 14138, at *7 (E.D. Cal. Feb. 1, 2017) (citing to

3    *Waterbury v. Scribner*, No. 1:05-cv-0764 OWW DLB PC, 2008 U.S. Dist. LEXIS 53142, at *21-

4    22 (E.D. Cal. May 7, 2008.).)

5         Pursuant to Rule 33(a), once the moving party has made the appropriate showing, the court

6    shall grant leave if it is consistent with Rule 26(b)(1) and Rule 26(b)(2). Rule 26(b)(2)(C) states

7    that the court on motion, or its own motion, must limit the "frequency or scope of discovery

8    otherwise allowed by these rules" if it finds that: "(i) the discovery sought is unreasonably

9    cumulative or duplicative, or can be obtained from some other source that is more convenient, less

10   burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain

11   the information by discovery in the action; or (iii) the proposed discovery is outside the scope

12   permitted by Rule 26(b)(1)." Fed. R. Civ. P 26.

13        Rule 26(b)(1) describes the scope of discovery as follows:

14             Parties may obtain discovery regarding any nonprivileged matter that
               is relevant to any party's claim or defense and proportional to the
15             needs of the case, considering the importance of the issues at stake
               in the action, the amount in controversy, the parties' relative access
16             to relevant information, the parties' resources, the importance of the
               discovery in resolving the issues, and whether the burden or expense
17             of the proposed discovery outweighs its likely benefit. Information
               within this scope of discovery need not be admissible in evidence to
18             be discoverable.

19   **B.    Plaintiff Mallia Fails to Demonstrate Good Cause for the Requested
            Additional Discovery Beyond the Statutory Limits**
20

21        Plaintiff has made no showing of good cause to propound 35 additional interrogatories from

22   Dr. Ramkumar and from Dr. Adams, each additional set itself exceeding the statutory limit. The

23   request is unwarranted, excessive and harassing and should be denied. (See *Coleman v. California*

24   (E.D.Cal. Feb. 6, 2020, No. 2:18-cv-02497 MCE AC) 2020 U.S.Dist.LEXIS 20682, at *18-19,

25   ["Even under the most liberal interpretation of the discovery rules, plaintiff's motion must be

26   denied. Denial is appropriate for at least two reasons. First, plaintiff's request is extreme; she seeks

27   not one or two or even ten additional interrogatories, but forty — which is fifteen more

28   interrogatories than would be presumptively allowed if this were her first set, and resulting in a

1   total number of interrogatories 2.6 times the presumptive limit. . . Second, and perhaps more

2   importantly, the vast majority of plaintiff's interrogatories can be addressed "from some other

3   source that is more convenient, less burdensome, or less expensive," specifically, deposition

4   testimony."])

5       Dr. Ramkumar:

6       Plaintiff claims that she needs to propound further interrogatories because on March 16,

7   2016, three years before decedent died, Dr. Rivas sent an email to Dr. Ramkumar with a copy of a

8   psychiatry note already part of the record. This email is completely irrelevant to any claims in this

9   lawsuit.

10      As to the correspondence between Dr. Ramkumar and Dr. Robinson regarding the rules

11  violations, this topic has already been subject to written discovery, further written interrogatories

12  are at this point harassing. Specifically, the questions plaintiff is asking in her motion are: (1)

13  directed to documentation not prepared by Dr. Ramkumar for an IDTT meeting that Dr. Ramkumar

14  did not attend; (2) already asked and answered.

15          INTERROGATORY NO. 22: On 2/1/2018, when YOU documented
            that "spoke to dr Robinson, and will order an uds, it was
16          discovered in idtt that inmate was caught with drugs – heroin
            and meth about 5 mths ago? Do YOU believe YOU documented
17          the wrong patient chart as William was never caught with heroin and
            meth?
18
            RESPONSE TO INTERROGATORY NO. 22: Objection. This
19          interrogatory improperly asks a treating physician for a retrospective
            opinion. Subject to and without waiving said objection, defendant
20          responds: No. This documentation was based upon Dr. Ramkumar's
            understanding at the time about the rule violation of William Schmitz
21          in September 2017.

22      Lastly, the question of why Dr. Ramkumar used both correspondent section and as well

23  email to communicate about decedent's care on that particular occasion is irrelevant to any issue in

24  this case. If plaintiff wishes to ask follow-up questions, she is free to proceed with a deposition

25  when the temporary stay is lifted. At this point, it is unduly burdensome and harassing to continue

26  with these interrogatories, and exact further time and resources for preparation of written responses.

27  ///

28  ///

DEFTS' OPPOSITION TO MALLIA'S MTN FOR        7
LEAVE TO SERVE ADDT'L DY
Case No.: 2:20-CV-0195-DJC-CKD

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1    Dr. Adams:

2         Plaintiff Mallia appears to seek 35 interrogatories to ask about what instructions Dr. Adams,

3    if any, gave to Dr. Johnson regarding direct email communications from inmates' family members.

4    This request is frivolous has nothing to do with the claims in this case.  The evidence shows that

5    the issues regarding the missed doses in 2017 was diligently investigated and resolved and there is

6    no allegation that Dr. Johnson was further contacted by family members, failed to respond and this

7    proximately caused any injury to decedent.[2]

8         Again, Dr. Adams has responded to extensive written discovery that is way out of

9    proportion to the limited role he had as treating physician of decedent – one single visit that is not

10   at issue in this lawsuit, as well as the limited period of time he was acting chief psychiatrist -

11   04/01/2017 to 07/31/2017.  (See Zhurnalova-Juppunov Decl., ¶ 4, Exh. A. Dr. Adams' Reponses

12   to SI No. 1.)

13        Any pertinent follow-up questions should be asked at the deposition plaintiff intends to take.

14   Plaintiff claims that her motion "aims to significantly reduce the burden and expenses of discovery

15   as the interrogatory answers will allow for more focused depositions and perhaps completely

16   eliminate the need for deposition of both."  Not so. First, plaintiff Mallia cannot speak on behalf of

17   plaintiff Schmitz as to whether her discovery will limit plaintiff Dr. Schmitz in taking a deposition

18   or limiting the question his attorney intends to ask. Moreover, even if propounding additional

19   interrogatories is less burdensome and expensive to plaintiff Mallia, this does not justify that the

20   costs for responding to the additional written interrogatories be passed onto and borne by

21   defendants in terms of attorney's fees and time spent responding to the discovery.

22        **C.    Plaintiff Malila's Motion to Compel Further Responses to Discovery as
23        to Defendants Drs. Rekart and Toche is Moot and No Sanctions Should
         be Awarded**

24        Since May of 2020, and through August 2, 2024, Defendants in this matter have produced

25   approximately one hundred sets of discovery responses, totaling approximately 1,500 pages, in

26   _____

[2] Plaintiffs appear to wonder how it is possible that Dr. Johnson would not be immediately aware that one of his
27   patients had not received a medication that he prescribed for him. Plaintiffs may expect that the psychiatrist should be
     personally present any time one of his patients takes a medication and personally monitor that it is taken. Such an
28   expectation is not only imperceptible, wasteful of resources but also impossible to meet, and certainly not required by
     the standard of care.

DEFTS' OPPOSITION TO MALLIA'S MTN FOR        8
LEAVE TO SERVE ADDT'L DY
Case No.: 2:20-CV-0195-DJC-CKD

1    response to a like number of sets of requests, comprising hundreds or even thousands of

2    interrogatories, requests for admissions, and requests for production. (Zhurnalova-Juppunov Decl.

3    ¶8.)

4        As to requests for production, Defendants have also produced over **12,000** pages of

5    documents to Plaintiff. Despite this, the pace of written discovery has hardly slowed, whether in

6    the form of new sets, or of motions such as this, seeking leave to propound further discovery.

7    (Zhurnalova-Juppunov Decl. ¶9.)

8        Defendants, for their part, have responded to this tsunami of discovery requests with

9    exceeding patience, diligence, and accommodation. Defendants have not filed a single motion for

10   protective order against any of these, and have continued to do their utmost to provide substantive

11   and reasonable responses. (Zhurnalova-Juppunov Decl. ¶10.)

12       This is despite the fact that written discovery, at least in this case, has significantly

13   diminishing returns, and we are well into the unproductive end of that distribution. Plaintiff is quite

14   clearly attempting to use written discovery in lieu of depositions, which is untenable in general,

15   and especially in the present considering how much discovery has already been responded to.

16   Defendants' counsel has suggested that Plaintiff begin taking depositions, which would allow her

17   to obtain the information sought in a much more productive fashion, but these suggestions have

18   been declined, for reasons that are opaque. (Zhurnalova-Juppunov Decl. ¶11.)

19       It is true that there was a delay associated with certain discovery, but this has been largely

20   ameliorated on its own terms, was entirely duplicative and unnecessary from the inception, and

21   other discovery has been responded to since the original requests and objections were served.

22   (Zhurnalova-Juppunov Decl. ¶12-13, Ex. C.)

23       The respondents on the relevant discovery were Drs. Diana Toche and John Rekart. Dr.

24   Toche is a busy individual who has nevertheless made time for the discovery at issue, and complete

25   amended responses on her behalf were served on August 2, 2024. Dr. Rekart no longer works with

26   CDCR, and we have had intermittent contact with him, and so we have only been able to serve

27   amended responses on his behalf to the requests for admissions, set one, and the requests for

28

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1    production.[3] We will continue to strive to provide responses as soon as possible, and almost

2    certainly before any hearing on Plaintiff's Motion.[4] (Zhurnalova-Juppunov Decl. ¶14.)

3         Under these circumstances, Defendants' actions regarding the discovery directed to Drs.

4    Rekart and Toche was substantially justified, and the imposition of sanctions would be

5    inappropriate. (F.R.C.P. 37(a)(5)(A)(ii); *Reygo Pac. Corp. v. Johnson Pump Co.*, 680 F.2d 657,

6    649 (9th Cir. 1982); *Solomon v. Scientific Am. Inc.*, 125 F.R.D. 34, 39 (S.D.N.Y. 1988).)

7         Moreover, because of the delay in providing responses, Plaintiff has suffered no prejudice.

8    It is not as if, for example, Plaintiff had deposed Dr. Rekart without the benefit of his responses

9    and been unable to examine him thereon. Essentially, the failure to disclose or amend was harmless.

10    This, in combination with the foregoing, amounts to circumstances making the imposition of

11    sanctions unjust. (F.R.C.P. 37(a)(5)(A)(iii), (c)(1); *Krause v. City of Mohave*, 459 F.Supp.3d 1258,

12    1270 (D. Ariz. 2020) [factors considered when determining harmlessness: (1) prejudice or surprise

13    to party against whom evidence is offered; (2) ability of that party to cure the prejudice; (3)

14    likelihood of disruption at trial; and (4) bad faith or willfulness involved in not timely disclosing;

15    in the case at bar, all of the factors point towards harmlessness]; *Pike Co. v. Universal Concrete*

16    *Prods.* 524 F.Supp.3d 174 (W.D.N.Y. 2021) [harmlessness means absence of prejudice].)

17         Finally, it is unclear what sanctions Plaintiff is actually requesting, in order to recover for

18    which expenses. As a pro se litigant, she is not entitled to attorney's fees. (*Pickholtz v. Rainbow*

19    *Techs., Inc.* 284 F.3d 1365, 1376 (Fed. Cir. 2002.) In her moving papers, she does not provide the

20    amount of requested monetary sanctions. In this regard, Defendants have not been adequately put

21    on notice as to the sanctions requested against them, and on that basis they should be denied.

22    ///

23    ///

24    ///

25    ///

26

27    [3] In any event, if sanctions are to be imposed, Defendant's counsel requests that they be imposed upon counsel, and not upon any individual defendant.

28    [4] Defendants reserve the right to file subsequent supporting declarations regarding service of further sets of responses relevant to the subject matter of this Motion.

DEFTS' OPPOSITION TO MALLIA'S MTN FOR      10
LEAVE TO SERVE ADDT'L DY
Case No.: 2:20-CV-0195-DJC-CKD

**III. CONCLUSION**

For the many and excellent reasons discussed above, the Defendants respectfully request that the Court deny Plaintiff's Motion in its entirety.

Dated: August 2, 2024

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP

By: _____
Peter J. Hirsig
Maria Zhurnalova-Juppunov
Daniel R. Mayer
Attorneys for Defendants
ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN, BRIZENDINE, BROCKENBOROGH, CEBALLOS, HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER, PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS, M. SMITH, C. SMITH, TIEBROCK, TOCHE, and WAINE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET. FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

CERTIFICATE OF SERVICE VIA E-MAIL

1

2          I hereby declare that I am a citizen of the United States, am over the age of eighteen years,

3  and not a party to the within action. My electronic notification address is:

4  taylor.dickson@mcnamaralaw.com.

5          On this date, I electronically served the foregoing **DEFENDANTS' OPPOSITION TO**

6  **PLAINTIFF MALLIA'S MOTION FOR LEAVE TO SERVE ADDITIONAL DISCOVERY**

7  **ON DEFENDANT SUJATHA RAMKUMAR, M.D. AND JACOB ADAMS, M.D. AND TO**

8  **DETERMINE SUFFICIENCY OF RESPONSES BY DEFENDANT DIANA TOCHE AND**

9  **JOHN REKART** based on a court order or an agreement of the parties to accept service by e-mail

10  or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses

11  listed below. I did not receive, within a reasonable time after the transmission, any electronic

12  message or other indication that the transmission was unsuccessful.

13  **Attorneys For Plaintiff Pro Per:**                **Attorneys For Plaintiff in Pro Per:**

14  Dianne Mallia                                      Thomas J. Schmitz
    404 Atkinson Street                                404 Atkinson Street
15  Roseville, CA 95678                                Roseville, CA 95678

16  E-Mail: deedamallia@gmail.com                      E-Mail: tsfoot49@gmail.com

17  **Attorney for Defendants Kevin Kuich,**           **Attorneys for Defendant Eric Bradley**
    **Joe A. Lizarraga**
18                                                     Jennifer Nygaard
    Michael A. Terhorst, Sr.                           California Dept. of Justice
19  Beeson Terhorst LLP                                Office of the Attorney General
    510 Bercut Drive, Suite V                          1515 Clay Street, 20th Floor
20  Sacramento, CA 95811                               Oakland, CA 94612
    Phone: 707-301-7504                                Phone: 510-879-0802
21                                                     Fax: 510-622-2270
    E-Mail: michael@beesonterhorst.com                 E-Mail: jennifer.nygaard@doj.ca.gov
22          mercedes@beesonterhorst.com                        jay.goldman@doj.ca.gov
                                                               lucille.santos@doj.ca.gov
23

24          I declare under penalty of perjury under the laws of the United States of America that the

25  foregoing is true and correct and that this declaration was executed on August 2, 2024 at

26  Pleasant Hill, California.

27                                                     _____
                                                       Taylor Dickson
28

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BURKISK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1  PETER J. HIRSIG (State Bar No. 197993)
   peter.hirsig@mcnamaralaw.com
2  MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
   maria.zhurnalova-juppunov@mcnamaralaw.com
3  DANIEL R. MAYER (State Bar No. 300077)
   daniel.mayer@mcnamaralaw.com
4  McNAMARA, AMBACHER, WHEELER,
   HIRSIG & GRAY LLP
5  639 Kentucky Street,
   Fairfield, CA 94533
6  Telephone: (707) 427-3998
   Facsimile:  (707) 427-0268
7
   Attorneys for Defendants
8  ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
   BRIZENDINE, BROCKENBOROGH, CEBALLOS, DIAZ,
9  GIBSON, HEATLEY, J. JOHNSON, R. JOHNSON, KERNAN,
   PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
10 M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11
                    UNITED STATES DISTRICT COURT
12
                    EASTERN DISTRICT OF CALIFORNIA
13

14
   Estate of WILLIAM SCHMITZ, deceased,      Case No. 2:20-CV-0195 DJC CKD (PS)
15 by and through THOMAS J. SCHMITZ
   and DIANNE MALLIA, as Successors in       **DECLARATION OF MARIA**
16 Interest; THOMAS SCHMITZ,                  **ZHURNALOVA-JUPPUNOV IN**
   Individually; and DIANNE MALLIA,          **SUPPORT OF DEFENDANTS'**
17 Individually,                             **OPPOSITION TO PLAINTIFF MALLIA'S**
                                             **MOTION FOR LEAVE TO SERVE**
18          Plaintiffs,                      **ADDITIONAL DISCOVERY**

19     vs.                                   Date:
                                             Time:
20 CDCR Correctional Officer ADAM            Courtroom:
   ASMAN; et al.,                            Action Filed:        1/27/2020
21
            Defendants.
22

23      I, Maria Zhurnalova-Juppunov, declare:

24      1.     I am an attorney duly licensed to practice law before all of the courts in the State of

25 California and the Eastern District of the United States District Court, and I am an associate in the

26 law firm of McNamara, Ambacher, Wheeler, Hirsig & Gray LLP, attorneys of record for

27 Defendants    ADAMS,    ANDALUZ,    ASHE,    ASMAN,    BRANMAN,    BRIZENDINE,

28 BROCKENBOROGH, CEBALLOS, DIAZ, GIBSON, HEATLEY, J. JOHNSON, R. JOHNSON,

DEC OF ZHURNALOVA-JUPPUNOV ISO
DEFTS' OPPOSITION TO MALLIA'S MTN FOR
LEAVE - Case No.: 2:20-CV-0195-DJC-CKD

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1    KERNAN, PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS, M. SMITH, C.

2    SMITH, TEBROCK, TOCHE and WAINIE in the above-entitled action.

3      2.      The matters stated herein are within my personal knowledge and, if called upon to

4    do so, I could and would testify competently thereto.

5      3.      Defendant Dr. Ramkumar has already responded to the following discovery by

6    plaintiffs: 25 Interrogatories by plaintiff Mallia; 84 Requests for Admissions by plaintiff Mallia;

7    93 Requests for Document Production by the plaintiff Estate, and 1 Request for Production by

8    Plaintiff Mallia.

9      4.      Defendant Dr. Adams has already responded to the following discovery by

10    plaintiffs: 25 Interrogatories by plaintiff Mallia; 19 Requests for Admissions by plaintiff Mallia;

11    93 Requests for Document Production by the plaintiff Estate, and 3 Request for Production by

12    Plaintiff Mallia. A true and correct Copy of Dr. Adams' responses to Special Interrogatories Set,

13    One is attached hereto as **Exhibit "A."**

14      5.      Plaintiff has also indicated that she plans to take the deposition of both Dr.

15    Ramkumar and Dr. Adams.

16      6.      Plaintiff initially propounded special interrogatories beyond the statutory limit to

17    both Dr. Ramkumar and Dr. Adams. Plaintiff did not seek leave of court and did not request counsel

18    for defendants to stipulate to these additional interrogatories before propounding them.

19      7.      The parties exchanged written meet and confer communication and conferred

20    telephonically via Zoom. A true and correct copy of my letter to plaintiff dated June 19, 2024 is

21    attached hereto as **Exhibit "B."** I consistently expressed the position that plaintiff had not shown

22    good cause as to why 35 additional interrogatories to Dr. Ramkumar and 35 additional

23    interrogatories to Dr. Adams, each additional set containing interrogatories more than the

24    presumptive limit, was warranted. However, in the interest of compromise and avoidance of motion

25    practice, I offered up to three and subsequently up to five additional interrogatories for each of the

26    two defendant doctors, respectfully. This offer was rejected by Ms. Mallia.

27      8.      Since May of 2020, and through August 2, 2024, Defendants in this matter have

28    produced approximately one hundred sets of discovery responses, totaling approximately 1,500

DEC OF ZHURNALOVA-JUPPUNOV ISO      2
DEFTS' OPPOSITION TO MALLIA'S MTN FOR
LEAVE - Case No.: 2:20-CV-0195-DJC-CKD

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1    pages, in response to a like number of sets of requests, comprising hundreds or even thousands of

2    interrogatories, requests for admissions, and requests for production.

3          9.    As to requests for production, Defendants have also produced over **12,000** pages of

4    documents to Plaintiff. Despite this, the pace of written discovery has hardly slowed, whether in

5    the form of new sets, or of motions such as this, seeking leave to propound further discovery.

6         10.    Defendants have not filed a single motion for protective order in regard to any of

7    Plaintiff's discovery, and have continued to do their utmost to provide substantive and reasonable

8    responses.

9         11.    This is despite the fact that written discovery, at least in this case, has significantly

10    diminishing returns, and we are well into the unproductive end of that distribution. Plaintiff is quite

11    clearly attempting to use written discovery in lieu of depositions, which is untenable in general,

12    and especially in the present considering how much discovery has already been responded to.

13    Defendants' counsel has suggested that Plaintiff begin taking depositions, which would allow her

14    to obtain the information sought in a much more productive fashion, but these suggestions have

15    been declined, for reasons that are opaque.

16         12.    It is true that there was a delay associated with certain discovery, but this has been

17    largely ameliorated on its own terms, was entirely duplicative and unnecessary from the inception.

18    A true and correct copy of amended discovery responses served on August 2, 2024, is attached

19    hereto as **Exhibit "C."**

20         13.    Other discovery has been responded to since the original requests and objections

21    regarding Drs. Toche and Rekart were served. Specifically, since December 14, 2023 (when the

22    objections on behalf of Drs. Rekart and Toche were served), Defendants have served <u>fifty-eight</u>

23    other sets of responses.

24         14.    The respondents on the relevant discovery were Drs. Diana Toche and John Rekart.

25    Dr. Toche is a busy individual who has nevertheless made time for the discovery at issue, and

26    complete amended responses on her behalf were served on August 2, 2024. Dr. Rekart no longer

27    works with CDCR, and we have had intermittent contact with him, and so we have only been able

28    to serve amended responses on his behalf to the requests for admissions, set one, and the requests

DEC OF ZHURNALOVA-JUPPUNOV ISO       3
DEFTS' OPPOSITION TO MALLIA'S MTN FOR
LEAVE - Case No.: 2:20-CV-0195-DJC-CKD

1   for production.[1] We will continue to strive to provide responses as soon as possible, and almost

2   certainly before any hearing on Plaintiff's Motion.

3       I declare under penalty of perjury under the laws of this Court and the State of California

4   that the foregoing is true and correct. This Declaration was executed on the 2nd day of August

5   2024, in Pleasant Hill, California.

6                               /s/ Maria Zhurnalova-Juppunov

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

---

[1] In any event, if sanctions are to be imposed, Defendant's counsel requests that they be imposed upon counsel, and not upon any individual defendant.

DEC OF ZHURNALOVA-JUPPUNOV ISO          4
DEFTS' OPPOSITION TO MALLIA'S MTN FOR
LEAVE - Case No.: 2:20-CV-0195-DJC-CKD

EXHIBIT A

1  PETER J. HIRSIG (State Bar No. 197993)
   peter.hirsig@mcnamaralaw.com
2  MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
   maria.zhurnalova-juppunov@mcnamaralaw.com
3  DANIEL R. MAYER (State Bar No. 300077)
   daniel.mayer@mcnamaralaw.com
4  McNAMARA, AMBACHER, WHEELER,
   HIRSIG & GRAY LLP
5  639 Kentucky Street,
   Fairfield, CA 94533
6  Telephone: (707) 427-3998
   Facsimile:  (707) 427-0268
7
   Attorneys for Defendants
8  ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
   BRIZENDINE, BROCKENBOROGH, CEBALLOS, DIAZ,
9  GIBSON, HEATLEY, J. JOHNSON, R. JOHNSON, KERNAN,
   PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
10 M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11

12                    UNITED STATES DISTRICT COURT

13                   EASTERN DISTRICT OF CALIFORNIA

14

15 Estate of WILLIAM SCHMITZ, deceased,     Case No. 2:2020CV00195
   by and through THOMAS J. SCHMITZ
16 and DIANNE MALLIA, as Successors in      **DEFENDANT JACOB ADAMS, M.D.'S**
   Interest; THOMAS SCHMITZ,                **RESPONSES TO PLAINTIFF'S SPECIAL**
17 Individually; and DIANNE MALLIA,         **INTERROGATORIES, SET ONE**
   Individually,
                                            Action Filed:  7/16/2020
18          Plaintiffs,

19    vs.

20 ASMAN et al,

21          Defendants.

22

23 PROPOUNDING PARTY:    Plaintiff DIANNE MALLIA

24 RESPONDING PARTY:    Defendant JACOB ADAMS, M.D.

25 SET NUMBER:    ONE

26                          **PRELIMINARY STATEMENT**

27          These responses are made solely for the purpose of this action.  Each response is subject

28 to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

DEFT DR. ADAMS' RK TO PLAINTIFF'S
SPECIAL INTERROGATORIES, SET ONE

1   all other objections and grounds that would require the exclusion of any statements herein, if any

2   requests were asked for, or if any statement contained herein were made by a witness present and

3   testifying in court, all of which objections and grounds are reserved and may be interposed at the

4   time of trial.

5          Responding party is responding to all of the requests to the extent that information has

6   become known to him. However, responding party's discovery, investigation, and preparation for

7   trial of this matter has not been completed as of the date of these responses and, therefore,

8   responding party does not purport to state anything more than information currently known and

9   discovered by him.

10         Responding party reserves the right to continue discovery and investigation in this matter

11   regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

12   herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

13   are responded to fully and so far as information is currently available to responding party; and

14   responding party is not precluded from presenting at trial information discovered after the date of

15   these responses.

16         This Preliminary Statement is incorporated into each and every response set forth below.

17                                          **RESPONSES**

18   **INTERROGATORY NO. 1:**

19         Identify all documents describing YOUR duties while employed within CDCR.

20   **RESPONSE TO INTERROGATORY NO. 1:**

21         Objection. The interrogatory seeks information that is irrelevant and not likely to lead to

22   admissible evidence or evidence proportional to the needs of this case. Subject to and without

23   waiving said objections, Defendant responds: Defendant was the Acting Chief Psychiatrist at

24   Mule Creek State Prison from 04/01/2017 to 07/31/2017. Defendant was a staff psychiatrist from

25   08/01/2017 to 01/01/2018, and afterwards transferred to telepsychiatry until 04/23/18, when he

26   assumed the position of Senior Psychiatrist Specialist, Quality Management. Dr. Adams' duties are

27   described by the duty statement for the position he held at any given time in CDCR: duty statement

28   for Staff Psychiatrist C&RS (Safety); Senior Psychiatrist Specialist, C&RS (Safety). Dr. Adams refers

DEFT DR. ADAMS' RK TO PLAINTIFF'S                    2
SPECIAL INTERROGATORIES, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1    plaintiff to the duty statement of the chief psychiatrist, as he is unaware of a duty statement for

2    acting chief psychiatrist.

3    **INTERROGATORY NO. 2:**

4        Identify all documents relating to the Mental Health Tracking System (MHTS).

5    **RESPONSE TO INTERROGATORY NO. 2:**

6        Objection. The interrogatory seeks information that is irrelevant and not likely to lead to

7    admissible evidence or evidence proportional to the needs of this case. The interrogatory is vague

8    and ambiguous.  Subject to and without waiving said objections, Defendant responds: Dr. Adams

9    is unaware of any documents that formally described the Mental Health tracking system (MHTS). It

10    is referred to in the MHSDS Program Guide. During Dr. Adams' time as staff psychiatrist, while the

11    MHTS was active he did not maintain or design the MHTS but was only an end user. During his time

12    as a senior psychiatrist specialist, Dr. Adams at times utilized reports derived from the MHTS but he

13    was not directly responsible for the documentation or maintenance of the MHTS. When Dr. Adams

14    returned to headquarters working as a senior psychiatrist specialist for Quality Management the

15    system had already transitioned to utilizing data from the Electronic Health Record System (EHRS).

16    **INTERROGATORY NO. 3:**

17        Identify all individuals responsible for ensuring William Schmitz was seen by a psychiatrist

18    at the frequency required by the Program Guide between January 1, 2015 - January 21, 2019.

19    **RESPONSE TO INTERROGATORY NO. 3:**

20        Objection. The integratory seeks information that is overbroad and includes information

21    that is irrelevant and not likely to lead to admissible evidence or evidence proportional to the needs

22    of this case. Defendant further objects to the extent this interrogatory calls for a premature expert

23    opinion and a legal conclusion.  Subject to and without waiving said objections, Defendant

24    responds: Dr. Adams was not involved with this patient's care or the supervision of the programs

25    providing care to this patient outside of his three months as acting Chief Psychiatrist from 04/01/2017

26    to 07/31/2017.  During that time the responsibility for ensuring that all patients at MCSP were seen

27    timely was that of the Director of the Department of Corrections, the Deputy Director for the

28    Department of Corrections, the Statewide Chief Psychiatrist, the Chief Executive Officer, the Chief of

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1    Mental Health, the Warden, Dr. Adams, as the Acting Chief Psychiatrist, the psychiatrists assigned to

2    care for William Schmitz at MCSP, the various custody officials and the office technician staff.

3    **INTERROGATORY NO. 4:**

4         Identify all dates that YOUR duties included monitoring the mental health care provided by

5    Sujatha Ramkumar, MD to Mule Creek State Prison (MCSP) inmates.

6    **RESPONSE TO INTERROGATORY NO. 4**

7         Objection. The interrogatory is vague and ambiguous as to "monitoring." The request seeks

8    information that is irrelevant and not likely to lead to admissible evidence or evidence proportional

9    to the needs of this case. Subject to and without waiving said objections, Defendant responds:

10   During the three months that Dr. Adams was acting Chief Psychiatrist at MCSP, Dr. Sujatha Ramkumar

11   was assigned to MCSP via the telepsychiatry program, which had primary clinical supervisory duty

12   over her care. The institutional chief psychiatrist was involved in ensuring the telepsychiatrist was able

13   to practice and facilitating the ability to provide care. As such, Dr. Adams' duties never included

14   directly monitoring the mental health care provided by Sujatha Ramkumar, M.D. to Mule Creek State

15   Prison (MCSP) inmates.

16   **INTERROGATORY NO. 5:**

17        Were YOU ever concerned that the mental health care provided to inmates at Mule Creek

18   State Prison was below the community standard.

19   **RESPONSE TO INTERROGATORY NO. 5**

20        Objection. The interrogatory is vague and ambiguous as to "concern." The request

21   improperly seeks premature expert opinion. The interrogatory is overly broad and not proportionate

22   to the needs of this case as it refers to all of the mental health services provided to all inmates at

23   MCSP at any time. Subject to and without waiving said objections, Defendant responds: When Dr.

24   Adams joined the department in 2007, as part of a recruitment of high quality staff interested in

25   being a part of improving a system that would clearly take significant time and effort to achieve the

26   end goals, data available at the time suggested that MCSP, like most other prisons in California,

27   had varying degrees of success achieving the goals set forth by the *Coleman* court. Dr. Adams was

28   and continues to be concerned about whether MCSP is not only meeting, but hopefully exceeding

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

1    applicable standards of care.

2    **INTERROGATORY NO. 6:**

3    During YOUR time Acting Chief of psychiatry at Mule Creek State Prison were YOU ever

4    concerned that their were not enough psychiatrists at MCSP to adequately fulfill all requirements

5    of the MHSDS Program Guide.

6    **RESPONSE TO INTERROGATORY NO. 6:**

7    Objection. The interrogatory is vague and ambiguous as to "concern" and "all requirements

8    of the MHSDS Program Guide." The interrogatory is overly broad and not proportionate to the

9    needs of this case and seek premature expert opinion. Subject to and without waiving said

10   objections, Defendant responds: During that time, it was Dr. Adams' belief that staffing was minimally

11   adequate to provide care but that there was very little room for disturbances such as absenteeism or

12   retirements.

13   **INTERROGATORY NO. 7**

14   Identify all transcripts of YOUR interviews related to Coleman.

15   **RESPONSE TO INTERROGATORY NO. 7:**

16   Objection. The request is vague and ambiguous as to "concern" and "all requirements of

17   the MHSDS Program Guide." The interrogatory is overly broad and not proportionate to the needs

18   of this case.  Subject to and without waiving said objections, Defendant responds: Dr. Adams was

19   interviewed by the neutral expert regarding Dr. Michael Golding's allegations. Dr. Adams does not

20   have a copy of that interview as it was not provided to him.

21   **INTERROGATORY NO. 8:**

22   Identify ALL difficulties YOU experienced accessing mental health records while

23   employed at MCSP.

24   **RESPONSE TO INTERROGATORY NO. 8:**

25   Objection. The interrogatory is overbroad as to time and scope. The interrogatory seeks

26   information that is irrelevant and not likely to lead to admissible evidence or evidence proportional

27   to the needs of this case. The interrogatory is vague and ambiguous as to "difficulties."  Subject to

28   and without waiving said objections, Defendant responds: Dr. Adams does not recall experiencing

1    difficulties in accessing William Schmitz's medical records (in June 2017, after receiving an email

2    from William Schmitz' brother and in August 2017 when he saw William Schmitz as a staff

3    psychiatrist.) In general, Electronic Health Record (EHR) was an improvement over the prior paper

4    chart based record in that multiple people at multiple sites could access it simultaneously and also

5    improved occasional delays that were experienced in scanning in and transferring paper copies between

6    institutions.

7    **INTERROGATORY NO. 9:**

8         Describe YOUR understanding of the minimal frequency William Schmitz was monitored

9    by custody staff while William was in the EOP program.

10   **RESPONSE TO INTERROGATORY NO. 9:**

11        Objection. Responding party was and is a psychiatrist and has not ever been employed as a

12   corrections officer at Mule Creek State Prison nor has this defendant been disclosed as a custody

13   expert and was not a custody staff member and thus is unable to respond to the interrogatory.

14   **INTERROGATORY NO. 10:**

15        Define YOUR understanding of the minimal frequency William Schmitz was monitored by

16   custody staff once William was moved to the CCCMS program.

17   **RESPONSE TO INTERROGATORY NO. 10:**

18        Objection. Responding party was and is a psychiatrist and has not ever been employed as a

19   corrections officer at Mule Creek State Prison nor has this defendant been disclosed as a custody

20   expert and was not a custody staff member and thus is unable to respond to the interrogatory.

21   **INTERROGATORY NO. 11:**

22        Do YOU feel that YOU at all times had enough resources to adequately care for the number

23   of mentally ill patients that YOU were required to treat at MCSP?

24   **RESPONSE TO INTERROGATORY NO. 11:**

25        Objection. The interrogatory is overbroad as to time and scope. The interrogatory seeks

26   information that is irrelevant and not likely to lead to admissible evidence or evidence proportional

27   to the needs of this case. The interrogatory is vague and ambiguous as to "resources" and

28   "adequately care." Defendant further objects to that this interrogatory as it seeks a premature expert

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

DEFT DR. ADAMS' RK TO PLAINTIFF'S      6
SPECIAL INTERROGATORIES, SET ONE

1  opinion. Subject to and without waving said objections, defendant responds: Yes, as to my time as

2  a staff psychiatrist.

3  **INTERROGATORY NO. 12:**

4       In 2015, psychiatrist Dr. Thomas Haspel noted Clozapine "is a very important medication

5  for this patient as he has struggled for over 9 years with [auditory hallucinations] and ideas of

6  reference, so preservation of a therapeutic level is essential." Were you aware of William's positive

7  response to Clozapine as documented by Dr. Haspel and several others in 2014 and 2015?

8  **RESPONSE TO INTERROGATORY NO. 12:**

9       Objection. The interrogatory is vague and ambiguous as to time. The interrogatory is vague

10 and ambiguous as to "positive response." Defendant objects to the extent this interrogatory asks

11 this defendant to interpret or comment or the progresses notes of other treating physicians and this

12 defendant has not been disclosed as an expert in this case. Subject and without waving said

13 objections, defendant responds: Defendant is unable to recollect whether in the course of reviewing

14 the chart in 2017 he specifically reviewed a note by Dr. Haspel from 2015 containing the text cited

15 in the interrogatory.

16 **INTERROGATORY NO. 13:**

17      Identify all documents related to starting an inmate on Clozapine at MCSP in 2015.

18 **RESPONSE TO INTERROGATORY NO. 13:**

19      Objection. The interrogatory is vague and ambiguous and unintelligible as phased.  The

20 request is unduly burdensome and harassing and seeks a premature disclosure of expert opinion, as

21 this defendant did not prescribe Clozapine to William Schmitz. Subject and without waving said

22 objections, defendant responds: Defendant was not employed at MCSP in 2015, and is not aware

23 which documents would be related to starting an inmate on Clozapine at MCSP. Statewide there was

24 (and is) the clozapine care guide. See https://cchcs.ca.gov/wp-content/uploads/sites/60/CG/Clozapine-

25 CG-Summary.pdf .

26 **INTERROGATORY NO. 14:**

27      Identify the date that MCSP changed from paper to electronic medical records system.

28 ///

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

**RESPONSE TO INTERROGATORY NO. 14:**

    Objection. The interrogatory seeks information that is irrelevant and not reasonably

calculated to lead to admissible evidence. Subject to and without waiving said objection,

defendant responds: The "Go-Live" date was 10/31/2017.

**INTERROGATORY NO. 15:**

    Identify all documents YOU provided to the Neutral Expert in *Coleman*.

**RESPONSE TO INTERROGATORY NO. 15:**

    Objection. The interrogatory is vague and ambiguous and seeks information that is

irrelevant and not likely to lead to admissible evidence or evidence proportional to the needs of

this case. Subject to and without waving said objections, defendant responds: Dr. Adams did not

provide any documents to the Neutral Expert in *Coleman*.

Dated:  March 21, 2024                    McNAMARA, AMBACHER, WHEELER,
                                          HIRSIG & GRAY LLP


                              By:  /s/ Maria Zhurnalova-Juppunov
                                   Peter J. Hirsig
                                   Maria Zhurnalova-Juppunov
                                   Daniel R. Mayer
                                   Attorneys for Defendants
                                   ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
                                   BRIZENDINE, BROCKENBOROGH, CEBALLOS,
                                   DIAZ, GIBSON, HEATLEY, J. JOHNSON, R.
                                   JOHNSON, KERNAN, PONCIANO, RAMKUMAR,
                                   REKART, ROBINSON, RUDAS, M. SMITH, C.
                                   SMITH, TIEBROCK, TOCHE and WAINE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

**VERIFICATION**

I, the undersigned, declare that:

I am a Defendant in the above-entitled action; I have read the foregoing **DEFENDANT JACOB ADAMS M.D.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE** and know the contents thereof; the same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March ___19TH___, 2024 at ___EUK GROVE___, California.
                    (Date)                    (City/State)

_____
JACOB ADAMS

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

CERTIFICATE OF SERVICE VIA E-MAIL

I hereby declare that I am a citizen of the United States, am over the age of eighteen years, and not a party to the within action. My electronic notification address is: tami.martin@mcnamaralaw.com.

On this date, I electronically served the foregoing **DEFENDANT JACOB ADAMS' RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE** based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**Attorneys For Plaintiff Pro Per:**

Dianne Mallia
404 Atkinson Street
Roseville, CA 95678

E-Mail: deedamallia@gmail.com

**Attorney for Defendants Kevin Kuich, Joe A. Lizarraga**

Michael A. Terhorst, Sr.
Beeson Terhorst LLP
510 Bercut Drive, Suite V
Sacramento, CA 95811
Phone: 707-301-7504

E-Mail: michael@beesonterhorst.com
        Jeff@beesonterhorst.com
        mercedes@beesonterhorst.com

**Attorneys For Plaintiff in Pro Per:**

Thomas J. Schmitz
404 Atkinson Street
Roseville, CA 95678

E-Mail: tsfoot49@gmail.com

**Attorneys for Defendants Eric Bradley**

Jennifer Nygaard
California Dept. of Justice
Office of the Attorney General
1515 Clay Street, 20th Floor
Oakland, CA 94612
Phone: 510-879-0802
Fax: 510-622-2270
E-Mail: jennifer.nygaard@doj.ca.gov
        jay.goldman@doj.ca.gov
        lucille.santos@doj.ca.gov

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on March 21, 2024 at Pleasant Hill, California.

/s/ Tami Martin
Tami Martin

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998

**EXHIBIT B**

## McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

### ATTORNEYS AT LAW

MARTIN J. AMBACHER
PETER J. HIRSIG
WILMA J. GRAY
NOAH G. BLECHMAN
DENISE BILLUPS-SLONE
NOLAN S. ARMSTRONG
DENISE J. SERRA
PETER W. SEKELICK

JOHN C. ADAMS
MATTHEW P. SULLIVAN
HENRY WILLIAMS III
CHRISTOPHER B. ALLARD
JOSEPH D. O'NEIL
YELENA YAKUBOVA
IAN A. SCHAEFFER

JENNIFER A. STEWART
DANIEL R. MAYER
MARIA M. ZHURNALOVA-JUPPUNOV
SARAH I. PAMA
MONA L. BAUER
ADAM K. TANOUYE
CAITLYN M. HARRIS

JOHN J. SWAFFORD
HENRY J. YANDELL
SCOTT P. THORNE
AEDLER A. ATUTUBO III
COURTNEY P. WERT
NICHOLAS R. NEWMAN
ANGELICA M. BALLEW-CASTILLO

3480 BUSKIRK AVENUE, SUITE 250
PLEASANT HILL, CA 94523

TELEPHONE: (925) 939-5330
FACSIMILE: (925) 939-0203

www.mcnamaralaw.com

SOLANO COUNTY OFFICE
639 KENTUCKY STREET
FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-3998
FACSIMILE: (707) 427-0268

PARTNERS EMERITUS
WILLIAM K. HOUSTON, JR.
DOUGLAS C. McCLURE
ROBERT M. SLATTERY
THOMAS G. BEATTY
GUY D. BORGES
JAMES V. FITZGERALD, III

MICHAEL J. NEY
(Private Mediator)

DANIEL J. McNAMARA
(1923 – 2011)

RICHARD E. DODGE
(1941 – 2000)

THOMAS E. PFALZER
(1946 – 2021)

OF COUNSEL
R. DEWEY WHEELER
JAMES E. ALLEN
ROBERT W. HODGES
DANIEL L SULLIVAN, JR.

June 19, 2024

Maria Zhurnalova-Juppunov
maria.zhurnalova-juppunov@mcnamaralaw.com

**VIA E-MAIL**

Ms. Dianne Mallia
404 Atkinson Street
Roseville , CA 95678

     Re:    <u>**Schmitz v. Asman, et al.**</u>

Good afternoon Ms. Mallia:

     I have reviewed your motion for additional interrogatories. Please consider this our good faith attempt to meet and confer on this issue.

     You seek to propound 35 additional interrogatories to Dr. Ramkumar and 35 additional interrogatories to Dr. Adams. The request is unwarranted, excessive and harassing. You have already indicated that you would be taking the deposition of Dr. Ramkumar and Dr. Adams. (See *Coleman v. California* (E.D.Cal. Feb. 6, 2020, No. 2:18-cv-02497 MCE AC) 2020 U.S.Dist.LEXIS 20682, at *18-19, ["Even under the most liberal interpretation of the discovery rules, plaintiff's motion must be denied. Denial is appropriate for at least two reasons. First, plaintiff's request is extreme; she seeks not one or two or even ten additional interrogatories, but forty — which is fifteen more interrogatories than would be presumptively allowed if this were her first set, and resulting in a total number of interrogatories 2.6 times the presumptive limit. . . Second, and perhaps more importantly, the vast majority of plaintiff's interrogatories can be addressed "from some other source that is more convenient, less burdensome, or less expensive," specifically, deposition testimony."])

R06272019

Ms. Dianne Mallia
June 19, 2024
Page 2

Re:    Schmitz v. Asman, et al.

As to Dr. Ramkumar:

The March 16, 2016 email from Dr. Rivas sending a copy of a medical note already part of the record, three years before decedent died, is completely irrelevant to any claims in this lawsuit. Moreover, having in mind this is an unremarkable email sent 9 years ago, I do not expect Dr. Ramkumar would have any recall about it.

The emails regarding Dr. Ramkumar's learning about the incident where M. Schmitz was seen injecting a substance into his arm as well as the documents about the RVR have been in plaintiff's possession for a few years. The additional produced emails between Dr. Robinson and Dr. Ramkumar do not reveal anything new, except further confirming that both were going above and beyond in the professional care and treatment of Mr. Schmitz.

As to Dr. Adams:

The additionally produced emails about the Invega medication in June 2017 have no relevance to the issues in this case and you have already propounded interrogatories regarding these emails. What they show is that Dr. Adams properly investigated the issue brought to his attention.

As to your footnote: "Of note, the Emails contain the name of defense attorney "Maria Zhurnalova-Juppunov" in the header on many pages. Plaintiff assumes this is an error but the rest of the document is an exact copy of the email communications with redactions made by Defendants and Bates numbering added." –

When I open an email and save it as a pdf, it will have my name on the top of the pdf file. My name is not part of the original email. I usually ask my assistant t redact it, but have omitted to do so here.

While standing on our objections that any additional discovery is unwarranted, in the interest of avoiding further motion practice, we are agreeable to respond to three additional interrogatories for Dr. Ramkumar and Dr. Adams, respectively, in case you believe you have some pertinent questions you need to ask via written discovery.

Very truly yours,

*Maul*

Maria Zhurnalova-Juppunov

MZJ:tlm

cc:    Dr. Thomas J. Schmitz (via email)

EXHIBIT C

1    PETER J. HIRSIG (State Bar No. 197993)
     peter.hirsig@mcnamaralaw.com
2    MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
     maria.zhurnalova-juppunov@mcnamaralaw.com
3    DANIEL R. MAYER (State Bar No. 300077)
     daniel.mayer@mcnamaralaw.com
4    McNAMARA, AMBACHER, WHEELER,
     HIRSIG & GRAY LLP
5    639 Kentucky Street
     Fairfield, CA 94533-5530
6    Telephone: (707) 427-3998
     Facsimile:  (707) 427-0268
7
     Attorneys for Defendants
8    ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
     BRIZENDINE, BROCKENBOROGH, CEBALLOS,
9    HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
     PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
10   M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11                    UNITED STATES DISTRICT COURT

12                    EASTERN DISTRICT OF CALIFORNIA

13

14   Estate of WILLIAM SCHMITZ, deceased,      Case No. 2:20-CV-00195-JAM-CKD
     by and through THOMAS J. SCHMITZ
15   and DIANNE MALLIA, as Successors in      **DEFENDANT AMENDED DIANA**
     Interest; THOMAS SCHMITZ,                **TOCHE'S RESPONSES TO PLAINTIFF'S**
16   Individually; and DIANNE MALLIA,         **SPECIAL INTERROGATORIES, SET**
     Individually,                            **ONE**
17
              Plaintiffs,                      Action Filed:  7/16/2020
18
         vs.
19
     ASMAN et al,
20
              Defendants.
21

22   PROPOUNDING PARTY:     Plaintiff DIANNE MALLIA, individually

23   RESPONDING PARTY:      Defendant DIANA TOCHE

24   SET NUMBER:            ONE

25                    **PRELIMINARY STATEMENT**

26       These responses are made solely for the purpose of this action.  Each response is subject

27   to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

28   all other objections and grounds that would require the exclusion of any statements herein, if any

DEF. TOCHE'S RESPONSES TO PL'S
INTERROGATORIES, SET ONE

1  requests were asked for, or if any statement contained herein were made by a witness present and
2  testifying in court, all of which objections and grounds are reserved and may be interposed at the
3  time of trial.

4      Responding party is responding to all of the requests to the extent that information has
5  become known to her. However, responding party's discovery, investigation, and preparation for
6  trial of this matter has not been completed as of the date of these responses and, therefore,
7  responding party does not purport to state anything more than information currently known and
8  discovered by her.

9      Responding party reserves the right to continue discovery and investigation in this matter
10 regarding facts, witnesses and supporting data. Consequently, to the extent that the requests
11 herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they
12 are responded to fully and so far as information is currently available to responding party; and
13 responding party is not precluded from presenting at trial information discovered after the date of
14 these responses.

15     This Preliminary Statement is incorporated into each and every response set forth below.

16                              **RESPONSES**

17 **AMENDED RESPONSE TO INTERROGATORY NO. 1:**

18     Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,
19 and not reasonably calculated to lead to the discovery of admissible evidence. It also calls for
20 information protected by the attorney-client privilege or attorney work product doctrine. Defendant
21 further objects that the information sought by this interrogatory is clearly already in Plaintiff's
22 possession; see interrogatory #12-15 and 18-20.

23     Subject to and without waiving the foregoing objection, Defendant's duties consist of the
24 following:

25     • Provides leadership for health care.
26     • Attend weekly department Cabinet meetings;
27     • Attend weekly receiver/CCHS executive meetings;
28     • Attend weekly check-ins with direct subordinates;

DEF. TOCHE'S RESPONSES TO PL'S          2
INTERROGATORIES, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1      • Attend weekly scheduled check-ins with the Secretary and each of the other
2      Undersecretaries, as well as engage in regular, unscheduled,
3      meetings/communications with these individuals as part of day-to-day functions;
4      • Attend meetings with the Office of the Inspector General once per month;
5      • Attend formal court coordination meetings once per month;
6      • Attend weekly meetings and engage in other regular, unscheduled,
7      meetings/communications with the Governor's office.

8      Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

9  response as appropriate in the future.

10 **AMENDED RESPONSE TO INTERROGATORY NO. 2:**

11     Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

12 and not reasonably calculated to lead to the discovery of admissible evidence. It also calls for

13 information protected by the attorney-client privilege or attorney work product doctrine.

14     Subject to and without waiving the foregoing objection, Defendant's duties consist of the

15 following:

16     • Attend biweekly meetings, scheduled by the Secretary, and related regular check-
17     ins with the Secretary;
18     • Keep abreast of filings and orders in the *Coleman* matter;
19     • Attend weekly meetings with the Office of Legal Affairs and the Department of
20     Justice;
21     • Attend at least weekly meetings with subject matter experts with CDCR and
22     CCHCS;
23     • Review drafts of CDCR legal filings and responses;
24     • Attend ad hoc meetings related to *Coleman* issues as they arise, including
25     preparation for hearings and the like;
26     • Provide executive direction to subordinates and subject matter experts.

27     Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

28 response as appropriate in the future.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1 **AMENDED RESPONSE TO INTERROGATORY NO. 3:**

2     Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous

3 (including as to time), and not reasonably calculated to lead to the discovery of admissible evidence.

4 It also calls for information protected by the attorney-client privilege or attorney work product

5 doctrine.

6     Subject to and without waiving the foregoing objection, Defendant responds as follows:

7 Defendant receives monthly staffing reports.

8     Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

9 response as appropriate in the future.

10 **AMENDED RESPONSE TO INTERROGATORY NO. 4**

11     Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

12 and not reasonably calculated to lead to the discovery of admissible evidence. It also calls for

13 information protected by the attorney-client privilege or attorney work product doctrine.

14     Subject to and without waiving the foregoing objection, Defendant responds as follows:

15 After a diligent search and reasonable inquiry, Defendant does not recall.

16     Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

17 response as appropriate in the future.

18 **AMENDED RESPONSE TO INTERROGATORY NO. 5**

19     Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous

20 (including as to time), and not reasonably calculated to lead to the discovery of admissible evidence.

21 It also calls for information protected by the attorney-client privilege or attorney work product

22 doctrine.

23     Subject to and without waiving the foregoing objection, Defendant responds as follows:

24 Defendant received email correspondence at various times from Dr. Golding. Defendant also refers

25 Plaintiff to the response(s) of Dr. Golding to Plaintiff's subpoena(s).

26     Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

27 response as appropriate in the future.

28 **AMENDED RESPONSE TO INTERROGATORY NO. 6:**

DEF. TOCHE'S RESPONSES TO PL'S     **4**
INTERROGATORIES, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

2    and not reasonably calculated to lead to the discovery of admissible evidence. It also calls for

3    information protected by the attorney-client privilege or attorney work product doctrine.

4    Subject to and without waiving the foregoing objection, Defendant responds as follows:

5    After a diligent search and reasonable inquiry, Defendant does not recall the identities of

6    responsible persons for the entire period referred to in the interrogatory, and therefore cannot recall

7    any responsive documents.

8    Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

9    response as appropriate in the future.

10   **AMENDED RESPONSE TO INTERROGATORY NO. 7:**

11   Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous

12   (including as to time), and not reasonably calculated to lead to the discovery of admissible evidence.

13   It also calls for information protected by the attorney-client privilege or attorney work product

14   doctrine.

15   Subject to and without waiving the foregoing objection, Defendant responds as follows:

16   The only responsive non-privileged documents would be CDCR's public filings in the *Coleman*

17   matter, which are publicly available and equally available to Plaintiff as to Defendant.

18   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

19   response as appropriate in the future.

20   **AMENDED RESPONSE TO INTERROGATORY NO. 8:**

21   Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous

22   (including as to time), and not reasonably calculated to lead to the discovery of admissible evidence.

23   It also calls for information protected by the attorney-client privilege or attorney work product

24   doctrine.

25   Subject to and without waiving the foregoing objection, Defendant responds as follows:

26   The only responsive non-privileged documents would be CDCR's public filings in the *Coleman*

27   matter, which are publicly available and equally available to Plaintiff as to Defendant.

28   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

1    response as appropriate in the future.

2    **AMENDED RESPONSE TO INTERROGATORY NO. 9:**

3        Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous

4    (including as to time), and not reasonably calculated to lead to the discovery of admissible evidence.

5    It also calls for information protected by the attorney-client privilege or attorney work product

6    doctrine.

7        Subject to and without waiving the foregoing objection, Defendant responds as follows:

8    The only responsive non-privileged documents, if any exist in this specific regard, would be

9    CDCR's public filings in the relevant case(s), which are publicly available and equally available to

10    Plaintiff as to Defendant.

11        Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

12    response as appropriate in the future.

13    **AMENDED RESPONSE TO INTERROGATORY NO. 10:**

14        Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous

15    (including as to time), and not reasonably calculated to lead to the discovery of admissible evidence.

16    It also calls for information protected by the attorney-client privilege or attorney work product

17    doctrine.

18        Subject to and without waiving the foregoing objection, Defendant responds as follows:

19    The only responsive non-privileged documents, if any exist in this specific regard, would be

20    CDCR's public filings in the relevant case(s), which are publicly available and equally available to

21    Plaintiff as to Defendant.

22        Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

23    response as appropriate in the future.

24    **AMENDED RESPONSE TO INTERROGATORY NO. 11:**

25        Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous

26    (including as to time), and not reasonably calculated to lead to the discovery of admissible evidence.

27    It also calls for information protected by the attorney-client privilege or attorney work product

28    doctrine.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    Subject to and without waiving the foregoing objection, Defendant responds as follows:

2    Yes.

3    **AMENDED RESPONSE TO INTERROGATORY NO. 12:**

4    Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous

5    (including as to time), and not reasonably calculated to lead to the discovery of admissible evidence.

6    It also calls for information protected by the attorney-client privilege, physician-patient privilege,

7    or attorney work product doctrine.

8    Subject to and without waiving the foregoing objection, Defendant responds as follows: To

9    the best of Defendant's knowledge, and after a diligent search and reasonable inquiry, no non-

10   privileged documents exist.

11   **AMENDED RESPONSE TO INTERROGATORY NO. 13:**

12   Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous

13   (including as to time), and not reasonably calculated to lead to the discovery of admissible evidence.

14   It also calls for information protected by the attorney-client privilege or attorney work product

15   doctrine.

16   Subject to and without waiving the foregoing objection, Defendant responds as follows:

17   The only responsive non-privileged documents, if any exist in this specific regard, would be

18   CDCR's public filings in the relevant case(s), which are publicly available and equally available to

19   Plaintiff as to Defendant.

20   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

21   response as appropriate in the future.

22   **AMENDED RESPONSE TO INTERROGATORY NO. 14:**

23   Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous

24   (including as to time), and not reasonably calculated to lead to the discovery of admissible evidence.

25   It also calls for information protected by the attorney-client privilege or attorney work product

26   doctrine.

27   Subject to and without waiving the foregoing objection, Defendant responds as follows:

28   The only responsive non-privileged documents, if any exist in this specific regard, would be

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    CDCR's public filings in the relevant case(s), which are publicly available and equally available to

2    Plaintiff as to Defendant.

3         Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

4    response as appropriate in the future.

5    **AMENDED RESPONSE TO INTERROGATORY NO. 15:**

6         Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous

7    (including as to time), and not reasonably calculated to lead to the discovery of admissible evidence.

8    It also calls for information protected by the attorney-client privilege or attorney work product

9    doctrine.

10        Subject to and without waiving the foregoing objection, Defendant responds as follows:

11   The only responsive non-privileged documents, if any exist in this specific regard, would be

12   CDCR's public filings in the relevant case(s), which are publicly available and equally available to

13   Plaintiff as to Defendant.

14        Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

15   response as appropriate in the future.

16   **AMENDED RESPONSE TO INTERROGATORY NO. 16:**

17        Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

18   and not reasonably calculated to lead to the discovery of admissible evidence. It also calls for

19   information protected by the attorney-client privilege or attorney work product doctrine.

20        Subject to and without waiving the foregoing objection, Defendant responds as follows:

21   After a diligent search and reasonable inquiry, Defendant does not recall.

22        Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

23   response as appropriate in the future.

24   **AMENDED RESPONSE TO INTERROGATORY NO. 17:**

25        Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous,

26   and not reasonably calculated to lead to the discovery of admissible evidence. It also calls for

27   information protected by the attorney-client privilege or attorney work product doctrine.

28        Subject to and without waiving the foregoing objection, Defendant responds as follows:

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    After a diligent search and reasonable inquiry, Defendant does not recall.

2    Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

3    response as appropriate in the future.

4    **AMENDED RESPONSE TO INTERROGATORY NO. 18:**

5    Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous

6    (including as to time), and not reasonably calculated to lead to the discovery of admissible evidence.

7    It also calls for information protected by the attorney-client privilege or attorney work product

8    doctrine. This interrogatory also calls for a legal conclusion.

9    Subject to and without waiving the foregoing objection, Defendant responds as follows:

10   The only responsive non-privileged documents, if any exist in this specific regard, would be

11   CDCR's public filings in the relevant case(s), which are publicly available and equally available to

12   Plaintiff as to Defendant.

13   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

14   response as appropriate in the future.

15   **AMENDED RESPONSE TO INTERROGATORY NO. 19:**

16   Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous

17   (including as to time), and not reasonably calculated to lead to the discovery of admissible evidence.

18   It also calls for information protected by the attorney-client privilege or attorney work product

19   doctrine. This interrogatory also calls for a legal conclusion.

20   Subject to and without waiving the foregoing objection, Defendant responds as follows:

21   The only responsive non-privileged documents, if any exist in this specific regard, would be

22   CDCR's public filings in the relevant case(s), which are publicly available and equally available to

23   Plaintiff as to Defendant.

24   Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

25   response as appropriate in the future.

26   **AMENDED RESPONSE TO INTERROGATORY NO. 20:**

27   Objection. This interrogatory is burdensome, oppressive, harassing, vague and ambiguous

28   (including as to time), and not reasonably calculated to lead to the discovery of admissible evidence.

1    It also calls for information protected by the attorney-client privilege or attorney work product

2    doctrine. This interrogatory also calls for a legal conclusion.

3         Subject to and without waiving the foregoing objection, Defendant responds as follows:

4    The only responsive non-privileged documents, if any exist in this specific regard, would be

5    CDCR's public filings in the relevant case(s), which are publicly available and equally available to

6    Plaintiff as to Defendant.

7         Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

8    response as appropriate in the future.

9    Dated: August 2, 2024              MCNAMARA, AMBACHER, WHEELER,
                                        HIRSIG & GRAY LLP

10

11                                     

12                                     By: _____
                                            Peter J. Hirsig
13                                          Maria Zhurnalova-Juppunov
                                            Daniel R. Mayer
14                                          Attorneys for Defendants ADAMS, ANDALUZ,
                                            ASHE, ASMAN, BRANMAN, BRIZENDINE,
15                                          BROCKENBOROGH, CEBALLOS, HEATLEY, J.
                                            JOHNSON, R. JOHNSON, LEIDNER, PONCIANO,
16                                          RAMKUMAR, REKART, ROBINSON, RUDAS, M.
                                            SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

17

18

19

20

21

22

23

24

25

26

27

28

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1    CERTIFICATE OF SERVICE VIA E-MAIL

2        I hereby declare that I am a citizen of the United States, am over the age of eighteen years,

3    and not a party to the within action.    My electronic notification address is:

4    liesl.swartwood@mcnamaralaw.com.

5        On this date, I electronically served the foregoing DEFENDANT DIANA TOCHE'S

6    AMENDED RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

7    E based on a court order or an agreement of the parties to accept service by e-mail or electronic

8    transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below.

9    I did not receive, within a reasonable time after the transmission, any electronic message or other

10    indication that the transmission was unsuccessful.

11    **Attorneys For Plaintiff Pro Per:**        **Attorneys For Plaintiff in Pro Per:**

12    Dianne Mallia                            Thomas J. Schmitz
      404 Atkinson Street                      404 Atkinson Street
13    Roseville, CA 95678                      Roseville, CA 95678

14    E-Mail: deedamallia@gmail.com           E-Mail: tsfoot49@gmail.com

15

16    **Attorney for Defendants Kevin Kuich,**    **Attorneys for Defendant Eric Bradley**
      **Joe A. Lizarraga**
17                                             Jennifer Nygaard
      Michael A. Terhorst, Sr.                 California Dept. of Justice
18    Beeson Terhorst LLP                      Office of the Attorney General
      510 Bercut Drive, Suite V               1515 Clay Street, 20th Floor
19    Sacramento, CA 95811                     Oakland, CA 94612
      Phone: 707-301-7504                     Phone: 510-879-0802
20                                             Fax: 510-622-2270
      E-Mail: michael@beesonterhorst.com      E-Mail: jennifer.nygaard@doj.ca.gov
21    mercedes@beesonterhorst.com             jay.goldman@doj.ca.gov
                                               lucille.santos@doj.ca.gov
22

23        I declare under penalty of perjury under the laws of the United States of America that the

24    foregoing is true and correct and that this declaration was executed on August 2, 2024 at

25    Fairfield, California.

26                                             Angela Ius

27

28

AMENDED RESPONSE TO PLTS' 1ST SET OF
RPD – CASE NO. 2:20-CV-0195 KJM CKD (PS)

1   PETER J. HIRSIG (State Bar No. 197993)
    peter.hirsig@mcnamaralaw.com
2   MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
    maria.zhurnalova-juppunov@mcnamaralaw.com
3   DANIEL R. MAYER (State Bar No. 300077)
    daniel.mayer@mcnamaralaw.com
4   McNAMARA, AMBACHER, WHEELER,
    HIRSIG & GRAY LLP
5   639 Kentucky Street
    Fairfield, CA 94533-5530
6   Telephone: (707) 427-3998
    Facsimile:  (707) 427-0268
7
8   Attorneys for Defendants
    ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
9   BRIZENDINE, BROCKENBOROGH, CEBALLOS,
    HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
10  PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
    M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11                   UNITED STATES DISTRICT COURT

12                  EASTERN DISTRICT OF CALIFORNIA

13

14  Estate of WILLIAM SCHMITZ, deceased,      Case No. 2:20-CV-00195-JAM-CKD
    by and through THOMAS J. SCHMITZ
15  and DIANNE MALLIA, as Successors in       **DEFENDANT DIANA TOCHE'S**
    Interest; THOMAS SCHMITZ,                 **AMENDED RESPONSES TO**
16  Individually; and DIANNE MALLIA,          **PLAINTIFF'S REQUEST FOR**
    Individually,                             **ADMISSION, SET ONE**
17
              Plaintiffs,                     Action Filed:  7/16/2020
18
         vs.
19
    ASMAN et al,
20
              Defendants.
21

22  PROPOUNDING PARTY:   Plaintiff DIANNE MALLIA, individually

23  RESPONDING PARTY:    Defendant DIANE TOCHE

24  SET NUMBER:          ONE

25                       **PRELIMINARY STATEMENT**

26       These responses are made solely for the purpose of this action.  Each response is subject

27  to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

28  all other objections and grounds that would require the exclusion of any statements herein, if any

    DEF. TOCHE'S AMENDED RESPONSES TO
    PL'S REQUEST FOR ADMISSION, SET ONE

*Left margin (vertical text):* McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1   requests were asked for, or if any statement contained herein were made by a witness present and

2   testifying in court, all of which objections and grounds are reserved and may be interposed at the

3   time of trial.

4         Responding party is responding to all of the requests to the extent that information has

5   become known to her. However, responding party's discovery, investigation, and preparation for

6   trial of this matter has not been completed as of the date of these responses and, therefore,

7   responding party does not purport to state anything more than information currently known and

8   discovered by her.

9         Responding party reserves the right to continue discovery and investigation in this matter

10  regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

11  herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

12  are responded to fully and so far as information is currently available to responding party; and

13  responding party is not precluded from presenting at trial information discovered after the date of

14  these responses.

15        This Preliminary Statement is incorporated into each and every response set forth below.

16                                    **RESPONSES**

17  <u>**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 2:**</u>

18        Objection. This request is burdensome, oppressive, harassing, vague (including as to time)

19  and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

20        Subject to and without waiving the foregoing objections, Defendant responds as follows:

21  For the period of May 2014 to 2019, admit.  Discovery remains ongoing, and Defendant reserves

22  the right to amend or supplement this response as appropriate in the future.

23  <u>**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 3:**</u>

24        Objection. This request is burdensome, oppressive, harassing, vague (including as to time)

25  and ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

26        Subject to and without waiving the foregoing objections, Defendant responds as follows:

27  Deny. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

28  response as appropriate in the future.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

DEF. TOCHE'S AMENDED RESPONSES TO          2
PL'S REQUEST FOR ADMISSION, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 4**

2    Objection. This request is burdensome, oppressive, harassing, vague (including as to time)

3    and ambiguous, including as to time, and not reasonably calculated to lead to the discovery of

4    admissible evidence.

5    Subject to and without waiving the foregoing objections, Defendant responds as follows:

6    Defendant denies she was solely responsible. Discovery remains ongoing, and Defendant reserves

7    the right to amend or supplement this response as appropriate in the future.

8    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 5**

9    Objection. This request is unintelligible as phrased, burdensome, oppressive, harassing,

10   vague (including as to time) and ambiguous, including as to time, and not reasonably calculated to

11   lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves

12   the right to amend or supplement this response as appropriate in the future.

13   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

14   Objection. This request is unintelligible, burdensome, oppressive, harassing, vague and

15   ambiguous, including as to time, and not reasonably calculated to lead to the discovery of

16   admissible evidence. This request also calls for a legal conclusion and for expert opinion, the latter

17   of which will be disclosed at the appropriate time pursuant to the Federal Rules of Civil Procedure.

18   Subject to and without waiving the foregoing objections, Defendant responds as follows:

19   Defendant does not have sufficient information to enable her to either admit or deny. Discovery

20   remains ongoing, and Defendant reserves the right to amend or supplement this response as

21   appropriate in the future.

22   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

23   Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

24   including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

25   Subject to and without waiving the foregoing objections, Defendant responds as follows:

26   deny. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

27   response as appropriate in the future.

28   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

DEF. TOCHE'S AMENDED RESPONSES TO          3
PL'S REQUEST FOR ADMISSION, SET ONE

1    Objection. This request is unintelligible as phrased, burdensome, oppressive, harassing,

2    vague (including as to time) and ambiguous, including as to time, and not reasonably calculated to

3    lead to the discovery of admissible evidence. This request also calls for a legal conclusion and for

4    expert opinion, the latter of which will be disclosed at the appropriate time pursuant to the Federal

5    Rules of Civil Procedure.

6    Subject to and without waiving the foregoing objections, Defendant responds as follows:

7    Defendant does not have sufficient information to enable her to either admit or deny. Discovery

8    remains ongoing, and Defendant reserves the right to amend or supplement this response as

9    appropriate in the future.

10   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

11   Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

12   not reasonably calculated to lead to the discovery of admissible evidence. Specifically, this request

13   is vague and ambiguous as to "concerns," as to "scope of practice," as to which "psychiatrists," as

14   to which "psychologists," and vague as to time. This request also calls for a legal conclusion and

15   for expert opinion, the latter of which will be disclosed at the appropriate time pursuant to the

16   Federal Rules of Civil Procedure.

17   Subject to and without waiving the foregoing objections, Defendant is aware that Dr.

18   Golding had such concerns at one time or another. Otherwise, Defendant does not have sufficient

19   information to enable her to either admit or deny. Discovery remains ongoing, and Defendant

20   reserves the right to amend or supplement this response as appropriate in the future.

21   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

22   Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

23   not reasonably calculated to lead to the discovery of admissible evidence. Specifically, this request

24   is vague and ambiguous as to "concerns," as to "scope of practice," as to which "psychiatrists," as

25   to which "psychologists," and vague as to time. This request also calls for a legal conclusion and

26   for expert opinion, the latter of which will be disclosed at the appropriate time pursuant to the

27   Federal Rules of Civil Procedure.

28   Subject to and without waiving the foregoing objections, Defendant does not have sufficient

DEF. TOCHE'S AMENDED RESPONSES TO          4
PL'S REQUEST FOR ADMISSION, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1  information to enable her to either admit or deny. Discovery remains ongoing, and Defendant

2  reserves the right to amend or supplement this response as appropriate in the future.

3  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

4        Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

5  not reasonably calculated to lead to the discovery of admissible evidence. Further, the documents

6  speak for themselves. This request improperly asks for the interpretation of court findings and

7  orders and improperly asks for legal conclusions. This request also calls for expert testimony, which

8  will be disclosed at the appropriate time pursuant to the Federal Rules of Civil Procedure.

9        Subject to and without waiving the foregoing objections, Defendant does not have sufficient

10  information to enable her to either admit or deny. Discovery remains ongoing, and Defendant

11  reserves the right to amend or supplement this response as appropriate in the future.

12  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

13        Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

14  not reasonably calculated to lead to the discovery of admissible evidence. Further, the documents

15  speak for themselves. This request improperly asks for the interpretation of court findings and

16  orders and improperly asks for legal conclusions. This request also calls for expert testimony, which

17  will be disclosed at the appropriate time pursuant to the Federal Rules of Civil Procedure.

18        Subject to and without waiving the foregoing objections, Defendant does not have sufficient

19  information to enable her to either admit or deny. Discovery remains ongoing, and Defendant

20  reserves the right to amend or supplement this response as appropriate in the future.

21  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

22        Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

23  not reasonably calculated to lead to the discovery of admissible evidence.

24        Subject to and without waiving the foregoing objections, Defendant responds as follows:

25  deny. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

26  response as appropriate in the future.

27  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

28        Objection. This request is burdensome, notably overbroad, oppressive, harassing, vague and

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1  ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. The

2  request is argumentative, it assumes facts not in evidence and assumes facts in dispute, and is vague

3  and ambiguous as to "directly depends". The requests also calls for expert testimony, which will

4  be disclosed at the appropriate time pursuant to the Federal Rules of Civil Procedure.

5          Subject to and without waiving the foregoing objections, Defendant responds as follows:

6  Defendant does not have sufficient information to enable her to either admit or deny the request as

7  phrased.

8  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

9          Objection. This request is burdensome, notably overbroad, oppressive, harassing, vague and

10 ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. The

11 request is argumentative, it assumes facts not in evidence and assumes facts in dispute, and is vague

12 and ambiguous as to "directly depends". The request also calls for a legal conclusion and for expert

13 testimony, which will be disclosed at the appropriate time pursuant to the Federal Rules of Civil

14 Procedure.

15         Subject to and without waiving the foregoing objections, Defendant does not have sufficient

16 information to enable her to either admit or deny. Discovery remains ongoing, and Defendant

17 reserves the right to amend or supplement this response as appropriate in the future.

18 **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

19         Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

20 not reasonably calculated to lead to the discovery of admissible evidence. The request is vague and

21 ambiguous as to "constitutional level of mental health care." The request is further argumentative

22 and assumes facts not in evidence and assumes facts in dispute. The request improperly calls for a

23 legal conclusion, and for expert testimony, which will be disclosed at the appropriate time pursuant

24 to the Federal Rules of Civil Procedure.

25         Subject to and without waiving the foregoing objections, Defendant does not have sufficient

26 information to enable her to either admit or deny. Discovery remains ongoing, and Defendant

27 reserves the right to amend or supplement this response as appropriate in the future.

28 **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

2    not reasonably calculated to lead to the discovery of admissible evidence. Defendant objects that

3    the Request is argumentative and assumes facts not in evidence, and assumes facts in dispute.

4    Further, the request is vague and ambiguous as to what is meant by "the Coleman mandates." This

5    request also calls for a legal conclusion and for expert testimony, which will be disclosed at the

6    appropriate time pursuant to the Federal Rules of Civil Procedure.

7        Subject to and without waiving the foregoing objections, Defendant does not have sufficient

8    information to enable her to either admit or deny. Discovery remains ongoing, and Defendant

9    reserves the right to amend or supplement this response as appropriate in the future.

10   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

11       Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,

12   including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.

13   Defendant objects that the Request is argumentative and assumes facts not in evidence, and assumes

14   facts in dispute. Request is vague and ambiguous as to "over rule decisions," to "endangers

15   mentally ill." This request also calls for a legal conclusion and for expert testimony, which will be

16   disclosed at the appropriate time pursuant to the Federal Rules of Civil Procedure.

17       Subject to and without waiving the foregoing objections, Defendant does not have sufficient

18   information to enable her to either admit or deny. Discovery remains ongoing, and Defendant

19   reserves the right to amend or supplement this response as appropriate in the future.

20   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

21       Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

22   not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without

23   waiving the foregoing objection, Defendant responds as follows: Defendant does not have

24   sufficient information to enable her to either admit or deny the request. Discovery remains ongoing,

25   and Defendant reserves the right to amend or supplement this response as appropriate in the future.

26   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

27       Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

28   not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

DEF. TOCHE'S AMENDED RESPONSES TO          7
PL'S REQUEST FOR ADMISSION, SET ONE

1    waiving the foregoing objection, Defendant responds as follows: Defendant does not have
2    sufficient information to enable her to either admit or deny the request. Discovery remains ongoing,
3    and Defendant reserves the right to amend or supplement this response as appropriate in the future.
4    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

5        Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and
6    not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without
7    waiving the foregoing objections, Defendant responds as follows: Deny. Discovery remains
8    ongoing, and Defendant reserves the right to amend or supplement this response as appropriate in
9    the future.

10    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

11        Defendant incorporates by reference as though fully set forth herein her amended response
12    to Request #9.

13    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

14        Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and
15    not reasonably calculated to lead to the discovery of admissible evidence. The request is vague and
16    ambiguous as to "community standards," and to "unable to provide." Further, the request assumes
17    facts not in evidence and assumes facts in dispute, and the request is argumentative as phrased. The
18    request also calls for a legal conclusion and for expert testimony, which will be disclosed at the
19    appropriate time pursuant to the Federal Rules of Civil Procedure.

20        Subject to and without waiving the foregoing objections, Defendant responds as follows:
21    Defendant is aware that Dr. Golding had such concerns at one time or another, but otherwise does
22    not have sufficient information to enable her to either admit or deny. Discovery remains ongoing,
23    ///
24    ///
25    ///
26    ///
27    ///
28    ///

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    and Defendant reserves the right to amend or supplement this response as appropriate in the future.

2

3    Dated:  August 2, 2024                    McNAMARA, AMBACHER, WHEELER,
                                               HIRSIG & GRAY LLP
4

5                                              By: _____
6                                                    Peter J. Hirsig
                                                     Maria Zhurnalova-Juppunov
7                                                    Daniel R. Mayer
                                                     Attorneys for Defendants ADAMS, ANDALUZ,
8                                                    ASHE, ASMAN, BRANMAN, BRIZENDINE,
                                                     BROCKENBOROGH, CEBALLOS, HEATLEY, J.
9                                                    JOHNSON, R. JOHNSON, LEIDNER, PONCIANO,
                                                     RAMKUMAR, REKART, ROBINSON, RUDAS, M.
10                                                   SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF. TOCHE'S AMENDED RESPONSES TO              9
PL'S REQUEST FOR ADMISSION, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL CA 94523
TELEPHONE: (925) 939-5330

## CERTIFICATE OF SERVICE VIA E-MAIL

I hereby declare that I am a citizen of the United States, am over the age of eighteen years, and not a party to the within action. My electronic notification address is: liesl.swartwood@mcnamaralaw.com.

On this date, I electronically served the foregoing **DEFENDANT DIANA TOCHE'S AMENDED RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET ONE** based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**Attorneys For Plaintiff Pro Per:**

Dianne Mallia
404 Atkinson Street
Roseville, CA 95678

E-Mail: deedamallia@gmail.com

**Attorney for Defendants Kevin Kuich, Joe A. Lizarraga**

Michael A. Terhorst, Sr.
Beeson Terhorst LLP
510 Bercut Drive, Suite V
Sacramento, CA 95811
Phone: 707-301-7504

E-Mail: michael@beesonterhorst.com
mercedes@beesonterhorst.com

**Attorneys For Plaintiff in Pro Per:**

Thomas J. Schmitz
404 Atkinson Street
Roseville, CA 95678

E-Mail: tsfoot49@gmail.com

**Attorneys for Defendant Eric Bradley**

Jennifer Nygaard
California Dept. of Justice
Office of the Attorney General
1515 Clay Street, 20th Floor
Oakland, CA 94612
Phone: 510-879-0802
Fax: 510-622-2270
E-Mail: jennifer.nygaard@doj.ca.gov
jay.goldman@doj.ca.gov
lucille.santos@doj.ca.gov

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on August 2, 2024 at Fairfield, California.

Angela Ius

AMENDED RESPONSE TO PLTS' 1ST SET OF
RPD – CASE NO. 2:20-CV-0195 KJM CKD (PS)

1  PETER J. HIRSIG (State Bar No. 197993)
   peter.hirsig@mcnamaralaw.com
2  MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
   maria.zhurnalova-juppunov@mcnamaralaw.com
3  DANIEL R. MAYER (State Bar No. 300077)
   daniel.mayer@mcnamaralaw.com
4  McNAMARA, AMBACHER, WHEELER,
   HIRSIG & GRAY LLP
5  639 Kentucky Street
   Fairfield, CA 94533-5530
6  Telephone: (707) 427-3998
   Facsimile:  (707) 427-0268
7
   Attorneys for Defendants
8  ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
   BRIZENDINE, BROCKENBOROGH, CEBALLOS,
9  HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
   PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
10 M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11                     UNITED STATES DISTRICT COURT

12                     EASTERN DISTRICT OF CALIFORNIA

13

14 Estate of WILLIAM SCHMITZ, deceased,      Case No. 2:20-CV-00195-JAM-CKD
   by and through THOMAS J. SCHMITZ
15 and DIANNE MALLIA, as Successors in       **DEFENDANT DIANA TOCHE'S**
   Interest; THOMAS SCHMITZ,                 **AMENDED RESPONSES TO**
16 Individually; and DIANNE MALLIA,          **PLAINTIFF'S REQUESTS FOR**
   Individually,                             **PRODUCTION OF DOCUMENTS, SET**
17                                           **ONE**
                  Plaintiffs,
18                                           Action Filed:  7/16/2020
              vs.
19
   ASMAN et al,
20
                  Defendants.
21

22 PROPOUNDING PARTY:    Plaintiff DIANNE MALLIA, individually

23 RESPONDING PARTY:     Defendant DIANA TOCHE

24 SET NUMBER:           ONE

25                     **PRELIMINARY STATEMENT**

26      These responses are made solely for the purpose of this action.  Each response is subject

27 to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

28 all other objections and grounds that would require the exclusion of any statements herein, if any

DEF. TOCHE'S AMENDED RESPONSES TO
PL'S REQUEST FOR PRODUCTION, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    requests were asked for, or if any statement contained herein were made by a witness present and

2    testifying in court, all of which objections and grounds are reserved and may be interposed at the

3    time of trial.

4         Responding party is responding to all of the requests to the extent that information has

5    become known to her. However, responding party's discovery, investigation, and preparation for

6    trial of this matter has not been completed as of the date of these responses and, therefore,

7    responding party does not purport to state anything more than information currently known and

8    discovered by her.

9         Responding party reserves the right to continue discovery and investigation in this matter

10   regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

11   herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

12   are responded to fully and so far as information is currently available to responding party; and

13   responding party is not precluded from presenting at trial information discovered after the date of

14   these responses.

15        This Preliminary Statement is incorporated into each and every response set forth below.

16                                 **RESPONSES**

17   **AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

18        Objection. This request is vague, ambiguous, burdensome, harassing, overbroad, and

19   compound. It also calls for information and documents protected by the attorney-client privilege,

20   physician-patient privilege, or attorney work product doctrine.

21        Subject to and without waiving the foregoing objection, Defendant responds as follows:

22   Defendant incorporates by reference as though fully set forth herein her amended responses to

23   Plaintiff's requests for admissions, set one. Otherwise, the only non-privileged responsive

24   documents in Defendant's possession are equally available to Plaintiff as to Defendant, whether

25   because they are public or have already been produced. Discovery remains ongoing, and Defendant

26   reserve the right to amend or supplement this response as appropriate in the future.

27   **AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

28        Objection. This request is vague, ambiguous, burdensome, harassing, overbroad, and

DEF. TOCHE'S AMENDED RESPONSES TO     2
PL'S REQUEST FOR PRODUCTION, SET ONE

1    compound. It also calls for information and documents protected by the attorney-client privilege,

2    physician-patient privilege, or attorney work product doctrine.

3        Subject to and without waiving the foregoing objection, Defendant responds as follows:

4    Defendant incorporates by reference as though fully set forth herein her amended responses to

5    Plaintiff's special interrogatories, set one. Otherwise, the only non-privileged responsive

6    documents in Defendant's possession are equally available to Plaintiff as to Defendant, whether

7    because they are public or have already been produced. Discovery remains ongoing, and Defendant

8    reserve the right to amend or supplement this response as appropriate in the future.

9

10   Dated: August 2, 2024                    MCNAMARA, AMBACHER, WHEELER,
                                               HIRSIG & GRAY LLP
11

12                                            

13   By: _____
                                               Peter J. Hirsig
14                                             Maria Zhurnalova-Juppunov
                                               Daniel R. Mayer
15                                             Attorneys for Defendants ADAMS, ANDALUZ,
                                               ASHE, ASMAN, BRANMAN, BRIZENDINE,
16                                             BROCKENBOROGH, CEBALLOS, HEATLEY, J.
                                               JOHNSON, R. JOHNSON, LEIDNER, PONCIANO,
17                                             RAMKUMAR, REKART, ROBINSON, RUDAS, M.
                                               SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

18

19

20

21

22

23

24

25

26

27

28

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

## CERTIFICATE OF SERVICE VIA E-MAIL

I hereby declare that I am a citizen of the United States, am over the age of eighteen years, and not a party to the within action. My electronic notification address is: liesl.swartwood@mcnamaralaw.com.

On this date, I electronically served the foregoing **DEFENDANT DIANA TOCHE'S AMENDED RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE** based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**Attorneys For Plaintiff Pro Per:**

Dianne Mallia
404 Atkinson Street
Roseville, CA 95678

E-Mail: deedamallia@gmail.com

**Attorneys For Plaintiff in Pro Per:**

Thomas J. Schmitz
404 Atkinson Street
Roseville, CA 95678

E-Mail: tsfoot49@gmail.com

**Attorney for Defendants Kevin Kuich, Joe A. Lizarraga**

Michael A. Terhorst, Sr.
Beeson Terhorst LLP
510 Bercut Drive, Suite V
Sacramento, CA 95811
Phone: 707-301-7504

E-Mail: michael@beesonterhorst.com
mercedes@beesonterhorst.com

**Attorneys for Defendant Eric Bradley**

Jennifer Nygaard
California Dept. of Justice
Office of the Attorney General
1515 Clay Street, 20th Floor
Oakland, CA 94612
Phone: 510-879-0802
Fax: 510-622-2270
E-Mail: jennifer.nygaard@doj.ca.gov
jay.goldman@doj.ca.gov
lucille.santos@doj.ca.gov

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on August 2, 2024 at Fairfield, California.

Angela Ius

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL CA 94523
TELEPHONE: (925) 939-5330

1    PETER J. HIRSIG (State Bar No. 197993)
    peter.hirsig@mcnamaralaw.com

2    MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
    maria.zhurnalova-juppunov@mcnamaralaw.com

3    DANIEL R. MAYER (State Bar No. 300077)
    daniel.mayer@mcnamaralaw.com

4    McNAMARA, AMBACHER, WHEELER,
    HIRSIG & GRAY LLP

5    639 Kentucky Street
    Fairfield, CA 94533-5530

6    Telephone: (707) 427-3998
    Facsimile:  (707) 427-0268

7

8    Attorneys for Defendants
    ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,

9    BRIZENDINE, BROCKENBOROGH, CEBALLOS,
    HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,

10   PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
    M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

11                   UNITED STATES DISTRICT COURT

12                 EASTERN DISTRICT OF CALIFORNIA

13

14   Estate of WILLIAM SCHMITZ, deceased,     Case No. 2:20-CV-00195-JAM-CKD
    by and through THOMAS J. SCHMITZ

15   and DIANNE MALLIA, as Successors in     **DEFENDANT JOHN REKART'S**
    Interest; THOMAS SCHMITZ,            **AMENDED RESPONSES TO**

16   Individually; and DIANNE MALLIA,       **PLAINTIFF'S REQUEST FOR**
    Individually,                      **ADMISSION, SET ONE**

17

18            Plaintiffs,               Action Filed:  7/16/2020

19        vs.

20   ASMAN et al,

21            Defendants.

22   PROPOUNDING PARTY:    Plaintiff DIANNE MALLIA, individually

23   RESPONDING PARTY:      Defendant JOHN REKART

24   SET NUMBER:           ONE

25                      **PRELIMINARY STATEMENT**

26       These responses are made solely for the purpose of this action.  Each response is subject

27   to all objections as to competence, relevance, materiality, propriety, and admissibility and any and

28   all other objections and grounds that would require the exclusion of any statements herein, if any

1    requests were asked for, or if any statement contained herein were made by a witness present and

2    testifying in court, all of which objections and grounds are reserved and may be interposed at the

3    time of trial.

4        Responding party is responding to all of the requests to the extent that information has

5    become known to his. However, responding party's discovery, investigation, and preparation for

6    trial of this matter has not been completed as of the date of these responses and, therefore,

7    responding party does not purport to state anything more than information currently known and

8    discovered by his.

9        Responding party reserves the right to continue discovery and investigation in this matter

10   regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

11   herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

12   are responded to fully and so far as information is currently available to responding party; and

13   responding party is not precluded from presenting at trial information discovered after the date of

14   these responses.

15       This Preliminary Statement is incorporated into each and every response set forth below.

16                                   **RESPONSES**

17   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 5**

18       Objection. This request is unintelligible as phrased, burdensome, oppressive, harassing,

19   vague (including as to time) and ambiguous, including as to time, and not reasonably calculated to

20   lead to the discovery of admissible evidence. Discovery remains ongoing, and Defendant reserves

21   the right to amend or supplement this response as appropriate in the future.

22   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

23       Objection. This request is unintelligible, burdensome, oppressive, harassing, vague and

24   ambiguous, including as to time, and not reasonably calculated to lead to the discovery of

25   admissible evidence. This request also calls for a legal conclusion and for expert opinion, the latter

26   of which will be disclosed at the appropriate time pursuant to the Federal Rules of Civil Procedure.

27       Subject to and without waiving the foregoing objections, Defendant responds as follows:

28   Defendant does not have sufficient information to enable him to either admit or deny. Discovery

DEF. REKART'S AMENDED RESPONSES TO        2
PL'S REQUEST FOR ADMISSION, SET ONE

1  remains ongoing, and Defendant reserves the right to amend or supplement this response as
2  appropriate in the future.

3  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

4      Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,
5  including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.
6  Subject to and without waiving the foregoing objections, Defendant responds as follows: deny.
7  Discovery remains ongoing, and Defendant reserves the right to amend or supplement this response
8  as appropriate in the future.

9  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

10      Objection. This request is unintelligible as phrased, burdensome, oppressive, harassing,
11  vague (including as to time) and ambiguous, including as to time, and not reasonably calculated to
12  lead to the discovery of admissible evidence. This request also calls for a legal conclusion and for
13  expert opinion, the latter of which will be disclosed at the appropriate time pursuant to the Federal
14  Rules of Civil Procedure.

15      Subject to and without waiving the foregoing objections, Defendant responds as follows:
16  Defendant does not have sufficient information to enable his to either admit or deny. Discovery
17  remains ongoing, and Defendant reserves the right to amend or supplement this response as
18  appropriate in the future.

19  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

20      Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and
21  not reasonably calculated to lead to the discovery of admissible evidence. Specifically, this request
22  is vague and ambiguous as to "concerns," as to "scope of practice," as to which "psychiatrists," as
23  to which "psychologists," and vague as to time. This request also calls for a legal conclusion and
24  for expert opinion, the latter of which will be disclosed at the appropriate time pursuant to the
25  Federal Rules of Civil Procedure.

26      Subject to and without waiving the foregoing objections, Defendant is aware that Dr.
27  Golding had such concerns at one time or another. Otherwise, Defendant does not have sufficient
28  information to enable his to either admit or deny. Discovery remains ongoing, and Defendant

DEF. REKART'S AMENDED RESPONSES TO    3
PL'S REQUEST FOR ADMISSION, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    reserves the right to amend or supplement this response as appropriate in the future.

2    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

3        Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

4    not reasonably calculated to lead to the discovery of admissible evidence. Specifically, this request

5    is vague and ambiguous as to "concerns," as to "scope of practice," as to which "psychiatrists," as

6    to which "psychologists," and vague as to time. This request also calls for a legal conclusion and

7    for expert opinion, the latter of which will be disclosed at the appropriate time pursuant to the

8    Federal Rules of Civil Procedure.

9        Subject to and without waiving the foregoing objections, Defendant does not have sufficient

10   information to enable his to either admit or deny. Discovery remains ongoing, and Defendant

11   reserves the right to amend or supplement this response as appropriate in the future.

12   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

13       Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

14   not reasonably calculated to lead to the discovery of admissible evidence. Further, the documents

15   speak for themselves. This request improperly asks for the interpretation of court findings and

16   orders and improperly asks for legal conclusions. This request also calls for expert testimony, which

17   will be disclosed at the appropriate time pursuant to the Federal Rules of Civil Procedure.

18       Subject to and without waiving the foregoing objections, Defendant does not have sufficient

19   information to enable his to either admit or deny. Discovery remains ongoing, and Defendant

20   reserves the right to amend or supplement this response as appropriate in the future.

21   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

22       Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

23   not reasonably calculated to lead to the discovery of admissible evidence. Further, the documents

24   speak for themselves. This request improperly asks for the interpretation of court findings and

25   orders and improperly asks for legal conclusions. This request also calls for expert testimony, which

26   will be disclosed at the appropriate time pursuant to the Federal Rules of Civil Procedure.

27       Subject to and without waiving the foregoing objections, Defendant does not have sufficient

28   information to enable his to either admit or deny. Discovery remains ongoing, and Defendant

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    reserves the right to amend or supplement this response as appropriate in the future.

2    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

3    Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

4    not reasonably calculated to lead to the discovery of admissible evidence.

5    Subject to and without waiving the foregoing objections, Defendant responds as follows:

6    deny. Discovery remains ongoing, and Defendant reserves the right to amend or supplement this

7    response as appropriate in the future.

8    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

9    Objection. This request is burdensome, notably overbroad, oppressive, harassing, vague and

10   ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. The

11   request is argumentative, it assumes facts not in evidence and assumes facts in dispute, and is vague

12   and ambiguous as to "directly depends". The request also calls for expert testimony, which will be

13   disclosed at the appropriate time pursuant to the Federal Rules of Civil Procedure.

14   Subject to and without waiving the foregoing objections, Defendant responds as follows:

15   Defendant does not have sufficient information to enable his to either admit or deny the request as

16   phrased.

17   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

18   Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

19   not reasonably calculated to lead to the discovery of admissible evidence. The request is vague and

20   ambiguous as to "constitutional level of mental health care." The request is further argumentative

21   and assumes facts not in evidence and assumes facts in dispute. The request improperly calls for a

22   legal conclusion, and for expert testimony, which will be disclosed at the appropriate time pursuant

23   to the Federal Rules of Civil Procedure.

24   Subject to and without waiving the foregoing objections, Defendant does not have sufficient

25   information to enable his to either admit or deny. Discovery remains ongoing, and Defendant

26   reserves the right to amend or supplement this response as appropriate in the future.

27   **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

28   Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

DEF. REKART'S AMENDED RESPONSES TO          5
PL'S REQUEST FOR ADMISSION, SET ONE

1  not reasonably calculated to lead to the discovery of admissible evidence. Defendant objects that
2  the Request is argumentative and assumes facts not in evidence, and assumes facts in dispute.
3  Further, the request is vague and ambiguous as to what is meant by "the Coleman mandates." This
4  request also calls for a legal conclusion and for expert testimony, which will be disclosed at the
5  appropriate time pursuant to the Federal Rules of Civil Procedure.

6       Subject to and without waiving the foregoing objections, Defendant does not have sufficient
7  information to enable his to either admit or deny. Discovery remains ongoing, and Defendant
8  reserves the right to amend or supplement this response as appropriate in the future.

9  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

10       Objection. This request is burdensome, oppressive, harassing, vague and ambiguous,
11  including as to time, and not reasonably calculated to lead to the discovery of admissible evidence.
12  Defendant objects that the Request is argumentative and assumes facts not in evidence, and assumes
13  facts in dispute. Request is vague and ambiguous as to "over rule decisions," to "endangers
14  mentally ill." This request also calls for a legal conclusion and for expert testimony, which will be
15  disclosed at the appropriate time pursuant to the Federal Rules of Civil Procedure.

16       Subject to and without waiving the foregoing objections, Defendant does not have sufficient
17  information to enable his to either admit or deny. Discovery remains ongoing, and Defendant
18  reserves the right to amend or supplement this response as appropriate in the future.

19  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

20       Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and
21  not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without
22  waiving the foregoing objection, Defendant responds as follows: Defendant does not have
23  sufficient information to enable his to either admit or deny the request. Discovery remains ongoing,
24  and Defendant reserves the right to amend or supplement this response as appropriate in the future.

25  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

26       Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and
27  not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without
28  waiving the foregoing objection, Defendant responds as follows: Defendant does not have

DEF. REKART'S AMENDED RESPONSES TO          6
PL'S REQUEST FOR ADMISSION, SET ONE

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1  sufficient information to enable his to either admit or deny the request. Discovery remains ongoing,

2  and Defendant reserves the right to amend or supplement this response as appropriate in the future.

3  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

4      Defendant incorporates by reference as though fully set forth herein his amended response

5  to Request #9.

6  **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

7      Objection. This request is burdensome, oppressive, harassing, vague and ambiguous, and

8  not reasonably calculated to lead to the discovery of admissible evidence. The request is vague and

9  ambiguous as to "community standards," and to "unable to provide." Further, the request assumes

10  facts not in evidence and assumes facts in dispute, and the request is argumentative as phrased. The

11  request also calls for a legal conclusion and for expert testimony, which will be disclosed at the

12  appropriate time pursuant to the Federal Rules of Civil Procedure.

13      Subject to and without waiving the foregoing objections, Defendant responds as follows:

14  Defendant is aware that Dr. Golding had such concerns at one time or another, but otherwise does

15  not have sufficient information to enable his to either admit or deny. Discovery remains ongoing,

16  and Defendant reserves the right to amend or supplement this response as appropriate in

17

18  Dated: August 2, 2024        MCNAMARA, AMBACHER, WHEELER,
                                   HIRSIG & GRAY LLP

19

20                              
                               By: _____

21                                  Peter J. Hirsig
                                    Maria Zhurnalova-Juppunov

22                                  Daniel R. Mayer
                                    Attorneys for Defendants ADAMS, ANDALUZ,

23                                  ASHE, ASMAN, BRANMAN, BRIZENDINE,
                                    BROCKENBOROGH, CEBALLOS, HEATLEY, J.

24                                  JOHNSON, R. JOHNSON, LEIDNER, PONCIANO,
                                    RAMKUMAR, REKART, ROBINSON, RUDAS, M.

25                                  SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

26

27

28

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1

## CERTIFICATE OF SERVICE VIA E-MAIL

2      I hereby declare that I am a citizen of the United States, am over the age of eighteen years,

3  and not a party to the within action.   My electronic notification address is:

4  liesl.swartwood@mcnamaralaw.com.

5      On this date, I electronically served the foregoing **DEFENDANT JOHN REKART'S**

6  **AMENDED RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET ONE**

7  based on a court order or an agreement of the parties to accept service by e-mail or electronic

8  transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below.

9  I did not receive, within a reasonable time after the transmission, any electronic message or other

10  indication that the transmission was unsuccessful.

11  **Attorneys For Plaintiff Pro Per:**            **Attorneys For Plaintiff in Pro Per:**

12  Dianne Mallia                                    Thomas J. Schmitz
    404 Atkinson Street                              404 Atkinson Street
13  Roseville, CA 95678                              Roseville, CA 95678

14  E-Mail: deediamallia@gmail.com                   E-Mail: tsfoot49@gmail.com

15

16  **Attorney for Defendants Kevin Kulch,**         **Attorneys for Defendant Eric Bradley**
    **Joe A. Lizarraga**
                                                     Jennifer Nygaard
17  Michael A. Terhorst, Sr.                         California Dept. of Justice
    Beeson Terhorst LLP                              Office of the Attorney General
18  510 Bercut Drive, Suite V                        1515 Clay Street, 20th Floor
    Sacramento, CA 95811                             Oakland, CA 94612
19  Phone: 707-301-7504                              Phone: 510-879-0802
                                                     Fax: 510-622-2270
20  E-Mail: michael@beesonterhorst.com               E-Mail: jennifer.nygaard@doj.ca.gov
           mercedes@beesonterhorst.com                       jay.goldman@doj.ca.gov
21                                                           lucille.santos@doj.ca.gov

22      I declare under penalty of perjury under the laws of the United States of America that the

23  foregoing is true and correct and that this declaration was executed on August 2, 2024 at

24  Fairfield, California.

25                                           Angela Ius

26

27

28

AMENDED RESPONSE TO PLTS' 1ST SET OF
RPD – CASE NO. 2:20-CV-0195 KJM CKD (PS)

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BURKISE AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

PETER J. HIRSIG (State Bar No. 197993)
peter.hirsig@mcnamaralaw.com
MARIA ZHURNALOVA-JUPPUNOV (State Bar No. 319004)
maria.zhurnalova-juppunov@mcnamaralaw.com
DANIEL R. MAYER (State Bar No. 300077)
daniel.mayer@mcnamaralaw.com
McNAMARA, AMBACHER, WHEELER,
HIRSIG & GRAY LLP
639 Kentucky Street
Fairfield, CA 94533-5530
Telephone: (707) 427-3998
Facsimile:  (707) 427-0268

Attorneys for Defendants
ADAMS, ANDALUZ, ASHE, ASMAN, BRANMAN,
BRIZENDINE, BROCKENBOROGH, CEBALLOS,
HEATLEY, J. JOHNSON, R. JOHNSON, LEIDNER,
PONCIANO, RAMKUMAR, REKART, ROBINSON, RUDAS,
M. SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Estate of WILLIAM SCHMITZ, deceased, by and through THOMAS J. SCHMITZ and DIANNE MALLIA, as Successors in Interest; THOMAS SCHMITZ, Individually; and DIANNE MALLIA, Individually, <br><br> Plaintiffs, <br><br> vs. <br><br> ASMAN et al, <br><br> Defendants. | Case No. 2:20-CV-00195-JAM-CKD <br><br> **DEFENDANT JOHN REKART'S AMENDED RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE** <br><br> Action Filed:  7/16/2020 |

PROPOUNDING PARTY:    Plaintiff DIANNE MALLIA, individually

RESPONDING PARTY:    Defendant JOHN REKART

SET NUMBER:        ONE

## PRELIMINARY STATEMENT

These responses are made solely for the purpose of this action.  Each response is subject to all objections as to competence, relevance, materiality, propriety, and admissibility and any and all other objections and grounds that would require the exclusion of any statements herein, if any

DEF. REKART'S AMENDED RESPONSES TO
PL'S REQUEST FOR PRODUCTION, SET ONE

1    requests were asked for, or if any statement contained herein were made by a witness present and

2    testifying in court, all of which objections and grounds are reserved and may be interposed at the

3    time of trial.

4           Responding party is responding to all of the requests to the extent that information has

5    become known to her. However, responding party's discovery, investigation, and preparation for

6    trial of this matter has not been completed as of the date of these responses and, therefore,

7    responding party does not purport to state anything more than information currently known and

8    discovered by her.

9           Responding party reserves the right to continue discovery and investigation in this matter

10   regarding facts, witnesses and supporting data. Consequently, to the extent that the requests

11   herein ask for "all facts" or the names of "all persons" or the identity of "all documents," etc., they

12   are responded to fully and so far as information is currently available to responding party; and

13   responding party is not precluded from presenting at trial information discovered after the date of

14   these responses.

15          This Preliminary Statement is incorporated into each and every response set forth below.

16                       **RESPONSES**

17   **AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

18          Objection. This request is vague, ambiguous, burdensome, harassing, overbroad, and

19   compound. It also calls for information and documents protected by the attorney-client privilege,

20   physician-patient privilege, or attorney work product doctrine.

21          Subject to and without waiving the foregoing objection, Defendant responds as follows:

22   Defendant incorporates by reference as though fully set forth herein her amended responses to

23   Plaintiff's requests for admissions, set one. Otherwise, the only non-privileged responsive

24   documents in Defendant's possession are equally available to Plaintiff as to Defendant, whether

25   because they are public or have already been produced. Discovery remains ongoing, and Defendant

26   reserve the right to amend or supplement this response as appropriate in the future.

27   **AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

28          Objection. This request is vague, ambiguous, burdensome, harassing, overbroad, and

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
639 KENTUCKY STREET, FAIRFIELD, CA 94533-5530
TELEPHONE: (707) 427-0268

1    compound. It also calls for information and documents protected by the attorney-client privilege,

2    physician-patient privilege, or attorney work product doctrine.

3         Subject to and without waiving the foregoing objection, Defendant responds as follows:

4    Defendant incorporates by reference as though fully set forth herein her amended responses to

5    Plaintiff's special interrogatories, set one. Otherwise, the only non-privileged responsive

6    documents in Defendant's possession are equally available to Plaintiff as to Defendant, whether

7    because they are public or have already been produced. Discovery remains ongoing, and Defendant

8    reserve the right to amend or supplement this response as appropriate in the future.

9

10   Dated: August 2, 2024              McNAMARA, AMBACHER, WHEELER,
                                        HIRSIG & GRAY LLP

11

12                                      

13                                      By: _____
                                          Peter J. Hirsig

14                                        Maria Zhurnalova-Juppunov
                                          Daniel R. Mayer

15                                        Attorneys for Defendants ADAMS, ANDALUZ,
                                          ASHE, ASMAN, BRANMAN, BRIZENDINE,

16                                        BROCKENBOROGH, CEBALLOS, HEATLEY, J.
                                          JOHNSON, R. JOHNSON, LEIDNER, PONCIANO,

17                                        RAMKUMAR, REKART, ROBINSON, RUDAS, M.
                                          SMITH, C. SMITH, TIEBROCK, TOCHE and WAINE

18

19

20

21

22

23

24

25

26

27

28

DEF. REKART'S AMENDED RESPONSES TO            3
PL'S REQUEST FOR PRODUCTION, SET ONE

1

CERTIFICATE OF SERVICE VIA E-MAIL

2        I hereby declare that I am a citizen of the United States, am over the age of eighteen years,

3  and not a party to the within action. My electronic notification address is:

4  liesl.swartwood@mcnamaralaw.com.

5        On this date, I electronically served the foregoing **DEFENDANT JOHN REKART'S**

6  **AMENDED RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF**

7  **DOCUMENTS, SET ONE** based on a court order or an agreement of the parties to accept service

8  by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail

9  addresses listed below. I did not receive, within a reasonable time after the transmission, any

10  electronic message or other indication that the transmission was unsuccessful.

11  **Attorneys For Plaintiff Pro Per:**         **Attorneys For Plaintiff in Pro Per:**

12  Dianne Mallia                        Thomas J. Schmitz
      404 Atkinson Street                  404 Atkinson Street

13  Roseville, CA 95678                 Roseville, CA 95678

14  E-Mail: deedamallia@gmail.com         E-Mail: tsfoot49@gmail.com

15

16  **Attorney for Defendants Kevin Kuich,**   **Attorneys for Defendant Eric Bradley**
      **Joe A. Lizarraga**

17                                          Jennifer Nygaard
      Michael A. Terhorst, Sr.            California Dept. of Justice

18  Beeson Terhorst LLP             Office of the Attorney General
      510 Bercut Drive, Suite V         1515 Clay Street, 20th Floor

19  Sacramento, CA 95811           Oakland, CA 94612
      Phone: 707-301-7504            Phone: 510-879-0802

20                                    Fax: 510-622-2270
      E-Mail: michael@beesonterhorst.com   E-Mail: jennifer.nygaard@doj.ca.gov
             mercedes@beesonterhorst.com       jay.goldman@doj.ca.gov

21                                          lucille.santos@doj.ca.gov

22

23        I declare under penalty of perjury under the laws of the United States of America that the

  foregoing is true and correct and that this declaration was executed on August 2, 2024 at

24

  Fairfield, California.

25

26                                    Angela Ius

27

28

  AMENDED RESPONSE TO PLTS' 1ST SET OF
  RPD – CASE NO. 2:20-CV-0195 KJM CKD (PS)

MCNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BURKISK AVENUE, SUITE 250, PLEASANT HILL CA 94523
TELEPHONE: (925) 939-5330

1  CERTIFICATE OF SERVICE VIA E-MAIL

2      I hereby declare that I am a citizen of the United States, am over the age of eighteen years,

3  and not a party to the within action. My electronic notification address is:

4  taylor.dickson@mcnamaralaw.com.

5      On this date, I electronically served the foregoing **DECLARATION OF MARIA**

6  **ZHURNALOVA-JUPPUNOV IN SUPPORT OF DEFENDANTS' OPPOSITION TO**

7  **PLAINTIFF MALLIA'S MOTION FOR LEAVE TO SERVE ADDITIONAL DISCOVERY**

8  based on a court order or an agreement of the parties to accept service by e-mail or electronic

9  transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below.

10 I did not receive, within a reasonable time after the transmission, any electronic message or other

11 indication that the transmission was unsuccessful.

12 **Attorneys For Plaintiff Pro Per:**       **Attorneys For Plaintiff in Pro Per:**

13 Dianne Mallia                 Thomas J. Schmitz
   404 Atkinson Street             404 Atkinson Street
14 Roseville, CA 95678            Roseville, CA 95678

15 E-Mail: deedamallia@gmail.com      E-Mail: tsfoot49@gmail.com

16 **Attorney for Defendants Kevin Kuich,**  **Attorneys for Defendant Eric Bradley**
   **Joe A. Lizarraga**
17                             Jennifer Nygaard
   Michael A. Terhorst, Sr.         California Dept. of Justice
18 Beeson Terhorst LLP            Office of the Attorney General
   510 Bercut Drive, Suite V       1515 Clay Street, 20th Floor
19 Sacramento, CA 95811         Oakland, CA 94612
   Phone: 707-301-7504          Phone: 510-879-0802
20                             Fax: 510-622-2270
   E-Mail: michael@beesonterhorst.com  E-Mail: jennifer.nygaard@doj.ca.gov
21           mercedes@beesonterhorst.com         jay.goldman@doj.ca.gov
                                 lucille.santos@doj.ca.gov
22

23     I declare under penalty of perjury under the laws of the United States of America that the

24 foregoing is true and correct and that this declaration was executed on August 2, 2024 at

25 Pleasant Hill, California.

26                                          _____
                                         Taylor Dickson

27

28

1  DIANNE MALLIA
2  404 Atkinson St,
   Roseville, CA 95678
3  (530) 828-9143
   deedamallia@gmail.com
4  PRO SE

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF CALIFORNIA

7

8  THOMAS SCHMITZ, et al.,                    NO. 2:20-cv00195-DJC-CKD

9                          Plaintiffs,        PLAINTIFF DIANNE MALLIA'S
                      vs.                     REPLY TO DEFENDANTS'
10 A ASMAN, et al.,                           OPPOSITION TO PLAINTIFF
                                              MALLIA'S MOTION FOR LEAVE
11                                            TO SERVE ADDITIONAL
12                         Defendants.        DISCOVERY ON DEFENDANT
                                              SUJATHA RAMKUMAR, M.D. AND
13                                            JACOB ADAMS, M.D. AND TO
14                                            DETERMINE SUFFICIENCY OF
                                              RESPONSES BY DEFENDANT
15                                            DIANA TOCHE AND JOHN
16                                            REKART

17

18
                                              COMPLAINT FILED: 1/27/2020
19

20

21              I. INTRODUCTION

22      Defendants' Opposition is a series of distracting partial truths aimed to detract from the

23 basic request of responding to Interrogatories that are relevant to the subject matter of this case

24 and allows for potential future interrogatories if Defendants release more piecemeal discovery

25 documents as they have done over the last several years. Adequate responses may save the need

26 for depositions and their associated costs and resource use.

27

28
                                       1
PLAINTIFF DIANNE MALLIA'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF MALLIA'S MOTION FOR LEAVE TO SERVE
ADDITIONAL DISCOVERY ON DEFENDANT SUJATHA RAMKUMAR, M.D. AND JACOB ADAMS, M.D. AND TO DETERMINE
SUFFICIENCY OF RESPONSES BY DEFENDANT DIANA TOCHE AND JOHN REKART

1    Defendants TOCHE and REKART have finally provided amended responses to most, but

2  not all, of the original responses. The sole purpose of the initial insufficient responses was to

3  delay responses compliant with the Fed Rules of Civ Procedure.  Sanctions deemed appropriate

4  by the Court should apply for the *intentional* insufficient responses and unreasonable subsequent

5  delays.

## II. ARGUMENT

### 1. Increase number of interrogatories

8    Defendants try to paint the request for more Interrogatories as a monumental request.[1]

9  Defendants quote rule 26(b)(1) and Plaintiff Mallia feels that she certainly has a right to this

10  discovery when analyzing rule 26 (b) (1):

11    Parties may obtain discovery regarding any nonprivileged matter that is relevant to any
     party's claim or defense and proportional to the needs of the case, considering the
12    importance of the issues at stake in the action, the amount in controversy, the parties'
     relative access to relevant information, the parties' resources, the importance of the
13    discovery in resolving the issues, and whether the burden or expense of the proposed
14    discovery outweighs its likely benefit. Information within this scope of discovery need
     not be admissible in evidence to be discoverable.
15

16    Breaking down this rule into parts and the additional interrogatory requests are certainly

17  warranted.

18    **1. "Considering the importance of the issues at stake".** The issues at stake are that my

19  son, William Schmitz, a mentally ill young man was subjected to a system of mental health care

20  that for decades has inflicted cruel and unusual punishment on vulnerable mentally ill prisoners

21  and still does so today! **William suffered and died in this inept bureaucratic system whose**

22  **leaders actively resist change** and the individual mental health care providers that ignore there

23  hippocratic oath, fail to follow the standard of care and even their own guidelines that are

24  specifically written out in the Program Guide. Tens of thousands of mentally ill individuals are

25  still suffering in CDCR. Obviously the issues at stake are quite high.

26

_____

27  [1] Defendants also lament the amount of discovery already responded to but leave out key information.
    RFA would not have been necessary if they actually responded to the allegations.  The RFPs were the
28  exact same for numerous defendants and only necessary because they would not accept them as a group.

2

1      **2. "The amount in controversy."** The claims surviving against Defendant SUJATHA

2   RAMKUMAR, M.D. include: deliberate indifference to William's serious medical needs;

3   deprivation of familial relationship between William and his parents, including Plaintiff Mallia,

4   and wrongful death. Claims surviving against Defendant JACOB ADAMS, M.D. include:

5   supervisory liability under § 1983, deprivation of familial relationship between William and his

6   parents, including Plaintiff Mallia, and wrongful death. There is no greater pain than the loss of a

7   child and certainly the amount in controversy is great when it is the deliberate indifference of

8   trusted medical doctors, like Defendants Drs. RAMKUMAR and ADAMS, that results in the

9   worsening of mental illness and ultimately death of their patient. Further, if the trier of fact

10   decides punitive damages are warranted, the amount needed to deter the unconstitutional care

11   from continuing in this system propagated by the supervisors and enabled by the individual

12   psychiatrists that treat their patients at a level below a minimal constitutional standard and has

13   not been deterred for decades, even when facing the potential of millions in fines, will have to be

14   quite high.

15      **3. "The parties' relative access to relevant information".**

16   The interrogatories Defendant Dr. ADAMs did not answer are:

17

18      If YOU were aware psychologists were writing physician orders, did YOU consider
      writing physician orders within the psychologist's scope of practice?

19

20      During YOUR time as Acting Chief psychiatrist were YOU aware of psychiatrists writing
      physician orders on patients they had not seen or examined?

21

22      If YOU were aware of psychiatrists writing physician orders on patients they had not
      seen or examined, did YOU consider this within the community standards of practice for

23   psychiatrists to write physician orders on patients they had not seen or examined?

24      Did YOU consider psychologists as "physicians" when you Acting Chief psychiatrist?

25      YOU identify the "Go-Live" date for the change from paper to electronic medical records
      system at MCSP as 10/31/2017. After this date, how were the medical records that were

26   created prior to the 10/31/2017 "go-live" date accessible to providers?

27

28      From RFA 3 and RFA 6: I identify all documents show how You "worked diligently

<center>3</center>

within the limits of YOUR position to improve staffing and retention." For example all written communications with supervisors.

ON 8/3/2017- You report William was last seen on 6/1/2017, why did YOU evaluate William and not his primary psychiatrist. Why was there a 2 month gap from his last psychiatrist visit?

**The interrogatories Defendant Dr. RAMKUMAR did not answer are:**

On 3/7/2018, was it YOUR normal custom and practice to discuss hydration in preference to completing an examination?

If YOU did complete everything YOU document in the "Plan/disposition" section on 3/7/2018, at what point during YOUR appointment with William did YOU discuss adequate hydration?

When YOU did not have a follow-up appointment with William two weeks after 3/7/18 were YOU aware he did not have an appointment?

When YOU signed results for William Schmitz on 10/18/2014, why were YOU signing these results?

During YOUR time as William's Primary psychiatrist in 2018, William was required to have monthly random drug testing, was this ever discussed at an IDTT?

Why was William Schmitz not subjected to disciplinary action under CCR 3323(h)(5) for refusal to do Urine Drug test on 2/6/2018?

Under CCR 3315(f)(4)(C) William's refusal to do a urine drug test should have resulted in the issuance of an RVR and a new mandatory drug testing order, why did this not occur?

**Obviously Defendant Dr. Adams and Dr. Ramkumar, have the access to information to answer these while plaintiff Mallia does not.**

### 4. "the parties' resources"

Plaintiff Mallia believes that **Defendants have nearly unlimited resources** and believes these resources are the very reason CDCR defendants have been able for decades to litigate in the federal courts and fail to comply with *Coleman*. The resource disparity serves as the great deterrent to attorneys wanting to take on cases of obvious merit against CDCR for the mentally

PLAINTIFF DIANNE MALLIA'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF MALLIA'S MOTION FOR LEAVE TO SERVE ADDITIONAL DISCOVERY ON DEFENDANT SUJIATHA RAMKUMAR, M.D. AND JACOB ADAMS, M.D. AND TO DETERMINE SUFFICIENCY OF RESPONSES BY DEFENDANT DIANA TOCHE AND JOHN REKART

1   ill individuals that are suffering and sometimes dying due to the deliberate failure to provide

2   constitutional level of care. In this current case, defendants certainly have the resources to

3   respond to more interrogatories.

4

5       5. **"The importance of the discovery in resolving the issues"**

6           The interrogatories are relevant and important in helping to resolve the roles Defendants

7   RAMKUMAR and Defendant Dr. ADAMS played in allowing William to return to a psychotic

8   state through the systemic poor communication, poor individual care and customs of knowingly

9   cutting corners, like allowing psychologists to practice medicine and simply copying and pasting

10  the same information into charts, with a disregard to the danger it created to William's mental

11  health.

12      **a. Resolving issues with Defendant Dr. ADAMS.**

13          Although Defendants' Opposition cites Discovery answers and the Declaration of

14  Attorney Zhurnalova-Juppunov to try to justify that further interrogatories are not relevant, **the**

15  **facts cited do not accurately capture the truth!**[2]  For example, Opposition claims

16  "Again, Dr. Adams has responded to extensive written discovery that is way out of proportion to

17  the limited role he had as treating physician of decedent – one single visit that is not at issue in

18  this lawsuit, **as well as the limited period of time he was acting chief psychiatrist - 04/01/2017 to**

19  07/31/2017." (Opposition at 8)

20          Even the basic claim of a "limited role" as a treating physician of William with just "one

21  single visit", is **very problematic, not only from attempting to persuade the Court with**

22  **inaccurate information,** but also reveals the below standard of care, corner-cutting, taken in

23  William's case as is routine in the treatment of mentally ill in CDCR. Specifically, although there

24

25

26

27  [2] This is not a motion for summary judgment and Plaintiff does not believe full arguments should be made
    outlying in detail the case against these Defendants. Rather, the motion is simply trying to acquire the
28  information relevant to this case.

PLAINTIFF DIANNE MALLIA'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF MALLIA'S MOTION FOR LEAVE TO SERVE
ADDITIONAL DISCOVERY ON DEFENDANT SUJATHA RAMKUMAR, M.D. AND JACOB ADAMS, M.D. AND TO DETERMINE
SUFFICIENCY OF RESPONSES BY DEFENDANT DIANA TOCHE AND JOHN REKART

1     are still obviously **medical records missing, like the entirety of 2010[3], the record shows that**

2     **despite Defendant Dr. ADAMS claim that he was only William's treating visit for a single**

3     **visit Defendant Dr. ADAMS was actually the admitting physician for William for suicidal**

4     **ideation with an admitting diagnosis of Bipolar Disorder, Not otherwise Specified on May**

5     **12, 2017.[4]** (Mallia Declaration Exhibit A DEF116215) Further, the medical admission lists

6     ESLD, the acronym for End Stage Liver disease, a **potentially fatal disease that William never**

7     **actually had** and caused an unnecessary stress and worsening of his mental illness. William was

8     admitted for 4 days.

9        Not only was Defendant Dr. Adams the admitting physician for William during this 4 day

10     admission for Suicidal ideation, it was also during Defendant Dr. Adams time as the acting chief

11     psychiatrist. A stark example of cutting corners due to understaffing of psychiatrists, and

12     allowing non-physicians to practice medicine, are the "Physician's orders" signed by a

13     psychologist for this admission. (Mallia declaration Exhibit A DEF119141) Defendant Dr.

14     Adams, as both the admitting physician for William for this suicidal crisis and the acting Chief

15     Psychiatrist, should have been aware of this practice of allowing non-physicians to practice

16     medicine which is immoral, illegal and endangers mentally ill. The interrogatories are relevant.

17        **Less than one month after Defendant Dr. ADAMS was the admitting physician for**

18     **William's mental health crisis, he documented his conversation with Dr. Joseph Schmitz**

19     **claiming that he had "not actually seen or examined" William.** Specifically, on June 8, 2017,

20     Dr. Adams documented the following as a Interdisciplinary Progress Notes (Mallia declaration

21     Exhibit A DEF119460):

22        Psychiatry Progress Note: Non-clinical Contact:

23

24

25

    _____

26     [3] The medical records received in discovery are mostly in triplicate and all in different haphazard organization making it very difficult to sort, but, to the best of Plaintiff Mallia's ability to sort the records

27     there seems to be at least the entirety of 2010 missing. **Defendants were years ago ordered by this Court to turn over all of William's medical records.**

28     [4] Unless there was another "Dr. Adams" working at Mule Creek State Prison at the same time.

PLAINTIFF DIANNE MALLIA'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF MALLIA'S MOTION FOR LEAVE TO SERVE
ADDITIONAL DISCOVERY ON DEFENDANT SUJATHA RAMKUMAR, M.D. AND JACOB ADAMS, M.D. AND TO DETERMINE
SUFFICIENCY OF RESPONSES BY DEFENDANT DIANA TOCHE AND JOHN REKART

**The patient has an active ROI[5] for Joseph Schmitz located in the EUHR.**
As a result of an email regarding a family concern that this patient may not have been
receiving paliperidone 06/02/17-06/04/17 I called Joseph Schmitz and received a call
back at about 1400 hours. I provided him with the update that Dr. J. Johnson had
renewed the patient's paliperidone 06/01/17 prior to the expiration date of 06/15/17.
I gave him an update on the current status of the patient based on recent chart notes
and a brief discussion with his assigned staff psychiatrist Dr. Johnson. I updated him
that at this time there is a non-formulary approval for paliperidone. He asked about
the patient's recent crisis bed admission and I briefly reviewed that as well. He
mentioned the patient's arachnoid cyst and his concerns that this might be a part of
the patient's mental health symptoms. **I related to him that based on my review and
role as acting chief psychiatrist that I have not actually seen or examined the patient**
but that the notes indicate that both the mental health and primary care teams are
aware of the patient's arachnoid cyst and the mental health and somatic concerns that
the patient and his family have related to it.  (Emphasis added)

**Clearly, for Defendant Dr. Adams to not actually seen or examine William despite
being the admitting physician for William for a mental health crisis of suicidal ideation is
not standard of care.**

On August 3, 2017, Defendant Dr. Adams evaluated William. William's Identifying data
included his primary diagnosis of Bipolar disorder with psychotic features and his medications
included Invega, an antipsychotic medication, Zoloft, an antidepressant, and topamax, a mood
stabilizer. There is no indication that Defendant Dr. Adams reviewed William's medical record.
William was not previously diagnosed with a personality disorder and had been seen by
numerous psychiatrists including  a psychiatric hospitalization prior to his incarceration.

The last Interdisciplinary Treatment Team (IDTT) meeting prior to Defendant Dr. Adams
visit was on 5/25/2017. (Mallia declaration, Exhibit A DEF116768 -116777) The diagnoses of
the IDTT was consistent with the long standing diagnoses for William and included Axis 1
assessment of  Schizoaffective Disorder, bipolar type and Polysubstance Dependence, in a
Controlled Environment and **No diagnosis on Axis 2, in other words no personality disorder**.

**In addition to the numerous previous psychiatrists not diagnosing a personality
disorder,** William's medical record included a history consistent with developing a severe mental

---

[5] ROI means release of information. William had repeatedly signed documents allowing his medical
information to be discussed with his older brother, a physician.

1    illness and not a personality disorder. **He was doing well in life, working as a California**

2    **Department of Forestry firefighter and attending college when he first developed paranoid**

3    **delusions. There is an absence of conduct disorder as a child and teen.** Still, despite that

4    history available in his record and the availability of collateral information from his family,

5    Defendant J Adams decided either to not review the chart or to ignore the information and not

6    seek collateral information. Then, based on the one brief meeting, decide that William presents as

7    primarily a personality disorder, with borderline and antisocial features. Defendant Dr. Adams

8    did note that symptoms could be masked by current treatment, which included antipsychotic

9    medication. Still, the flippant wrong diagnoses and classification as a personality disorder set a

10   dangerous precedence going forward. A personality disorder is not primarily treated with

11   antipsychotic medications and would not have the same deleterious effects as stopping

12   antipsychotic medications would in a person with a serious mental illness like William.

13   Tragically, this was demonstrated in William when his Clozaril was stopped when he developed

14   hepatitis prior to seeing Defendant Dr. Adams and then when he stopped in the months prior to

15   his death under the tragically wrong impression that the antipsychotics were not effective for

16   him.

17            Further, the unanswered interrogatories to Defendant Dr. ADAMS relate to the

18   dangerous short cuts taking place in the care of William that have been proven long-standing

19   customs in CDCR mental health care and were also propagated by Defendant Dr. ADAMS in the

20   care of William during his time as acting Chief of Psychiatry. As an example, during Defendant

21   Dr. ADAMS time as acting Chief of Psychiatry, William had three Interdisciplinary Treatment

22   Team (IDTT) meetings that lacked a psychiatrist altogether. These were on 4/20/2017,

23   5/16/2017, and 5/25/2017. (Mallia Declaration Exhibit A DEF116774, DEF116720,

24   DEF116787 ). Per the Program Guide the treating psychiatrist was a required IDTT member and

25   the IDTT had the responsibility of overall treatment planning. The recurrent psychiatrist

26   absences were in no doubt due to understaffing and the failure of leadership, like Defendant Dr.

27   ADAMS, to enforce a critical component required by the Program Guide and resulted in William

28

1   suffering.  The recurrent absences and lack of continuity led to the loss of critical information

2   and the various mental health providers not providing the proper treatment for William and his

3   serious mental illness.

4         **b. Resolving issues with Defendant Dr. RAMKUMAR.**

5         There was repeated copy and paste of information by Defendant Dr. RAMKUMAR in

6   William's record years apart, despite not remembering she previously treated William. Also the

7   **same information in another patient whose name was unbelievably, simply crossed out and**

8   **replaced with William and remained in William's record for years!** (Mallia Declaration

9   Exhibit B DEF117101-DEF117102) One of the generic items she entered in her notes was "Diet

10  and Exercise Adequate Hydration  Sleep Hygiene was discussed"  It is important to establish if

11  Defendant Dr. RAMKUMAR was actually completing everything she recorded in her notes to

12  establish the accuracy of the medical record and her integrity. Given the custom within CDCR of

13  frequent changes in mental health care providers and the absence of psychiatrists at IDTTs which

14  limited communication,  the accuracy of the medical record is even more important than in an

15  otherwise adequate system managing mentally ill individuals. Using emails, instead of the

16  communications section of the electronic medical record, and then excluding the emails from the

17  medical record further deteriorates an accurate medical history and negatively effects the ability

18  of the future, frequently changing, mental health providers to provide care.

19        The knowledge and actions of Defendant Dr. RAMKUMAR in regards to William being

20  caught injecting his own antipsychotic medication and receiving a rules violation report which

21  required monthly urine drug testing is vital information. William had a well-established history

22  of mental illness and poly substance dependence when not adequately treated with antipsychotic

23  medications. Defendant Dr. RAMKUMAR was William's primary treating psychiatrist at this

24  time. William did not have the monthly testing and defendant Dr. RAMKUMAR's knowledge

25  and actions or lack of action is an important issue. If William received standard of care treatment

26  from Defendant Dr. RAMKUMAR he would be alive today.

27

28

In October 2014, Defendant Dr. RAMKUMAR signed results for William. (Mallia Declaration Exhibit A DEF116597-116598) It is unclear why she was signing these results for William. Was she William's treating psychiatrist at that time or was she simply filling a random task for patients that she was not treating due to the under staffing of MCSP? Further, on 3/7/2018 she ordered a two week follow-up for William but this was not completed. This is important because repeatedly there were missed appointments or delays in care with no explanation, a loss of continuity of care and prolongation of serious mental illness symptoms like mania, auditory hallucinations and paranoia.

## 2. Sanctions for Defendants Toche and Rekart

Opposition does not dispute that the original answers were not in good faith and were objections willfully served only to delay.[6] As indicated by attorney Daniel Mayer and included in the Motion as Exhibit B at 1, "We would request an extension of one additional month, considering the holiday, on these to January 15, 2023. If you are unable to grant the extension, **we will need to respond to discovery with objections only,** for the time being, with the understanding that we will be completing them as soon as practicable and amending/ supplementing at the appropriate time." **This was done in bad faith and an alternative to seeking an extension through the Court.**

_____

[6] Opposition attempts to paint a picture of extreme compliance with discovery requests. **However, the true history of the discovery is not as painted in opposition.** Reply will not address in detail due to respect for the court's time and it is not significant to the issue at hand, which is deliberately providing insufficient discovery responses. Briefly, the number of RFPs are due to Defendants insistence that the RFPs were provided individually to each defendant rather than as a group as initially attempted by pro se plaintiffs. This created a **duplication** of efforts and exponentially increased the number of total requests which were basically identical requests for Defendants individually. Additionally, the number of RFAs were due to the failure of Defendants to admit or deny specific allegations in the complaint even though the allegations were directly from their own discovery. Opposition credits Defendants from not filing a single motion for protective order. Instead of filing a protective order, Defendants have simply not turned over documents relevant to numerous requests. Much of the complaint regards the failure of Defendants to correct the deficiencies identified in _Coleman_ that resulted in William's suffering and death, yet there is literally nothing provided regarding supervisory defendants and their knowledge of practices endangering mentally ill. **This information certainly must be overflowing in their email inboxes from concerned mental health providers as their mental health care system inflicts cruel and unusual punishment on mentally ill.** The majority of discovery turned over by Defendants are William's medical records. However, these records are mostly turned over in triplicate in three separate disorganized dumps. Yet still there are missing medical records!

1    Opposition makes clear that they believe monetary sanctions do not apply to pro se

2    Plaintiffs. They attempt to use this to their advantage. They take advantage of pro se Plaintiff

3    Mallia's good will in allowing repeated extensions. Some, but not all, of the responses to

4    discovery requests have finally been provided spurned by Plaintiff Mallia having to bring this

5    motion. Defendants should be deterred from continuing in this practice of delaying and

6    withholding discovery. Sanctions, the Court finds appropriate, should be imposed.

7        Despite Defendants' attempts to exploit pro se Mallia's goodwill without repercussions,

8    the Court does have the ability to sanction. The reasoning is for this exact scenario. *See Surowiec*

9    *v. Capital Title Agency Inc.* (D. Ariz. 2011) 790 F. Supp. 2d 997, 1011 ("District courts are given

10   "particularly wide latitude" to issue Rule 37 sanctions. *Yeti by Molly, Ltd. v. Deckers Outdoor*

11   *Corp.*, 259 F.3d 1101, 1106 (9th Cir.2001). Similarly, pursuant the inherent power to control their

12   dockets, district courts have discretion to impose a variety of sanctions for discovery abuses.

13   *Oliva v. Sullivan*, 958 F.2d 272, 273 (9th Cir.1992). ")  *Surowiec v. Capital Title Agency Inc.* (D.

14   Ariz. 2011) 790 F. Supp. 2d 997, 1011 (""Fees to pro se litigants are awardable under the court's

15   inherent power." *Jacobs v. Scribner,* No. 1:06–cv–01280–AWI–GSA–PC, 2011 WL 98585, at *1

16   (E.D.Cal. Jan. 12, 2011). A rule to the contrary "would place a pro se litigant at the mercy of an

17   opponent who might engage in otherwise sanctionable conduct." *Pickholtz,* 284 F.3d at 1375.")

## IV. CONCLUSION

Based on the aforementioned, Plaintiff Mallia respectfully requests this Court grant leave
to propound up to 35 additional interrogatories on Defendants  SUJATHA RAMKUMAR, M.D.
and JACOB ADAMS, M.D. Further, Defendants DIANA TOCHE and JOHN REKART should
face sanctions as seen appropriate by the Court and Defendant REKART required to adequately
respond to the remaining requests.

Dated: August 12, 2024

Respectfully submitted,

*Dianne Mallia*

**Dianne Mallia**

ii

*Exhibit A*

SCHMITZ, WILLIAM THOMAS
6/11/1982

G35384
HX11632099; 1000000271163209935384

* Auth (Verified) *

| ADMISSION DATE & TIME | PRIMARY LANGUAGE IF NOT ENGLISH | MODE OF TRANSFER | VITAL SIGNS | HEIGHT  INCHES | WEIGHT  LBS | MEASURED |
|---|---|---|---|---|---|---|
| 5/12/17  1124 | ☐ SIGN LANGUAGE | ☑ AMBULATORY ☐ WHEELCHAIR ☐ GURNEY | PULSE 85  100% BLOOD PRESSURE 181/97 RESPIRATORY 17  TEMP 97.2 | 5'8" ☐ STATED ☐ MEASURED | 171 ☐ STATED | ☑ STANDING ☐ CHAIR ☐ BED |

**ADMITTING DIAGNOSIS**

Bipolar DID NOS

**INSTRUCTION OF ROUTINES AND SERVICES TO PATIENT**

☑ NURSE CALL SYSTEM   ☑ HOSPITAL RULES & REGULATIONS   ☑ TELEPHONE   ☑ BATHROOM
☐ BED   ☐ SIDE RAILS   ☑ SMOKING POLICY   ☐ TELEVISION   ☑ PERSONAL PROPERTY

**REASON FOR ADMISSION** (PRIMARY SIGNS/SYMPTOMS, CHIEF COMPLAINT, HISTORY OF PRESENT ILLNESS, PERCEPTION OF ILLNESS/TREATMENT/GOALS)

"I'm feeling suicidal "no plan" "not yet"

**PRESENT COMFORT LEVEL**   ☑ NO APPARENT DISTRESS

**CHRONIC HEALTH PROBLEMS** (INCLUDE HOSPITALIZATIONS)

CVD HTN, ESLD, HCV

**SURGERIES**

None

**PSYCHO/SOCIAL COMMENTS:**

☐ ANXIETY   ☐ TERMINAL DIAGNOSIS   ☐ FAMILY PROBLEM   ☑ SUICIDE THREAT   ☐ ANGER   ☐ WITHDRAWN   ☑ HISTORY OF MENTAL ILLNESS

**ALLERGIES**

☑ NONE   ☐ MEDICATION (LIST ALLERGIES AND REACTION)

**CURRENT MEDICATION (PRESCRIBED / NON-PRESCRIBED)**

| MEDICATION | DOSAGE | FREQUENCY | LAST DOSE | MEDICATION | DOSAGE | FREQUENCY | LAST DOSE |
|---|---|---|---|---|---|---|---|
| See med rec | | | | | | | |

**NUTRITION**

☑ DENIES PROBLEM   ☐ POOR APPETITE   ☐ DIFFICULT CHEWING   ☐ DIFFICULTY SWALLOWING

**DENTURES**   ☑ NO   ☐ YES   PARTIAL

**RECENT DIETARY RESTRICTIONS**

None

**PERSONAL HABITS**   TYPE / AMOUNT PER DAY   ☑ DENIES USE
☐ CAFFINE BEVERAGES
☐ ALCOHOL / DRUGS
☐ TOBACCO

**FOOD INTOLERANCE**

None

| FACILITY MCSP | PHYSICIAN Dr. Adams | ROOM NO. CTC C#4 |
|---|---|---|

1. Disability Code: ☐ TABE score ≤ 4.0 ☐ DPV ☐ DPH ☐ LD ☐ DPS ☐ DNH ☐ DNS ☐ DOP ☐ Not Applicable 4. Comments: TABE

2. Accommodation: ☐ Additional time ☐ Equipment ☐ Louder ☐ Slower ☐ Basic ☐ Transcribe ☐ Other _____
R-1 NCF

3. Effective Communication: ☐ asked question ☐ summed information Please check one: ☐ Not reached* ☑ Reached * See chrono/notes

CDC#: G35384

LAST NAME: SCHMITZ

FIRST NAME: WILLIAM          MI:

DOB: 06/11/1982

**ADMISSION ASSESSMENT**
**CONTINUED ON REVERSE**

CDC 7202 (4/93)
STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS

n/a

DEF116215

SCHMITZ, WILLIAM THOMAS
6/11/1982

G35384
HX11632099; 1000000271632099G35384

* Auth (Verified) *

STATE OF CALIFORNIA
INTERDISCIPLINARY TREATMENT TEAM - LEVEL OF CARE DECISION
CDCR MH-7388-B (Rev. 03/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Form: Page 2 of 2
Instructions: Page 3 and 4

### PART II: Level of Care Considerations (continued)

#### SECTION B: Complete only if the current level of care is EOP or MHCB.

7. On average and in the last three (3) months, has the patient participated in less than the minimum number of structured treatment hours per week (minimums per week are five (5) hours for EOP patients, 2.5 hours for RC-EOP patients, and 50% of scheduled hours for patients on modified treatment plans)?  ☐ Yes  ☒ No  ☐ N/A

7-A. If "Yes" was selected for consideration "7" AND a referral to a higher level of care was NOT made, explain why the referral was NOT made.

7-B. If "Yes" was selected for consideration "7" AND a referral to a higher level of care was NOT made OR if the patient has been referred to a DSH program and is on the DSH pending-admission list, summarize the specific treatment modifications that are documented in the treatment plan to improve the patient's ability to function.

### PART III: Signature

| Treatment Team Members | Name (Print) | Signature |
|---|---|---|
| Primary Clinician | A. Amos, LCSW/R. Kentner, PsyD | |
| Psychiatrist | T. EASOP, M.D. - PSYCHIATRIST | |
| Correctional Counselor | R. Steele, CCII | |
| Other: | D. Coffin, PsyD | |
| Other: | T. Danson, CTRS | |

Date of IDTT: 5/16/2017

Patient attended IDTT: ☐ Yes  ☐ No   If no, enter reason for not attending:

Interdisciplinary Treatment Team -
Level of Care Decision
CDCR MH-7388-B (Rev. 03/17)

| | |
|---|---|
| CDCR #: | G35384 |
| Last Name: | Schmitz | MI: |
| First Name: | William |
| DOB: | 6-11-82 |

Unauthorized collection, creation, use, disclosure, modification, or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.

DISTRIBUTION: Original: Health Records
eUHR SCANNING LOCATION: Outpatient; MHNI/TxPln - Treatment Plans, 7388, 7388C, 7388C, 7388D Interdisciplinary Treatment Plan
ERMS LOCATION: Mental Health Documentation - IDTT Progress Note



SCHMITZ, WILLIAM THOMAS
6/11/1982

G35384
HX11632099; 1000000271632099G35384

* Auth (Verified) *

State of California
Mental Health Treatment Plan
CDCR MH-7388 (Rev. 11/14)

Department of Corrections and Rehabilitation
Form: Page 1 of 7
Instructions: Page 8 -10

## I. Inmate-Patient Information

[X] Initial   [ ] Update   [ ] MHCB Weekly Review   [ ] Quarterly   [ ] Annual   [ ] Other:

| | | |
|---|---|---|
| Arrival Date: 07/02/11 | Custody Level: III | [X] Reviewed DECs   DDP Classification: NCF |
| Institution: MCSP | Release Date: 10/3/45 | IDTT Date: 05/25/17 |
| Current LOC: EOP | Custody Program: SNY | Next IDTT: 90 days |

## II. Risk Factors/Behavioral Alerts

[X] Self-Injurious Behavior   [ ] Sexual Misconduct   [ ] IEX   [ ] Assaultive Behavior

[X] History or Current Suicidal Ideation   [ ] Suicide Attempts   [ ] Involuntary Medication

For additional information, see form: SRE    Dated: 04/21/15    Date of Last SRE: 12/13/2016

Describe risk factors or behavioral alerts:
Moderate chronic risk: Hx of psychosis, medical problem, chronic pain, long sentence, first term, substance abuse and violence. IPs gender and ethnicity also increase his risk.
Low acute risk: SI, depression, anxiety, mood lability, hopelessness. No intent or plan.

## III. Clinical Summary and Case Formulation: (Predisposing, precipitating, and maintaining factors for current conditions). If Clinical Summary was completed as part of Mental Health Evaluation within seven calendar days of Treatment Plan, see CDCR MH-7386 (Rev. 11/14), Mental Health Evaluation dated:_____ for clinical summary:

Relevant Hx: IP is a 32 year old Caucasian male serving 40 years to life for 2nd degree murder. On 1/3/2005 IP became argumentative with his victim outside of a bar, reportedly about IPs girlfriend at the time, and shot the victim in the face. IP fled the scene, buried the gun in an orchard, left his car at the same orchard, and stayed at his sisters residence until his sister turned him into the police (see SDMS). Predisposing factors: IP has no juvenile criminal history and his parents have no criminal record, however he was convicted of a DUI in 2002. IP completed two years of college at California State University, Chico. IP has a history of marijuana, cocaine, and methamphetamine abuse and was high at the time of his crime. IP was also involved in sales of marijuana and methamphetamines prior to his arrest (see SDMS). According to SDMS, IP was employed with the California Department of Forestry prior to his crime. He was never married and has no children. Precipitating factors: IP has a history of mental illness in addition to a subarachnoid cyst that is pushing against his left frontal temporal lobe. IP believes this cyst triggered/exacerbates his mental health symptoms. IPs chart (see SOMS backfile) states that IP has been previously hospitalized at Langley Porter Neuropsychiatric hospital at age 20 due to reported delusions and remained there for one week. IPs family reported to police upon his arrest that they were concerned about his mental health. They described to police that IP had lost weight, his mood had changed, and he had a bad temper. IP endorsed med non-compliance during the time of his crime and that he suffered from memory lapses and AH. IP was also ingesting a gram of cocaine daily, smoking marijuana, and drinking alcohol. IP was admitted to Napa State hospital in 2006, after his crime, for 14 months where he was diagnosed with Bipolar Disorder, Polysubstance Dependence, and Malingering. Maintaining factors: IP struggled with unremitting auditory and visual hallucinations, episodic paranoid delusions, insomnia and periods of mania. Due to these symptoms, IP was admitted to DSH and prescribed Clozaril. Upon return to MCSP, IP stated "I haven't felt this good in years" (see IDTT dated 7/24/14). IP reports that AVH have improved, although still present, and his sleep has improved. IP remained in EOP due to Clozaril prescription. Previous treatment plan (dated 6/18/15) states that IP continues to experience hypomanic symptoms but has insight around such symptoms. He is able to implement coping skills during these periods; he reduces socialization to limit stimuli and avoid poor decision making. Strengths: IP has strong family support. He is Catholic, uses positive coping skills, exercises regularly, and is future oriented.
Current MH symptoms and treatment focus: This clinician and IDTT are requesting removal from Dorm housing eligibility. IP just returned form AdSeg where he was after a fight at his new housing unit on the D-yard. IP is not on the Sustainable Process list. Group attendance is 45% attended with 6.25 groups/ week. Previously is 53% with 6.09 groups per week attended. IP has demonstrated insight into the cyclical nature of his illness and is extremely fearful that his manic/paranoid periods will result in major conflicts with roommates. IP utilizes his 2-man cell effectively when he needs to isolate due to his symptoms. Previous IDTT IP was indicating he was feeling overwhelmed, this seems to have stabilized.
IP continues to be distressed by auditory hallucinations and headaches.

Administer BDI for baseline level (2/7/17). BDI score 42 (range over 40, extreme depression)
Formulation: Biological factors (subarachnoid cyst) exacerbated by substance abuse precipitated the instant offense. IP does not have a criminal history other than 1 DUI. No behavior problems.

Submitted to him

MAY 25 2017

| | |
|---|---|
| **Date:** 05/25/2017 | |

| 1. Disability Code: | 2. Accommodations: | 3. Effective Communication: | |
|---|---|---|---|
| [ ] TABE score ≤ 4.0 | [ ] Additional Time | [ ] P/I asked questions | CDCR #:   G35384 |
| [ ] DPH [ ] DPV [ ] LD | [ ] Equipment   [ ] SLI | [ ] P/I summed information | Last Name: Schmitz |
| [ ] DPS [ ] DNH | [ ] Louder   [ ] Slower | Please check one: | First Name: William       MI: |
| [ ] DNS [ ] DDP | [ ] Basic   [ ] Transcribe | [ ] Not Reached*  [X] Reached | DOB:    6/11/82 |
| [X] Not Applicable | [ ] Other* | *See chrono/notes | |

4. Comments: TABE= 12.9 dated 02/20/2009; NCF dated 02/06/2009

RECEIVED MAY 25 2017

3

n/a

DEF116768

* Auth (Verified) *

State of California
Mental Health Treatment Plan
CDCR MH-7388 (Rev. 11/14)

Department of Corrections and Rehabilitation
Form: Page 2 of 7
Instructions: Page 8 - 10

### IV. DSM-IV Diagnoses

| Axis I | 295.7 SCHIZOAFFECTIVE DISORDER, BIPOLAR TYPE | PRIMARY |
|---|---|---|
| | 304.8 POLYSUBSTANCE DEPENDENCE IN A CONTROLLED ENVIROMENT | |
| | | |
| | | |
| | | |
| Axis II | V71.09 NO DIAGNOISIS ON AXIS II | |
| | | |
| | | |
| | | |
| Axis III | Subarachnoid cyst, Hyperlipidemia, HTN, Hep C | |
| | | |
| Axis IV | First term, long sentence | |
| Axis V | GAF =50 | CURRENT |

Submitted to HIM
MAY 25 2017

| Date: 05/25/2017 | | |
|---|---|---|
| | Mental Health Treatment Plan
CDCR MH-7388 (Rev. 11/14)
Confidential Inmate-Patient Information | CDCR #:  G35384
Last Name: Schmitz
First Name: William        MI:
DOB:     6/11/82 |

RECEIVED MAY 25 2017 

DEF116769

SCHMITZ, WILLIAM THOMAS
6/11/1982

G35384
HX11632099; 10000002711632099G35384

* Auth (Verified) *

State of California
Mental Health Treatment Plan
CDCR MH-7388 (11/14)

Department of Corrections and Rehabilitation
Form: Page 3 of 7
Instructions: Page 8 - 10

## V. Problem List

| Problem Number | Problem Name | Date Established and Status | Date Updated and Status |
|---|---|---|---|
| 1 | Ongoing SI stemming from depression | 6/18/15-Mild Depression | 05/25/17: active |
| 2 | AVH affecting his depression and group participation | 6/18/15-Using coping | 05/25/17: ongoing |
| 3 | Poor grp participation affecting his learning coping skills | 6/18/15-46% attended | 04/20/17: inactive |
| 4 | migraines due to arachnoid cyst in Left Temporal lobe. | 11/03/16 added | 05/25/17: ongoing |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Date: 05/25/2017

Mental Health Treatment Plan
CDCR MH-7388 (Rev. 11/14)

Confidential Inmate-Patient Information

Submitted to HIM

MAY 25 2017

CDCR #:    G35384
Last Name: Schmitz
First Name: William          MI:
DOB:      6/11/82

RECEIVED MAY 25 2017



n/a

DEF116770

SCHMITZ, WILLIAM THOMAS
6/11/1982

G35384
HX11632099; 10000002711632099G35384

* Auth (Verified) *

State of California
Mental Health Treatment Plan
CDCR MH-7388 (Rev. 11/14)

Department of Corrections and Rehabilitation
Form: Page 4 of 7
Instructions: Page 8 - 10

**VI. Current Treatment Plan** (include discipline specific contributions, expected outcomes, needs, preferences, goals identified by the inmate, and discharge criteria.

Problem Number, Name and Description

1. SI/Depression affecting his moods, his programming and his social network.
2. AVH affecting his depression and group participation
3. Poor group participation affecting his learning pro social mood management and AVH management skills.
4. Migraines due to arachnoid cyst in Left Temporal lobe.

Long Term Goal (Describe specific changes in behavioral terms that can be measured).

Continue to support IPs use of pro social coping skills to manage mood lability and AVH. IP will increase group attendance to 50%+. IP will report decreased SI and refrain from any MHCB admissions. IP will receive zero RVRs. IP will complete MRT.  IP will be ready to transfer to CCCMS LOC when IDTT team agrees he will be stable at that LOC.

Check box if this is a treatment plan update:  ☒  Describe progress toward the goal and date:  Note barriers to progress:

IP continues to report ability to manage AVH and SI and implement coping skills. He has not received any RVRs or needed admission to the MHCB. Group attendance has held steady at 53%. Goal is to achieve 70% attendance.

| Short Term Goals (objectives) | Interventions/Treatment Modalities (Describe the steps to achieving the goals/objectives) | Responsible Discipline |
|---|---|---|
| 1. IP will manage his depressive sx (isolation, fatigue, SI) enough to have no MHCB admits, no RVRs, learn two new pro social depression mgmt skills and attend groups at >50%. | 1. IP will attend Case Management and Communication Skills group, as well as yard groups to learn 2 new pro social coping skills (journaling, deep breathing, thought stopping, positive reframe) to deal with his depression and attend groups >50% | 1. Primary clinician, psychiatrist, group facilitators, and recreational therapist. |
| (01/26/17) IP has had no MHCB admits or RVR's this period. Group attendance is at 53% | 2. Weekly PC contact and Group Therapy/Case Management group to consolidate gains made in groups. | 2. Primary clinician |
| 5/22/17: BDI score 36 (range 31-40 severe depression) | 3. Administer BDI for baseline level and then monthly to track progress. Baseline score: 42 (range over 40, extreme depression) | 3. Primary clinician |
| 2. IP will remain medication compliant and will work with his doctors to adjust medications for optimum effectiveness and minimal health risk. IP will have a reduction in emotional distress caused by his hallucinations AEB no MHCB admits or RVR's and positive group attendance. | 1. Strengthen IPs ability to cope with AVH. IP will attend A.R.T. group to learn and implement two coping skills for AVH over the next 90 days. | 1. Primary clinician, psychiatrist, group facilitators, and recreational therapist. |
| (01/26/17) good progress, IP reports periods of distress, very cyclical. Utilize his coping skills to manage. IP has demonstrated insight into the cyclical nature of his illness. | 2. Weekly PC contact and Group Therapy/Case Management group to consolidate gains made in groups. | 2. Primary clinician |
| | 3. | 3. |

Date: 05/25/2017

Mental Health Treatment Plan
CDCR MH-7388 (Rev. 11/14)

Confidential Inmate-Patient Information

Submitted to HIM
MAY 25 2017

| CDCR #: | G35384 |
|---|---|
| Last Name: Schmitz | |
| First Name: William | MI: |
| DOB: | 6/11/82 |

RECEIVED MAY 25 2017



SCHMITZ, WILLIAM THOMAS
6/11/1982

G35384
HX11632099; 1000000271632099G35384

\* Auth (Verified) \*

| State of California
Mental Health Treatment Plan
CDCR MH-7388 (Rev. 11/14) | | Department of Corrections and Rehabilitation
Form: Page 5 of 7
Instructions: Page 8 - 10 |
|---|---|---|
| **Short Term Goals (Objectives)** | **Interventions/Treatment Modalities (Describe the steps to achieving the goals/objectives)** | **Responsible Discipline** |
| 3. Reduction in distress caused by migraines due to arachnoid cyst in Left Temporal lobe AEB IP's self-report on a scale of 1-10 (1-low, 10-high).<br><br>(01/26/17) some relief with PRN medication available to IP. | 1. IP will attend Communication Skills group to learn three ways to convey his condition and needs to medical staff for assistance in mitigating his headaches and lessen his discomfort.<br>IP will receive medications for reducing migraines and their effects. | 1. Primary clinician, psychiatrist, group facilitators, and recreational therapist. |
| | 2. Weekly PC contact and Group Therapy/Case Management group to consolidate gains made in groups. | 2. Primary clinician |
| | 3. | 3. |

☐ Additional problems are addressed as part of the treatment plan. See the "CDCR 7388-C (Rev. 11/14), *Mental Health Treatment Plan - Addendum: Treatment Planning Page*" at end of document.

## VII. Inmate-Patient Strengths

| | |
|---|---|
| 1. Family support | 1. Improved treatment participation |
| 2. Spiritual- IP is Catholic | 2. Depression and AVH mgmt skills |
| 3. Good insight | 3. |

## VIII. Inmate-Patient Participation In Treatment Planning

| | | | | | |
|---|---|---|---|---|---|
| Contributed to goals and plan | ☒ Yes | ☐ No | Refused to participate | ☐ Yes | ☒ No |
| Aware of plan content | ☒ Yes | ☐ No | Unable to participate | ☐ Yes | ☒ No |
| Present at team meeting | ☒ Yes | ☐ No | Refused to sign | ☐ Yes | ☒ No |

Inmate-patient's comments (Inmate-patient's understanding of his/her treatment needs, perception of his/her strengths and needs, life goals, and progress towards meeting his/her identified goals):

"Get my group percentage up" and "learn how to cope with my problems, ideally without medication."

Family and significant others' input into care, treatment, and services (With inmate-patient authorization):
N/A

Date: 05/25/2017

| **Mental Health Treatment Plan**
CDCR MH-7388 (Rev. 11/14)

Confidential Inmate-Patient Information | CDCR #: G35384
Last Name: Schmitz
First Name: William     MI:
DOB:     6/11/82 |
|---|---|

**Submitted to HIM**

MAY 25 2017

RECEIVED MAY 25 2017

n/a

DEF116772

SCHMITZ, WILLIAM THOMAS
6/11/1982

G35384
HX11632099; 1000000271163209G35384

\* Auth (Verified) \*

State of California
Mental Health Treatment Plan
CDCR MH-7388 (Rev. 11/14)

Department of Corrections and Rehabilitation
Form: Page 6 of 7
Instructions: Page 8 - 10

**VIII.   Inmate-Patient Participation in Treatment Planning - Continued**

Care, treatment, and services provided by outside resources, if applicable (Must also be included in goals and objectives):
N/A

Input from other CDCR disciplines (e.g., custody, education, vocation, nursing, or medical):
Floor custody staff say "he is real quiet" does his job as a Porter.

**IX.   Transfer/Discharge Planning Recommendations**

Transfer/Discharge to: ☒ No Change   ☐ Non-MHSDS   ☐ CCCMS   ☐ EOP   ☐ MHCB   ☐ Acute   ☐ ICF   ☐ PIP   ☐ Parole/Release

Discharge Plan/Criteria/Comments:
Continue to support IPs use of pro social coping skills to manage mood lability and AVH. IP will increase group attendance to 70%+. IP will report decreased SI and refrain from any MHCB admissions. IP will receive no RVRs. IP will be ready to transfer to CCCMS LOC when IDTT team agrees he will be stable at that LOC.

Barriers to Discharge (if applicable):
IP continues to be distressed by auditory hallucinations, cycling between depression and hypomania, and migraines due to arachnoid cyst in Left Temporal lobe.
Primary clinician and the IDTT are recommending exclusion from Dorm Housing.
The Dorm environment would lead to IP Schmitz G35384 psychiatric destabilization. IP has been able to mitigate some of his symptom while housed in double Cell environment. Psychiatry note  7230F dated 04/18/2017 indicates Dorm housing could contribute to IP Schmitz G35384 destabilization.

\*If inmate is discharging to a lower level of care, document rationale:
IP not discharging at this time.

Date: 05/25/2017

**Mental Health Treatment Plan**
CDCR MH-7388 (Rev. 11/14)

Confidential Inmate-Patient Information

| | |
|---|---|
| CDCR #: | G35384 |
| Last Name: | Schmitz |
| First Name: | William    MI: |
| DOB: | 6/11/82 |

**Submitted to HIM**

MAY 25 2017

RECEIVED MAY 25 2017



DEF116773

SCHMITZ, WILLIAM THOMAS
6/11/1982

G35384
HX11632099; 10000002711632099G35384

* Auth (Verified) *

State of California
Mental Health Treatment Plan
CDCR MH-7388 (Rev. 11/14)

Department of Corrections and Rehabilitation
Form: Page 7 of 7
Instructions: Page 8 - 10

| X.  Treatment Team Members | | | |
|---|---|---|---|
| **Member Title:** | **Print Name:** | **Date:** | **Member Signature:** |
| Primary Clinician | J. Aamot, PsyD | 5-25-17 | *J. Aamot, PsyD* |
| Psychiatrist | J. Johnson, MD | | |
| Correctional Counselor | A. Vaden, CCI | 5/25/17 | |
| PT/Psychiatric Technician | | | |
| Inmate (if applicable) | | | |
| Other: IDTT Leader | K. Keller, PsyD. Senior Psychologist | 5/25/17 | |
| Other: Rec Therapist | C. Harris, CTRS   K. Nidey | 25 May 2017 | |
| Other: | | | |
| Treatment plan completed by: J. Aamot, PsyD. | | on: 05/25/2017 | |

Mental Health Treatment Plan
CDCR MH-7388 (Rev. 11/14)

Confidential Inmate-Patient Information

CDCR #:   G35384
Last Name: Schmitz
First Name: William                MI:
DOB:    6/11/82

Submitted to HIM

MAY 25 2017

RECEIVED MAY 25 2017

9

n/a

DEF11677

SCHMITZ, WILLIAM THOMAS
6/11/1982

G35384
HX11632099; 1000000271632099G35384

**\* Auth (Verified) \***

STATE OF CALIFORNIA
**INTERDISCIPLINARY TREATMENT TEAM - LEVEL OF CARE DECISION**
CDCR MH-7388-B (Rev. 03/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Form: Page 1 of 2
Instructions: Page 3 and 4

| PART I: IDTT Information | | |
|---|---|---|
| CDCR Institution: MCSP | Current Housing: SNY | Date of IDTT: 5/25/2017 |
| LOC prior to IDTT: EOP | Type of IDTT: Initial | If other, reason for IDTT: |
| LOC after IDTT: EOP | Patient referred to ICF/Acute LOC? ☐ Yes ☒ No | If yes, level referred to: |
| Date of ICF/Acute LOC Referral: | | |

**PART II: Level of Care Consideration**

**SECTION A: Complete for all levels of care.**

| | | | |
|---|---|---|---|
| 1. | As a result of a major mental disorder, the patient is unable to adequately function at the current level of care. | ☐ Yes | ☒ No |
| 2. | The patient requires highly structured inpatient psychiatric care with 24-hour nursing supervision due to a major mental disorder; serious to major impairment of functioning in most life areas; ritualistic or repetitive self-injurious/suicidal behavior; or refractory psychiatric symptoms. | ☐ Yes | ☒ No |
| 3. | The patient demonstrates chronic psychiatric symptoms (e.g., disturbed emotions, perceptions, thought processes, and/or impaired cognitions) that have not responded sufficiently to at least six (6) months of treatment to a degree that facilitates adequate levels of functioning. | ☐ Yes | ☒ No |
| 4. | The patient is currently in a Mental Health Crisis Bed (MHCB) and has been in a MHCB for at least 10 days. | ☐ Yes | ☒ No |
| 5. | The patient has had three (3) or more MHCB placement requests initiated during the last six (6) months (includes all MHCB placement requests regardless of where the patient was housed when the request was initiated; e.g., OHU, alternative housing, or overflow beds). | ☐ Yes | ☒ No |
| 6. | The patient has had three (3) or more CDCR 115-MH evaluations completed during the last three (3) months. | ☐ Yes | ☒ No |

*Reason for Non-Referral to a Higher Level of Care:*

1-5 A. If "Yes" was selected for any of the 1-5 considerations AND a referral to a higher level of care was NOT made, explain why the referral was NOT made.

1-5 B. If "Yes" was selected for any of the 1-6 considerations AND a referral to a higher level of care was NOT made OR if the patient was referred to a Department of State Hospitals (DSH) program and is on the DSH pending-admission list, summarize the specific treatment modifications that are documented in the treatment plan to improve the patient's ability to function.

**Submitted to HIM**

**MAY 2 5 2017**

Date: 05/25/2017

| 1. Disability Code: | 2. Accommodations: | 3. Effective Communication: | | |
|---|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional Time | ☐ Patient asked questions | CDCR #: | G35384 |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ Patient summed Information | Last Name: | SCHMITZ |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check one: | First Name: | William | Mi: |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not Reached\* ☐ Reached | DOB: | 06/11/1982 |
| ☒ Not Applicable | ☐ Other\* | \*See chronos/notes | | |

4. Comments:  TABE: 12.9 dated 02/20/2009; NCF dated 02/06/2009

*Unauthorized collection, creation, use, disclosure, modification, or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.*

DISTRIBUTION: Original: Health Records
eUHR SCANNING LOCATION: MH/NI/Tx/Plx - Treatment Plans; 7388, 7388C, 7388C, 7388D Interdisciplinary Treatment Plan
EHRS LOCATION: Mental Health Documentation - IDTT Progress Note

**RECEIVED MAY 2 5 2017** 10

n/a

**DEF11677**

SCHMITZ, WILLIAM THOMAS
6/11/1982

G35384
HX11632099; 1000000271163209G35384

* Auth (Verified) *

STATE OF CALIFORNIA
INTERDISCIPLINARY TREATMENT TEAM - LEVEL OF CARE DECISION
CDCR MH-7388-B (Rev. 03/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Form: Page 2 of 2
Instructions: Page 3 and 4

## PART II: Level of Care Considerations (continued)

### SECTION B: Complete only if the current level of care is EOP or MHCB.

| | | | |
|---|---|---|---|
| 7. | On average and in the last three (3) months, has the patient participated in less than the minimum number of structured treatment hours per week (minimums per week are five (5) hours for EOP patients, 2.5 hours for RC-EOP patients, and 50% of scheduled hours for patients on modified treatment plans)? | ☐ Yes ☒ No ☐ N/A | |

7-A.  If "Yes" was selected for consideration "7" AND a referral to a higher level of care was NOT made, explain why the referral was NOT made.

7-B.  If "Yes" was selected for consideration "7" AND a referral to a higher level of care was NOT made OR if the patient has been referred to a DSH program and is on the DSH pending-admission list, summarize the specific treatment modifications that are documented in the treatment plan to improve the patient's ability to function.

### PART III: Signatures

| Treatment Team Members | Name (Print) | Signature |
|---|---|---|
| Primary Clinician | J. Aernol, PsyD | |
| Psychiatrist | J. Johnson, MD | |
| Correctional Counselor | A. Vaden, CCI | |
| Other: | K. Keller, PsyD. Senior Psychologist, IDTT Leader | |
| Other: | C. Hawley CTRS. Rec. Therapy  K. McVey CTRS | |

Date of IDTT:  5/25/2017

Patient attended IDTT:  ☒ Yes  ☐ No    If no, enter reason for not attending:

Submitted to HIM

Interdisciplinary Treatment Team -
Level of Care Decision
CDCR MH-7388-B (Rev. 03/17)

MAY 25 2017

| | |
|---|---|
| CDCR #: | G35384 |
| Last Name:  SCHMITZ | MI: |
| First Name:  William | |
| DOB:  06/11/1982 | |

DISTRIBUTION: Original: Health Records
eUHR SCANNED LOCATION: Outpatient: MHAN/TxPln - Treatment Plans; 7388, 7388C, 7388C, 7388D Interdisciplinary Treatment Plan
EHRS LOCATION: Mental Health Documentation - IDTT Progress Note

RECEIVED MAY 25 2017

11

n/a

DEF116776

SCHMITZ, WILLIAM THOMAS
6/11/1982

G35384
HX11632099; 10000002711632099G35384

* Auth (Verified) *

State of California
**Interdisciplinary Progress Notes - IDTT Summary**
CDCR MH-7230D (Rev. 01/12)

Department of Corrections and Rehabilitation

| Comments (Use SOAPE format) |
| --- |

IDTT Note: Current MH symptoms and treatment focus: IP had been stable and remained in EOP, however this past 90-day reporting period, IP has medication changes when he went to the hospital for medical reasons. IP was removed from Clozaril and is currently on Lithium and is currently on Invega. IP is working with his medical doctor and his psychiatrist to get an increase in antipsychotic medication.

This clinician and IDTT are requesting removal from Dorm housing eligibility. IP just returned form AdSeg where he was after a fight at his new housing unit on the D-yard. IP is not on the Sustainable Process list. Group attendance is 45% attended with 5.26 groups/week. Previously is 53% with 6.09 groups per week attended.

Subjective: I/P was present for IDTT. I/P was able to answer and ask questions appropriately and maintain eye contact. He was informed that he would be maintained in EOP LOC for next 90 days to monitor stability.
Objective: Grooming: well groomed          Behavior: calm, polite
Mood: cautious and anxious          Affect: Congruent
Speech: normal rate and rhythm          Thought Process: appears normal, linear
Hallucinations: voices          S/I & H/I: Denied currently

Assessment: Continue in EOP, attend groups as assigned.
Axis I: 295.7 SCHIZOAFFECTIVE DISORDER, BIPOLAR TYPE, 304.8 POLYSUBSTANCE DEPENDENCE IN A CONTROLLED ENVIROMENT
Axis II:  V71.09  NO DIAGNOISIS ON AXIS II
Axis III: Subarachnoid cyst, Hyperlipidemia, HTN, Hep C
Axis IV: Incarceration, First term, long sentence
Axis V:  GAF 50

Plan: Bi-weekly clinical contacts with primary clinician. Maintain in EOP LOC. Support IPs use of pro social coping skills to manage mood lability and AVH. IP will report decreased SI and refrain from any MHCB admissions. IP will receive no RVRs. IP will be ready to transfer to CCCMS LOC when IDTT team agrees he will be stable at that LOC. Add administration of BDI (Beck Depression Inventory) to measure progress.
Education: Reviewed expectations for participating in EOP and regular group attendance.

Functional Evaluation Procedure:
1) Assessment Process and Steps - completed an interview, utilized collateral information/record review.
2) Conclusion and Rationale - It is concluded this IP:
    (x) may have a program assignment, but has the following functional limitations: started new meds, hears voices, depressed mood, poor attendance.
    - the functional limitations are based on: he has active symptoms of SI, depression and AVH
    (x) the following reasonable accommodations are recommended: work with lots of supervision, make sure he understands directions, give breaks to manage sx as needed.

**Submitted to HIM**

**MAY 2 5 2017**

☐ Page 2   (Note continued on page 2)

| Date: | 05/25/2017 | Time: | 12:59 | Housing: | B10 202U |
| --- | --- | --- | --- | --- | --- |
| Institution: | MCSP | | Clinician: J. Aamot, PsyD | Signature: | J. Aamot, E.D |

| 1. Disability Code: | 2. Accommodations: | 3. Effective Communication: | | |
| --- | --- | --- | --- | --- |
| ☐ TABE score ≤ 4.0 | ☐ Additional Time | ☐ P/I asked questions | Last Name: SCHMITZ | |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ P/I summed information | First Name: William | MI: T. |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check one: | CDC #: G35384 | |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not Reached* ☒ Reached | DOB: 06-11-1982 | |
| ☒ Not Applicable | ☐ Other | *See chrono/notes | | |
| 4. Comments: | TABE= 12.9 dated 02/20/2009; NCF dated 02/06/2009 | | | |

Interdisciplinary Progress Notes - IDTT Summary, CDCR MH-7230D (Rev. 01/12)                Page 1

**RECEIVED MAY 2 5 2017**

DEF116777

SCHMITZ, WILLIAM THOMAS
6/11/1982

G35384
HX11632099; 1000002711632099G35384

* Auth (Verified) *

STATE OF CALIFORNIA
INTERDISCIPLINARY TREATMENT TEAM - LEVEL OF CARE DECISION
CDCR MH-7388-B (Rev. 03/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Form: Page 2 of 2
Instructions: Page 3 and 4

SECTION II: Complete only if the Clinical Level of Care is EOP or RC-EOP

| | | | |
|---|---|---|---|
| 7. | On average and in the last three (3) months, has the patient participated in less than the minimum number of structured treatment hours per week (minimums per week are five (5) hours for EOP patients, 2.5 hours for RC-EOP patients, and 50% of scheduled hours for patients on modified treatment plans)? | ☐ Yes ☒ No ☐ N/A | |

7-A.  If "Yes" was selected for consideration "7" AND a referral to a higher level of care was NOT made, explain why the referral was NOT made.

7-B.  If "Yes" was selected for consideration "7" AND a referral to a higher level of care was NOT made OR if the patient has been referred to a DSH program and is on the DSH pending-admission list, summarize the specific treatment modifications that are documented in the treatment plan to improve the patient's ability to function.

| Treatment Team Members | Name (Print) | Signature |
|---|---|---|
| Primary Clinician | J. Aamot, PsyD | |
| Psychiatrist | J. Johnson, MD | |
| Correctional Counselor | R. Dee, CCI | |
| Other: S. Muklt, LCSW | K. Keller, PsyD- Senior Psychologist, IDTT Leader | |
| Other: | A. Arellano, CTRS, Rec. Therapy | |
| Date of IDTT: 4/20/2017 | | RECEIVED APR 2 2017 |
| Patient attended IDTT: ☒ Yes ☐ No | If no, enter reason for not attending: | |

Interdisciplinary Treatment Team -
Level of Care Decision
CDCR MH-7388-B (Rev. 03/17)

| | |
|---|---|
| CDCR #: | G35384 |
| Last Name: | SCHMITZ |
| First Name: | William |
| DOB: | 06/11/1982 |

Unauthorized collection, creation, use, disclosure, modification, or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state law.

DISTRIBUTION: Original: Health Records
eUHR SCANNING LOCATION: Outpatient: MH/9/7x/Pin - Treatment Plans; 7388, 7388C, 7388C, 7388D Interdisciplinary Treatment Plan
EHRS LOCATION: Mental Health Documentation - IDTT Progress Note

SCHMITZ, WILLIAM THOMAS
6/11/1982

G35384
1000000271632099G35384; HX11632099

* Auth (Verified) *

STATE OF CALIFORNIA
**PHYSICIAN'S ORDERS**
CDCR 7221 (Rev. 04/90)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Form Page 1 of 1

## NOTE: SEND A COPY OF PHYSICIAN'S ORDERS FOR MEDICATION TO PHARMACY AFTER EACH ORDER IS SIGNED.

| Order Date | TIME | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed) |
|---|---|---|---|
| 5/18/17 | 10:35 | | **ADMIT TO MENTAL HEALTH CRISIS BED** |
| | | 1 | Reason for Admission: *SZ* |
| | | 2 | Admitting DX: *Bipolar Disorder NOS* |
| | | 3 | Level of Observation : |
| | | | ☐ 1:1 Suicide Watch X24 hours (one to one continuous cell front observation), with safety issue – including no tear safety smock, no tear safety blanket, and no tear safety mattress OR |
| | | | ☑ Suicide Precaution X24 hours (staggered staff checks at minimum 10-15 minute interval) limited issue- including shorts , t-shirt, no tear mattress or furniture, reading material ( if approved by IDTT), and toiletries OR |
| | | | ☐ Q30 X24 hours - continue 30 min wellness checks, with full state issue items |
| | | 4 | CTC/MHCB Medications as ordered by Physician on Medication Reconciliation Form. *ALL medications must be discontinued and new medication orders must be completed prior to admission to CTC. |
| | | 5 | Obtain weight and vital signs upon admission |
| | | 6 | Vital Signs: ☑ QDaily  ☐ QShift  ☐ Other:                    ☐ Neuro ✓ Q |
| | | 7 | Diet: ☑ Regular Heart Healthy  ☐ Other:<br>* See Medical Diet Prescription Form |
| | | 8 | Safety Precaution: ☑ None  ☐ Fall Risk  ☐ Other: |
| | | 9 | Activity: ☑ No assistance  ☐ Bed rest  ☐ Assistance Required *(see below)* |
| | | 10 | Assistive Device(s): ☐ None  ☐ Wheelchair  ☐ Other: |
| | | 12 | ☐ LABS: |
| | | 13 | ☐ EKG                                   *S Blankley* |
| 5/12/17 | 2210 | | *Nicread Kvitcad RN* |

| Allergies: | Institution: MCSP | Room/Wing: |
|---|---|---|
| | CDCR#: *G35384* | |
| | Last Name: *Schmitz* | |
| | First Name: *William*                MI: | |
| | DOB: *6/4/82* | |

STATE OF CALIFORNIA
**INTERDISCIPLINARY PROGRESS NOTES**
CDCR 7230 (REV. 03/13)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| DATE mm/dd/yy | TIME hh:mm AM/PM | |
|---|---|---|
| 5/8/17 | 2:30 PM | **Psychiatry Progress Note: Non-clinical Contact:** |
| | | The patient has an active ROI for Joseph Schmitz located in the EUHR. |
| | | As a result of an email regarding a family concern that this patient may not have been |
| | | receiving paliperidone 06/02/17-06/04/17 I called Joseph Schmitz and received a call |
| | | back at about 1400 hours. I provided him with the update that Dr. J. Johnson had |
| | | renewed the patient's paliperidone 06/01/17 prior to the expiration date of 06/15/17. |
| | | I gave him an update on the current status of the patient based on recent chart notes |
| | | and a brief discussion with his assigned staff psychiatrist Dr. Johnson. I updated him |
| | | that at this time there is a non-formulary approval for paliperidone. He asked about |
| | | the patient's recent crisis bed admission and I briefly reviewed that as well. He |
| | | mentioned the patient's arachnoid cyst and his concerns that this might be a part of |
| | | the patient's mental health symptoms. I related to him that based on my review and |
| | | role as acting chief psychiatrist that I have not actually seen or examined the patient |
| | | but that the notes indicate that both the mental health and primary care teams are |
| | | aware of the patient's arachnoid cyst and the mental health and somatic concerns that |
| | | the patient and his family have related to it. |
| | | |
| | | J. Adams MD, Chief Psychiatrist MCSP (A) |

| Institution | Housing Unit |
|---|---|
| MCSP | B |

1. Disability Code:
☐ TABE score < 4.0
☐ DPH ☐ DPV ☐ LD
☐ DPO ☐ DNH
☐ DNS ☐ DDP
☑ Not Applicable

4. Accommodation:
☐ Additional time
☐ Equipment ☐ SLI
☐ Louder ☐ Slower
☐ Basic ☐ Transcribe
☐ Other

5. Effective Communication:
☐ PN asked questions
☐ PN summed information
Please check one:
☐ Not reached ☐ Reached
*See chrono/notes

CDCR#: G35384
Last Name: Schmitz
First Name: William    MI:
DOB: 06/11/1982

6. Comments: NON CLINICAL ENCOUNTER; NO DIRECT PATIENT INTERACTION

**RECEIVED JUN 0 9 2017**

15

DEF119460

Exhibit B

SCHMITZ, WILLIAM THOMAS
6/11/1982

G35384
HX11632099; 1000000271163209935384

* Auth (Verified) *

State of California
**Interdisciplinary Progress Note – General Psychiatry**
CDCR MH-7230F (Rev. 01/12)

Department of Corrections and Rehabilitation
Page 1 of 2

**1. Identifying Information:**

| Date: 3/18/16 | Time: | Location: b mod |
|---|---|---|

**Level of Care:**
☐ CCCMS     ■ EOP          ☐ GP     ☐ RC     ☐ ASU
☐ OHU       ☐ MHCB         ☐ CTC    ☐ SNY    ☐ SHU

Custody Housing: ☐ GP  ☐ RC  ☐ ASU  ☐ CTC  ☐ SNY  ☐ SHU

| Location of Interview: ■ Face-to-Face  ☐ MOD or RN | Was the setting confidential? ■ Yes  ☐ No |
|---|---|

**2. Comments:**

[redacted]

**3. Subjective:**

[redacted]

**4.**

[redacted]

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | Inmate's Name (Last, First, MI), CDC Number, DOB |
|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ PH asked questions | Schmitz, William T |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ PH summed information | G35384 |
| ☐ DPS ☐ DNH | ☐ Louder/slower in an area | | 6/11/1982 |
| ☐ DNB ☐ DDP | ☐ Basic ☐ Transcribe ☐ Not reached ☐ Reached | |
| ☐ NOT APPLICABLE ☐ Other | ☐ See chrono/notes | |

Interdisciplinary Progress Note – General Psychiatry, CDCR MH-7230F (Rev. 01/12)

Submitted to UHR MAR 18 2016

RECEIVED MAR 30 2016          RECEIVED MAR 18 2016

DEF117101

Exhibit B

SCHMITZ, WILLIAM THOMAS
6/11/1982

G35384
HX11632099; 1000000271163209 9G35384

* Auth (Verified) *

State of California
Interdisciplinary Progress Note – General Psychiatry
CDCR 7230F (Rev. 01/12)

Department of Corrections and Rehabilitation
Page 2 of 2

**P – Plan**

*(Also medication refusals and completion of CDCR 7225. Include referral for admission, any medication changes, and note next risk medication prescriptions.)*

Medications : stressed the importance of compliance with medication and the need to be aware of the side effects, which were discussed with patient , and should inform staff if he experiences the side effects so he can get help as soon as possible

Safety:continue level of care safety protocols . , Risk assessment limits the ability to predict dangerousness and assess risk is highly complex, including confounding issues of magnitude , likelihood , imminence , and frequency , even under best case scenarios , predictions of dangerousness tend not to highly accurate and prone to false positives . , It is not easy to ascertain at any given time the degree to which any future dangerousness is due to mental illness, as opposed to alternative issues such as volitional choice, criminality , secondary gain or even retaliation .

Return to clinic in 4 weeks

**E – Education**

Diet and Exercise
Adequate Hydration
Sleep Hygiene was discussed
Patient was educated on how he can seek help if necessary at EOP,
when he feels he needs to be seen and what he has to do in an emergency like suicidal ideation , by informing building staff immediately.
Patient was also educated about his diagnosis, symptoms and prognosis, educated him about risks and benefits of taking medications and not taking the medications , also stressed the importance of therapy and to attend groups .
I used simple , basic language /syntax and grammar to communicate with inmate and effective communication was reached and he was able to summarize clinical content and verbalize back to the physician

Dr S. Ramkumar

State of California
Interdisciplinary Progress Note – General Psychiatry
CDCR 7230F (Rev. 01/12)

Inmate's Name (Last, First, MI), CDC Number, DOB
Schmitz, William T
G35384
6/11/1982

RECEIVED MAR 30 2016    RECEIVED MAR 1 8 2016    2

DEF117102

1  DIANNE MALLIA
2  404 Atkinson St,
   Roseville, CA 95678
3  deedamallia@gmail.com
4  PRO SE

5              UNITED STATES DISTRICT COURT

6

7              EASTERN DISTRICT OF CALIFORNIA

8

9  THOMAS SCHMITZ, et al.,              NO. 2:20-cv00195-DJC-CKD

10
                            Plaintiffs,
11            vs.                        DECLARATION OF DIANNE
                                         MALLIA IN SUPPORT OF
   A ASMAN, et al.,                      PLAINTIFF DIANNE MALLIA'S
12                                       REPLY TO DEFENDANTS'
13                                       OPPOSITION TO PLAINTIFF
                                         MALLIA'S MOTION FOR
14                          Defendants.  LEAVE TO SERVE
15                                       ADDITIONAL DISCOVERY ON
                                         DEFENDANT SUJATHA
16                                       RAMKUMAR, M.D. AND
                                         JACOB ADAMS, M.D. AND TO
17                                       DETERMINE SUFFICIENCY OF
18                                       RESPONSES BY DEFENDANT
                                         DIANA TOCHE AND JOHN
19                                       REKART
20

21

22

23

24
   I, Dianne Mallia, declare:
25

26
      1. Exhibit A is a true and correct copy of discovery documents I received from Defense
27         with Bates numbers that start with "DEF".
28

            DECLARATION OF DIANNE MALLIA   NO. 2:20-cv-00195-DJC-CKD.   1

$C$

1   2.  Exhibit B is a REDACTED true and correct copy of discovery documents I received

2       from Defense with Bates numbers  DEF117101-DEF117102.   The Redaction covers

3       up a lined out name and medical information.

4   3.  Exhibit C is this Declaration.

5

6

7   I declare under penalty of perjury under the laws of this Court and the State of California that the

8   foregoing is true and correct. This Declaration was executed on the 12th of August 2024, in San

9   Francisco, California.

10

11

12                                  Dianne Mallia

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28


DECLARATION OF DIANNE MALLIA    NO. 2:20-cv00195-DJC-CKD.  2